UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

SPACE EXPLORATION TECHNOLOGIES CORP.,
1 Rocket Road,
Hawthorne, CA 90250

                             *Plaintiff*,

v.

CAROL BELL, in her official capacity as Administrative Law Judge of the Office of the Chief Administrative Hearing Officer,
5107 Leesburg Pike, Suite 2519
Falls Church, VA 22041,

JAMES MCHENRY, in his official capacity as Chief Administrative Hearing Officer,
5107 Leesburg Pike, Suite 2519
Falls Church, VA 22041,

and

MERRICK B. GARLAND, in his official capacity as U.S. Attorney General,
950 Pennsylvania Avenue NW
Washington, DC 20530.

                             *Defendants*.

Civ. Action No. _____

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Space Exploration Technologies Corp. (SpaceX), by and through its attorneys, alleges and states as follows:

## INTRODUCTION

1. SpaceX brings this action to enjoin ongoing administrative proceedings against SpaceX that are unconstitutional under binding law for multiple, independent reasons.

2. On August 23, 2023, the Immigrant and Employee Rights Section of the Department of Justice filed an administrative complaint against SpaceX for engaging in a pattern or practice of discriminating against non-citizens—specifically persons granted refugee status under 8 U.S.C. § 1157 or asylee status under 8 U.S.C. § 1158—in its hiring process in violation of 8 U.S.C. § 1324b(a)(1)(B). SpaceX has not engaged in any practice or pattern of discriminating against anyone, including asylees or refugees. To the contrary, SpaceX wants to hire the very best candidates for every job regardless of their citizenship status, and in fact has hired hundreds of noncitizens.

3. But aside from being factually and legally insupportable, the government's proceedings are unconstitutional for at least four reasons: (1) the administrative law judge (ALJ) adjudicating the government's complaint was unconstitutionally appointed; (2) the ALJ is unconstitutionally insulated from Presidential authority because she is protected by two layers of for-cause removal protections; (3) the ALJ is unconstitutionally purporting to adjudicate SpaceX's rights in an administrative proceeding rather than in federal court; and (4) the ALJ is unconstitutionally denying SpaceX its Seventh Amendment right to a jury trial.

4. Given these clear constitutional defects, the Court should preliminarily and permanently enjoin the pending administrative proceedings, declare them unlawful, instruct the ALJ to dismiss the case, and grant such other relief as the Court finds appropriate without delay.

**JURISDICTION AND VENUE**

5. The Court has subject matter jurisdiction over this action, which arises under the Constitution and laws of the United States and seeks relief against officers of the United States, under 28 U.S.C. §§ 1331 (federal question) & 2201 (declaratory judgment). *See Axon Enter. Inc. v. FTC*, 598 U.S. 175, 195 (2023) (district court may "review . . . claims that the structure, or even existence, of an agency violates the Constitution" outside the agency's statutory review scheme). SpaceX has a cause of action to sue for equitable relief, *see, e.g.*, *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010); *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-327 (2015), and for declaratory relief, *see* 28 U.S.C. § 2201.

6. Venue is proper in this district under 28 U.S.C. § 1391(e)(1)(B). Defendants are officers of an agency of the United States acting in their official capacity. A substantial part of the events or omissions giving rise to SpaceX's claims occurred in this district because the government's complaint implicates SpaceX's "nationwide recruitment efforts," OCAHO Compl. ¶ 36, which necessarily includes conduct that occurred in each district where SpaceX recruiters and hiring managers handled applications from noncitizens. That includes the Southern District of Texas: SpaceX's Starbase facility in Boca Chica, Texas, is SpaceX's fastest-growing facility and employs thirteen human resources professionals, including six full-time recruiting employees. The Starbase facility advertised for 1,451 distinct positions during the September 2018-May 2022 period cited in the government's complaint, and received approximately 72,000 applications (of whom about 170 were from self-identified refugees and asylees).

**PARTIES**

7. Plaintiff SpaceX is a privately held Delaware corporation with its principal place of business in Hawthorne, California, and with additional facilities in Texas, Florida, Washington State, and Washington, D.C.

8. Defendant Judge Bell is an ALJ in DOJ's Office of the Chief Administrative Hearing Officer (OCAHO), an office within the U.S. Department of Justice's Executive Office for Immigration Review. She is sued in her official capacity.

