**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., <br><br> *Plaintiff,* <br><br> v. <br><br> CAROL BELL, in her official capacity as Administrative Law Judge of the Office of the Chief Administrative Hearing Officer; JAMES MCHENRY, in his official capacity as Chief Administrative Hearing Officer; and MERRICK B. GARLAND, in his official capacity as U.S. Attorney General, <br><br> *Defendants.* | Civ. Action No. 1:23-cv-00137 |

## <u>PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>

Plaintiff Space Exploration Technologies Corporation (SpaceX) hereby moves for an order preliminarily enjoining ongoing administrative proceedings against SpaceX to be entered against Defendants Carol Bell, in her official capacity as Administrative Law Judge of the Office of the Chief Administrative Hearing Officer; James McHenry, in his official capacity as Chief Administrative Hearing Officer; and Merrick Garland, in his official capacity as U.S. Attorney General. In support of this motion, SpaceX submits the accompanying Memorandum of Points and Authorities and Declaration of Jamin Gallman, Director of Human Resources, Diversity, and Learning at SpaceX. A proposed order is attached.

Under Local Rule 7.5.A, SpaceX respectfully requests a hearing on this motion, as well as a ruling by November 9, 2023, the day before the deadline for SpaceX to file its answer in the administrative proceedings.

1

Respectfully submitted,

Dated:  September 26, 2023

/s/ Laura Warrick

Laura Warrick
  Attorney-in-Charge
  Texas Bar No. 24079546
Southern District of Texas Bar No. 3437415
AKIN GUMP STRAUSS HAUER & FELD LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-4770
Facsimile: (214) 969-4343
lwarrick@akingump.com

James E. Tysse (*pro hac vice application filed*)
  Of Counsel
  D.C. Bar No. 978722
Charles F. Connolly (*pro hac vice application filed*)
  Of Counsel
  D.C. Bar No. 455969
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
jtysse@akingump.com
cconnolly@akingump.com

*Counsel to Plaintiff Space Exploration Technologies Corp.*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., <br><br> *Plaintiff,* <br><br> v. <br><br> CAROL BELL, in her official capacity as Administrative Law Judge of the Office of the Chief Administrative Hearing Officer; JAMES MCHENRY, in his official capacity as Chief Administrative Hearing Officer; MERRICK B. GARLAND, in his official capacity as U.S. Attorney General; and UNITED STATES OF AMERICA, <br><br> *Defendants.* | Civ. Action No. 1:23-cv-00137 |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION AND STATEMENT OF ISSUES IN DISPUTE ..................................1

BACKGROUND ...........................................................................................................3

    A.    SpaceX Strives To Hire The World's Most Talented People To Build The World's Most Advanced Rockets, Satellites, And Other Technology ..........................................................................................3

    B.    Proceedings Under Section 1324b ..................................................4

    C.    The Government's Section 1324b Action Against SpaceX.......................6

ARGUMENT ...............................................................................................................7

I.    SPACEX IS LIKELY TO SUCCEED ON THE MERITS ON EACH OF ITS CONSTITUTIONAL CLAIMS...................................................................8

    A.    OCAHO ALJs Are Not Constitutionally Appointed ................................8

        1.    *Under the Appointments Clause, an officer may be appointed by the Attorney General only if the officer is directed and supervised by an officer nominated by the President and confirmed by the Senate.* ................................................8

        2.    *OCAHO ALJs' appointments by the Attorney General are invalid because OCAHO ALJs are not directed or supervised by any executive official, let alone a principal officer.* ...................9

        3.    *Severability cannot cure the Appointments Clause issue.* .............11

    B.    OCAHO ALJs Are Unconstitutionally Insulated From Removal .............12

        1.    *The President's removal authority may be restricted, if at all, under only two limited exceptions.*..................................................13

        2.    *OCAHO ALJs do not fit either narrow exception to the President's unrestricted removal power.*.......................................15

        3.    *The unconstitutional removal restrictions are not severable.* .......16

    C.    The OCAHO Proceedings Against SpaceX Violate Both Article III And The Seventh Amendment.................................................................19

II.    THE PROPER REMEDY FOR THESE CONSTITUTIONAL VIOLATIONS IS A PRELIMINARY INJUNCTION .................................................................22

    A.    Without A Preliminary Injunction, SpaceX Will Suffer Irreparable Harm ......................................................................................22

    B.    The Balance Of Harms And Public Interest Support Granting A Preliminary Injunction ...................................................................24

CONCLUSION............................................................................................................25

## TABLE OF AUTHORITIES

**CASES:**

*A.S. v. Amazon Web Servs., Inc.*,
  14 OCAHO 1381H, 2021 WL 3465663 (July 29, 2021) ...........................................1, 6, 10, 23

*Alaska Airlines, Inc. v. Brock*,
  480 U.S. 678 (1987)................................................................................................................11

*Arlington v. FCC*,
  569 U.S. 290 (2013)..................................................................................................................9

*Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*,
  430 U.S. 442 (1977)................................................................................................................21

*Axon Enter., Inc. v. FTC*,
  598 U.S. 175 (2023)......................................................................................................... *passim*

*Ayotte v. Planned Parenthood of N. New England*,
  546 U.S. 320 (2006)................................................................................................................16

*BST Holdings, L.L.C. v. Occupational Safety & Health Admin.*,
  17 F.4th 604 (5th Cir. 2021) .................................................................................................3, 25

*Buckley v. Valeo*,
  424 U.S. 1 (1976)....................................................................................................................10

*Butz v. Economou*,
  438 U.S. 478 (1978)...........................................................................................................16, 18

*Carr v. Saul*,
  141 S. Ct. 1352 (2021)............................................................................................................23

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*,
  494 U.S. 558 (1990)................................................................................................................20

*Collins v. Yellen*,
  141 S. Ct. 1761 (2021).......................................................................................................14, 22

*Curtis v. Loether*,
  415 U.S. 189 (1974)................................................................................................................21

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
  710 F.3d 579 (5th Cir. 2013) ...................................................................................................25

*Edmond v. United States*,
  520 U.S. 651 (1997)...........................................................................................................8, 9, 10

ii

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.*,
    561 U.S. 477 (2010) ............................................................................... *passim*

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989) ................................................................................... 20, 21

*Humphrey's Executor v. United States*,
    295 U.S. 602 (1935) ................................................................................. 13, 14

*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022) ................................................................... *passim*
    143 S. Ct. 2688 (2023) .................................................................................... 2

*League of Women Voters of United States v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ......................................................................... 24

*Louisiana v. Biden*,
    55 F.4th 1017 (5th Cir. 2022) ................................................................... 8, 25

*Lucia v. SEC*,
    138 S. Ct. 2044 (2018) ............................................................................. 16, 24

*Morrison v. Olson*,
    487 U.S. 654 (1988) ...................................................................................... 14

*Murphy v. National Collegiate Athletic Ass'n*,
    138 S. Ct. 1461 (2018) ............................................................................. 12, 19

*Nitn Degaonkar v. Infosys Ltd.*,
    15 OCAHO 1393A, 2022 WL 17623217 (Nov. 30, 2022) ......................... 10, 24

*Nken v. Holder*,
    556 U.S. 418 (2009) ...................................................................................... 24

*Railroad Ret. Bd. v. Alton R. Co.*,
    295 U.S. 330 (1935) ...................................................................................... 12

*Ramspeck v. Federal Trial Exam'rs Conf.*,
    345 U.S. 128 (1953) ................................................................................. 16, 18

*Ravines de Schur v. Easter Seals-Goodwill N. Rocky Mountain, Inc.*,
    15 OCAHO 1388G, 2022 WL 2466910 (June 23, 2022) ............................. 11

