**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **Space Exploration Technologies Corp.,** | |
| *Plaintiff*, | |
| v. | Civil Action No. 1:23-cv-00137 |
| **Carol Bell, in her official capacity as Chief Administrative Law Judge of the Office of the Chief Administrative Hearing Officer,** *et. al.,* | |
| *Defendants*. | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S**
**MOTION FOR A PRELIMINARY INJUNCTION**

**T**ABLE OF **C**ONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................3

I.      Statutory and regulatory background ...........................................................................3

II.     Procedural history.........................................................................................................6

LEGAL STANDARD ............................................................................................................7

ARGUMENT ........................................................................................................................8

I.      SpaceX's Appointments Clause claim (Count I) is meritless because, as clarified by DOJ's recent regulation, DOJ ALJs are not principal officers. ..................................8

II.     SpaceX is not entitled to injunctive relief based on its removal claim (Count II). ...........10

        A.      SpaceX fails to allege prejudicial harm.................................................................10

        B.      Preliminary injunctive relief is unavailable where SpaceX could at most get declaratory relief at the end of this case. .....................................................11

        C.      DOJ ALJs' removal protections are constitutional.................................................15

III.    SpaceX's Article III and Seventh Amendment claims (Counts III and IV) are meritless. ........................................................................................................................18

IV.     SpaceX fails to establish irreparable harm.....................................................................23

V.      The balance of the equities and public interest factors counsel against a preliminary injunction. ...................................................................................................24

CONCLUSION......................................................................................................................25

<u>T<small>ABLE OF</small> A<small>UTHORITIES</small></u>

**CASES**

*Anibowei v. Morgan,*
  70 F.4th 898 (5th Cir. 2023), petition for certiorari docketed,
  *Anibowei v. Mayorkas,* No. 23-199 (Sept. 1, 2023) ................................................... 7

*Arizona v. United States,*
  567 U.S. 387 (2012) ..................................................................................................... 19

*Atlas Roofing Co., Inc. v. Occupational Safety & Health Rev. Comm'n,*
  430 U.S. 442 (1977) ......................................................................................... 18, 21, 22

*Austin v. Shalala,*
  994 F.2d 1170 (5th Cir. 1993) ............................................................................... 19, 20

*Axon Enter., Inc. v. F.T.C.,*
  598 U.S. 175 (2023) ............................................................................................... 23, 24

*Barr v. Am. Ass'n of Pol. Consultants, Inc.,*
  140 S. Ct. 2335 (2020) ........................................................................................... 11, 12

*Bill Johnson's Restaurants, Inc. v. NLRB,*
  461 U.S. 731 (1983) ..................................................................................................... 25

*Burgess v. FDIC,*
  639 F. Supp. 3d 732 (N.D. Tex. 2022) ........................................................................ 11

*Calcutt v. FDIC,*
  37 F.4th 293 (6th Cir. 2022), *rev'd on other grounds,* 143 S. Ct. 1317 (2023) ............... 11, 17

*CFPB v. Law Offices of Crystal Moroney, P.C.,*
  63 F.4th 174 (2d Cir. 2023) ......................................................................................... 11

*Chamber of Com. of U.S. v. Whiting,*
  563 U.S. 582 (2011) ....................................................................................................... 4

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB,*
  51 F.4th 616 (5th Cir. 2022) ................................................................................. 10, 11

*Collins v. Dep't of the Treasury,*
  No. 22-20632, 2023 WL 6630307 (5th Cir. Oct. 12, 2023) ............................... 10, 11

*Collins v. Yellen,*
  141 S. Ct. 1761 (2021) ................................................................................................. 10

*Decker Coal Co. v. Pehringer*,
   8 F.4th 1123 (9th Cir. 2021) ............................................................... 11, 13, 16, 17

*Den ex. dem. Murray v. Hoboken Land & Imp. Co.*,
   59 U.S. 272 (1855) ................................................................................................21

*Distributed v. United States Dep't of State*,
   838 F.3d 451 (5th Cir. 2016) ................................................................................25

*Espinoza v. Farah Mfg. Co.*,
   414 U.S. 86 (1973) ...................................................................................................5

*F.T.C. v. Standard Oil Co. of California*,
   449 U.S. 232 (1980) ..............................................................................................24

*Frank's Nursery, LLC v. Walsh*,
   No. CV H-21-3485, 2022 WL 2757373 (S.D. Tex. July 14, 2022) ...................19, 23

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
   561 U.S. 477 (2010) ......................................................................... 12, 13, 16, 17

*Granfinanciera v. Nordberg*,
   492 U.S. 33 (1989) ..........................................................................................2, 19, 20

*Humphrey's Executor v. United States*,
   295 U.S. 602 (1935) ..............................................................................................16

*Jarkesy v. SEC*,
   34 F.4th 446 (5th Cir. 2022),
   *cert. granted*, No. 22-859, 2023 WL 4278448 (S. Ct. June 30, 2023).................. 11, 15, 21, 22

*Jarkesy v. SEC*,
   51 F.4th 644 (5th Cir. 2022). ...........................................................................15, 21

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
   335 F.3d 357 (5th Cir. 2003) ..................................................................................7

*Leachco, Inc. v. Consumer Prod. Safety Comm'n*,
   No. CIV-22-232-RAW, 2023 WL 4934989 (E.D. Okla. Aug. 2, 2023)...................23

*Lewis v. Casey*,
   518 U.S. 343 (1996) ..............................................................................................14

*Lloyd Sabaudo Societa Anonima Per Azioni v. Elting*,
   287 U.S. 329 (1932) ..............................................................................................20

*Matter of Texas Gen. Petroleum Corp.*,
  52 F.3d 1330 (5th Cir. 1995) ................................................................20

*Miranda v. Garland*,
  34 F.4th 338 (4th Cir. 2022) ................................................................25

*Mississippi Power & Light Co. v. United Gas Pipe Line Co.*,
  760 F.2d 618 (5th Cir. 1985) ................................................................24

*Morrison v. Olson*,
  487 U.S. 654 (1988) ................................................................ 15, 16, 17

*Munaf v. Geren*,
  553 U.S. 674 (2008) ................................................................................7

*Myers v. United States*,
  272 U.S. 52 (1926) ................................................................................15

*Nken v. Holder*,
  556 U.S. 418 (2009) ................................................................................7

*Noriega-Perez v. United States*,
  179 F.3d 1166 (9th Cir. 1999) ................................................................19

*Oceanic Steam Navigation Co.* v. *Stranahan*,
  214 U.S. 320 (1909) ................................................................................20

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
  138 S. Ct. 1365 (2018) ................................................................18, 21

*Schlesinger v. Reservists Comm. to Stop the War*,
  418 U.S. 208 (1974) ................................................................................14

*SEC v. Jarkesy*,
  143 S. Ct. 2688 (2023) ................................................................................15

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
  140 S. Ct. 2183 (2020) ................................................................12, 13, 15

*Sun Valley Orchards, LLC v. U.S. Dep't of Lab.*,
  2023 WL 4784204 (D.N.J. July 27, 2023),
  *appeal filed*, No. 23-2608 (3d Cir. Sep. 5, 2023) ................................19

