UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **SPACE EXPLORATION TECHNOLOGIES CORP.,** | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | )<br>)   Case No. 1:23-cv-00137 |
| **CAROL BELL, in her official capacity as Administrative Law Judge of the Office of The Chief Administrative Hearing Officer; JAMES MCHENRY, in his official capacity as Chief Administrative Hearing Officer; and MERRICK B. GARLAND, in his official capacity as U.S. Attorney General** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## DECLARATION OF DEPUTY SPECIAL COUNSEL ALBERTO J. RUISANCHEZ

I, Alberto J. Ruisanchez, hereby declare as follows:

1. This declaration is based on my own personal knowledge and on information made available to me in the course of my official duties.

2. I am the Deputy Special Counsel of the Immigrant and Employee Rights Section ("IER"), an office within the Civil Rights Division of the U.S. Department of Justice. Apart from two temporary assignments, I have served in that role since approximately 2013. Prior to joining IER, I served in other roles within the Civil Rights Division of the Department of Justice. In total, I have served in the Department of Justice for more than 23 years.

3. IER is responsible for enforcing the antidiscrimination provision of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1324b, which prohibits employment discrimination on the basis of citizenship and national origin. In relevant part, the statute protects U.S. citizens and certain other work-authorized individuals—including those who have been granted asylum or have been admitted into this country as refugees—from discrimination in hiring based on their citizenship status. It also protects all work-authorized individuals from national origin discrimination by small employers, unfair documentary practices relating to the employment eligibility verification process, and retaliation.

4.     Parties who believe they have been injured by discriminatory practices that violate the INA's antidiscrimination provision may file charges directly with IER. In addition to investigating such charges, IER has authority to initiate independent investigations where it has a reason to believe that a violation of 8 U.S.C. § 1324b has occurred. In the last nine years, IER has opened more than 1,000 investigations of employers.

5.     When IER identifies violations of 8 U.S.C. § 1324b, it may file a complaint against the person or entity that committed those violations. Under 8 U.S.C. § 1324b(d)(1), IER must file any such complaint with an administrative law judge ("ALJ") within the Office of the Chief Administrative Hearing Officer ("OCAHO"). Under 8 U.S.C. § 1324b(d)(2), private individuals may also file complaints with an OCAHO ALJ in certain circumstances. OCAHO has the authority to issue subpoenas under 8 U.S.C. § 1324b(f) and is the only venue that has jurisdiction over claims arising under 8 U.S.C. § 1324b.

6.     If an OCAHO ALJ finds by a preponderance of the evidence that a person or entity violated 8 U.S.C. § 1324b, the ALJ shall issue an order requiring the person or entity to cease and desist from such unlawful practices, and may impose civil penalties, award back pay relief to affected individuals, and order equitable relief, among other remedies. 8 U.S.C. § 1324b(g).

7.     In my role as Deputy Special Counsel, I oversee and manage IER's enforcement, policy, and outreach work, subject to direction from the Special Counsel and Assistant Attorney General for Civil Rights. In the area of enforcement, I direct IER in its investigations, including when IER seeks subpoenas issued by OCAHO, when IER ends an investigation, and when it enters into pre-suit settlement negotiations. In my career, I have overseen hundreds of IER investigations and settlement negotiations. I see daily the inestimable value that 8 U.S.C. § 1324b's protections provide to workers across the United States.

8.     I understand that the Plaintiff in this action is arguing, and is asking this Court to find, that OCAHO's proceedings are structured and conducted in an unconstitutional manner and is requesting that OCAHO be enjoined from conducting any further administrative proceedings against Plaintiff. Under SpaceX's legal theory, OCAHO would lack the ability to hear and decide cases under 8 U.S.C. § 1324b.

9.     If ALJs were unable to issue subpoenas, rule upon motions, and issue orders under 8 U.S.C. § 1324b, IER would be left without a venue in which to prosecute cases regarding violations of that law. It follows that IER would be unable to collect civil penalties against employers that engage in discrimination, obtain backpay owed to victims, assist workers in getting hired or re-hired, and stop employers from engaging in ongoing discriminatory practices.

10. Over the past decade, IER has entered into more than 250 settlements with employers that IER found to violate 8 U.S.C. § 1324b. Through those settlements, many of those employers provided backpay to victims and paid civil penalties. The backpay awarded to those victims during that ten-year period totals more than $9 million. During that same period, IER obtained more than $18 million in civil penalty relief. These civil penalties and back pay awards would likely not have been possible absent IER's ability to litigate § 1324b claims before OCAHO.

11. Through its settlements, IER has also negotiated equitable relief with many employers. Such equitable relief often includes an employer's agreement to hire, to rehire, or to fairly consider for employment individuals who were subjected to discrimination or other conduct that violates the INA's antidiscrimination provision. IER's efforts in that regard have enabled thousands of individuals to obtain employment. Again, this equitable relief would likely not have been obtained absent IER's ability to seek a cease-and-desist order from OCAHO.

12. IER also operates a hotline that provides workers and employers with information regarding 8 U.S.C. § 1324b. Among other things, the hotline provides callers with an opportunity to work directly with IER's staff to resolve potential immigration-related employment disputes informally and quickly without a protracted investigation or contested litigation. In the last nine years, IER has resolved more than 2,300 disputes through this informal program, enabling thousands of individuals to keep or return to their jobs. Without the ability of workers or IER to file complaints before OCAHO to obtain this relief, these high-impact informal resolutions would likely not have been possible.

13. Separate from IER's inability to adequately enforce the antidiscrimination provision of the INA, eliminating OCAHO's ability to adjudicate cases would negatively affect the private individuals who are authorized to file their own complaints directly with an OCAHO ALJ. If OCAHO were unable to adjudicate such complaints, those victims would have no recourse for violations of 8 U.S.C. § 1324b.

14. Finally, if OCAHO were unable to adjudicate IER's case against Space Exploration Technologies Corp. ("SpaceX"), both the United States and the public more broadly would be severely harmed. First, there would be no prompt resolution of the significant 8 U.S.C. § 1324b claims brought against SpaceX. Thus, if, as IER contends, SpaceX has engaged in discriminatory practices, then SpaceX's requested relief would prevent the United States from obtaining an order requiring SpaceX to cease its discriminatory practices, some of which appear to be ongoing. Second, the United States would be unable to obtain remedies for potentially hundreds of individuals who the Complaint alleges SpaceX discriminated against, including requiring SpaceX to fairly consider them, hire them, and provide them back pay. And if the United States' Complaint before OCAHO cannot be adjudicated, employers across the country may be emboldened to engage in similar discrimination.

15. Eliminating OCAHO's ability to hear and decide cases under 8 U.S.C. § 1324b would undermine the statute's vital protections against discrimination and other unfair employment practices. It would almost certainly increase the incidents of citizenship and national origin discrimination—including employers refusing to hire workers because they are

not U.S. citizens, preferring certain workers over others because of their citizenship status or national origin, or refusing to accept valid documentation based on workers' citizenship status or national origin—all with little to no threat of punishment.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on October 17, 2023

                                               _____
                                               Alberto J. Ruisanchez
                                               Deputy Special Counsel
                                               Immigrant and Employee Rights Section
                                               Civil Rights Division
                                               U.S. Department of Justice