# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., | |
| *Plaintiff,* | |
| v. | Civ. Action No. 1:23-cv-00137 |
| CAROL BELL, in her official capacity as Administrative Law Judge of the Office of the Chief Administrative Hearing Officer; JAMES MCHENRY, in his official capacity as Chief Administrative Hearing Officer; and MERRICK B. GARLAND, in his official capacity as U.S. Attorney General, | |
| *Defendants.* | |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS
## <u>MOTION FOR PRELIMINARY INJUNCTION</u>

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

I.  SPACEX IS LIKELY TO SUCCEED ON THE MERITS OF EACH OF ITS CONSTITUTIONAL CLAIMS.........................................................................2

    A.  The Invalid IFR Cannot Cure The Conceded Appointments Clause Violation .................................................................................................2

        1.  *Section 1324b does not permit administrative review* .....................2

        2.  *DOJ cannot reconcile the IFR with the statutory text and structure* .................................................................................5

    B.  SpaceX Has Established A Redressable Removal Violation.......................7

        3.  *SpaceX is suffering redressable harm due to the removal violation.* ..................................................................................8

        4.  *Severability cannot cure the removal violation.* ...........................11

    C.  SpaceX Is Likely To Succeed On The Merits Of Its Article III And Seventh Amendment Claims.................................................................14

II.  WITHOUT A PRELIMINARY INJUNCTION, SPACEX WILL SUFFER IRREPARABLE HARM ...................................................................................18

III.  THE BALANCE OF HARMS AND PUBLIC INTEREST SUPPORT GRANTING A PRELIMINARY INJUNCTION.................................................19

CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Airlines, Inc. v. Brock*,
    480 U.S. 678 (1987) ................................................................................................12

*Alpine Sec. Corp. v. FINRA*,
    No. 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023) .................................9, 18

*Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*,
    430 U.S. 442 (1977) ................................................................................................17

*Axon Enter., Inc. v. FTC*,
    598 U.S. 175 (2023) ......................................................................................	*passim*

*Barr v. American Ass'n of Pol. Consultants, Inc.*,
    140 S. Ct. 2335 (2020) ............................................................................................12

*Bennett v. Spear*,
    520 U.S. 154 (1997) ..................................................................................................5

*Booth v. Galveston Cnty.*,
    No. 3:18-CV-00104, 2019 WL 3714455 (S.D. Tex. Aug. 7, 2019) ........................18

*Burgess v. FDIC*,
    639 F. Supp. 3d 732 (N.D. Tex. 2022) ....................................................................9

*Butz v. Economou*,
    438 U.S. 478 (1978) ................................................................................................13

*Calcutt v. FDIC*,
    37 F.4th 293 (6th Cir. 2022) ....................................................................................9

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994) ..................................................................................................4

*CFPB v. Law Offices of Crystal Moroney, P.C.*,
    63 F.4th 174 (2d Cir. 2023) ......................................................................................9

*Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*,
    333 U.S. 103 (1948) ..................................................................................................5

*Cochran v. SEC*,
    20 F.4th 194 (5th Cir. 2021) ........................................................................9, 18, 19

*Collins v. Dep't of the Treasury,*
    No. 22-20632, 2023 WL 6630307 (5th Cir. Oct. 12, 2023) .................................................8

*Collins v. Yellen,*
    141 S. Ct. 1761 (2021) ....................................................................................................8, 20

*Community Fin. Servs. Ass'n of Am., Ltd. v. CFPB,*
    51 F.4th 616 (5th Cir. 2022) .......................................................................................8, 9, 10

*Curtis v. Loether,*
    415 U.S. 189 (1974) ...........................................................................................................15

*Decker Coal Co v. Pehringer,*
    8 F.4th 1123 (9th Cir. 2021) ............................................................................................8, 9

*Deerfield Med. Ctr. v. City of Deerfield Beach,*
    661 F.2d 328 (5th Cit. 1981) ...............................................................................................18

*Frank's Nursery, LLC v. Walsh,*
    No. CV H-21-3485, 2022 WL 2757373 (S.D. Tex. July 14, 2022) .........................................17

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.,*
    561 U.S. 477 (2010) ...........................................................................................11, 12, 13

*Granfinanciera, S.A. v. Nordberg,*
    492 U.S. 33 (1989) .........................................................................................................14, 16

*Hernandez v. Texas Health and Hum. Servs. Comm'n,*
    No. 1:22-cv-157, 2023 WL 5020838 (July 13, 2023) ...........................................................16

*Jarksey v. SEC,*
    34 F.4th 446 (5th Cir. 2022) ........................................................................................ *passim*

*League of Women Voters of the United States v. Newby,*
    838 F.3d 1 (D.C. Cir. 2016) ...............................................................................................19

*Morrison v. Olson,*
    487 U.S. 654 (1988) ...........................................................................................................12

*Murphy v. National Collegiate Athletic Ass'n,*
    138 S. Ct. 1461 (2018) .......................................................................................................13

*NLRB v. SW Gen., Inc.,*
    580 U.S. 288 (2017) .............................................................................................................5

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
    566 U.S. 639 (2012) .............................................................................................................5

*Ramspeck v. Federal Trial Exm'rs Conf.*,
  345 U.S. 128 (1953) ................................................................................13

*Seila Law LLC v. CFPB*,
  140 S. Ct. 2183 (2020) ....................................................................8, 12, 13

*Sidak v. USITC*,
  No. 1:23-cv-00325 (TNM), 2023 WL 3275635 (D.D.C. May 5, 2023) ................10

*Sun Valley Orchards, LLC v. U.S. Dep't of Labor*,
  No. 1:21-cv-16625, 2023 WL 4784204 (D.N.J. July 27, 2023) ...........................17

*Thomas v. Union Carbide Agr. Prods. Co.*,
  473 U.S. 568 (1985) ..........................................................................17, 18

*Tull v. United States*,
  481 U.S. 412 (1987) ................................................................................15

*United States v. Arthrex, Inc.*,
  141 S. Ct. 1970 (2021) .................................................................... *passim*

*United States v. Perkins*,
  116 U.S. 483 (1886) ................................................................................12