9. Defendant James McHenry is the Chief Administrative Hearing Officer, the head of OCAHO. He is sued in his official capacity.

10. Defendant Merrick Garland is the Attorney General, the head of the U.S. Department of Justice. He is sued in his official capacity.

**BACKGROUND**

**I.    SpaceX and Its Hiring Practices**

11. SpaceX was founded in 2002 in a small warehouse in El Segundo, California with the audacious goal of making life multiplanetary.

12. Today the company operates two primary businesses in furtherance of that objective: a space launch business and a global satellite-based internet service.

13. SpaceX's space launch business designs, manufactures, and launches advanced rockets and spacecraft to take customer payloads to space, including satellites, cargo for the International Space Station, NASA and its international partners' astronauts, and other human spaceflight participants. Customers of SpaceX's launch business include NASA and various U.S. government defense and intelligence agencies, foreign governments, domestic and international satellite operators and telecommunications companies, scientific and educational institutions, and

others. As of today, SpaceX is the world's leading launch services provider. In 2022, SpaceX completed 61 missions, including missions for a variety of U.S. government and commercial customers as well as Starlink satellite missions to rapidly deploy that constellation. In just the first nine months of 2023, SpaceX has completed 64 launches.

14. SpaceX is also developing Starship, the most powerful rocket ever built. Starship is fully reusable and will enable humans to travel to the Moon, Mars, and other destinations in the solar system. NASA has selected Starship to deliver the next American astronauts to and from the surface of the Moon as part of the Artemis program.

15. SpaceX's satellite business designs, manufactures, launches, and operates advanced communications satellites. This business includes Starlink, the world's most advanced satellite-based internet service. Starlink uses a low Earth orbit satellite constellation—already the world's largest at more than 4,500 satellites and counting—and ground infrastructure around the globe to deliver low-latency, high-speed internet capable of supporting streaming, video calls, and more.

16. SpaceX's accomplishments have enabled the company to grow rapidly, especially in recent years. The company currently employs more than 13,000 people in facilities around the country, including in its Starbase manufacturing and launch facility in Boca Chica, Texas, its rocket development facility in McGregor, Texas, and its facilities in Florida, Washington State, California, and Washington, D.C.

17. Throughout its rapid growth, SpaceX has always sought, and continues to seek, to hire the most talented people possible. This demanding approach to hiring has been critical to SpaceX's accomplishments to date and will be critical to its continued success.

18. Fortunately for SpaceX, openings at the company typically attract many applicants, and SpaceX frequently receives hundreds of applications for a single position. For years,

engineering students in the United States have rated the company as among the most attractive employers in the United States.[1]  For example, during the September 2018 to May 2022 period cited in the government's administrative complaint, SpaceX posted around 11,500 jobs to its careers site and received more than 1,084,000 applications (an average of more than 90 applications per job posting).  For engineering positions, the average is over 100 applications per job posted, and some positions attract many hundreds of applications.  This enables SpaceX to be highly selective: only about 1% of applications result in a hire.

19. Absent any legal or regulatory restrictions, SpaceX would hire the most talented people on Earth regardless of their origin.  In fact, SpaceX has hired hundreds of noncitizens, including hires who were not U.S. Persons under the International Traffic in Arms Regulations (ITAR)[2]—the regime that strictly controls the export of defense and military related technology to safeguard national security—and whose status required SpaceX to seek special permission from the U.S. government so SpaceX could employ them.

20. But because SpaceX designs and manufactures sensitive technologies—including technologies with military applications—SpaceX faces legal mandates under export control laws and regulations, including the ITAR, as well as under some of its government contracts that impose strict limitations on who it can employ.  For example, the technology and data associated with the

---

[1] According to the global employer branding firm Universum, SpaceX ranked as the most attractive employer in the United States for engineering students from 2020 to 2022, and as the second most attractive employer in the United States in 2023.  *See* Universum, *United States of America*, https://universumglobal.com/rankings/united-states-of-america/ (last visited Sept. 13, 2023).