*Rodriguez Garcia v. Farm Stores*,
    17 OCAHO 1449, 2022 WL 4075712 (Aug. 11, 2022) ................................. 10

*Rotkiske v. Klemm*,
    140 S. Ct. 355 (2019) .................................................................................... 12

iii

*Ryder v. United States,*
515 U.S. 177 (1995) ..........................................................................................24

*Seila Law LLC v. CFPB,*
140 S. Ct. 2183 (2020) ............................................................... *passim*

*Stern v. Marshall,*
564 U.S. 462 (2011) ...........................................................................................25

*Tull v. United States,*
481 U.S. 412 (1987) ...........................................................................................20

*United States v. Arthrex, Inc.,*
141 S. Ct. 1970 (2021) ............................................................... *passim*

*United States v. National Treasury Emps. Union,*
513 U.S. 454 (1995) ...........................................................................................17

*United States v. Perkins,*
116 U.S. 483 (1886) ...........................................................................................14

*Wiener v. United States,*
357 U.S. 349 (1958) ...........................................................................................14

*Wije v. Barton Springs,*
81 F.3d 155 (5th Cir. 1996) (per curiam) .......................................................6

*Zajradhara v. HDH Co.,*
16 OCAHO 1417C, 2022 WL 14803036 (Oct. 14, 2022) ..................................2, 10

## CONSTITUTION AND STATUTES:

U.S. CONST.
amend. VII .......................................................................................................19
art. II, § 1 .........................................................................................................13
art. II, § 1, cl. 1 ...............................................................................................14
art. II, § 2, cl. 2 ............................................................................................1, 8
art. II, § 3 .........................................................................................................13
art. III, § 1 .......................................................................................................19

5 U.S.C.
§ 556(b) ............................................................................................................18
§ 632 (1946) (repealed 1966) ........................................................................17
§ 706(2) ..............................................................................................................6
§ 1202(d) ................................................................................................ *passim*
§ 7521(a) ................................................................................................ *passim*

iv

8 U.S.C.

    § 1324a(e)(7)........................................................................................12
    § 1324b............................................................................................*passim*
    § 1324b(a)(1)(B) ..........................................................................1, 4, 6
    § 1324b(a)(3) ........................................................................................5
    § 1324b(c)(2) ........................................................................................5
    § 1324b(d)(1) ........................................................................................5
    § 1324b(e)(1) ......................................................................................18
    § 1324b(f)(2) ........................................................................................5
    § 1324b(g)(1) ........................................................................................5
    § 1324b(g)(2)(B)(iii) ............................................................................6
    § 1324b(g)(2)(B)(iv)(I) ........................................................................6
    § 1324b(i)(1) ........................................................................................6
    § 1324b(j)(2) ....................................................................................6, 12
    § 1324c(d)(4) ......................................................................................12

Administrative Procedure Act, Pub. L. No. 79-404, § 11, 60 Stat. 237, 244 (1946)....................17

Civil Service Reform Act of 1978, Pub. L. No. 95-454, § 1202(d), 92 Stat. 1111 ................17, 19

## REGULATIONS

5 C.F.R.

    § 1200.1..............................................................................................17
    § 1201.1..............................................................................................18
    § 1201.2..............................................................................................18
    § 1201.3..............................................................................................18

28 C.F.R.

    pt. 68 ................................................................................................23
    § 68.26..............................................................................................15
    § 68.28(a) ............................................................................................5
    § 85.5..................................................................................................6

## OTHER AUTHORITIES:

1 ANNALS OF CONG. 499 ..............................................................................9

30 WRITINGS OF GEORGE WASHINGTON (J. Fitzpatrick ed. 1939)................................13

*Civil Service Reform: Hearings on H.R. 11280 Before the H. Comm. on Post Off.*
    *& Civ. Serv.*, 95th Cong. 824 (1978) ........................................................17

S. Rep. No. 79-752 (1945) ..........................................................................18

THE FEDERALIST NO. 77 (Alexander Hamilton) (J. Cooke ed. 1961)............................8

THE FEDERALIST NO. 78 (Alexander Hamilton) (C. Rossiter ed. 1961) .........................................25

U.S. Dep't of Justice, Civil Rights Division, *IER Letters of Resolution Summaries For Fiscal Years 2007-2023* (last visited Sept. 20, 2023) .......................................23

U.S. Dep't of Justice, Civil Rights Division, *Press Releases* (last visited Sept. 20, 2023) ............................................................................................................23

U.S. Dep't of Justice, Civil Rights Division, *Settlements and Lawsuits*, (last visited Sept. 20, 2023) ....................................................................................23

U.S. Dep't of Justice, Notice, EOIR Announces New Administrative Law Judge (June 26, 2020).........................................................................................................5

**INTRODUCTION AND STATEMENT OF ISSUES IN DISPUTE**

The Immigrant and Employee Rights Section of the Department of Justice (IER) filed an administrative complaint against Space Exploration Technologies Corporation (SpaceX) in proceedings before Carol Bell, an administrative law judge (ALJ) within the Executive Office for Immigration Review's Office of the Chief Administrative Hearing Officer (OCAHO). Because those proceedings—besides being factually and legally insupportable—are structured in an unconstitutional manner in multiple respects, SpaceX moves for a preliminary injunction to halt the proceedings and avoid irreparable harm.

In the administrative proceedings, the government alleges that SpaceX discriminated against refugees and asylees in its hiring processes in violation of 8 U.S.C. § 1324b(a)(1)(B). SpaceX denies those allegations because it has not engaged in any practice of discriminating against anyone, including asylees or refugees. On the contrary, SpaceX has hired hundreds of noncitizens, while following strict policies and procedures both to ensure compliance with its national security obligations and to prevent any unlawful discrimination.

But SpaceX should not have to participate in the administrative proceedings at all, because the government has brought its claims in "an illegitimate proceeding, led by an illegitimate decisionmaker." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023). The proceedings violate the Constitution four times over.

*First*, Judge Bell's appointment by the Attorney General violates the Appointments Clause. U.S. CONST. art. II, § 2, cl. 2. An ALJ who can adjudicate claims with no executive oversight and only deferential judicial review is a principal officer who must be nominated by the President and confirmed by the Senate. *See United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1981-1982 (2021). In fact, OCAHO itself has all but acknowledged that OCAHO ALJs were not constitutionally appointed. *See, e.g.*, *A.S. v. Amazon Web Servs., Inc.*, 14 OCAHO 1381H, 2021 WL 3465663, at

*2 n.4 (July 29, 2021) (acknowledging "tension" between inferior status of ALJs and *Arthrex*); *Zajradhara v. HDH Co.*, 16 OCAHO 1417C, 2022 WL 14803036, at *6 (Oct. 14, 2022) (staying proceedings in light of constitutional concerns).

*Second*, Judge Bell is unconstitutionally insulated from removal by the President. Article II mandates that the President have "unrestricted removal power" over OCAHO ALJs. *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2198 (2020). But the President's removal power is doubly restricted: The Attorney General can remove an OCAHO ALJ only on a finding of good cause by the Merit Systems Protection Board (MSPB)—and the President can remove members of the MSPB "only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. §§ 1202(d), 7521(a). The Fifth Circuit has held this same set of removal protections unconstitutional as applied to SEC ALJs—who are subject to *more* executive supervision than OCAHO ALJs. *Jarkesy v. SEC*, 34 F.4th 446, 463-464 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023).

*Third*, the proceedings violate Article III because the government seeks civil penalties and damages for employment discrimination claims that are analogous to common-law torts and not "uniquely suited for agency adjudication"—and thus must be resolved in an Article III court with the right to a trial by jury preserved. *Jarkesy*, 34 F.4th at 456. And *fourth*, for essentially the same reasons, these administrative proceedings violate the Seventh Amendment. *See id.* at 455-456.