*Thomas v. Union Carbide Agr. Prod. Co.*,
  473 U.S. 568 (1985) ................................................................18, 21

*United States v. Arthrex, Inc.*,
   141 S. Ct. 1970 (2021) ............................................................*passim*

*United States v. Perkins*,
   116 U.S. 483 (1886) ..........................................................15, 16

*Wiener v. United States*,
   357 U.S. 349 (1958) ...................................................................16

*Winter v. NRDC, Inc.*,
   555 U.S. 7 (2008) .........................................................................7

**STATUTES**

5 U.S.C. § 554(d)(2) ..............................................................................6

5 U.S.C. § 557(b) ...................................................................................9

5 U.S.C. § 1202(d) .................................................................................3

5 U.S.C. § 7521 ..............................................................................14, 17

5 U.S.C. § 7521(a) ..........................................................................3, 12

8 U.S.C. § 1324a .................................................................................. 4

8 U.S.C. § 1324b ................................................................ 1, 4, 6, 9

8 U.S.C. § 1324b(a)(1) .........................................................................4

8 U.S.C. § 1324b(a)(2)(A) ...................................................................4

8 U.S.C. § 1324b(a)(2)(B) .................................................................14

8 U.S.C. § 1324b(a)(2)(C) ............................................................4, 22

8 U.S.C. § 1324b(a)(3) ...................................................................4, 22

8 U.S.C. § 1324b(b)(2) ......................................................................14

8 U.S.C. § 1324b(c) .............................................................................5

8 U.S.C. § 1324b(d) ......................................................................5, 14

8 U.S.C. § 1324b(d)(2) ........................................................................5

8 U.S.C. § 1324b(e) ................................................................................5

8 U.S.C. § 1324b(e)(1) .......................................................................6, 14

8 U.S.C. § 1324b(e)(2) ...........................................................................22

8 U.S.C. § 1324b(f) ..................................................................................5

8 U.S.C. § 1324b(g) ..........................................................................5, 6, 9

8 U.S.C. § 1324b(g)(1) ........................................................................6, 9

8 U.S.C. § 1324c ...............................................................................4, 19

42 U.S.C. § 2000e(b) ...............................................................................4

42 U.S.C. § 2000e-2(a)(1) .......................................................................4

Immigration Reform and Control Act of 1986 ("IRCA"),
    Pub. L. No. 99-603, 100 Stat. 3359 .................................................4

## REGULATIONS

8 C.F.R. § 68.55 ....................................................................................17

28 C.F.R. § 0.118 .....................................................................................4

28 C.F.R. § 0.53 .......................................................................................5

28 C.F.R. § 68.28(a) ................................................................................5

28 C.F.R. § 68.31 .....................................................................................6

28 C.F.R. § 68.52(g) (2022) ..................................................................6, 9

88 Fed. Reg. 70,586 (Oct. 12, 2023) ...............................................6, 9, 17

## LEGISLATIVE HISTORY

H.R. Conf. Rep. No. 99-1000 (1986),
    *as reprinted in* 1986 U.S.C.C.A.N. 5840 .......................................4

H.R. Rep. No. 99-682, pt. 1 (1986) ..........................................................5

H.R. Rep. No. 99-682, pt. 2 (1986) ....................................................5, 22

**OTHER AUTHORITIES**

*Good Cause*, Black's Law Dictionary 822 (4th ed. 1951) ..........................................................17

U.S. Dep't of Justice, Notice, EOIR Announces New Administrative Law Judge (June 26, 2020),
   https://perma.cc/4GP2-7C66.......................................................................................................3

U.S. Office of Personnel Management, Administrative Law Judges,
   https://perma.cc/22XX-V2FZ ......................................................................................................3

<u>**INTRODUCTION**</u>

In 1986, Congress amended the Immigration and Nationality Act ("INA") to prohibit employment discrimination based on citizenship status, including refugee and asylee status. 8 U.S.C. § 1324b. Congress also created a process by which administrative law judges ("ALJs") would adjudicate alleged violations of that provision. Now, Space Exploration Technologies Corp. ("SpaceX")—which is alleged to have discriminated against workers who were granted asylum or refugee status—seeks to upend that longstanding system and asks the Court to enjoin the administrative proceedings against it. Not one of the legal theories on which it relies, however, justifies the relief it seeks, and concluding otherwise would essentially halt enforcement of a critical INA provision. The Court should deny Plaintiff's motion for a preliminary injunction.

To start, SpaceX is unlikely to show that the ALJ proceedings it challenges are unlawful. SpaceX first claims that the ALJs at issue have not been properly appointed because those ALJs' § 1324b decisions are not subject to review by a superior Executive Branch officer (supposedly making those ALJs "principal officers") and those ALJs are not nominated by the President and confirmed by the Senate (as required for principal officers). On September 30, 2023, however, the Attorney General issued a rule making clear that the Attorney General may review ALJs' § 1324b decisions—confirming that those ALJs are, at most, "inferior officers" for whom Presidential appointment and Senate confirmation are unnecessary. The Appointments Clause claim thus fails.

SpaceX then claims that the ALJs at issue are shielded by allegedly unconstitutional removal restrictions. Even if so, SpaceX would not be entitled to an injunction halting an administrative proceeding. The Fifth Circuit recently made clear that, to prevail on a claim challenging removal restrictions, a plaintiff must show that, but for the removal restrictions, the President would have caused some change to the challenged agency action. SpaceX, however,

does not allege—much less establish with evidence—that any part of the administrative proceedings would be different if the ALJ's removal restrictions did not exist. And even if SpaceX were entitled to some remedy, it could receive, at most, a declaration that the removal restrictions are invalid. If a provision of a statute is found unconstitutional, courts generally sever that provision and leave the remainder of the statutory scheme intact. Indeed, in its recent cases where removal restrictions were challenged, that is precisely what the Supreme Court has done: it has severed the offending removal restrictions, but has otherwise allowed the executive officers at issue to continue fulfilling their duties. In any event, SpaceX's removal claim lacks merit. ALJs are adequately supervised by the Attorney General in their decision-making and therefore their removal protections are lawful.

Finally, SpaceX claims that, under Article III and the Seventh Amendment, § 1324b claims must be tried before a jury in an Article III court. Both theories, however, fail in light of the public rights doctrine. An administrative tribunal may resolve claims, without a jury, if those claims concern "public rights," *e.g.*, claims brought by the government that "involv[e] statutory rights that are integral parts of a public regulatory scheme." *Granfinanciera v. Nordberg*, 492 U.S. 33, 55 n.10 (1989). Here, the government has brought claims against SpaceX concerning a "statutory right[]" that is an "integral part[] of a public regulatory scheme" regulating noncitizens' ability to work. In fact, the Supreme Court has already stated that claims relating to immigration laws implicate "public rights." SpaceX's Article III and Seventh Amendment claims, like its other claims, therefore lack merit.