*Utility Air Regul. Grp. v. EPA*,
  573 U.S. 302 (2014) ..................................................................................3

*Whitman v. American Trucking Ass'ns*,
  531 U.S. 457 (2001) ..............................................................................6, 7

*Ysleta Del Sur Pueblo v. Texas*,
  142 S. Ct. 1929 (2022) ..............................................................................4

**Constitution and Statutes**

U.S. Const.
  art. II ................................................................................................12
  art. III ............................................................................1, 14, 16, 20
  amend. VII .......................................................................1, 14, 16, 20

5 U.S.C.
  § 556(b) ............................................................................................14
  § 704 ....................................................................................................5
  § 706 ....................................................................................................3
  § 1202(d) ............................................................................................7
  § 7521(a) ........................................................................................7, 11

8 U.S.C.
§ 1324a(e)(7)...................................................................................................3
§ 1324b.................................................................................................*passim*
§ 1324b(e)(2) ............................................................................................14, 15
§ 1324b(g)(1) ..............................................................................................3, 6
§ 1324b(i).....................................................................................................3, 6
§ 1324b(i)(1) ...................................................................................................3
§ 1324b(j)(1) ....................................................................................................3
§ 1324b(j)(2) ...................................................................................................3
§ 1324c(d)(4) ...................................................................................................3

**Regulations**

28 C.F.R.
§ 68.2..............................................................................................................6
§ 68.51(c) ........................................................................................................4
§ 68.52(g) .....................................................................................................4, 6
§ 68.52(g)(2) ...................................................................................................3
§ 68.57..............................................................................................................6

**Federal Register**

54 Fed. Reg. 48,593-02.......................................................................................4

58 Fed. Reg. 51,735...........................................................................................7

88 Fed. Reg. 70,586-01............................................................................*passim*

**Other Authorities**

11A Charles Alan Wright & Arthur R. Miller, Federal Practice and
   Procedure § 2948.1 (3d ed. April 2023 update)..................................................18

The Harassment of Elon Musk, The Wall Street Journal (last visited Oct. 24,
   2023) ......................................................................................................11

Exec. Order No. 12,866 (Sept. 30, 1993).................................................................7

Fed. R. Civ. P. 15(a) ..........................................................................................3

H.R. Rep. No. 99-682(II) (1986) ...........................................................................4

Secretary of Educ. Rev. of Admin. Law Judges Decisions,
   15 Op. O.L.C. 8 (1991)...............................................................................5, 6, 12

The Federalist No. 47 (James Madison) (C. Rossiter ed. 1961) ....................................20

Thomas Jefferson, *Notes on the State of Virginia*, Vol. 1, Ch. 10, Doc. 9 (1784).........................19

## INTRODUCTION

The government concedes that Space Exploration Technologies Corp. (SpaceX) would succeed on the merits but for a late-breaking development: an interim final rule (IFR), published two weeks after—and seemingly in direct response to—SpaceX's preliminary injunction motion. The IFR purports to subject Office of the Chief Administrative Hearing Officer (OCAHO) ALJs' 8 U.S.C. § 1324b final orders to administrative review. There's just one problem: The IFR is unlawful for various reasons, including because it squarely conflicts with Section 1324b.

Without that invalid regulation, which the government leans on for all of its merits arguments, little remains of the government's defense. The government admits that OCAHO ALJs' powers are inconsistent with their status as inferior officers under the Appointments Clause. That alone warrants injunctive relief. But the government also appears to concede that OCAHO ALJs are unlawfully insulated from Presidential removal under the Fifth Circuit's binding decision in *Jarkesy v. SEC*. Its arguments that the unconstitutional proceedings must continue anyway cannot overcome the Supreme Court's reasoning in *Axon Enterprise, Inc. v. FTC* (which confirms that SpaceX is harmed by the removal restrictions) or clear congressional intent (which confirms the restrictions cannot be severed). With respect to Article III and the Seventh Amendment, the government does not dispute that its Section 1324b claims are analogous to common-law torts and compatible with jury trials. Under *Jarkesy*, that means the claims may be brought only in court.

The remaining preliminary injunction factors are not a close call either. SpaceX is suffering multiple forms of irreparable harm by being forced to participate in illegitimate proceedings, and delay would not prejudice the government's efforts to secure primarily backward-looking relief for alleged violations that occurred years ago (as to which not one alleged victim has ever complained or sought relief).

This Court should grant SpaceX's motion for a preliminary injunction.

1

I.   **SPACEX IS LIKELY TO SUCCEED ON THE MERITS OF EACH OF ITS CONSTITUTIONAL CLAIMS**

   A.   **The Invalid IFR Cannot Cure The Conceded Appointments Clause Violation**

      1.   *Section 1324b does not permit administrative review*

The government agrees that OCAHO ALJs' "ability to issue final decisions without the opportunity for further review within the Executive Branch [is] 'incompatible with their appointment . . . to an inferior office.'" Opp. 8 (quoting *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 1985 (2021)). Furthermore, the government does not dispute that—unlike in *Arthrex*—there is no logical way to "sever[] the unconstitutional portion of the statute" and thereby fix the Appointments Clause problem. 141 S. Ct. at 1986. That is because a constellation of provisions, rather than a single express restriction, precludes further review within the Executive Branch. *See* Mot. 11-12. Had the government believed that the Court could construe Section 1324b to comply with the Appointments Clause, or lawfully sever any unconstitutional provision, it would have argued as much.

Instead, the government has belatedly tried to patch its Appointments Clause problem with a regulatory band-aid. On October 12, 2023—sixteen days after SpaceX moved for a preliminary injunction—DOJ's Executive Office of Immigration Review (EOIR) published its IFR. *See* Office of the Chief Administrative Hearing Officer, Review Procedures, 88 Fed. Reg. 70,586-01 (Oct. 12, 2023) (to be codified at 28 C.F.R. pt. 68). The IFR purports to provide the Attorney General with discretionary authority to review OCAHO ALJs' Section 1324b final orders—though it also provides that "no party will have the right to seek or request such review." *Id.* at 70,589. In support of its makeshift solution, the government suggests, incredibly, that the statute has actually permitted such never-exercised review since it was enacted 37 years ago. *See* Opp. 9.