[2] Among other things, the ITAR prohibit the disclosure of certain controlled technology, data, and services to anyone who is not a "U.S. Person" (absent a special license issued by the U.S. government). The term U.S. Person includes U.S. citizens and nationals, lawful permanent residents, and persons who have been granted "refugee" status under 8 U.S.C. § 1157 or "asylee" status under 8 U.S.C. § 1158. Reference to "refugees" and/or "asylees" herein will refer to persons granted these specific immigration statuses.

5

work SpaceX is doing at Starbase in Texas—*i.e.*, developing, building, testing, and launching Starship—is substantially controlled under the ITAR, the Missile Technology Control Regime Category IV, and the Export Administration Regulations. Every SpaceX employee has access to technology and data controlled by these statutory and regulatory regimes.

21. These export control laws and regulations are critical to our national security. Moreover, violating them can have severe consequences for a company like SpaceX. For example, each ITAR violation can result in criminal penalties including a fine of up to $1 million and imprisonment for up to 20 years, 22 U.S.C. § 2778(c), and civil penalties up to $1.2 million or twice the value of the transaction giving rise to the violation—whichever is greater. 22 C.F.R. § 127.10(a). An ITAR violation may also constitute a material breach of federal government contracts, which can lead to contractual penalties, debarment, or even termination.

22. Individuals applying for positions at SpaceX are asked as part of the process to self-identify their immigration status to help SpaceX with the process of assessing whether they are U.S. Persons for ITAR purposes. In SpaceX's experience, many applicants who self-identify as asylees or refugees are not in fact asylees or refugees and therefore not in fact U.S. Persons.

23. Nevertheless, throughout the recruitment and hiring process and across its facilities nationwide, SpaceX follows strict policies and procedures to both ensure compliance with all export control laws and regulations and also prevent any unlawful discrimination, including discrimination against refugees and asylees. The company's training materials, recruiting efforts, and job descriptions reflect those legally compliant policies.

## II. Section 1324b Proceedings

24. Under 8 U.S.C. § 1324b, "[i]t is an unfair immigration-related employment practice . . . to discriminate against any individual (other than an unauthorized alien) . . . with

respect to the hiring, or recruitment or referral for a fee, of the individual for employment or the discharging of the individual from employment," "in the case of a protected individual," "because of such individual's citizenship status." 8 U.S.C. § 1324b(a)(1)(B). A "protected individual" means a U.S. citizen or "an alien who is lawfully admitted for permanent residence, is granted the status of an alien lawfully admitted for temporary residence . . . , is admitted as a refugee . . . , or is granted asylum," subject to certain exceptions. *Id.* § 1324b(a)(3).

25. A Special Counsel appointed by the President, by and with the advice and consent of the Senate, may initiate an investigation concerning such practices and file a complaint alleging such practices with OCAHO, triggering proceedings before an OCAHO ALJ. 8 U.S.C. § 1324b(c)(2), (d)(1).

26. OCAHO ALJs, including Judge Bell, are appointed by the Attorney General. *See* U.S. Dep't of Justice, Notice, Executive Office for Immigration Review Announces New Chief Administrative Law Judge (June 18, 2019), https://www.justice.gov/eoir/page/file/1175096/download; U.S. Dep't of Justice, Notice, EOIR Announces New Administrative Law Judge (June 26, 2020), https://www.justice.gov/eoir/page/file/1290226/download. They are removable by the Attorney General "only for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board." 5 U.S.C. § 7521(a). MSPB members are removable by the President "only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

27. During Section 1324b proceedings, an ALJ has various powers and responsibilities. For example, the ALJ "shall have power to issue and cause to be served upon" the alleged violator "a copy of the complaint and a notice of hearing . . . not less than five days

7

after the serving of the complaint." 8 U.S.C. § 1324b(e)(1). The ALJ shall take written testimony and may provide for the taking of further testimony or hear argument. *Id.* § 1324b(f)(1). The ALJ "shall have reasonable access to examine evidence of any person or entity being investigated," "by subpoena may compel the attendance of witnesses and the production of evidence," and may seek a court order requiring compliance with a subpoena. *Id.* § 1324b(f)(2); *see also* 28 C.F.R. § 68.28(a) (ALJ "shall have all the appropriate powers necessary to conduct fair and impartial hearings," including the power to "[c]onduct formal hearings," "examine witnesses" under oath, and "[c]ompel the production of documents and appearance of witnesses in control of the parties").