Given these flagrant constitutional defects—each of which provides an independent basis to enjoin the OCAHO proceedings—SpaceX is likely to succeed on the merits. That is especially true because none of these defects can be fixed without rewriting the statutory scheme (something only Congress can do). SpaceX also easily satisfies the remaining preliminary injunction factors. As the Supreme Court recently emphasized, being subject to unconstitutional administrative proceedings causes a "here-and-now injury" that "cannot be undone" with appellate review. *Axon*,

598 U.S. at 903-904. For similar reasons, the balance of harms overwhelmingly favors an injunction. And "[t]he public interest" is best served by ensuring that the government acts in accordance with law, thus "maintaining our constitutional structure." *BST Holdings, L.L.C. v. Occupational Safety & Health Admin.*, 17 F.4th 604, 618 (5th Cir. 2021).

Accordingly, this Court should enjoin the unlawful OCAHO proceedings by November 9, 2023, the day before the deadline for SpaceX to file its answer in the OCAHO proceedings.

## BACKGROUND

### A.   SpaceX Strives To Hire The World's Most Talented People To Build The World's Most Advanced Rockets, Satellites, And Other Technology

SpaceX was founded in 2002 in a small warehouse in El Segundo, California, with the audacious goal of making life multiplanetary.  Gallman Decl. (Ex. A) ¶ 1. Today, the company has facilities across the nation, including its Starbase manufacturing and launch facility in Boca Chica, Texas, its rocket development facility in McGregor, Texas, and its facilities in Florida, Washington State, California, and Washington, D.C. *Id.* ¶ 6. SpaceX operates two primary businesses in furtherance of its lofty objectives: a space launch business and a global satellite-based internet service known as Starlink. *Id.* ¶ 2.

SpaceX is the world's leading space launch provider. Gallman Decl. ¶ 3. The company designs, manufactures, and launches advanced rockets and spacecraft to take customer payloads to space, including satellites, cargo for the International Space Station, NASA and international astronauts, and other human spaceflight participants. *Id.* Customers of SpaceX's launch business include NASA, various U.S. government defense and intelligence agencies, foreign governments, domestic and international satellite operators and telecommunications companies, scientific and educational institutions, and others. *Id.* As part of its launch business, SpaceX is developing

3

Starship—the most powerful rocket ever built. *Id.* ¶ 4. Starship is fully reusable and will enable humans to travel back to the moon, to Mars, and to other destinations in the solar system. *Id.*

SpaceX also designs, manufactures, launches, and operates communications satellites. Gallman Decl. ¶ 5. SpaceX's Starlink is the world's most advanced satellite-based internet service. *Id.* It uses a low Earth orbit satellite constellation—already the world's largest at more than 4,500 satellites and counting—and ground infrastructure around the globe to deliver low-latency, high-speed internet capable of supporting streaming, video calls, and more. *Id.*

SpaceX's accomplishments have enabled the company to grow rapidly, especially in recent years. Gallman Decl. ¶ 6. Today, the company employs over 13,000 people. *Id.* SpaceX has always sought to hire the most talented people on Earth. *Id.* ¶ 7. Because SpaceX offers a unique opportunity to work on innovative technology that is revolutionizing the space industry, SpaceX is consistently ranked as one of the most attractive employers in the country for engineering students. *Id.* ¶ 8. SpaceX often receives hundreds of applications for a single position. *Id.* ¶ 9.

Ideally, SpaceX would hire the most talented people without regard to where they are from. Gallman Decl. ¶ 11. But because SpaceX designs, manufactures, and operates extremely sensitive technologies with advanced military applications, SpaceX faces legal restrictions under export-control statutes and regulations, as well as under some of its government contracts, that affect its hiring discretion. *Id.* ¶ 12. Nonetheless, throughout the recruitment and hiring processes, SpaceX follows strict policies and procedures both to ensure compliance with export-control laws and to prevent unlawful discrimination, including discrimination against refugees and asylees. *Id.* ¶ 14.

### B.     Proceedings Under Section 1324b

Under 8 U.S.C. § 1324b(a)(1)(B), "[i]t is an unfair immigration-related employment practice" to discriminate against a "protected individual" "with respect to the hiring, or recruitment

or referral for a fee, of the individual . . . because of such individual's citizenship status." A "protected individual" means a U.S. citizen or "an alien who is lawfully admitted for permanent residence, is granted the status of an alien lawfully admitted for temporary residence . . . , is admitted as a refugee . . . , or is granted asylum," subject to certain exceptions. *Id.* § 1324b(a)(3). A Special Counsel nominated by the President and confirmed by the Senate may initiate an investigation concerning such practices and file a complaint with OCAHO, triggering proceedings before an OCAHO ALJ. *Id.* § 1324b(c)(2), (d)(1).

OCAHO ALJs are appointed by the Attorney General. *See* U.S. Dep't of Justice, Notice, EOIR Announces New Administrative Law Judge, (June 26, 2020), https://www.justice.gov/eoir/page/file/1175096/download. They are removable by the Attorney General "only for good cause established and determined by the [MSPB] following a hearing. 5 U.S.C. § 7521(a). MSPB members, in turn, "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." *Id.* § 1202(d).

During Section 1324b proceedings, an OCAHO ALJ has various powers and responsibilities. For example, the ALJ "shall have reasonable access to examine evidence of any person or entity being investigated," "may compel the attendance of witnesses and the production of evidence," and may seek a court order requiring compliance with a subpoena. 8 U.S.C. § 1324b(f)(2); *see also* 28 C.F.R. § 68.28(a) (ALJ "shall have all the appropriate powers necessary to conduct fair and impartial hearings"). Ultimately, the ALJ "shall issue . . . an order, which shall be final unless appealed." 8 U.S.C. § 1324b(g)(1). If the ALJ determines that the respondent has engaged or is engaging in an unfair immigration-related employment practice, the ALJ must order the respondent "to cease and desist" that practice. *Id.* § 1324b(g)(2)(A). The order may also require the respondent to "hire individuals directly and adversely affected, with or without back pay," and

to "pay a civil penalty" "for each individual discriminated against." *Id.* § 1324b(g)(2)(B)(iii), (iv)(I). ALJs are authorized to issue civil penalties up to $4,465 per individual found to have been discriminated against. *See* 28 C.F.R. § 85.5.

Section 1324b final orders are not reviewable within the Executive Branch. *See, e.g.*, *Amazon Web Servs.,* 14 OCAHO 1381H, 2021 WL 3465663, at *2 n.4. Instead, a respondent may seek review only in a federal court of appeals, 8 U.S.C. § 1324b(i)(1), which will deferentially uphold the ALJ's findings so long as "they are supported by substantial evidence," *Wije v. Barton Springs*, 81 F.3d 155 (5th Cir. 1996) (per curiam); *see* 5 U.S.C. § 706(2). If a party declines to seek judicial review, the ALJ's order becomes final and enforceable by federal courts. *See* 8 U.S.C. § 1324b(j)(2). "In such a proceeding, the order of the [ALJ] shall not be subject to review." *Id.*

### C.     The Government's Section 1324b Action Against SpaceX

In May 2020, IER opened a Section 1324b investigation of SpaceX, and eventually notified SpaceX that it had concluded that investigation on November 30, 2022.  OCAHO Compl. (Ex. B) ¶¶ 9, 13. Nine months later, on August 23, 2023, IER filed a complaint with OCAHO alleging that "[f]rom at least September 2018 to at least May 2022, SpaceX discriminated against asylees and refugees throughout its hiring process," in purported violation of Section 1324b(a)(1)(B). *Id.* ¶¶ 1, 13. These allegations target SpaceX's "nationwide recruitment efforts," *id.* ¶ 36, including in SpaceX's Starbase facility in Boca Chica, Texas, which received over 72,000 applications from September 2018 to May 2022, Gallman Decl. ¶ 10. On September 11, 2023, SpaceX was served with the complaint, which was assigned to Judge Bell. *See* Notice of Case Assignment (Ex. C).