Additionally, SpaceX can neither establish the type of irreparable injury necessary for a preliminary injunction nor show that the balance of the equities justifies that relief. SpaceX relies largely on an abstract injury, arguing that an alleged constitutional violation is itself a harm. But

2

that alleged harm, in itself, cannot warrant a preliminary injunction; otherwise virtually *all* constitutional claims would be litigated through preliminary injunction motions—contravening the principle that that relief is supposed to be extraordinary and rare. SpaceX also refers to certain litigation-related burdens, but the Supreme Court has already noted that those burdens do not constitute irreparable injury. By contrast, the harm SpaceX's requested preliminary injunction would inflict on the government would be significant. SpaceX asks this Court to meddle with the law enforcement functions of the Executive Branch, and to delay potential relief for refugees and asylees affected by SpaceX's alleged actions. The Court should decline to do so, and should instead deny Plaintiff's motion for a preliminary injunction.

<u>**BACKGROUND**</u>

## I.    Statutory and regulatory background

There are roughly 2,000 ALJs across the federal government who hear claims relating to a host of federal statutes, the vast majority of whom hear Social Security cases. *See* U.S. Office of Personnel Management, Administrative Law Judges, https://perma.cc/22XX-V2FZ. ALJs may generally be removed "by the agency in which the [ALJ] is employed only for good cause established and determined by the Merit Systems Protection Board [(MSPB)] on the record after opportunity for hearing before the Board." 5 U.S.C. § 7521(a). Members of the MSPB "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

Relevant here are the ALJs who serve in the Office of the Chief Administrative Hearing Officer within the Department of Justice's Executive Office of Immigration Review (hereafter, the "DOJ ALJs"). DOJ ALJs are appointed by the Attorney General, *see* U.S. Dep't of Justice, Notice, EOIR Announces New Administrative Law Judge (June 26, 2020), https://perma.cc/4GP2-7C66, and hear cases arising under three provisions of the INA: 8 U.S.C. §§ 1324a, 1324b, and 1324c,

3

*see* 28 C.F.R. § 0.118. Sections 1324a and 1324b were added to the INA as part of the Immigration Reform and Control Act of 1986 ("IRCA"), Pub. L. No. 99-603, §§ 101-102, 100 Stat. 3359, 3360-3380. In § 1324a, Congress for the first time prohibited employers from knowingly employing noncitizens who are unauthorized to work, required employers to verify employees' employment eligibility (colloquially known as the I-9 process), and imposed sanctions on violators. *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 589 (2011). At the same time, Congress enacted § 1324b as a "complement" to the new sanctions. H.R. Conf. Rep. No. 99-1000, at 87 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5840, 5842. Section 1324b prohibits employers from discriminating based on national origin[1] or, in the case of a "protected individual," based on the person's citizenship status. 8 U.S.C. § 1324b(a)(1). The term "protected individual" includes U.S. citizens and nationals and certain lawful permanent residents ("LPR"), refugees, and asylees, among others.[2] *Id.* § 1324b(a)(3). The protected noncitizens are those who have indefinite authorization to live and work in the United States, have a pathway to citizenship, and intend to pursue naturalization. *See id*. Citizenship status discrimination is permitted if it is otherwise required by law, regulation, executive order, government contract, or if the Attorney General determines it is essential for the employer to do business with a federal, state, or local government. *Id.* § 1324b(a)(2)(C).

---

[1] Title VII of the Civil Rights Act also prohibits national origin discrimination in hiring, but it covers only employers with 15 or more employees. 42 U.S.C. §§ 2000e(b), 2000e-2(a)(1). Section 1324b covers employers with 4 to 14 employees. 8 U.S.C. § 1324b(a)(2)(A).  This case does not involve a claim of discrimination based on national origin.

[2] Section 1324b also protects certain noncitizens who were able to regularize their status through IRCA's amnesty provisions based on their agricultural work or long-term unlawful residence in the United States in the 1980s. 8 U.S.C. § 1324b(a)(3) (protecting "an alien who . . . is granted the status of an alien lawfully admitted for temporary residence under [8 U.S.C. §§ 1160(a) or 1255a(a)(1)]"). These statuses are not at issue in the administrative proceedings involving SpaceX.

Congress enacted § 1324b out of concern that the new sanctions under § 1324a could lead employers to discriminate against Hispanic workers or others perceived to lack work authorization. H.R. Rep. 99-682, pt. 2, at 12 (1986); H.R. Rep. 99-682, pt. 1 at 68 (1986). Committee reports observed that existing laws such as Title VII did not cover discrimination based on "alienage" or citizenship. H.R. Rep. 99-682, pt. 2, at 12 (citing *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86 (1973)); H.R. Rep. 99-682, pt. 1 at 69. They also noted that permanent residents "are admitted to this country with the expectation that they do not become public charges" and explained that

> barriers should [not] be placed in the path of permanent residents and other aliens who are authorized to work and who are seeking employment, particularly when such aliens have evidenced an intent to become U.S. citizens. It makes no sense to admit immigrants and refugees to this country, require them to work and then allow employers to refuse to hire them because of their immigration (non-citizenship) status.

H.R. Rep. 99-682, pt. 1 at 70; H.R. Rep. 99-682, pt. 2, at 12-13.

Section 1324b is enforced by a Presidentially-appointed and Senate-confirmed Special Counsel, who reports to the Assistant Attorney General for Civil Rights. *See* 8 U.S.C. § 1324b(c); 28 C.F.R. § 0.53. The Special Counsel, or when the position is vacant, the Deputy Special Counsel, heads the Immigrant and Employee Rights Section ("IER") within DOJ's Civil Rights Division, which investigates allegations of unfair immigration-related employment practices and issues and prosecutes complaints before a DOJ ALJ. 8 U.S.C. § 1324b(d); 28 C.F.R. § 0.53. Complaints can also be brought by private parties if IER does not file a complaint within 120 days and sends a letter notifying the injured party of their right to file. 8 U.S.C. § 1324b(d)(2).

A DOJ ALJ will then hear the case. The ALJ's powers are limited to those necessary to facilitate the hearing: managing hearing schedules and discovery, issuing subpoenas, and issuing merits decisions. *See id.* § 1324b(e)-(g); 28 C.F.R. § 68.28(a). However, unlike IER, the ALJ does not initiate investigations, nor can she bring charges for violations of any statute. For example,

complaints brought before the ALJ may be amended only on motion by the complainant, not by the ALJ *sua sponte*. 8 U.S.C. § 1324b(e)(1). The ALJ's role thus is purely adjudicatory. *See* 5 U.S.C. § 554(d)(2); 28 C.F.R. § 68.31 ("No officer . . . engaged in the performance of investigative or prosecutorial functions in connection with any proceeding shall, in that proceeding or a factually related proceeding, participate or advise in the decision of the [ALJ], except as a witness or counsel in the proceedings.").