2

DOJ's frantic gambit fails to save the statute from *Arthrex*'s reasoning, because the IFR *itself* is unlawful.[1] *First*, and most obviously, the IFR conflicts with the statute's terms. Section 1324b(g)(1) requires an OCAHO "administrative law judge" to issue "an order, which shall be final unless appealed as provided under subsection (i)." Subsection (i), in turn, provides for appeal in an appropriate "United States Court of Appeals," not within DOJ. 8 U.S.C. § 1324b(i)(1). Section 1324b further provides that when the government petitions a court to enforce "an order of the agency," the court has power to "enter a decree enforcing the order *of the administrative law judge*," not any other order. *Id.* §§ 1324b(j)(1)-(2) (emphasis added). And under the statute, an aggrieved person has just 60 days from the date of the entry of the "final" order of the "administrative law judge" to appeal, *id.* §§ 1324b(g)(1), (i)—not, as the government would now have it, 60 days from the date that order is subsequently modified by the Attorney General, *see* 28 C.F.R. § 68.52(g)(2) (Oct. 12, 2023) (60-day deadline applies "unless" "the order is referred to the Attorney General"). The provisions of Section 1324b, independently and collectively, thus make clear that any further review of a "final" ALJ order is to occur only outside the Executive Branch— and preclude the IFR's revised, contradictory framework.

*Second*, "the broader context of the statute as a whole" reinforces the plain text interpretation. *See Utility Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014). Congress sandwiched Section 1324b between Sections 1324a (governing unlawful employment of aliens) and 1324c (governing document fraud) of the same statute. In Sections 1324a and 1324c, Congress expressly provided for "Administrative appellate review" of ALJ decisions by the Attorney General. 8 U.S.C. §§ 1324a(e)(7), 1324c(d)(4). Congress's decision not to provide for Attorney General

---

[1] Although this Court may freely recognize the IFR's clear invalidity in assessing SpaceX's constitutional claims, SpaceX has concurrently filed an amended complaint (ECF No. 23-1) with a new claim challenging the IFR to ensure that no procedural barriers prevent this Court from "hold[ing] unlawful and set[ting] aside" the IFR under 5 U.S.C. § 706.

review for 1324b, when it provided for such review in 1324a and 1324c, must therefore be viewed as intentional.  *See, e.g.*, *Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1939 (2022) (describing "usual presumption that differences in language" within the same statute "convey differences in meaning" (internal quotation marks omitted)). Those different procedures in neighboring sections "indicate[] a deliberate congressional choice with which the courts should not interfere." *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 184 (1994).

*Third*, although the statute is clear, the legislative history (which the government relies on for different purposes, *see* Opp. 22), confirms that in drafting Section 1324b, Congress consciously deviated from other administrative review frameworks, such as those in the National Labor Relations Act, because it instead preferred immediate judicial review. *See* H.R. Rep. No. 99-682(II) (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5757, 5762, 1986 WL 31951, at *14; *see also id.* at *13 (goal was to provide "a faster and more certain determination of rights").

Indeed, DOJ itself has consistently interpreted Section 1324b this way for nearly 35 years. *E.g.*, 28 C.F.R. § 68.51(c) (1989) (providing for administrative review of ALJ decisions in Section 1324a cases but not Section 1324b cases); *see also* 54 Fed. Reg. 48,593-02 (Nov. 24, 1989). The government now argues that the "implementing regulations did not expressly state" whether Section 1324b ALJ orders were subject to internal agency review. Opp. 9. But until it hastily adopted the IFR a few weeks ago, the "regulations provide[d] that the ALJ's final order in a case under section [1324b] . . . is the final agency order *and is not subject to further review within the Department*." 88 Fed. Reg. at 70,587 (emphasis added) (citing 28 C.F.R. § 68.52(g) (2022)). That is the entire reason why, "[i]n light of *Arthrex*" (which the Supreme Court decided 28 months ago), DOJ was obliged to opportunistically "reexamine the statutory and regulatory framework" and

issue a regulation for the first time "allowing" the Attorney General to exercise this (ostensibly) nascent review authority. Opp. 9.

### 2. DOJ cannot reconcile the IFR with the statutory text and structure

Although the government's opposition does not address the statutory conflict, the IFR attempts (unconvincingly) to do so. It points out that the Administrative Procedure Act (APA)'s "default rule of agency review of ALJ decisions" provides that an agency order can be "final" for judicial-review purposes even if not literally the "final" agency decision. 88 Fed. Reg. at 70,588. But "it is a commonplace [rule] of statutory construction that the specific governs the general," *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012), so the APA default "yields to the more specific" procedures set forth in Section 1324b, *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 305 (2017); *see also* 5 U.S.C. § 704 (APA default applies "[e]xcept as otherwise expressly required by statute"). And as noted, those procedures make clear that Section 1324b's "shall be final" language refers to the "consummation of the agency's decisionmaking process," *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997) (quoting *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)), with no further Executive Branch review allowed. DOJ points to no textual indication that Congress contemplated optional review of Section 1324b decisions by the Attorney General, let alone wholly illusory review that "no party will have the right to seek or request." 88 Fed. Reg. at 70,589.

The IFR also cites a 1991 Office of Legal Counsel (O.L.C.) opinion to argue that the phrase "shall be final" in Section 1324b(g)(1) does not necessarily mean that the ALJ's order is the agency's "last word," such that the agency should be free to fabricate an additional layer of review that Congress never contemplated. 88 Fed. Reg. at 70,588 (citing Secretary of Educ. Rev. of Admin. Law Judges Decisions, 15 Op. O.L.C. 8, 10-11 (1991)). But DOJ again ignores the additional Section 1324b provisions discussed above, which make clear that Congress *did* intend

an OCAHO ALJ's order to be the "last word" (as DOJ's implementing regulations reflected until a few weeks ago). In any event, the OLC opinion addressed statutory language providing that an ALJ's decision "shall be *considered to be a* final agency action"—and expressly distinguished the "shall *be* final"-type language Congress used in Section 1324b. 15 Op. O.L.C. at 10 (underline in original) (second emphasis added); *see also* 88 Fed. Reg. at 70,588 (acknowledging that under *other* Executive Branch review provisions, "ALJs render 'initial decisions,' sometimes called 'recommended decisions'"). Thus, even if DOJ's interpretation worked for other statutory provisions, it does not work for this one.