28. Ultimately, the ALJ "shall issue and cause to be served on the parties to the proceeding an order, which shall be final unless appealed as provided under subsection (i)." 8 U.S.C. § 1324b(g)(1). If the ALJ's final order determines by a preponderance of the evidence that the respondent has engaged or is engaging in an unfair immigration-related employment practice as defined by the statute, "the judge shall state his findings of fact and shall issue . . . an order which requires [the respondent] to cease and desist from such unfair immigration-related employment practice." *Id.* § 1324b(g)(2)(A). "Such an order also may require," as relevant here, the respondent to "hire individuals directly and adversely affected, with or without back pay," or to "pay a civil penalty" "for each individual discriminated against." *Id.* § 1324b(g)(2)(B)(iii), (iv)(I). Currently, ALJs may order the payment of a civil penalty of not less than $557 and not more than $4,465 for each individual discriminated against. *See* 28 C.F.R. § 85.5.

29. "[A]ny person aggrieved by such final order may seek a review of such order in the United States court of appeals for the circuit in which the violation is alleged to have occurred or in which the employer resides or transacts business." 8 U.S.C. § 1324b(i)(1). Courts of appeals review the ALJ's factual findings deferentially, for substantial evidence, and the ALJ's legal

conclusions de novo. *Wije v. Barton Springs*, 81 F.3d 155 (5th Cir. 1996) (per curiam); *see* 5 U.S.C. § 706(2).

30. Federal courts also have jurisdiction to enforce an ALJ's final order if it is not appealed. *See* 8 U.S.C. § 1324b(j)(2). "In such a proceeding, the order of the [ALJ] shall not be subject to review." *Id.*

### III. Proceedings Against SpaceX

31. On August 23, 2023, the Immigrant and Employee Rights Section of the DOJ filed a complaint with OCAHO alleging that "[f]rom at least September 2018 to at least May 2022, SpaceX discriminated against asylees and refugees throughout its hiring process, including during recruiting, screening, and selection," in purported violation of Section 1324b(a)(1)(B). OCAHO Compl. ¶¶ 1, 13.

32. The government seeks an order requiring SpaceX to (1) "cease and desist from" and "take affirmative steps to address" the practices alleged; (2) "pay an appropriate civil penalty . . . for each individual discriminated against"; (3) "provide fair consideration to each applicant who identified as an asylee or refugee but was improperly screened out or rejected, or who was . . . deterred from applying, based on citizenship status"; (4) "hire applicants who were victims of the discriminatory practices alleged . . . and were qualified for employment"; and (5) "pay back pay, including interest, and all other relief available to each individual discriminated against who was qualified and who is found to have suffered uncompensated lost wages due to denied or delayed employment as a result of the discriminatory practices alleged," along with "such additional relief as justice may require." OCAHO Compl. 12.

33. Because the DOJ is seeking relief on behalf of all individuals who self-identified as refugees and asylees—including individuals who may not qualify for either status—granting

9

the DOJ's requested relief could potentially expose SpaceX to penalties and other sanctions under U.S. Export Control Laws, including ITAR.

34. On September 11, 2023, OCAHO served SpaceX with the complaint and the case was assigned to OCAHO ALJ Judge Bell.

35. The litigation before Judge Bell will involve substantial factfinding and adjudicative proceedings. Among other things, the litigation will require Judge Bell to oversee extensive discovery; to decide various legal issues, including on the appropriate legal standard for establishing pattern or practice discrimination and discriminatory intent; to hold a hearing on the merits; to make extensive factual findings with respect to potentially hundreds of alleged victims; and to consider assessing civil penalties, awarding back pay, and/or ordering coercive injunctive relief.

36. Ultimately, Judge Bell will issue an order that determines whether SpaceX violated Section 1324(a)(1)(B), as well as whether to levy penalties, enjoin SpaceX, or issue other relief. 8 U.S.C. § 1324b(g). Such an order "shall be final unless appealed," 8 U.S.C. § 1324b(g)(1), with no further administrative or Executive Branch review.