The government asked Judge Bell to order SpaceX to (1) "cease and desist from" and "take affirmative steps to address" the practices alleged; (2) "pay an appropriate civil penalty . . . for each individual discriminated against"; (3) "provide fair consideration to each applicant who

identified as an asylee or refugee but was improperly screened out or rejected, or who was . . . deterred from applying, based on citizenship status"; (4) "hire applicants who were victims of the discriminatory practices alleged . . . and were qualified for employment"; and (5) "pay back pay, including interest, and all other relief available to each individual discriminated against who was qualified and who is found to have suffered uncompensated lost wages due to denied or delayed employment as a result of the discriminatory practices alleged," along with "such additional relief as justice may require." OCAHO Compl. 12.

On September 15, 2023, SpaceX filed this lawsuit and asked opposing counsel if the government would agree to stay the OCAHO proceedings until after this Court resolves SpaceX's constitutional challenges. On September 18, 2023, counsel for the government informed SpaceX that the government would not agree to such a stay. Mot. to Stay (Ex. D) 3. The same day, SpaceX filed an expedited motion to stay the OCAHO proceedings until 30 days after this Court issues a final judgment, while also informing OCAHO of SpaceX's need to seek relief simultaneously in this Court if those proceedings were not stayed by 5 p.m. on Tuesday, September 26, 2023. *Id.* OCAHO has not yet acted on SpaceX's motion to stay. After SpaceX filed that motion, government counsel agreed to extend SpaceX's deadline to file its administrative answer until November 10, 2023. *Id.* SpaceX thus respectfully requests a hearing and a ruling on this motion by November 9, 2023, to avoid the irreparable injury of being forced to participate in unconstitutional proceedings.

## ARGUMENT

To obtain a preliminary injunction, a movant must show "(1) a likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of

an injunction will not disserve the public interest." *Louisiana v. Biden*, 55 F.4th 1017, 1022 (5th Cir. 2022). SpaceX satisfies each of those factors.

## I.   SPACEX IS LIKELY TO SUCCEED ON THE MERITS ON EACH OF ITS CONSTITUTIONAL CLAIMS

### A.   OCAHO ALJs Are Not Constitutionally Appointed

> 1.   *Under the Appointments Clause, an officer may be appointed by the Attorney General only if the officer is directed and supervised by an officer nominated by the President and confirmed by the Senate.*

The Appointments Clause gives the President authority to, "by and with the Advice and Consent of the Senate, . . . appoint . . . Officers of the United States." U.S. CONST. art. II, § 2, cl. 2. "[T]he Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." *Id.*

As the text of the Appointments Clause makes clear, "[o]nly the President, with the advice and consent of the Senate, can appoint noninferior officers, called 'principal' officers as shorthand." *Arthrex*, 141 S. Ct. at 1979. "Assigning the nomination power to the President guarantees accountability for the appointees' actions because the 'blame of a bad nomination would fall upon the president singly and absolutely.'" *Id.* (quoting THE FEDERALIST NO. 77, at 517 (Alexander Hamilton) (J. Cooke ed. 1961)). The Clause also "adds a degree of accountability in the Senate, which shares in the public blame 'for both the making of a bad appointment and the rejection of a good one.'" *Id.* (quoting *Edmond v. United States*, 520 U.S. 651, 660 (1997)).

To be sure, "the Appointments Clause permits Congress to dispense with joint appointment, but only for *inferior* officers." *Arthrex*, 141 S. Ct. at 1979 (emphasis added). "Whether one is an 'inferior' officer depends on whether he has a superior" other than the President. *Edmond*, 520 U.S. at 662. That is, "[a]n inferior officer must be 'directed and supervised at some level by others

who were appointed by Presidential nomination with the advice and consent of the Senate." *Arthrex*, 141 S. Ct. at 1980 (quoting *Edmond*, 520 U.S. at 663).

> 2. *OCAHO ALJs' appointments by the Attorney General are invalid because OCAHO ALJs are not directed or supervised by any executive official, let alone a principal officer.*

When Congress provides for appointment by the "head of a department," it raises the question "whether the nature of [the officer's] responsibilities is consistent with their method of appointment." *Arthrex*, 141 S. Ct. at 1980. Answering that question here is clear-cut, as *Arthrex* confirms that OCAHO ALJs are exercising powers inconsistent with their method of appointment.

In *Arthrex*, the Supreme Court held that the Patent Trial and Appeal Board's administrative patent judges (APJs) were functioning as principal officers, and thus were not properly appointed by the Secretary of Commerce, essentially for three reasons. First, they issued final decisions (on patentability) without any further review "within the Executive Branch." 141 S. Ct. at 1980, 1983. Although review was available "outside Article II," in a federal court of appeals, such *judicial* review "cannot provide the necessary supervision." *Id.* at 1982. Second, despite performing functions that could be described as adjudicative, the APJs were "still exercising *executive* power." *Id.* (emphasis added) (quoting 1 ANNALS OF CONG. 499, 611-612 (J. Madison) (1789)). "The activities of executive officers may 'take legislative and judicial forms, but they are exercises of—indeed, under our constitutional structure they *must be* exercises of—the executive Power,' for which the President is ultimately responsible." *Id.* (quoting *Arlington v. FCC*, 569 U.S. 290, 305 n.4 (2013)). Third, the APJs were not "controlled by the threat of removal from federal service" because they could be fired only for cause. *Id.* (internal quotation marks omitted).

Those reasons apply equally (if not more) to OCAHO ALJs who adjudicate Section 1324b cases. First, in Section 1324b proceedings, OCAHO ALJs have the "'power to render a final decision on behalf of the United States' without any . . . review by their nominal superior or any

other principal officer in the Executive Branch." *Arthrex*, 141 S. Ct. at 1981 (quoting *Edmond*, 520 U.S. at 665). "[W]hen it comes to the one thing that makes the [ALJs] officers . . . in the first place"—*i.e.*, "their power to issue decisions"—"no principal officer at any level within the Executive Branch 'direct[s] and supervise[s]' the[ir] work." *Id.* at 1980 (third and fourth alterations in original) (quoting *Buckley v. Valeo*, 424 U.S. 1, 126 (1976) & *Edmond*, 510 U.S. at 663). Second, like the APJs in *Arthrex*, despite performing adjudicative tasks, the OCAHO ALJs are exercising "executive power"—*i.e.*, they are performing an executive fact-finding function, as well as imposing civil penalties, coercive injunctive relief, and other remedies that are final within the Executive Branch. *See id.* at 1982. Third, like the APJs in *Arthrex*, OCAHO ALJs can be fired only for cause. Indeed, OCAHO ALJs are *more* insulated from removal because they enjoy two levels of for-cause removal protection, not just one. 5 U.S.C. §§ 1202(d), 7521(a); *see infra* Part I.B. In short, OCAHO ALJs "exercise power that conflicts with the design of the Appointments Clause 'to preserve political accountability.'" *Arthrex,* 141 S. Ct. 1982 (quoting *Edmond*, 520 U.S. at 663). Judge Bell was thus not appointed consistently with the U.S. Constitution.