The statute states that a DOJ ALJ's order "shall be final" unless appealed to a United States court of appeals. 8 U.S.C. § 1324b(g)(1), (i). The statute does not prohibit review of DOJ ALJ orders by other Executive Branch officers, but until recently, DOJ's regulations had not expressly provided for such review. *See* 28 C.F.R. § 68.52(g) (2022). In light of the Supreme Court's decision in *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021), the Attorney General promulgated a new regulation expressly providing for discretionary review of DOJ ALJ decisions by the Attorney General. *See* Review Procedures for Cases Arising Under INA 274B, 8 U.S.C. § 1324b, 88 Fed. Reg. 70,586 (Oct. 12, 2023).

## II.   Procedural history

SpaceX operates a space launch business and a global satellite-based internet service. Compl. ¶ 12, ECF No. 1. On August 24, 2023, following an investigation that began in May 2020, IER filed a complaint against SpaceX alleging discrimination against individuals granted asylum and refugee status. The complaint seeks an order requiring SpaceX to cease and desist its discriminatory practices, reconsider affected asylees' and refugees' applications and hire those who were qualified, and provide back pay to affected individuals. The complaint also seeks civil penalties for SpaceX's violations. *Id.* ¶ 32; OCAHO Compl. at 12, ECF No. 11-2. The administrative proceedings before the DOJ ALJ are currently ongoing.

On September 15, 2023, SpaceX filed a complaint in this Court, alleging that (1) DOJ ALJs are improperly appointed principal officers under the Appointments Clause because their § 1324b decisions are not reviewable by anyone else within the Executive Branch (Count I); (2) the ALJs' statutory removal protections overly insulate them from the President's control, in violation of Article II (Count II); (3) agency adjudication of the government's claims violates Article III (Count III); and (4) agency adjudication of the government's claims violates the Seventh Amendment (Count IV). SpaceX filed a motion for preliminary injunction based on these claims on September 26, 2023.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy" that should "never [be] awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citation omitted). The "decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363–64 (5th Cir. 2003). A plaintiff must make "a clear showing" that it is "entitled to such relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff must establish "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023), petition for certiorari docketed, *Anibowei v. Mayorkas*, No. 23-199 (Sept. 1, 2023) (citation omitted). The third and fourth factors of the preliminary injunction analysis—harm to others and the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

<u>A<small>RGUMENT</small></u>

**I.** **SpaceX's Appointments Clause claim (Count I) is meritless because, as clarified by DOJ's recent regulation, DOJ ALJs are not principal officers.**

In Count I, SpaceX contends that DOJ ALJs should be considered principal officers because their decisions under § 1324b are not reviewed by any superior officer within the Executive Branch, and thus they need to be (but are not) appointed by the President and confirmed by the Senate. Compl. ¶ 38; PI Mot. at 9-10. But DOJ ALJs' § 1324b decisions *are* reviewable by the Attorney General, so SpaceX's claim fails for that reason alone.

Count I is based on *United States v. Arthrex*, in which the Supreme Court held that administrative patent judges' ("APJs'") ability to issue final decisions without the opportunity for further review within the Executive Branch was "incompatible with their appointment by the Secretary [of Commerce] to an inferior office." 141 S. Ct. at 1985. To remedy the problem, the Court severed the part of the America Invents Act that prevented the Director of the Patent and Trademark Office from reviewing the APJs' decisions and remanded the case to give the Director an opportunity to review the decision at issue. *See id.* at 1986-88. In doing so, the Court rejected various other remedies proposed by the parties. The Court refused to strike down the entire agency adjudication framework for inter partes review or dismiss the agency proceeding below, as the challengers wanted. *Id.* at 1986-76. The Court also declined to vacate the APJ's decision and order a new hearing before a new panel of APJs. *Id.* at 1988.[3] The Court reasoned that "the APJs' appointment by the Secretary allowed them to lawfully adjudicate the petition in the first instance"; they simply "lacked the power under the Constitution to finally resolve the matter within the

---

[3] As discussed further *infra* at 17-18, the Court also declined to invalidate the APJs' removal protections. *Arthrex*, 141 S. Ct. at 1987.

Executive Branch." *Id.* at 1987. Moreover, "the source of the constitutional violation is the restraint on the review authority of the Director, rather than the appointment of APJs by the Secretary." *Id.* at 1988.

In light of *Arthrex*, the Attorney General recently promulgated an interim final rule making clear that the Attorney General may review ALJ decisions in § 1324b cases. 88 Fed. Reg. 70,586. As explained in the preamble to the new rule, 8 U.S.C. § 1324b provides that the ALJ's order "shall be final" unless appealed to the court of appeals. 8 U.S.C. § 1324b(g)(1), (i); 88 Fed. Reg. at 70,587. Unlike the statute in *Arthrex*, the statute does not prohibit the Attorney General from reviewing ALJ decisions, though historically, DOJ's implementing regulations did not expressly state that ALJ orders in § 1324b cases would be subject to further review within the Department. *See* 28 C.F.R. § 68.52(g) (2022). After *Arthrex*, the Department reexamined the statutory and regulatory framework and issued a new regulation expressly allowing the Attorney General to review ALJs' § 1324b decisions, making the administrative procedures for § 1324b claims more consistent with the Appointments Clause and general administrative law practices, where ALJs issue initial decisions that are reviewable by agency superiors. 88 Fed. Reg. at 70,588-89; 5 U.S.C. § 557(b).

Because the regulations now explicitly state that DOJ ALJs' decisions under § 1324b are reviewable by a higher officer within the Executive Branch, it is clear that the ALJs are inferior, not principal, officers. "Under these circumstances," the Attorney General will have "an adequate opportunity [to] review" the relevant ALJ's decision.[4] *Arthrex*, 41 S. Ct. at 1987-88. Because a

---

[4] Under *Arthrex*, it is immaterial whether the ALJ's final decisions on § 1324b claims were subject to review by a superior when proceedings began. Even assuming that they were not, the interim final rule that allows for Attorney General review of any final decision by the ALJ cures any

"politically accountable officer" bears final "responsibility" for any agency decision, *id.* at 1982, SpaceX's Appointments Clause claim fails.[5]

## II.    SpaceX is not entitled to injunctive relief based on its removal claim (Count II).

### A.   SpaceX fails to allege prejudicial harm.

In Count II, SpaceX alleges that the ALJs' two layers of removal protections overly insulate ALJs from presidential control, in violation of Article II. Compl. ¶¶ 53-54. But even if this claim had merit, SpaceX cannot get the injunctive relief it seeks, as it has not shown that the challenged removal protections "cause[d] harm" to SpaceX by causing the administrative proceedings to unfold in a manner detrimental to SpaceX. *Collins v. Yellen*, 141 S. Ct. 1761, 1788-89 (2021). There are "three requisites for proving harm" for a removal claim: "(1) a substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor." *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022); *see also Collins v. Dep't of the Treasury*, No. 22-20632, 2023 WL 6630307, at *7 (5th Cir. Oct. 12, 2023). Here, SpaceX has not established, for instance, that the President has sought to remove the presiding ALJ, or that, but-for the removal restrictions, "the challenged actions taken by the" ALJ would not have occurred. *See Collins*, 141 S. Ct. at 1789.