The IFR has another problem: it overrides Congress's clear choice to allow parties to seek judicial review within 60 days of an adverse "final" order of the "administrative law judge." 8 U.S.C. §§ 1324b(g)(1), (i). Under the IFR, if the Attorney General does not exercise the purported review authority, the ALJ's order does not become an appealable "final agency order" until 60 days have elapsed, after which an aggrieved party has another 60 days to appeal. 28 C.F.R. §§ 68.52(g), 68.57 (Oct. 12, 2023). In other words, DOJ has explicitly disagreed with Congress's choice to give parties 60 days to judicially appeal a Section 1324b ALJ order—and has instead conjured a *120-day* judicial-review deadline out of thin air.[2]

Of course, Congress could fix the statute's constitutional infirmity, whether using DOJ's proposed approach or a different one. But DOJ cannot save the statute by adopting an IFR that is clearly contrary to the statutory text. *Cf. Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 472

---

[2] At least, that appears to be DOJ's position. Literally read, the obviously hurried IFR is nonsensical: It provides that (1) an order does not become a "final agency order" until 60 days after "entry of the Administrative Law Judge's order," 28 C.F.R. § 68.52(g) (Oct. 12, 2023), but (2) a party must also seek review "within sixty (60) days after entry of the order," *id.* § 68.57, i.e., within 60 days from "the date the Administrative Law Judge . . . signs the order," *id.* § 68.2 (defining "Entry"); *see* 88 Fed. Reg. at 70,590-70,591. The upshot: By the time an order becomes an appealable "final agency order," it is too late for a party to seek judicial review.

(2001) (agency could not "cure an unlawful delegation . . . by adopting in its discretion a limiting construction of the statute").[3]

In sum, there is no dispute that DOJ has been enforcing an unconstitutional statute for decades—and for more than two years since *Arthrex*—and finally decided to do something about the Appointments Clause defect only when SpaceX brought this challenge instead of capitulating to DOJ's demands like most other OCAHO defendants. *See* Mot. 23 n.2 (pointing out that most, if not all, Section 1324b matters settle); ECF No. 20-1 (Ruisanchez Decl.) ¶ 10 (boasting that DOJ has obtained "more than 250 settlements" in Section 1324b cases "[o]ver the past decade" without identifying a single non-settlement victory). But DOJ's disingenuous solution—a substantively and procedurally unlawful regulation—turns out to be no solution at all. SpaceX is likely to succeed on the merits on that basis alone.

### B.      SpaceX Has Established A Redressable Removal Violation

In addition to adjudicating Section 1324b cases in violation of the Appointments Clause, OCAHO ALJs are unconstitutionally insulated by two levels of for-cause removal protections. 5 U.S.C. § 7521(a) (for-cause removal *by* Merit Systems Protection Board (MSPB) members); 5 U.S.C. § 1202(d) (for cause removal *of* MSPB members). The government acknowledges that *Jarkesy* held these removal restrictions unconstitutional with respect to SEC ALJs, and that this Court must reach the same result "[t]o the extent [it] is bound by *Jarkesy*." *See* Opp. 15. Of course, this Court *is* bound by *Jarkesy*, so it does not matter that the government "disagree[s]" with that

---

[3] Notably, DOJ also evaded mandatory procedures while rushing the self-serving IFR into existence. *See* Amend. Compl. ¶ 88. Regulations, including those "designed to . . . describe the procedure or practice requirements of an agency," must be submitted to DOJ's Office of Management and Budget (OMB) for review. *See* Exec. Order No. 12,866 §§ 1(b), 3(d), 58 Fed. Reg. 51,735 (Sept. 30, 1993). The IFR cites an exception for rules "limited to agency organization, management, or personnel matters." 88 Fed. Reg. at 70,590 (citing Exec. Order No. 12,866 § 3(d)(3)). But a rule that provides for previously unavailable administrative review, thereby reshaping the procedural path for litigants before the agency, plainly goes beyond those limited, internally focused categories.

decision. *Id.* Accordingly, the Court need not consider the other arguments the government makes for preservation purposes.[4]

Despite its concession, the government raises two alternative theories for why SpaceX cannot obtain relief. Both are meritless.

### 3. *SpaceX is suffering redressable harm due to the removal violation.*

The government argues that the proceedings, although illegitimate, must continue because "SpaceX fails to allege prejudicial harm." Opp. 10. In DOJ's view, SpaceX must show the President wants to remove Judge Bell and that, but for the removal restrictions, "challenged actions" that Judge Bell has *already* taken against SpaceX would not have occurred. *Id.*

As an initial matter, the government overlooks that when an unlawfully insulated official *also* "lack[s] the authority to carry out the functions of the office," including when the official is acting "in violation of [the] Appointments Clause," there is no need to show independent harm from a removal restriction. *Collins v. Yellen*, 141 S. Ct. 1761, 1788 (2021); *accord Community Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 631 (5th Cir. 2022). Because the IFR is unlawful, SpaceX's prejudice is presumed.

In any event, the government's rule does not apply to *ongoing* unconstitutional adjudications. None of the government's authorities address litigants seeking relief from the continuing burdens of ongoing unconstitutional proceedings. *See Community Fin. Servs. Ass'n of Am.*, 51 F.4th at 625 (plaintiffs sought to enjoin enforcement of already-promulgated regulation); *Collins v. Dep't of the Treasury*, No. 22-20632, 2023 WL 6630307, at *7 (5th Cir. Oct. 12, 2023)

---

[4] Not that those arguments are persuasive. Among other flaws, they rely on (i) OCAHO ALJs' purported non-executive functions, *but see Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2198 n.2 (2020) (such reasoning has "not withstood the test of time") and (ii) the Ninth Circuit's decision in *Decker Coal Co v. Pehringer*, 8 F.4th 1123 (9th Cir. 2021), *but see Jarkesy v. SEC*, 34 F.4th 446, 478 (5th Cir. 2022), *cert. granted sub nom.*, *SEC v. Jarkesy*, 143 S. Ct. 2688 (2023) (Mem.) (Davis, J., dissenting) (explaining that the *Jarkesy* majority opinion "is in tension, if not direct conflict, with *Decker Coal*").