**IV.  The Proceedings Are Unconstitutional**

37. SpaceX denies the government's allegations and has numerous factual and legal defenses. But whether or not SpaceX violated any hiring regulations, the OCAHO proceedings are unconstitutional under binding law for at least four independent reasons and SpaceX should not be subject to them.

38. First, the ALJ conducting the proceedings against SpaceX was appointed in violation of the Appointments Clause because she is exercising the powers of a principal officer. Under the Appointments Clause, executive officers generally must be appointed by the President,

"by and with the Advice and Consent of the Senate." U.S. CONST. art. II, § 2, cl. 2. Congress may "by Law vest . . . Appointment . . . in the Heads of Departments," such as the Attorney General, only for "inferior Officers." *Id.* But Judge Bell exercises powers of a principal, not an inferior, officer. Judge Bell has the "power to render a final decision on behalf of the United States without any . . . review by [a] nominal superior or any other principal officer in the Executive Branch." *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1981 (2021) (quotations omitted). "Review outside Article II" via "an appeal" in federal court is not sufficient. *Id.* at 1982. Indeed, as OCAHO ALJs have themselves recognized in staying administrative proceedings, "the unavailability of further administrative review of ALJ decisions in cases arising under 8 U.S.C. § 1324b" is both "crystal clear" and at least in "tension" with OCAHO ALJ's putative status as "inferior officers." *A.S. v. Amazon Web Servs., Inc.*, 14 OCAHO 1381H, 2021 WL 3465663, at *2 & n.4 (July 29, 2021); *see, e.g.*, *Nitin Degaonkar v. Infosys Ltd.*, 15 OCAHO 1393A, 2022 WL 17623217, at *2 (Nov. 30, 2022) (staying proceedings in light of *Arthrex*); *Zajradhara v. HDH Co.*, 16 OCAHO 1417C, 2022 WL 14803036, at *6 (Oct. 14, 2022) (same); *Rodriguez Garcia v. Farm Stores*, 17 OCAHO 1449, 2022 WL 4075712, at *2 (Aug. 11, 2022) (same); *Ravines de Schur v. Easter Seals-Goodwill N. Rocky Mountain, Inc.*, 15 OCAHO 1388G, 2022 WL 2466910, at *3 (June 23, 2022) (same).

39. Second, the ALJ is unconstitutionally insulated from the President's supervision by two levels of for-cause removal protection. The Attorney General may remove Judge Bell "only for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board." 5 U.S.C. § 7521(a); *see* 28 C.F.R. § 68.26. MSPB members, in turn, may be removed by the President "only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). This scheme violates Article II, which vests the

11

"entire" power to execute federal law in the President "alone." *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2197 (2020). Article II requires that the President has adequate "authority to remove those who assist him." *Free Enter. Fund*, 561 U.S. at 513-514. But the two layers of removal protection enjoyed by Judge Bell and other OCAHO ALJs do not afford the President the necessary removal authority. The Fifth Circuit recently held unconstitutional the Securities and Exchange Commission's ALJ scheme—which is analogous to OCAHO's scheme, but with *more* executive oversight—on this ground. *Jarkesy v. SEC*, 34 F.4th 446, 463-465 (5th Cir. 2022).

40. Third, the proceedings violate Article III because the government's lawsuit—seeking civil penalties for alleged violations of federal employment discrimination law—must be adjudicated by an Article III court. Congress cannot confer the judicial power "on entities outside Article III." *Stern v. Marshall*, 564 U.S. 462, 484 (2011). Because a suit seeking money damages and civil penalties "implicate[s] the core private right to property," it must be brought in a judicial forum. *See Axon*, 598 U.S. at 204 (Thomas, J., concurring). Indeed, "[a] civil penalty was a type of remedy at common law that could only be enforced in courts of law." *Jarkesy*, 34 F.4th at 454 (alteration in original) (quoting *Tull v. United States*, 481 U.S. 412, 422 (1987)). Even assuming that suits seeking damages and civil penalties may, in certain circumstances, be adjudicated by administrative agencies, enforcement actions filed with OCAHO by the Immigrant and Employee Rights Section cannot be so adjudicated because they are neither "uniquely suited for agency adjudication" nor incompatible with a right to a jury trial. *Id.* at 456.