Importantly, this Appointments Clause problem is not lost on OCAHO ALJs themselves. OCAHO ALJs have expressly "acknowledge[d] some possible tension between" their putative "status" as "inferior officers . . . and the unavailability of further administrative review of ALJ decisions in cases arising under 8 U.S.C. § 1324b in light of" *Arthrex*. *Amazon Web Servs.,* 14 OCAHO 1381H, 2021 WL 3465663, at *2 n.4 (citations omitted). On multiple occasions, different OCAHO ALJs have stayed Section 1324b proceedings based on *Arthrex* when "a final case disposition appeared imminent." *Nitn Degaonkar v. Infosys Ltd.*, 15 OCAHO 1393A, 2022 WL 17623217, at *2 (Nov. 30, 2022); *see also, e.g.*, *Zajradhara*, 16 OCAHO 1417C, 2022 WL 14803036, at *6; *Rodriguez Garcia v. Farm Stores*, 17 OCAHO 1449, 2022 WL 4075712, at *2

(Aug. 11, 2022); *Ravines de Schur v. Easter Seals-Goodwill N. Rocky Mountain, Inc.*, 15 OCAHO 1388G, 2022 WL 2466910, at *3 (June 23, 2022). These decisions recognize the patent constitutional defect.

3.    *Severability cannot cure the Appointments Clause issue.*

Because *Arthrex* controls, the only question is the proper remedy for the unconstitutional appointment. Unlike in *Arthrex,* in this situation, there is no way to "sever[] the unconstitutional portion of the statute," 141 S. Ct. at 1986, and either fix the appointment problem or subject OCAHO ALJs' conduct to proper review. Severability is a question of Congressional intent: In the absence of an express severability clause, the Supreme Court assumes that an unconstitutional provision may be severed to save the remainder of a statute unless "Congress would not have enacted" the resulting statute. *Seila Law*, 140 S. Ct. at 2209 (quoting *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987)). Because Section 1324b has no severability clause, the "inquiry in evaluating severability is whether the statute will function in a manner consistent with the intent of Congress" if the invalid portion is voided. *Alaska Airlines*, 480 U.S. at 685 (emphasis omitted).

In *Arthrex*, applying those severability principles was straightforward: Congress had given the Director of the Patent and Trademark Office supervisory power over the Patent Trial and Appeal Board, but had expressly excluded from that power the ability to "rehear and reverse a final decision issued by" the APJs. 141 S. Ct. at 1987. By holding that express limitation on the Director's power "unenforceable," the Court revived the Director's power of administrative review and ensured that the APJs "would properly function as inferior officers." *Id.*

Section 1324b is not susceptible to that approach. No provision affirmatively grants authority for any executive official to review OCAHO ALJ decisions under Section 1324b. There is thus no provision restricting such authority that could be severed to enable administrative review. Far from holding a provision unenforceable and determining that Congress would "have

11

enacted those provisions which are within its power" to provide for review within the Executive Branch, this Court would have to "rewrite [the] statute" by inserting a review provision that does not exist. *Murphy v. National Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1482 (2018). Only Congress can do that. *See id.*

Indeed, inserting a provision authorizing review by another principal officer would give Section 1324b "an effect altogether different from that sought by the measure viewed as a whole." *Murphy*, 138 S. Ct. at 1482 (quoting *Railroad Ret. Bd. v. Alton R. Co.*, 295 U.S. 330, 362 (1935)). Under neighboring Sections 1324a (governing unlawful employment of aliens) and 1324c (governing document fraud), Congress expressly provided for executive review of OCAHO ALJ decisions. 8 U.S.C. §§ 1324a(e)(7), 1324c(d)(4). But Congress denied such review in Section 1324b. And it elsewhere provided for judicial enforcement of "the order *of the administrative law judge*"—not any other executive official. *Id.* § 1324b(j)(2) (emphasis added). Taken together, those choices indicate that Congress would not have wanted the courts to rewrite the statute to insert a provision it intentionally omitted (even assuming courts had the power to do so). *Cf. Rotkiske v. Klemm*, 140 S. Ct. 355, 361 (2019) ("Atextual judicial supplementation is particularly inappropriate when, as here, Congress has shown it knows how to adopt the omitted language or provision," because such supplementation displaces "the value judgments made by Congress.").

In sum, because there is no way to grant the Attorney General review under Section 1324b without rewriting the statute, the only permissible remedy is to enjoin the proceedings until an ALJ is properly appointed or Congress enacts a constitutionally compliant oversight process.

## B.    OCAHO ALJs Are Unconstitutionally Insulated From Removal

Separate and apart from the way OCAHO ALJs are appointed, OCAHO is also structured unconstitutionally because its ALJs are unlawfully insulated from Presidential oversight by two

levels of good-cause removal protection. Indeed, that removal structure is essentially identical to the one the Fifth Circuit held unconstitutional last year. *See Jarkesy*, 34 F.4th at 463-464.

> 1.   *The President's removal authority may be restricted, if at all, under only two limited exceptions.*

Like the Appointments Clause, the President's removal power promotes accountability by ensuring that "[t]he buck stops with the President." *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 493 (2010). Article II "vest[s]" all of "[t]he executive Power . . . in a President" who has a duty to "take Care that the Laws be faithfully executed." U.S. CONST. art. II, §§ 1, 3. Of course, "it would be 'impossible' for 'one man' to 'perform all the great business of the State.'" *Seila Law*, 140 S. Ct. at 2197 (quoting 30 WRITINGS OF GEORGE WASHINGTON 334 (J. Fitzpatrick ed. 1939)) (alteration omitted). But it would also be "impossible" for the President "to take care that the laws must be faithfully executed" unless "lesser officers . . . remain accountable to the President, whose authority they wield." *Id.* The President's supervisory "power, in turn, generally includes the ability to remove executive officials, for it is 'only the authority that can remove' such officials that they 'must fear and, in the performance of their functions, obey.'" *Id.* (alteration omitted). Accordingly, the "general rule" is that the President's removal power over executive officers is "unrestricted." *Id.* at 2198.

The Supreme Court has "recognized only two exceptions to the President's unrestricted removal power." *Seila Law*, 140 S. Ct. at 2192. First, in 1935, the Supreme Court allowed Congress to limit the President's removal power for principal officers who head "multimember expert agencies that do not wield substantial executive power." *Id.* at 2199-2200. In *Humphrey's Executor v. United States*, the Court held that Congress could prevent the President from removing FTC Commissioners absent "inefficiency, neglect of duty, or malfeasance in office." 295 U.S. 602, 620, 628 (1935). In doing so, the Court conceptualized the FTC as a nonpartisan "administrative body"

that exercised "quasi judicial and quasi legislative functions," not as a purely executive agency. *Id.* at 624, 628; *see also Wiener v. United States,* 357 U.S. 349, 353 (1958) (applying *Humphrey's Executor* to uphold a similar removal standard for a temporary War Claims Commission that the Court viewed as not "part of the Executive establishment"). Second, the Supreme Court has allowed Congress to limit the President's removal power "for inferior officers with limited duties and no policymaking or administrative authority." *Seila Law*, 140 S. Ct. at 2200. Specifically, the Court upheld one layer of for-cause removal protection for an independent counsel tasked narrowly with investigating and prosecuting, pursuant to established DOJ policy, crimes allegedly committed by certain senior officials, *see Morrison v. Olson*, 487 U.S. 654, 691-692 (1988), and (137 years ago) for a naval cadet-engineer, *see United States v. Perkins*, 116 U.S. 483 (1886).