---

alleged constitutional defect and so the proceedings may now continue. As noted above, in *Arthrex*, when the agency proceedings began, a final decision by the relevant APJ was not reviewable by a politically accountable superior officer because of an express statutory bar on such review. Nonetheless, the Supreme Court did not conclude that the proceedings as a whole were invalid. It severed the problematic provision, allowed for review of the APJ decision by a superior, and otherwise allowed the proceedings to stand. Here, too, the ALJ proceedings as a whole may continue despite any prior, alleged constitutional defect, particularly given that the ALJ has not yet taken any significant action in these proceedings.

[5] The Court need not reach SpaceX's arguments regarding the severability of § 1324b, as SpaceX is not entitled to any remedy where its claim fails on the merits.

Indeed, it is not even clear what actions by the ALJ SpaceX is challenging, as the ALJ proceedings have barely begun.

This failure is dispositive. SpaceX has not identified a single case where a court has granted the type of relief SpaceX wants based on an unconstitutional removal provision. The overwhelming weight of the authority goes against SpaceX. Courts, including the Fifth Circuit, have routinely required a showing of harm and denied relief due to plaintiffs' failure to establish harm, including in cases where plaintiffs' allegations of harm were more detailed than SpaceX's.[6] *Collins*, 2023 WL 6630307, at \*7-9; *Cmty. Fin. Servs. Ass'n of Am.*, 51 F.4th at 632-33; *Burgess v. FDIC*, 639 F. Supp. 3d 732, 747 (N.D. Tex. 2022); *see also CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023); *Calcutt v. FDIC*, 37 F.4th 293, 318-20 (6th Cir. 2022), *rev'd on other grounds*, 143 S. Ct. 1317 (2023); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137-38 (9th Cir. 2021).

    **B.**   <u>Preliminary injunctive relief is unavailable where SpaceX could at most get declaratory relief at the end of this case.</u>

Moreover, even if SpaceX could ultimately show entitlement to some remedy for this claim, it could secure, at most, a declaration that the challenged removal restriction is invalid. There is "a strong presumption of severability," under which courts "invalidate[] and sever[] unconstitutional provisions from the remainder of the law rather than raz[e] whole statutes or Acts of Congress." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2350 (2020). Generally, statutes are severable if "the remainder of the law is capable of functioning independently and thus

---

[6] In *Jarkesy v. SEC*, the Fifth Circuit held that SEC ALJs' removal protections were unconstitutional, but it avoided the *Collins* issue by granting relief based on other constitutional violations in that case and declining to decide whether that relief would be appropriate based on the removal issue alone. 34 F.4th 446, 463 n.17 (5th Cir. 2022), *cert. granted*, No. 22-859, 2023 WL 4278448 (S. Ct. June 30, 2023).

would be fully operative as a law." *Id.* at 2353. And "it is fairly unusual for the remainder of a law not to be operative." *Id.* at 2352.

ALJs are removable "by the agency in which the [ALJ] is employed only for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board." 5 U.S.C. § 7521(a). MSPB members "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). Should the Court find the ALJ's removal protections are unconstitutional, it could, at final judgment, simply sever the second half of the sentence in § 7521(a) after "good cause," as to the ALJ presiding over SpaceX's case, thus eliminating any requirement that the MSPB assess whether "good cause" exists for that ALJ's removal. The ALJ would then be subject to removal by the Attorney General (who serves at the pleasure of the President), and the administrative proceedings could proceed without the alleged constitutional defect.

This would be consistent with how the Supreme Court has dealt with unlawful removal protections in recent cases. In *Free Enterprise Fund*, the plaintiffs sued to stop an ongoing investigation by the Public Company Accounting Oversight Board ("PCAOB"). The Court found the PCAOB's removal protections unconstitutional, but it rejected plaintiffs' attempt to enjoin the PCAOB's operations and granted declaratory relief only, severing the offending statutory provisions, and leaving the members of the PCAOB freely subject to removal by the Securities and Exchange Commission. *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477, 508, 513 (2010). Likewise, in *Seila Law LLC v. Consumer Fin. Prot. Bureau*, the Court found the removal protections for the Consumer Financial Protection Bureau's ("CFPB's") Director unconstitutional. 140 S. Ct. 2183, 2207-08 (2020). But it did not limit any of the CFPB's operations. Instead, it again severed the Director's removal protection, noting that "[t]he provisions

of the [statute] bearing on the CFPB's structure and duties remain fully operative without the offending tenure restriction" and that "[t]hose provisions are capable of functioning independently." *Id.* at 2209.

SpaceX argues that injunctive relief is necessary for Count II because the ALJ's removal protections are not severable, noting that Congress enacted removal restrictions to protect ALJs' independence. *See* PI Mot. at 16-19. But that does not mean that, "faced with the limitations imposed by the Constitution," Congress would have preferred no ALJ proceedings at all. *Free Enter.*, 561 U.S. at 509. The Supreme Court rejected a similar argument in *Seila Law*. There, the petitioner "highlight[ed] . . . references to the CFPB's independence in the statutory text and legislative history," to show that Congress would have wanted to disband the CFPB if the removal restrictions were found unconstitutional. 140 S. Ct. at 2210. The Court was unpersuaded. Although petitioner's "observations certainly confirm[ed] that Congress preferred an independent CFPB to a dependent one," they "shed little light on the critical question whether Congress would have preferred a dependent CFPB to *no agency at all*." *Id.* The Court stressed that disbanding the CFPB "would trigger a major regulatory disruption and would leave appreciable damage to Congress's work in the consumer-finance industry," as other agencies would not have the resources to take over its work and none would have the authority to administer the new prohibition on unfair and deceptive practices in the consumer-finance sector created in the Dodd-Frank Act that also created the CFPB. *Id.* Therefore, it was "far from evident that Congress would have preferred no CFPB to a CFPB led by a Director removable at will by the President." *Id.*

The same reasoning applies here. A ruling that broadly prevents ALJs from adjudicating cases altogether "would have potentially catastrophic effects on numerous past and ongoing . . . adjudications . . . throughout the federal government." *Decker Coal*, 8 F.4th at 1137. More specific

to § 1324b, Congress made the DOJ ALJs the sole forum for hearing complaints of employment discrimination based on citizenship status and for certain national origin claims, including complaints filed by private parties. *See* 8 U.S.C. § 1324b(d) (providing for complaints to be filed before ALJ); *see also id.* § 1324b(a)(2)(B), (b)(2) (providing for no overlap with charges alleging national origin discrimination that are or could be filed with the EEOC); *supra* at 4-5; Ruisanchez Decl. ¶¶ 9, 15. To prevent resolution of these claims altogether, as SpaceX suggests, would do more violence to § 1324b and Congress's numerous other statutes providing for ALJ adjudications than simply severing 5 U.S.C. § 7521 to cut ALJ's removal protections down to one layer, akin to the remedy that the Supreme Court ordered in *Free Enterprise Fund* for the PCAOB members.