(plaintiffs sought "elimination of [Department of the Treasury] liquidation preferences"); *CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023) (plaintiff raised defense to agency's petition to enforce a civil investigative demand); *Calcutt v. FDIC*, 37 F.4th 293, 309 (6th Cir. 2022), *rev'd on other grounds*, 598 U.S. 623 (2023) (agency proceedings concluded); *Decker Coal*, 8 F.4th at 1126 (agency proceedings concluded); *Burgess v. FDIC*, 639 F. Supp. 3d 732, 739 (N.D. Tex. 2022) (agency proceedings concluded pending FDIC Board's final decision). In such challenges to enjoin the effect of final agency orders, there is no relevant "distinction between prospective and retrospective relief." *Community Fin. Servs. Ass'n of Am.*, 51 F.4th at 631.

But as the Supreme Court has more recently made clear, a challenge to an agency's "power to proceed at all" is different from a challenge to "action[s] [already] taken in the agency proceedings." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 192 (2023). When the plaintiff challenges an *ongoing* proceeding, the relevant harm is being subjected "to an illegitimate proceeding, led by an illegitimate decisionmaker." *Id.* at 191. While "[a] proceeding that has already happened cannot be undone," limiting the impact of prospective relief, "[w]hat makes the difference here is the nature of the claims and the accompanying harms that [SpaceX is] asserting." *Id.* at 191-192. Continued "subjection to an unconstitutionally structured decisionmaking process" causes a "here-and-now injury" akin to the harms addressed by "established immunity doctrines," e.g., when a party is denied its right "not to stand trial." *Id.* at 192. That is the harm SpaceX is suffering. *See, e.g.*, *Cochran v. SEC*, 20 F.4th 194, 212-213 (5th Cir. 2021), *aff'd and remanded sub nom.*, *Axon*, 598 U.S. 175 (if removal claim is "meritorious," plaintiff should not be "forc[ed] to litigate before an ALJ who is unconstitutionally insulated from presidential control"); Order, *Alpine Sec. Corp. v. FINRA*, No. 23-5129, 2023 WL 4703307, at *3 (D.C. Cir. July 5, 2023) (Walker, J., concurring) (explaining that enjoining administrative adjudication pending appeal was appropriate based on

*Axon* in part because the plaintiff was likely to prevail on claim officers were unlawfully "shielded from removal").

The government's contrary argument would render *Axon* a dead letter in collateral removal challenges. But *Axon itself* was a collateral removal challenge. *See* 598 U.S. at 180 ("[R]espondents claim that the agencies' [ALJs] are insufficiently accountable to the President[.]"). The point of *Axon* is that courts should be able to halt illegitimate agency proceedings without waiting for them to conclude because the targets of such proceedings will be unable to obtain "meaningful judicial review"—win or lose—after the fact. *Id.* at 195. Yet a challenger could never satisfy the government's requirement to show that administrative proceedings have "unfold[ed] in a manner detrimental to [it]" when, as the government argues here, "the ALJ proceedings have barely begun." Opp. at 10-11. The government does not attempt to square the implications of its argument—that a party may collaterally attack removal restrictions only after the challenged "proceeding ha[s[] run its course"—with *Axon*. *See Sidak v. USITC*, No. 1:23-cv-00325 (TNM), 2023 WL 3275635, at *6 (D.D.C. May 5, 2023) (rejecting similar argument based on *Axon*). In other words, because *Axon* demonstrates that the unlawful removal restrictions "would cause" harm in the ongoing adjudication, *Community Fin. Servs. Ass'n of Am.*, 51 F.4th at 632, the government's standard is inapposite.

Nor must the parties guess what the agency and the President—whether the current one or some future one—will do as the illegitimate proceedings unfold. *Axon* reflects an understanding that challengers like SpaceX will simply "lose their rights" if faced with such insurmountable obstacles to showing harm from indisputably illegitimate proceedings. 598 U.S. at 192.

Regardless, SpaceX is the rare litigant that *could* show that the unlawful removal restrictions will impact an ALJ's behavior. *See* Amend. Compl. ¶ 67 ("The President's inability to

freely remove Judge Bell . . . is likely to affect her conduct of the proceedings"); *see also* ECF No. 1 (Compl.) ¶ 60. The government's administrative complaint prominently features statements by SpaceX's CEO Elon Musk, including reference to his "36 million followers [as of June 16, 2020] on X, a social media platform formerly known as Twitter" (which Musk now owns). ECF No. 11-2 (OCAHO Compl.) ¶ 36. As those allegations underscore, Musk is an extremely influential public figure. That makes the OCAHO proceedings especially politically salient. Indeed, the Wall Street Journal has described the "remarkable number of government probes" that Musk faces—including the OCAHO proceedings—as "The Harassment of Elon Musk."[5] Given that context, it is all but certain that an attentive public would hold the President accountable for the conduct and outcome of the OCAHO proceedings—such that the President would, in turn, have a strong incentive to hold the ALJ accountable—if "[t]he buck stop[ped] with the President." *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 493 (2010). Instead, it stops with Judge Bell.

### 4. *Severability cannot cure the removal violation.*

The government also argues that SpaceX cannot obtain an injunction because the unconstitutional removal protections are severable. *See* Opp. 11-14. Specifically, the government argues that the Court should rewrite the removal protection that applies to ALJs so that they are removable "by the agency in which the [ALJ] is employed only for good cause *as determined by the Attorney General*—rather than "by the Merit Systems Protection Board on the record after opportunity for hearing before the Board." *See* Opp. 12 (quoting 5 U.S.C. § 7521(a)). Even if that radical change were consistent with congressional intent, it wouldn't solve the problem: OCAHO ALJs function as principal officers who must be removable at will by the President, not for good cause by a subordinate. *See* Mot. 14-15. As discussed above, the invalid IFR cannot change that.

---

[5] The Harassment of Elon Musk, THE WALL STREET JOURNAL, https://www.wsj.com/articles/elon-musk-biden-administration-justice-department-investigations-accdd84a (last visited Oct. 24, 2023).