41. Finally, and for largely the same reasons as described in the previous paragraph, the ongoing proceedings violate SpaceX's rights under the Seventh Amendment, because "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause

12

of action to which it attaches and placing exclusive jurisdiction in an administrative agency[.]" *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 61 (1989).

42. The Supreme Court has recently emphasized that federal courts should adjudicate structural constitutional claims like those presented here without waiting for agency proceedings to conclude. That is because the proceedings themselves impose a "here-and-now injury" that "cannot be undone" with appellate review. *Axon*, 598 U.S. at 191.

43. Moreover, there is no way for this Court to cure these flagrant constitutional problems without rewriting the relevant statutory provisions to give them "an effect altogether different from that sought by the measure[s] viewed as a whole." *Murphy v. NCAA*, 138 S. Ct. 1461, 1482 (2018). Nor could severing any provision permit the adjudication of the government's claims in an administrative agency rather than an Article III court.

## STATEMENT OF CLAIMS FOR RELIEF

### COUNT I

### VIOLATION OF APPOINTMENTS CLAUSE

**Against All Defendants**

44. SpaceX re-alleges and incorporates by reference each of the preceding paragraphs and allegations.

45. Judge Bell and all other OCAHO ALJs are acting as principal executive officers of the United States when they preside over Section 1324b proceedings.

46. "Whether one is an 'inferior' officer depends on whether he has a superior" within the Executive Branch other than the President. *Edmond v. United States*, 520 U.S. 651, 662 (1997).

47. Judge Bell is acting as a principal officer because she has the "power to render a final decision on behalf of the United States [in Section 1324b proceedings] without any . . . review by [a] nominal superior or any other principal officer in the Executive Branch." *Arthrex*, 141 S. Ct. at 1981 (quotations omitted). "Review outside Article II" via "an appeal" in federal court does not provide the necessary oversight. *Id.* at 1982.

48. Judge Bell was not constitutionally appointed as a principal officer by the President with the advice and consent of the Senate.

49. There is no way to sever any unconstitutional provisions from the statutory scheme to remedy the lack of executive oversight, let alone a way to do so that comports with Congressional intent.

50. SpaceX is suffering ongoing "here-and-now injury" because it is subject to coercive proceedings before an unconstitutionally structured agency. *Axon*, 598 U.S. at 191.

51. Accordingly, OCAHO ALJs lack constitutional authority to conduct Section 1324b proceedings, including the pending proceeding against SpaceX.

## COUNT II

**VIOLATION OF PRESIDENT'S REMOVAL AUTHORITY UNDER ARTICLE II**

**Against All Defendants**

52. SpaceX re-alleges and incorporates by reference each of the preceding paragraphs and allegations.

53. The Attorney General may remove Judge Bell "only for good cause established and determined by the Merit Systems Protection Board." 5 U.S.C. § 7521(a); *see* 28 C.F.R. § 68.26. MSPB members, in turn, may be removed by the President "only for inefficiency, neglect

of duty, or malfeasance in office." 5 U.S.C. § 1202(d). Accordingly, two levels of for-cause removal protections insulate Judge Bell from presidential control.

54. This scheme violates Article II, which vests the "entire" power to execute federal law in the President "alone." *Seila Law*, 140 S. Ct. at 2197. That means the President must have adequate "authority to remove those who assist him." *Free Enter. Fund*, 561 U.S. at 513-514.

55. The Supreme Court has held that the President's removal power must be "unrestricted," with only "two exceptions—one for multimember expert agencies that do not wield substantial executive power, and one for inferior officers with limited duties and no policymaking or administrative authority." *Seila Law*, 140 S. Ct. at 2198, 2199-2200.

56. Neither exception applies here. OCAHO ALJs do not constitute "a multimember body of experts, balanced along partisan lines, that perform[] legislative and judicial functions." *Seila Law*, 140 S. Ct. at 2199; *see also id.* at 2198 n.2 (noting that even this exception "has not withstood the test of time" because "under our constitutional structure" administrative agencies must exercise only "the 'executive Power'" (quoting U.S. CONST. art. II, § 1, cl. 1)). And OCAHO ALJs are not inferior officers: as noted above, OCAHO ALJs adjudicate Section 1324b claims without any executive oversight.