More recently, the Court has cast doubt on the continuing relevance of cases like *Humphrey's Executor*: Their reasoning "has not withstood the test of time" because "under our constitutional structure," administrative agencies may exercise only "the 'executive Power.'" *Seila Law*, 140 S. Ct. at 2198 n.2 (quoting U.S. CONST. art. II, § 1, cl. 1). The Court has thus narrowly construed those precedents in invalidating removal restrictions that are not identical. For instance, the Court has rejected restrictions insulating single (as opposed to multi-member) agency heads. *See id*. at 2192; *Collins v. Yellen*, 141 S. Ct. 1761, 1783-1784 (2021). It has also rejected two levels of restrictions (as opposed to one). In *Free Enterprise Fund*, the Court held unconstitutional a scheme under which the SEC could remove members of the Public Company Accounting Oversight Board only for cause, and the President could remove SEC Commissioners only for cause. 561 U.S. at 486-487. The "added layer of tenure protection" effectively withdrew "from the President any decision" on whether to remove a Board member, creating "a Board that is not accountable to the President, and a President who is not responsible for the Board." *Id.* at 495.

That the Board members were "inferior officers" rather than principal officers did not make this lack of accountability acceptable. *Id.* at 505. Where the Court has "upheld limited restrictions on the President's removal power," "only one level of protected tenure separated the President from an officer exercising executive power." *Id.* at 495. "It was the President—or a subordinate he could remove at will—who decided whether the officer's conduct merited removal under the good-cause standard." *Id.*

2. *OCAHO ALJs do not fit either narrow exception to the President's unrestricted removal power.*

The President's power to remove OCAHO ALJs must be "unrestricted." *Seila Law*, 140 S. Ct. at 2192. It is not; indeed, it is doubly restricted. The President may not remove an OCAHO ALJ at all. Only the Attorney General may do so "for good cause as established and determined by the [MSPB]." 5 U.S.C. § 7521(a); *see* 28 C.F.R. § 68.26. If the President wishes to exercise control over an OCAHO ALJ, the most the President can do is remove MSPB members—and then "only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). This scheme does not resemble the exceptions delineating "the outermost constitutional limits of permissible congressional restrictions on the President's removal power." *Seila Law*, 140 S. Ct. at 2200.

The Fifth Circuit's decision in *Jarkesy* compels the conclusion that OCAHO ALJs are unconstitutionally insulated from removal. Because SEC ALJs "can only be removed . . . if good cause is found by the [MSPB]," and "MSPB members can only be removed by the President for cause," SEC ALJs are "sufficiently insulated from removal that the President cannot take care that the laws are faithfully executed." *Jarkesy*, 34 F.4th at 464-465. "[E]ven if ALJs' functions are more adjudicative . . . , the fact remains that two layers of insulation impedes the President's power to remove ALJs based on their exercise of the discretion granted to them." *Id.* at 465. That was so even though SEC ALJs are "inferior officers," *id.* at 464, whose decisions are subject to de novo

15

administrative review by the SEC without deference, *see Lucia v. SEC*, 138 S. Ct. 2044, 2054 (2018).

OCAHO ALJs are subject to the same two-layer removal restrictions—but are even less accountable than SEC ALJs. As noted, OCAHO ALJs' Section 1324b proceedings are not subject to administrative review at all. Outside the inapplicable *Humphrey's Executor* exception, such principal officers may not constitutionally have *any* removal restrictions, let alone two. Even if OCAHO ALJs were somehow considered "inferior officers," *Jarkesy* still would control: Like SEC ALJs, "two layers of insulation impedes the President's power to remove [OCAHO] ALJs based on their exercise of the discretion granted to them." 34 F.4th at 465. Those restrictions withdraw OCAHO ALJs "from the Executive's control, and thus from that of the people." *Free Enter. Fund*, 561 U.S. at 499-500. Article II forbids such "rule[] by functionaries." *Id.* at 499.

### 3.   The unconstitutional removal restrictions are not severable.

Here again, severing the removal restrictions would "circumvent the intent of the legislature." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 330 (2006). Indeed, it is difficult to imagine an outcome more contrary to legislative intent.

"The substantial independence that the Administrative Procedure Act's [APA's] removal protections provide to administrative law judges is a central part of the Act's overall scheme." *Lucia*, 138 S. Ct. at 2060 (Breyer, J., concurring in the judgment in part). Before 1946, there had been "[m]any complaints" that ALJs (then known as hearing examiners) "were mere tools of the agency concerned and subservient to the agency heads," *Ramspeck v. Federal Trial Exam'rs Conf.*, 345 U.S. 128, 130 (1953), and should instead be "independent," *Butz v. Economou*, 438 U.S. 478, 513-514 (1978). Accordingly, when Congress enacted the APA, it intended to transform ALJs into "a special class of semi-independent subordinate hearing officers by vesting control of their compensation, promotion and tenure in the Civil Service Commission." *Ramspeck*, 345 U.S. at

132 (footnote omitted). ALJs became "removable by the agency in which they [we]re employed only for good cause established and determined by the Civil Service Commission," APA, Pub. L. No. 79-404, § 11, 60 Stat. 237, 244 (1946), but members of the Civil Service Commission remained removable at will by the President, *see* 5 U.S.C. § 632 (1946) (repealed 1966).

In 1978, Congress replaced the Civil Service Commission with three agencies, including the MSPB. Civil Service Reform Act of 1978, Pub. L. No. 95-454, § 1202(d), 92 Stat. 1111. In doing so, Congress sought to "confer upon [MSPB] members a tenure akin to that of the Federal judiciary." *Civil Service Reform: Hearings on H.R. 11280 Before the H. Comm. on Post Off. & Civ. Serv.*, 95th Cong. 824 (1978); *see* 5 C.F.R. § 1200.1 ("The [MSPB] is an independent Government agency that operates like a court."). To that end, the Act provided that MSPB members "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office," 5 U.S.C. § 1202(d), while maintaining that an agency may remove an ALJ "only for good cause established and determined by the [MSPB]," *id.* § 7521(a).

As that history makes clear, Congress considered both good-cause removal restrictions essential to the statutory scheme. Congress insisted on (i) protecting ALJs from criticism that they were "mere tools" of their political superiors and (ii) promoting the MSPB's independence by shielding both sets of officers from presidential control. It is no surprise, then, that Congress declined to include severability clauses indicating that the removal protections were dispensable. Gutting the key removal protections while preserving Section 1324b would effectively reverse Congress's decision to transition the entire administrative structure towards political independence (and therefore away from political accountability)—violating this Court's "obligation to avoid judicial legislation." *United States v. National Treasury Emps. Union*, 513 U.S. 454, 479 (1995).

Although eliminating both removal restrictions would be necessary to make OCAHO ALJs sufficiently accountable, it is implausible that the enacting Congresses would have approved eliminating either. At the first level of protection for ALJs, Congress clearly would have wished to adopt its own constitutional fix, rather than one devised by this Court. When Congress decided "to render examiners independent," S. Rep. No. 79-752, at 29 (1945), it considered "[s]everal proposals" for how to do so, including using a "completely separate 'examiners' pool" or subjecting agency decisions to a special court's jurisdiction, *Ramspeck*, 345 U.S. at 131-132 & n.2. Rendering ALJs dependent on the President thus runs contrary to not only the scheme Congress adopted, but also the alternatives Congress considered while seeking to ensure that adjudicators can exercise the "independent judgment" that Congress deemed necessary for a "fair and competent hearing." *Butz*, 438 U.S. at 513-514. Supplanting that policy choice would be especially inappropriate for OCAHO ALJs: While agency heads ordinarily have discretionary authority to decide whether to use ALJs in the first place, 5 U.S.C. § 556(b), Congress mandated that removal-protected ALJs "shall" conduct Section 1324b adjudications, 8 U.S.C. § 1324b(e)(1).