Accordingly, even if the Court were to ultimately find the ALJ's removal protections unconstitutional, SpaceX would not be entitled to an injunction (preliminary or otherwise) of the administrative proceedings. Rather, the most that SpaceX could obtain—at the end of this case— would be a declaratory judgment invalidating the offending portions of the removal statute, with any "invalidation" being no broader than necessary to address SpaceX's injuries. *See*, *e.g.*, *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 222 (1974) (When "the relief sought produces a confrontation with one of the coordinate branches of the Government," the "framing of relief" may be "no broader than required" to address any "concrete injury"). Thus, SpaceX's motion for preliminary injunction should be denied as to Count II.[7]

---

[7] Because the only motion pending before this Court is SpaceX's request for a preliminary injunction, the Court need not decide now precisely how it would sever the statute or how broad a declaratory judgment would be, only that SpaceX is not entitled to its requested injunction.

C. DOJ ALJs' removal protections are constitutional.

In light of the above, the Court need not reach the merits, but if it does, it should hold that the ALJs' removal protections are constitutional. In *Jarkesy*, a split Fifth Circuit panel, over a forceful dissent from Judge Davis, found the removal protections for SEC ALJs to be unconstitutional. 34 F.4th at 463-65.[8] Defendants respectfully disagree with the Fifth Circuit's decision, and the Supreme Court has agreed to review it this term. *See SEC v. Jarkesy*, 143 S. Ct. 2688 (2023). To the extent this Court is bound by *Jarkesy*, Defendants respectfully preserve their arguments below for appeal.

Article II grants the President the power to appoint "lesser officers," and "[t]hat power . . . includes the ability to remove" those officers. *Seila Law*, 140 S. Ct. at 2197. However, just as the "power to remove" is traditionally considered "an incident of the power to appoint," "the power of Congress to regulate removals" is "incidental to the exercise of its constitutional power to vest appointments." *Myers v. United States*, 272 U.S. 52, 161 (1926); *see United States v. Perkins*, 116 U.S. 483, 485 (1886). The key inquiry in removal cases like this one is whether Congress has "interfere[d] with the President's exercise of the 'executive power' and his constitutionally appointed duty to 'take care that the laws be faithfully executed' under Article II." *Morrison v. Olson*, 487 U.S. 654, 689 (1988).

Congress has not, in this case, so interfered. The Supreme Court has repeatedly recognized that Congress may regulate removals of inferior officers.[9] In *Perkins*, the Court upheld a restriction

---

[8] *See also* 51 F.4th 644, 646-47 (5th Cir. 2022) (Haynes, J., dissenting from denial of petition for rehearing en banc).

[9] SpaceX also attacks ALJs' removal protections as inappropriate for principal officers, PI Mot. at 16, but as discussed *supra* at 8-10, since DOJ ALJs' § 1324b decisions are reviewable by the Attorney General, there can be no doubt now that the ALJs are inferior officers.

on the Secretary of the Navy's power to remove a naval officer. 116 U.S. at 484-85. In *Morrison*, the Court upheld a restriction on the Attorney General's power to remove an independent counsel. 487 U.S. at 685-96. The Court has also recognized that the scope of the President's constitutional power to remove and control adjudicators differs from the scope of his power to remove and control other executive officers. For example, in *Morrison*, the Court observed that tenure protection may be "necessary to the proper functioning" of "an official performing 'quasijudicial' functions." 487 U.S. at 691 n.30; *see also Wiener v. United States*, 357 U.S. 349, 355-56 (1958) (holding that Congress could limit the President's power to remove members of the War Claims Commission, an "adjudicatory body," because of "the intrinsic judicial character of the task with which the Commission was charged"); *Humphrey's Executor v. United States*, 295 U.S. 602, 629 (1935) (finding it "plain under the Constitution that illimitable power of removal is not possessed by the President in respect of officers" charged with "quasi-judicial" duties).

Congress's authority to regulate removals is not limitless, of course. In *Free Enterprise Fund*, the Supreme Court held unconstitutional the "highly unusual" and "sharply circumscribed" dual-layer removal protections of a particular set of officers—members of the PCAOB. 561 U.S. at 505. But, contrary to SpaceX's suggestion, PI Mot. at 14, the Supreme Court "did not broadly declare all two-level for-cause protections for inferior officers unconstitutional." *Decker Coal*, 8 F.4th at 1132. Nor did it rule on the constitutionality of ALJ or other civil service protections. *Free Enter.*, 561 U.S. at 506-07 & n.10.

This case is distinguishable from *Free Enterprise Fund*, where the Court expressly reserved the ALJ question. As the Court observed there, ALJs "perform adjudicative rather than enforcement or policymaking functions." 561 U.S. at 507 n.10. In addition, ALJs' removal protections are not as stringent as the PCAOB's. Congress made PCAOB members removable by

16

the SEC Commissioners only for "willful violations of the [Sarbanes-Oxley] Act, Board rules, or the securities laws; willful abuse of authority; or unreasonable failure to enforce compliance," 561 U.S. at 503, while the SEC Commissioners were presumed to be removable only for inefficiency, neglect of duty, or malfeasance in office, *id.* at 487. In contrast to the "novel" and "rigorous" removal limitations in *Free Enterprise Fund*, *id.* at 496, 503, the "good cause" standard in 5 U.S.C. § 7521 is less strict. It allows for ALJs to be removed for misconduct, poor performance, or insubordination. *See* Black's Law Dictionary 822 (4th ed. 1951) (defining "good cause" to include "any ground which is put forward by authorities in good faith and which is not arbitrary, irrational, unreasonable or irrelevant to the duties with which such authorities are charged"); *Morrison*, 487 U.S. at 724 n.4 (Scalia, J., dissenting) ("*for cause, . . .* would include, of course, the failure to accept supervision").

Moreover, the President has ample tools available to hold his subordinates accountable here. After the ALJ makes her decision, it will be subject to review by the Attorney General. 88 Fed Reg. at 70,591 (to be codified at 8 C.F.R. § 68.55). *See Calcutt*, 37 F.4th at 319 (rejecting ALJ removal claim based in part on FDIC's ability to review ALJs' decisions); *Decker Coal*, 8 F.4th at 1134 (rejecting ALJ removal claim based partly on the fact that Department of Labor ALJs' black lung benefits decisions were reviewable by an administrative appellate board whose members were removable at will by the Secretary). Giving weight to this factor would be consistent with *Arthrex*, in which the Court created a procedure for the Director of the Patent and Trademark Office to conduct discretionary review of APJs' decisions to ensure that they would be accountable to the Director, but left their removal protections in place. *Arthrex*, 141 S. Ct. at 1987. In the Court's view, allowing Directorial review better reflected the structure of supervision within the PTO and the nature of the APJs' duties. *See id.* Given that DOJ ALJs' raison d'etre, like the APJs', is to

decide cases, the existence of the review process should be considered sufficient to hold the ALJs accountable to the Attorney General, as the Court did in *Arthrex*. The Attorney General's ability to review DOJ ALJs' § 1324b decisions, along with the quasi-judicial nature of the ALJs' role, and the relatively limited protection offered by the good cause standard, compared to the PCAOB members' standard in the *Free Enterprise Fund*, weigh in favor of finding the ALJs' removal protections compatible with the separation of powers. For these reasons, the Court should hold that SpaceX is unlikely to succeed on the merits of Count II.