Even if the IFR were valid, *any* removal restriction for OCAHO ALJs would not be. OCAHO ALJs do not fit either exception under which Congress may assign for-cause removal power to "a subordinate [the President] could remove at will" (such as the Attorney General). *Free Enter. Fund*, 561 U.S. at 495. Their "duties" are not "limited" either in authority (like the naval cadet-engineer's duties in *United States v. Perkins*, 116 U.S. 483 (1886)) or in duration and scope (like the independent counsel's duties in *Morrison v. Olson*, 487 U.S. 654 (1988)). *See Seila Law*, 140 S. Ct. at 2199-2200. On the contrary, OCAHO ALJs remain in their roles indefinitely, and they exercise sweeping investigatory and enforcement powers over adversarial adjudications under 8 U.S.C. § 1324b. Indeed, while the *Perkins*/*Morrison* exception applies only to inferior officers with "no policymaking . . . authority," *Seila Law*, 140 S. Ct. at 2200, DOJ's own authority acknowledges that adjudicative ALJs "determine, on a case-by-case basis, the policy of an executive branch agency." Secretary of Educ. Review of All Decisions, 15 Op. O.L.C. at 15. The Supreme Court has never countenanced for-cause removal restrictions for inferior officers with such broad powers and indefinite tenure. *See Seila Law*, 140 S. Ct. at 2200 (existing restrictions are "the outermost constitutional limits"). For good reason, as doing so would "blur the lines of accountability" required under Article II. *Arthrex*, 141 S. Ct. at 1982. Accordingly, even the government's aggressive revisions do not go far enough.

Furthermore, severability is a question of not only whether the "remainder" of a statute is lawful and "capable of functioning independently," Opp. at 11-12 (quoting *Barr v. American Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2353 (2020)), but also whether "Congress would . . . have enacted" that remainder, *Seila Law*, 140 S. Ct. at 2209 (quoting *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987)). Here, the answer is clearly no: The government does not dispute that the primary purpose underlying Congress's creation of the ALJ regime was to *eliminate* agency

heads' control over in-house adjudicators because independence was perceived as necessary for a fair hearing. *See* Opp. at 13; Mot. at 16-19. Nor does the government dispute that, to effectuate that objective, Congress considered several alternative proposals besides removal protection, such as creating an independent adjudicatory agency. *See* Mot. at 18. There is thus no question that the government's solution "would have seemed exactly backwards" "[t]o the Congress[es] that adopted" the protections. *Murphy v. National Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1483 (2018).

The government emphasizes that the Supreme Court severed removal restrictions in *Seila Law* and *Free Enterprise Fund*. Opp. at 13-14. But in those cases, there was no evidence that Congress had affirmatively considered alternative options that were consistent with its evident purposes. *See Seila Law*, 140 S. Ct. at 2210; *Free Enter. Fund*, 561 U.S. at 509. Such options were "theor[etical]" possibilities, not real-world reasons to conclude that Congress would have opposed severance. *Free Enter. Fund*, 561 U.S. at 509-510; *accord Seila Law*, 140 S. Ct. at 2211. By contrast, Congress's consideration of alternatives is weighty evidence that, compared with "dependent [ALJs]," Congress "would have preferred . . . no [ALJs] at all" until it could fix the scheme or enact an alternative. *Seila Law*, 140 S. Ct. at 2210 (emphasis omitted). Judicially recreating the in-house adjudicators who were "mere tools of the agency concerned," *Ramspeck v. Federal Trial Exm'rs Conf.*, 345 U.S. 128, 131 (1953), and who Congress believed could not provide a "fair and competent hearing," *Butz v. Economou*, 438 U.S. 478, 514 (1978), would be more "damag[ing] to Congress's work" than simply allowing Congress the opportunity to adopt the solution it prefers. Opp. 13 (internal quotation marks omitted).

Importantly, all of this applies with special force to OCAHO ALJs. As SpaceX explained (Mot. 18) and the government ignores, Section 1324b deviates from the APA's default rule by

requiring all hearings to be conducted using the removal-protected ALJs, ensuring decisional independence, *compare* 8 U.S.C. § 1324b(e)(2), *with* 5 U.S.C. § 556(b). Making OCAHO ALJs wholly subservient to the Attorney General (or President) would effectively nullify that provision, which is further textual evidence that Congress would not have enacted any such framework.

### C. SpaceX Is Likely To Succeed On The Merits Of Its Article III And Seventh Amendment Claims

When an administrative enforcement action includes claims that (1) are "akin to traditional actions at law to which the jury-trial right attaches," and (2) "do not concern public rights alone," the Seventh Amendment applies and the claims must be heard (if anywhere) in an Article III court with a right to trial by jury. *Jarkesy*, 34 F.4th at 451. The government does not dispute that its claims against SpaceX are "closely analogous to common-law claims." Opp. 20 (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989) (emphasis omitted)); *see* Mot. 20-21. The government argues only that SpaceX cannot meet the second factor because "[Section] 1324b administrative proceedings involve public rights." Opp. 20.

The government misunderstands the public rights doctrine. According to the government, the doctrine applies simply because the government's claims concern a "statutory right[]" created by a "public regulatory scheme." Opp. 19. But the same was true in *Jarkesy*, which recognized that "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency." 34 F.4th at 457 (quoting *Granfinanciera*, 492 U.S. at 61). "Surely Congress believes that" Section 1324b, like the "securities statutes" at issue in *Jarkesy*, "serve[s] the public interest"—"[y]et Congress cannot convert any sort of action into a 'public right' simply by finding a public purpose for it and codifying it in federal statutory law." *Id.* at 456-457.

14

Under *Jarkesy*, the public rights doctrine does not apply if the underlying claim (i) was "[]known to the common law," and (ii) could be brought before a jury without "dismantl[ing] the statutory scheme" or "imped[ing] swift resolution of the claims." 34 F.4th at 453 (internal quotation marks omitted). That describes the government's Section 1324b claims.