57. Even if OCAHO ALJs were deemed inferior officers, they would still be unconstitutionally insulated from removal because they are subject to two levels of good cause removal protection. *See Jarkesy*, 34 F.4th at 463-465. They also hold continuing offices with wide-ranging duties, not temporary or minor positions, and thus fall outside the Supreme Court's narrow exception to the President's unrestricted removal power for certain inferior officers.

15

58. It would be contrary to congressional intent to sever either the removal restriction in Section 7521 or the removal restriction in Section 1202 (which would have sweeping effects for the removal of ALJs across the Executive Branch).

59. SpaceX is suffering ongoing "here-and-now injury" because it is subject to coercive proceedings before an unconstitutionally structured agency. *Axon*, 598 U.S. at 191.

60. Judge Bell would face the prospect of removal by the President—including based on her conduct during the contemplated proceedings against SpaceX—but for the unlawful removal restrictions. The President's inability to freely remove Judge Bell thus is likely to affect her conduct of the proceedings.

61. Accordingly, OCAHO ALJs lack constitutional authority to conduct Section 1324b proceedings, including the pending proceeding against SpaceX.

## COUNT III

## VIOLATION OF ARTICLE III

### Against All Defendants

62. SpaceX re-alleges and incorporates by reference each of the preceding paragraphs and allegations.

63. Because the government is seeking damages (back pay with interest) and civil penalties, SpaceX's private rights are at stake in the OCAHO proceedings.

64. The types of claims the government is asserting and the relief the government seeks implicate the judicial power, which the Constitution vests exclusively in the federal courts.

65. The government's claims against SpaceX are "analogous to a number of tort actions recognized at common law." *Curtis v. Loether*, 415 U.S. 189, 195 & n.10 (1974).

66. The government's claims do not implicate administrative expertise or efficiency. They neither require administrative adjudication nor even are uniquely suited to such adjudication, as similar "actions are commonly considered by federal courts with or without the federal government's involvement." *Jarkesy*, 34 F.4th at 459.

67. Accordingly, the government must assert such claims, if at all, in federal court. *See Jarkesy*, 34 F.4th at 459.

68. Judge Bell's continued adjudication of the government's claims violates Article III of the Constitution and constitutes an ongoing harm to SpaceX.

## COUNT IV

## VIOLATION OF SEVENTH AMENDMENT

### Against All Defendants

69. SpaceX re-alleges and incorporates by reference each of the preceding paragraphs and allegations.

70. The OCAHO action constitutes a suit at common law under the Seventh Amendment. *See Jarkesy*, 34 F.4th at 456-459.

71. The value in controversy exceeds twenty dollars because the government alleges multiple violations and seeks damages and civil penalties under 8 U.S.C. § 1324b(g)(2).

72. Judge Bell's continued adjudication of these claims violates SpaceX's Seventh Amendment right to a trial by jury and constitutes an ongoing harm to SpaceX.

## **PRAYER FOR RELIEF**

For those reasons, Plaintiff respectfully requests that this Court:

(1) Preliminarily and permanently enjoin Defendants from continuing the pending OCAHO proceedings against SpaceX;

(2)    Order Judge Bell to dismiss the government's complaint;

(3)    Declare that the OCAHO proceedings against SpaceX are unlawful and that Defendants may not proceed with such proceedings; and

(4)    Award such other and further relief as this Court may deem just and proper, including but not limited to reasonable attorney's fees and costs.

Respectfully submitted,

Dated:  September 15, 2023

   */s/ Laura P. Warrick*
Laura P. Warrick
 Attorney-in-Charge
 Texas Bar No. 24079546
Southern District of Texas Bar No. 3437415
AKIN GUMP STRAUSS HAUER & FELD LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-4770
Facsimile: (214) 969-4343
lwarrick@akingump.com

James E. Tysse
 Of Counsel
 D.C. Bar No. 978722 (*pro hac vice* to be filed)
Charles F. Connolly
 Of Counsel
 D.C. Bar No. 455969 (*pro hac vice* to be filed)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
jtysse@akingump.com
cconnolly@akingump.com

*Counsel to Plaintiff Space Exploration Technologies Corp.*