At the second level, severing removal protections for MSPB members would raise even more issues. It would undermine not only Congress's goal of promoting independence, but also the severability doctrine's goal of "limit[ing] the solution to the problem." *Free Enter. Fund*, 561 U.S. at 508. MSPB members perform many duties beyond determining whether there is cause to remove an ALJ. *See, e.g.*, 5 C.F.R. §§ 1201.1-1201.3 (duties include appeals from civil-service employment disputes and trials of personnel actions brought by the Office of Special Counsel). It would be radically overbroad to give the President plenary control over everything within the MSPB's jurisdiction based on a constitutional flaw in the small sliver of ALJ-removal cases it

hears. At a minimum, there is no reason to think the Congress that enacted the Civil Service Reform Act of 1978 would have preferred that result.

In sum, unlike some other cases involving removal restrictions, this is not a situation in which "Congress, faced with the limitations imposed by the Constitution, would have preferred" an officer "removable at will" to no officer "at all." *Seila Law*, 140 S. Ct. at 2209 (quoting *Free Enter. Fund*, 561 U.S. at 509). Rather, making OCAHO ALJs removable at will "would have seemed exactly backwards" "[t]o the Congress[es] that adopted" the protections in the APA and the Civil Service Reform Act of 1978. *Murphy*, 138 S. Ct. at 1483. The proper remedy is to stop the OCAHO proceedings and let Congress craft a solution, not restructure the proceedings in a manner that Congress would have rejected.

### C. The OCAHO Proceedings Against SpaceX Violate Both Article III And The Seventh Amendment

The OCAHO proceedings have two additional constitutional defects. Under Article III, "[t]he judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. CONST. art. III, § 1. Relatedly, under the Seventh Amendment, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. CONST. amend. VII. The Fifth Circuit has interpreted those provisions to mean that when an administrative enforcement action is (1) "akin to traditional actions at law to which the jury-trial right attaches," and (2) the "claims do not concern public rights alone," the Seventh Amendment applies and the claims must be heard (if anywhere) in an Article III court with a right to trial by jury. *Jarkesy*, 34 F.4th at 451.

That is the case here. Under the first step, "[t]he Supreme Court has interpreted 'Suits at common law' to include all actions akin to those brought at common law as those actions were understood at the time of the Seventh Amendment's adoption." *Jarkesy*, 34 F.4th at 452 (citing *Tull v. United States*, 481 U.S. 412, 417 (1987)). "The term can include suits brought under a statute *as long as the suit seeks common-law-like* legal remedies." *Id.* (emphasis added). The Supreme Court "has specifically held that, under this standard, the Seventh Amendment jury-trial right applies to suits brought under a statute seeking civil penalties." *Id.* (citing *Tull*, 481 U.S. at 418-424). It does not matter whether "[o]ther elements of the action . . . are more equitable in nature." *Id.* at 454. Thus, the government's request for civil penalties makes the OCAHO proceedings akin to a suit at common law. The government's additional request for damages, in the form of back pay, only reinforces that conclusion. *See Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570-571, 573 (1990) (request for back pay that constitutes the "wages and benefits" persons "would have received" if the employer complied with the law is "legal in nature" and thus triggers the Seventh Amendment); *see also Axon*, 598 U.S. at 204 (Thomas, J., concurring) (a suit seeking money damages and civil penalties "implicate[s] the core private right to property" and therefore must be brought in a judicial forum).

The public-rights doctrine also does not "permit Congress to assign [the government's lawsuit] to agency adjudication without a jury trial." *Jarkesy*, 34 F.4th at 453. At this second step, "the relevant considerations include: (1) whether 'Congress creat[ed] a new cause of action, and remedies therefor, unknown to the common law, because traditional rights and remedies were inadequate to cope with a manifest public problem'; and (2) whether jury trials would 'go far to dismantle the statutory scheme' or 'impede swift resolution' of the claims created by statute." *Id.* (second alteration in original) (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 60-63

20

(1989); *Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*, 430 U.S. 442, 454 n.11 (1977)).[1]

Here, the government's employment discrimination claims against SpaceX are "analogous to a number of tort actions recognized at common law," because an action to redress "discrimination may . . . be likened to an action for defamation or intentional infliction of mental distress," or other "dignitary tort[s]." *Curtis v. Loether*, 415 U.S. 189, 195 & n.10 (1974) (internal quotation marks omitted). And jury trials would not "dismantle the statutory scheme" or "impede swift resolution" of such claims. *Granfinanciera*, 492 U.S. at 60-63. That Section 1324b provides for only administrative adjudication cannot (circularly) justify such adjudication: "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency." *Id.* at 61. To the extent administrative expertise and efficiency are relevant, courts and juries "have dealt with" employment discrimination claims and trials "for many decades," "with or without the federal government's involvement." *Jarkesy*, 34 F.4th at 456, 459. The government's claims thus involve "nothing new and nothing foreign to Article III tribunals and juries." *Id.* at 457. That makes it "difficult to see how" Section 1324b actions are "uniquely suited for agency adjudication." *Id.* at 456. The government's claims against SpaceX must be brought—if at all—in an Article III court subject to SpaceX's right to a jury trial.

---

[1] Although unnecessary to rule in SpaceX's favor, SpaceX preserves the argument that any adjudication of a party's private rights must be brought in an Article III court, and the Seventh Amendment's text unambiguously controls all actions at common law where the amount in controversy exceeds $20. Neither Article III nor the Seventh Amendment incorporates sub-constitutional exceptions based on the statutory scheme and administrative efficiency.

## II.   THE PROPER REMEDY FOR THESE CONSTITUTIONAL VIOLATIONS IS A PRELIMINARY INJUNCTION

A non-severable structural constitutional violation entitles a challenger to "broad injunctive relief against the [agency's] continued operations." *Free Enter. Fund*, 561 U.S. at 513; *see also Seila Law*, 140 S. Ct. at 2207 (agency could "continue to exist and operate" only because removal protection was severable). For good reason: An ALJ "appointed in violation of [the] Appointments Clause" cannot "exercise . . . power" that the ALJ does "not lawfully possess." *Collins*, 141 S. Ct. at 1788. Nor can an ALJ preside over "an unconstitutionally structured decisionmaking process," *Axon*, 598 U.S. at 192, or "exercise [the] exclusive power of an Article III judge," *Collins*, 141 S. Ct. at 1788. The remaining preliminary injunction factors reinforce those principles and confirm that this Court should put a stop to the OCAHO proceedings immediately.

### A.   Without A Preliminary Injunction, SpaceX Will Suffer Irreparable Harm

In *Axon*, the Supreme Court held that a party in SpaceX's position necessarily faces irreparable harm. 598 U.S. at 191. "[B]eing subjected to unconstitutional agency authority . . . by an unaccountable ALJ . . . is a here-and-now injury" that is "*impossible to remedy once the proceeding is over, which is when appellate review kicks in*." *Id.* (internal quotation marks omitted) (emphasis added). An appellate court "could of course vacate the [agency]'s order[,] [b]ut [a] separation-of-powers claim is not about that order; indeed, [SpaceX] would have the same claim[s] [if] it *won* before the agency." *Id.* The claims here are "about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker. And as to that grievance, the court of appeals can do nothing: A proceeding that has already happened cannot be undone." *Id.* In short, when claims "challeng[e] the [agency]'s power to proceed at all, rather than actions taken in the agency proceedings," "[j]udicial review . . . would come too late to be meaningful." *Id.* at 191-192. Indeed, OCAHO ALJs themselves have doubted their authority to address such "structural

constitutional challenges." *See, e.g., Amazon Web Servs.*, 14 OCAHO 1381H, 2021 WL 3465663, at *2 n.4 (acknowledging that such challenges "usually fall outside the adjudicators' areas of technical expertise" (quoting *Carr v. Saul*, 141 S. Ct. 1352, 1360 (2021))).