### III.   SpaceX's Article III and Seventh Amendment claims (Counts III and IV) are meritless.

In Counts III and IV, SpaceX argues that it is entitled to litigate the § 1324b claim at issue before a jury in an Article III court. Compl. ¶¶ 62-72. That is incorrect. First, Article III does not preclude the ALJ from resolving the § 1324b claim in the first instance. The Supreme Court "has long recognized that Congress is not barred from . . . vest[ing] decisionmaking authority in tribunals that lack the attributes of Article III courts." *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 583 (1985). "Many matters that involve the application of legal standards to facts and affect private interests are routinely decided by agency action with limited or no review by Article III courts." *Id.*; *Atlas Roofing Co., Inc. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 447-48, 450 (1977) ("Congress has often created new statutory obligations, provided for civil penalties for their violation, and committed exclusively to an administrative agency the function of deciding whether a violation has in fact occurred.").

The Supreme Court has repeatedly held that matters involving "public rights" need "not be adjudicated in Article III court," *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1374 (2018), and "may be assigned to administrative agencies" in the first instance, *Atlas Roofing*, 430 U.S. at 456. "[S]uits involving public rights are those which arise between the

18

Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments." *Austin v. Shalala*, 994 F.2d 1170, 1177 (5th Cir. 1993). This includes cases "involving statutory rights that are integral parts of a public regulatory scheme and whose adjudication Congress has assigned to an administrative agency." *Granfinanciera*, 492 U.S. at 55.

The administrative proceedings at issue here involve public rights. The proceedings are "between the Government and" a party "subject to its authority," and the legal claim "involv[es] [a] statutory right[]" and is an "integral part[] of a public regulatory scheme" concerning noncitizens' ability to work. *Id.* Notably, courts have recognized that claims concerning immigration and related labor and employment laws implicate public rights. *Frank's Nursery, LLC v. Walsh*, No. CV H-21-3485, 2022 WL 2757373, at *8 (S.D. Tex. July 14, 2022) (rejecting Article III challenge to agency adjudication of alleged violations of immigrants' workplace protections); *Sun Valley Orchards, LLC v. U.S. Dep't of Lab.*, 2023 WL 4784204, at *6 (D.N.J. July 27, 2023), *appeal filed*, No. 23-2608 (3d Cir. Sep. 5, 2023) (same); *Noriega-Perez v. United States*, 179 F.3d 1166, 1175 (9th Cir. 1999) (noting, in a case involving employment document fraud under 8 U.S.C. § 1324c, that "[a]lthough the boundaries of . . . public and private rights for Article III purposes have shifted over the years . . . the field of immigration . . . has remained solidly within 'public rights' and the statutory delegation to agencies of the power to adjudicate immigration issues has been consistently upheld by the courts."). These cases are consistent with the Supreme Court's recognition that "[t]he Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens," *Arizona v. United States*, 567 U.S. 387, 394 (2012), and that, in the immigration field, Congress "may lawfully impose appropriate obligations, sanction their enforcement by reasonable money penalties, and invest in administrative officials

19

the power to impose and enforce them," *Lloyd Sabaudo Societa Anonima Per Azioni v. Elting*, 287 U.S. 329, 334 (1932); *Oceanic Steam Navigation Co.* v. *Stranahan*, 214 U.S. 320, 339 (1909); *Austin*, 994 F.2d at 1177 (the Supreme Court has historically "approved the use of administrative agencies in adjudicating violations of the customs and immigration laws and assessing penalties therefor").

Because § 1324b administrative proceedings involve public rights, there is no Article III violation. This resolves Plaintiff's Seventh Amendment claim as well because the Seventh Amendment does not guarantee a jury trial in proceedings involving a "public right." *See Granfinanciera*, 492 U.S. at 53–54 ("[I]f Congress may assign the adjudication of a statutory cause of action to a non-Article III tribunal, then the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder."); *Matter of Texas Gen. Petroleum Corp.*, 52 F.3d 1330, 1336 (5th Cir. 1995) ("Whether an Article III court is necessary involves the same inquiry as whether a litigant has a Seventh Amendment right to a jury trial.").

SpaceX argues that the public rights doctrine does not apply because "the government's . . . claims against SpaceX are 'analogous to a number of tort actions recognized at common law.'" PI Mot. at 20-21. But the Supreme Court has stated that "Congress may fashion causes of action that are *closely analogous to common-law claims*" and "assign[] their resolution to a forum in which jury trials are unavailable" if those "legal cause[s] of action involve[] 'public rights.'" *Granfinanciera*, 492 U.S. at 52-53 (emphasis added). As noted, the public rights doctrine generally applies to cases between the government and private parties that concern "statutory rights that are integral parts of a public regulatory scheme," regardless of whether the claim involved is legal rather than equitable. *See id.* at 42 n.4 ("If a claim . . . asserts a 'public right' . . . then the Seventh Amendment does not entitle the parties to a jury trial" even if the claim "is legal in nature"). In

*Atlas Roofing*, for example, the Supreme Court did not dispute that the government's claim for "civil penalties" was a "suit for a money judgment which is classically a suit at common law." 430 U.S. at 449. The Court nevertheless concluded that the public rights doctrine applied because the government was "enforc[ing] public rights created by statutes within the power of Congress to enact." *Id.* at 450.

SpaceX also argues that litigating § 1324b claims in a federal court that can hold jury trials would not "dismantle the statutory scheme." PI Mot. at 21. But the Supreme Court has never held that the public rights doctrine applies only when a claim cannot properly be resolved in a federal court or through jury trials. To the contrary, the Supreme Court has made clear that "there are matters, involving public rights, *which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination*, but which congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper." *Den ex dem. Murray v. Hoboken Land & Imp. Co.*, 59 U.S. 272, 284 (1855) (emphasis added). The Court recently stressed that "matters governed by the public-rights doctrine from their nature can be resolved in multiple ways," including by "executive officers" or "judicial tribunals." *Oil States*, 138 S. Ct. at 1378. Thus, the Supreme Court has found that the public rights doctrine applies to a number of claims that seemingly could have been resolved through a jury trial in federal court, including certain employee "claims for compensation" and disputes between "landlords and tenants." *Union Carbide*, 473 U.S. at 586-88.

To the extent *Jarkesy* supports either of SpaceX's arguments, it contravenes Supreme Court precedent. *See* 34 F.4th at 466-73 (Davis, J., dissenting); 51 F.4th at 645 (5th Cir. 2022) (Haynes, J., dissenting from denial of petition for rehearing en banc). In any event, *Jarkesy* is distinguishable from this case even on its own terms. There, the Fifth Circuit concluded that the petitioner had a

21

right to a jury trial for a securities fraud claim due to multiple factors not present here. For example, the court noted that the "statutory scheme" at issue there "allows the SEC to bring enforcement actions either in-house or in Article III courts" and that "Congress could have purported to assign such proceedings solely to administrative tribunals, but it did not." *Jarkesy*, 34 F.4th at 455–56. Here, by contrast, the INA includes no provision allowing IER to bring enforcement actions in Article III courts.