*First*, the government does not dispute that its claims are "analogous to a number of tort actions recognized at common law." *Curtis v. Loether*, 415 U.S. 189, 195 & n.10 (1974); *see* Opp. 20. Although the government argues that there is no "longstanding history of federal courts resolving employment discrimination claims involving noncitizens" specifically, Opp. 22, the test is not so granular—it requires only that the administrative action "echo actions that historically have been available under the common law," *Jarkesy*, 34 F.4th at 455. As SpaceX explained (Mot. 21) and the government does not address, an employment discrimination claim echoes various common-law "dignitary tort" claims, regardless of the alleged basis of the discrimination. *Curtis*, 415 U.S. at 195 n.10.

*Second*, the government neither contests that juries "have dealt with" analogous employment discrimination claims "for many decades," nor argues that jury trials would be "incompatible" with such claims. *Jarkesy*, 34 F.4th at 456, 458-459; *See* Opp. 21. The government posits that Congress "call[ed] for administrative adjudication by specialized ALJs" because "remedies available in courts of law were inadequate to cope with discrimination based on citizenship and alienage." Opp. 22. But that doesn't add up: DOJ is seeking at least two categories of "remedies"—civil penalties and compensatory damages—that are traditionally available in courts of law. *Jarkesy*, 34 F.4th at 452 (citing *Tull v. United States*, 481 U.S. 412, 417-419 (1987)); *Curtis*, 415 U.S. at 195-197. Plus, the statute calls for ALJs with "special training respecting *employment discrimination*," 8 U.S.C. § 1324b(e)(2) (emphasis added), not specialized training in

"citizenship and alienage," as the government argues. Employment discrimination cases are "nothing new and nothing foreign to Article III tribunals and juries." *Jarkesy*, 34 F.4th at 457.[6] Indeed, this Court regularly addresses employment discrimination cases seeking civil penalties and damages. *See, e.g.*, *Hernandez v. Texas Health and Hum. Servs. Comm'n*, No. 1:22-cv-157, 2023 WL 5020838, at *1 (July 13, 2023), *R. & R. adopted*, 2023 WL 5018429 (S.D. Tex. Aug. 7, 2023) (Olvera, J.) (sex-discrimination plaintiff sought various "types of pecuniary and nonpecuniary damages").

The government seeks to distinguish *Jarkesy* on the ground that Congress had enabled "the SEC to bring enforcement actions either in-house or in Article III courts," and did not limit such actions "to administrative tribunals." Opp. 22 (quoting *Jarkesy*, 34 F.4th at 455-456). But in pointing out that the government could have "purported to" create administrative-only adjudication, *Jarkesy* hardly blessed that option. *Jarkesy*, 34 F.4th at 456. *Jarkesy* discussed the SEC's statutory power to sue "in Article III courts" to help explain why jury trials would not "dismantle the statutory scheme" or be significantly "less efficient" than in-house adjudications. *Jarkesy*, 34 F.4th at 456. It did not imply that an individual's Article III and Seventh Amendment rights (paradoxically) vanish if Congress chooses to close the courthouse doors. *See Jarkesy*, 34 F.4th at 457; *Granfinanciera*, 492 U.S. at 61.

Finally, the government invokes a purported exception to Article III and the Seventh Amendment for "claims concerning immigration and related labor and employment laws." Opp. 19. But the question under *Jarkesy* is not whether Section 1324b proceedings (like actions under

---

[6] The government contends that adjudicating Section 1324b claims "may require unique expertise over [various] immigration law issues," apparently above and beyond the "expertise" of an Article III judge, due to difficult questions about "the nature of a person's immigration status and the attendant rights and duties, . . . and the interplay between different provisions of immigration law." Opp. 22 n.10. But if Section 1324b is too complicated for a federal court to interpret and apply, it seriously undermines DOJ's allegation that SpaceX intentionally violated it. *See* OCAHO Compl. ¶ 55.

the securities laws) are peripheral to public rights in some loose sense; it is whether the government's *specific* claims against SpaceX involve such rights "*alone*." 34 F.4th at 451 (emphasis added). Employment discrimination claims seeking civil penalties and the equivalent of compensatory damages do not involve only public rights, *see* Mot. 20-21, regardless of whether they arise in the general "field of immigration," Opp. 19.

The government points to no authority supporting its nebulous and unsound "immigration" exception. It principally relies on *Frank's Nursery, LLC v. Walsh*, but that non-binding decision addressed a challenger whom the court found had "consented to executive adjudication by litigating before the [agency] without objection." No. CV H-21-3485, 2022 WL 2757373, at *8 (S.D. Tex. July 14, 2022). More to the point, *Frank's Nursery* did not involve anything like employment discrimination: The government had alleged nondisclosure of a "drug testing requirement," failure to meet "sanitation standards," "failure to include its Federal Employer Identification Number on its pay statements," and unreasonable tax deductions. *Id.* at *4; *see also Sun Valley Orchards, LLC v. U.S. Dep't of Labor*, No. 1:21-cv-16625, 2023 WL 4784204, at *2-3 (D.N.J. July 27, 2023) (similar), *appeal filed*, No. 23-2608 (3d Cir. Sept. 5, 2023). If the public rights doctrine applies to such claims, it is because they are "unknown to the common law." *See Jarkesy*, 34 F.4th at 453. Although the same may be said for other actions to enforce "customs and immigration laws," *Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 451 (1977), that does not mean *all* actions in the immigration "field" or "area" involve only public rights, Opp. 19, 23. Traditional employment-discrimination claims seeking traditional remedies on behalf of "private individuals," Ruisanchez Decl. ¶ 13, clearly do not.[7]

_____

[7] The government does not dispute that employment discrimination claims are common-law claims, but notes that Congress has assigned "certain employee 'claims for compensation' . . . to administrative agencies." Opp. 21 (quoting *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 586-588 (1985)). *Union Carbide* addressed an