OCAHO ALJs' broad powers exemplify why granting SpaceX relief after allowing Judge Bell to complete her work would come too late. Absent an injunction, the OCAHO proceedings will involve substantial fact-finding with respect to the hundreds of job applicants IER alleges were victims and extensive discovery. *See* Gallman Decl. ¶¶ 18-19; OCAHO Compl ¶¶ 34-51. There are likely to be depositions, interrogatories, and significant document production—all wasting SpaceX, DOJ, and OCAHO resources, even if SpaceX ultimately prevails. *See* 28 C.F.R. pt. 68. Those proceedings are also likely to impact SpaceX's reputation and ability to compete for talent, as the government publicly (and falsely) portrays SpaceX as having intentionally discriminated against asylees and refugees. Gallman Decl. ¶¶ 20-21. Finally, the threat of such proceedings allows the government to wield substantial settlement leverage—as shown by IER's sixteen announced settlements in 2023 alone. *Cf. Axon*, 598 U.S. at 216 (Gorsuch, J., concurring) ("Aware, too, that few can outlast or outspend the federal government, agencies sometimes use this as leverage to extract settlement terms they could not lawfully obtain any other way.").[2]

OCAHO's refusal to stay the administrative proceedings ensures that SpaceX will suffer those harms without an injunction. *See* p. 7, *supra*. The possibility that an OCAHO ALJ might later stay the administrative proceedings does not mitigate such "here-and-now" harms. *Axon*, 598

---

[2] The vast majority of IER enforcement actions end (and begin) with a settlement. *See* U.S. Dep't of Justice, Civil Rights Division, *Settlements and Lawsuits*, https://www.justice.gov/crt/settlements-and-lawsuits (last visited Sept. 20, 2023); U.S. Dep't of Justice, Civil Rights Division, *IER Letters of Resolution Summaries For Fiscal Years 2007-2023*, https://www.justice.gov/crt/ier-letters-resolution-summaries-fiscal-years-2007-2023 (last visited Sept. 20, 2023). In 2023, DOJ has issued seventeen press releases: sixteen announcing settlement agreements with employers and one trumpeting its enforcement action against SpaceX. U.S. Dep't of Justice, Civil Rights Division, *Press Releases*, https://www.justice.gov/crt/press-releases-2 (last visited Sept. 20, 2023).

U.S. at 191. Such a stay may come only late in the process—and may be only temporary. *See Nitin Degaonkar*, 15 OCAHO 1393A, 2022 WL 17623217, at *2 & n.3 (staying proceedings only when "a final case disposition appear[s] imminent," but noting that the ALJ "may later lift the stay"). And the harms arise from not only the invalid appointment, but also the three additional constitutional violations described above. In any event, "Appointments Clause remedies are designed . . . to create incentives to raise Appointments Clause challenges." *Lucia*, 138 S. Ct. at 2055 n.5 (alterations and internal quotation marks omitted); *see also Ryder v. United States*, 515 U.S. 177, 182-183 (1995) (a successful Appointments Clause challenger is entitled to "whatever relief may be appropriate"). Given that SpaceX is seeking to halt an ongoing proceeding rather than to reverse an existing order, permitting Judge Bell to continue adjudicating the claims against SpaceX would minimize those incentives.

### B.   The Balance Of Harms And Public Interest Support Granting A Preliminary Injunction

When the government is a defendant, the balance of harms and the public interest merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The balance of harms here is not a close call: If an injunction issues, the government will suffer no cognizable harm from halting "the perpetuation of unlawful agency action." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). "To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *Id.* (internal quotation marks omitted). Furthermore, the nature of the relief at issue in the OCAHO proceedings mitigates any harm the government may assert. The government primarily seeks to collect backward-looking monetary penalties and damages to compensate alleged victims. *See* OCAHO Compl. at 12. If a constitutionally proper mechanism for assessing the government's request for relief is ever adopted, the government can resume its efforts to prove that it is entitled to such

relief. To be sure, the government seeks some prospective relief—namely, an order requiring SpaceX to cease and desist from the alleged unlawful practices. *See id.* But the government alleges no specific ongoing unlawful discrimination, *see, e.g., id.* ¶¶ 1, 43, 44, 45, 48, 51 (describing SpaceX's alleged practices "[f]rom at least September 2018 to at least May 2022"), and SpaceX is committed to hiring the best people without discrimination and in conformity with its legally compliant anti-discrimination policies, Gallman Decl. ¶¶ 11, 14. Regardless, any delay in the government's ability to obtain relief does not come close to outweighing SpaceX's "here-and-now injury" from the "illegitimate proceeding[s]." *Axon*, 598 U.S. at 191.

Nor would an injunction "disserve the public interest." *Louisiana*, 55 F.4th at 1022. To the contrary, "maintaining our constitutional structure" serves the public interest. *BST Holdings*, 17 F.4th at 618; *see also Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013) ("[T]he public is served when the law is followed."). "Our Constitution was adopted to enable the people to govern themselves, through their elected leaders." *Free Enter. Fund*, 561 U.S. at 499. An injunction is necessary to prevent the harm that inevitably results when the Executive Branch "slip[s] from the Executive's control, and thus from that of the people," *id.*, while simultaneously violating Article III's command that "the judiciary remain[] truly distinct from . . . the executive," *Stern v. Marshall*, 564 U.S. 462, 483 (2011) (alteration in original) (quoting THE FEDERALIST NO. 78, at 466 (Alexander Hamilton) (C. Rossiter ed. 1961)).

## CONCLUSION

SpaceX respectfully urges this Court to preliminarily enjoin the OCAHO proceedings against SpaceX. SpaceX respectfully requests a hearing and a ruling on this motion by November 9, 2023, the day before the deadline for SpaceX to file its answer in the OCAHO proceedings.

Respectfully submitted,

   /s/ Laura Warrick

Dated:  September 26, 2023

Laura Warrick
  Attorney-in-Charge
  Texas Bar No. 24079546
Southern District of Texas Bar No. 3437415
AKIN GUMP STRAUSS HAUER & FELD LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-4770
Facsimile: (214) 969-4343
lwarrick@akingump.com

James E. Tysse (*pro hac vice application filed*)
  Of Counsel
  D.C. Bar No. 978722
Charles F. Connolly (*pro hac vice application filed*)
  Of Counsel
  D.C. Bar No. 455969
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
jtysse@akingump.com

*Counsel to Plaintiff Space Exploration Technologies Corp.*

26

**CERTIFICATE OF CONFERENCE**

In accordance with LR 7.1(D), undersigned counsel have conferred with counsel for Defendants. To date, the parties have been unable to resolve the underlying dispute that forms the basis for this motion, and Defendants oppose this motion.

/s/ Laura Warrick

Laura Warrick
  Attorney-in-Charge
  Texas Bar No. 24079546
Southern District of Texas Bar No. 3437415
AKIN GUMP STRAUSS HAUER & FELD LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-4770
Facsimile: (214) 969-4343
lwarrick@akingump.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2023, a copy of the foregoing document was filed electronically and served pursuant to this Court's ECF Filing System, upon counsel of record.

/s/ Laura Warrick

Laura Warrick
  Attorney-in-Charge
  Texas Bar No. 24079546
Southern District of Texas Bar No. 3437415
AKIN GUMP STRAUSS HAUER & FELD LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-4770
Facsimile: (214) 969-4343
lwarrick@akingump.com

1