Additionally, the Fifth Circuit noted that "federal courts have dealt with actions under the securities statutes for many decades," and that "for the first decades of the SEC's existence, securities-fraud actions against nonregistered parties could be brought only in Article III courts." *Id.* at 456. Here, there is no longstanding history of federal courts resolving employment discrimination claims involving noncitizens as a protected class. In fact, like in *Atlas Roofing*, Congress enacted § 1324b, including the provisions calling for administrative adjudication by specialized ALJs, precisely because "it concluded that remedies available in courts of law were inadequate to cope with" discrimination based on citizenship and "alienage." 430 U.S. at 460; *see* 8 U.S.C. § 1324b(e)(2) (specifying that hearings should be conducted by ALJs "having special training respecting employment discrimination and, to the extent practicable, before such judges who only consider cases under this section"); *supra* at 5.[10] Congress concluded that relying on an administrative tribunal rather than Article III courts would "result in a faster and more certain determination of rights, benefiting all parties." H.R. Rep. 99-682, Pt. 2, at 13.

---

[10] Resolution of § 1324b claims may require unique expertise over immigration law issues such as the nature of a person's immigration status and the attendant rights and duties, the forms of proof required, and the interplay between different provisions of immigration law. *See* 8 U.S.C. § 1324b(a)(2)(C) (permitting citizenship status discrimination if required by law, government contract, or by determination of the Attorney General); *id.* § 1324b(a)(3) (defining "protected individual" to include certain statuses but to exclude others).

Finally, *Jarkesy* does not speak to claims that, like § 1324b, implicate the government's authority over immigration, which the Supreme Court has already noted is an area for which agency adjudication is proper. *See supra* at 19-20. Thus, *Jarkesy* does not apply here. In fact, another Judge in this District recently found that, despite *Jarkesy*, the public rights doctrine did not apply to a claim concerning violations of another INA provision providing workplace protections to immigrant workers. *See Frank's Nursery*, 2022 WL 2757373, at *8 ("The Department's adjudication of the H-2A program violations implicates public rights relating to immigration and labor law. The concerns raised in *Jarkesy* are not implicated here.").

Plaintiff therefore fails to show that the public rights doctrine does not apply here, and so its Article III and Seventh Amendment claims fail.

## IV.    SpaceX fails to establish irreparable harm.

SpaceX fails to establish any meaningful irreparable harm. Instead, it largely asserts that having to proceed through an allegedly unconstitutional administrative proceeding, in itself, is a harm warranting the extraordinary injunction it seeks. PI Mot. at 22-23. SpaceX cites *Axon Enterprise, Inc. v. FTC*, where the Supreme Court held that certain alleged constitutional deficiencies in an administrative proceeding cause the type of harm that may give a district court subject matter jurisdiction to hear the constitutional challenges. 598 U.S. 175, 191 (2023). *Axon*, however, did not hold that an alleged constitutional defect in an administrative proceeding is the type of irreparable harm sufficient for emergency relief. *See Leachco, Inc. v. Consumer Prod. Safety Comm'n*, No. CIV-22-232-RAW, 2023 WL 4934989, at *2 (E.D. Okla. Aug. 2, 2023). Reading *Axon* to require a preliminary injunction anytime a party challenges administrative proceedings on constitutional grounds would not only have disruptive consequences for agencies across the government, but would also make a preliminary injunction motion the standard vehicle for litigating those types of constitutional claims. That would contravene the principle that a

"preliminary injunction is an extraordinary remedy" and "[t]he decision to grant [one] is to be treated as the exception rather than the rule." *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

Aside from this abstract injury, SpaceX's only other asserted harms have to do with the burdens of litigation, which even *Axon* itself did not consider sufficient to justify immediate court intervention. 598 U.S. at 192. "The expense and annoyance of litigation is part of the social burden of living under government" and so "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *F.T.C. v. Standard Oil Co. of California*, 449 U.S. 232, 244 (1980) (internal quotation marks and citations omitted). SpaceX also asserts that the administrative proceedings will tarnish its reputation, and will give the government "settlement leverage." But these are simply additional burdens incident to a litigation—any litigation can impact an entity's reputation or incentivize settlement—and SpaceX cites to no case indicating that these burdens alone warrant emergency relief.[11]

## V.   The balance of the equities and public interest factors counsel against a preliminary injunction.

Even if SpaceX has established some irreparable injury, it must still show that that injury outweighs the harm an injunction would inflict on the government and to the public. *See Def. Distributed v. United States Dep't of State*, 838 F.3d 451, 457 (5th Cir. 2016). SpaceX, however, cannot show that an abstract constitutional injury and the standard burdens of administrative

---

[11] These injury theories suffer from other defects too. For example, the charges brought in the relevant administrative proceedings are already a matter of public record, and Plaintiff has further publicized them through this lawsuit. It is unclear how an injunction now could spare SpaceX from reputational harm, even if any exists. Further, on the issue of settlement leverage, Plaintiff does not represent that, absent emergency relief, it would be inclined to settle the matter with DOJ, and thus it is unclear how "settlement leverage" would constitute irreparable harm here.

litigation—which are likely minimal to a major corporation like SpaceX—justify an injunction that would interfere with the Executive Branch's law enforcement efforts. *Cf. Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 747 n.14 (1983) ("the Federal Government has" a "strong interest in enforcing the federal labor laws"); *Miranda v. Garland*, 34 F.4th 338, 364 (4th Cir. 2022) ("Congress has repeatedly shown that it considers immigration enforcement . . . to be a vital public interest"). Further, an injunction here could also harm nonparties. If IER prevails on the § 1324b claim, it would mean that many asylees and refugees have been subject to discriminatory hiring practices, and an injunction against the administrative proceedings at issue would delay relief for those individuals. *See* Ruisanchez Decl. ¶ 13.

## <u>CONCLUSION</u>

For these reasons, the Court should deny Plaintiff's Motion for a Preliminary Injunction.

Dated:  October 17, 2023

ALAMDAR S. HAMDANI
United States Attorney

DANIEL DAVID HU
Chief, Civil Division

*/s/ Christopher Pineda*
CHRISTOPHER PINEDA
Southern District No. 1055715
Texas Bar No. 24070420
Assistant United States Attorney
Attorney in Charge
600 E. Harrison, Suite 201
Brownsville, TX 78520
Christopher.Pineda@usdoj.gov

*Counsel for Defendants*

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CHRISTOPHER HALL
Assistant Director, Federal Programs Branch

*/s/ Cynthia Liao*
KUNTAL CHOLERA (D.C. Bar No. 1031523)
Trial Attorney, Attorney in Charge
CYNTHIA LIAO (CA Bar No. 301818)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
Kuntal.Cholera@usdoj.gov
Telephone: (202) 305-8645
Cynthia.F.Liao@usdoj.gov
Telephone: (202) 531-1325
Fax: (202) 616-8470