## II.   WITHOUT A PRELIMINARY INJUNCTION, SPACEX WILL SUFFER IRREPARABLE HARM

"[H]aving to proceed through an allegedly unconstitutional administrative proceeding" is irreparable harm, *contra* Opp. 23, at least when the proceeding is a burdensome adjudication, Mot. 23. "When an alleged deprivation of a constitutional right is involved, . . . most courts hold that no further showing of irreparable injury is necessary." 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (3d ed. April 2023 update); *see also Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cit. 1981) (denial of constitutional rights "for even minimal periods of time constitutes irreparable injury"); *Booth v. Galveston Cnty.*, No. 3:18-CV-00104, 2019 WL 3714455, at *17 (S.D. Tex. Aug. 7, 2019) ("This concept that a violation of a constitutional right in and of itself constitutes irreparable injury has been universally recognized and is not open to debate."). And *Axon* specifically held that "being subjected to unconstitutional agency authority . . . by an unaccountable ALJ . . . is a here-and-now injury" that is "*impossible to remedy once the proceeding is over, which is when appellate review kicks in*." *Axon*, 598 U.S. at 191 (emphasis added) (internal quotation marks omitted). That is the definition of irreparable harm. *See* 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2948.1 (irreparable harm "impair[s] the court's ability to grant an effective remedy" later); *see also Alpine Sec. Corp.*, 2023 WL 4703307, at *2 (Walker, J., concurring) (equating harm described in *Axon* with irreparable harm).

On top of that, SpaceX is suffering unrecoverable financial and reputational damage. *See* Mot. 23. The government dismisses these harms because "any litigation can impact an entity's reputation or incentivize settlement." Opp. 24. But this is not "any litigation." *See Cochran*, 20

---

administrative compensation scheme for relating to pesticide registration. 473 U.S. at 571. Neither *Union Carbide* nor the cases it cites has anything to do with employment discrimination.

F.4th at 209-210 (finding irreparable harm where plaintiff "challenge[d] the entire legitimacy of her proceedings, not simply the cost and annoyance"). An unlawfully appointed, unaccountable ALJ within DOJ is adjudicating SpaceX's private rights while other DOJ officials are prosecuting the case. *Cf.* Thomas Jefferson, *Notes on the State of Virginia*, Vol. 1, Ch. 10, Doc. 9 (1784) ("The concentrating [of] these in the same hands is precisely the definition of despotic government."). This combination of constitutional violations negates SpaceX's ability to defend its reputation as the proceedings unfold, as indicated by the apparently inexorable pressure to settle Section 1324b cases. *See* Mot. 23 n.2; Ruisanchez Decl. ¶ 10. An agency's use of an unconstitutional structure "to extract settlement terms [it] could not lawfully obtain any other way," *Axon*, 598 U.S. at 216 (Gorsuch, J., concurring), is not a "burden[] incident to . . . litigation," Opp. 24.

## III.   THE BALANCE OF HARMS AND PUBLIC INTEREST SUPPORT GRANTING A PRELIMINARY INJUNCTION

The balance of harms and public interest weigh in favor of requiring OCAHO to abide by the Constitution, rather than "perpetuat[e] unlawful agency action." *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). That is even more so because the government primarily seeks to collect backward-looking monetary penalties and damages to compensate alleged victims—and alleges no specific ongoing unlawful discrimination. *See* OCAHO Compl. ¶¶ 1, 43, 44, 45, 48, 51, & at 12; *see also* Ruisanchez Decl. ¶ 14 (asserting that violations "appear to be ongoing," without explanation). For its part, SpaceX is committed to hiring the best people without discrimination against anyone (including refugees or asylees) and in conformity with its legally compliant anti-discrimination policies. ECF No. 11-1 (Gallman Decl.) ¶¶ 11, 14.

The government barely addresses these points. It states that an injunction would "delay relief" for unidentified individuals, Opp. 25, but the violations alleged occurred years ago, the

government does not contend that a single asylee or refugee has filed a claim alleging unlawful discrimination against SpaceX, and the government seeks compensatory relief that (by definition) accounts for any delay, *see* OCAHO Compl. 12 (seeking "back pay, including interest"). Accordingly, any harm to such individuals—unlike the harm to SpaceX—is not irreparable.

Elsewhere in its brief, the government stresses the "disruptive consequences for agencies across the government" if this Court grants SpaceX a preliminary injunction. Opp. 23; *see also id.* at 13 (emphasizing potential "disruption"). But SpaceX seeks only to enjoin the OCAHO proceedings against SpaceX, not a universal injunction. If other litigants follow suit, any disruption will result from the fact that other courts agree that different agency adjudications are also unconstitutional. Regardless, no matter how pressing or important the government's prosecutorial priorities, they must ultimately yield to the strictures of the U.S. Constitution.

*** 

"[T]he separation of powers is designed to preserve the liberty of all the people." *Collins*, 141 S. Ct. at 1780. The ongoing Appointments Clause and removal violations break the "clear and effective chain of command down from the President, on whom all the people vote." *Arthrex*, 141 S. Ct. at 1979 (internal quotation marks omitted). And the "mixture" of executive and judicial powers in violation of Article III and the Seventh Amendment is "the very definition of tyranny." THE FEDERALIST NO. 47, at 301 (James Madison) (C. Rossiter ed. 1961)). Congress has ample power to fix the statute's constitutional defects. Until it does so, SpaceX should not have to endure such "illegitimate proceeding[s]." *Axon*, 598 U.S. at 191.

## CONCLUSION

SpaceX respectfully urges this Court to preliminarily enjoin the OCAHO proceedings against SpaceX by November 9, 2023.

Respectfully submitted,

Dated: October 25, 2023

  /s/ Laura Warrick
Laura Warrick
 Attorney-in-Charge
 Texas Bar No. 24079546
Southern District of Texas Bar No. 3437415
AKIN GUMP STRAUSS HAUER & FELD LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-4770
Facsimile: (214) 969-4343
lwarrick@akingump.com

James E. Tysse (*pro hac vice*)
 Of Counsel
 D.C. Bar No. 978722
Charles F. Connolly (*pro hac vice*)
 Of Counsel
 D.C. Bar No. 455969
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
jtysse@akingump.com

*Counsel to Plaintiff Space Exploration Technologies Corp.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 25, 2023, a copy of the foregoing document was filed electronically and served pursuant to this Court's ECF Filing System, upon counsel of record.

/s/ Laura Warrick
Laura Warrick
Attorney-in-Charge
Texas Bar No. 24079546
Southern District of Texas Bar No. 3437415
AKIN GUMP STRAUSS HAUER & FELD LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-4770
Facsimile: (214) 969-4343
lwarrick@akingump.com