# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS

---

**Space Exploration Technologies Corp.,**

       *SpaceX,*

          v.

**Carol Bell, in her official capacity as Administrative Law Judge of the Office of the Chief Administrative Hearing Officer,** *et. al.*,

       *Defendants.*

Civil Action No. 1:23-cv-00137

---

### DEFENDANTS' SURREPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

LEGAL STANDARD .........................................................................................................3

ARGUMENT......................................................................................................................3

I.      SpaceX lacks standing to challenge the IFR and, in any event, the IFR is lawful.
        In light of the IFR, SpaceX is unlikely to prevail on the merits of its *Arthrex*
        claim. .......................................................................................................................3

        A.      SpaceX lacks standing to challenge the IFR. ........................................4

        B.      In any event, the IFR is lawful...............................................................5

        C.      In the alternative, SpaceX is not entitled to injunctive relief because
                § 1324b is severable. ...........................................................................10

II.     SpaceX is not entitled to an injunction based on its Article II removal claim.................13

III.    SpaceX's Article III and Seventh Amendment claims fail in light of the public
        rights doctrine........................................................................................................16

CONCLUSION ................................................................................................................19

<u>T<span>ABLE OF</span> A<span>UTHORITIES</span></u>

**C**ASES

*Arizona v. United States*,
　　567 U.S. 387 (2012) ................................................................................................ 17

*Atlas Roofing Co., Inc. v. Occupational Safety & Health Rev. Comm'n*,
　　430 U.S. 442 (1977) ................................................................................................ 16

*Austin v. Shalala*,
　　994 F.2d 1170 (5th Cir. 1993) ................................................................................ 16

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
　　140 S. Ct. 2335 (2020) ...................................................................................... 11, 12

*Beltran v. United States*,
　　No. EP-18-CV-305-KC-MAT, 2019 WL 9094565 (W.D. Tex. Aug. 7, 2019) ........ 3

*Bormuth v. Whitmer*,
　　548 F. Supp. 3d 640 (E.D. Mich. 2021) .................................................................. 3

*Calcutt v. FDIC*,
　　37 F.4th 293 (6th Cir. 2022),
　　*rev'd on other grounds*, 143 S. Ct. 1317 (2023) .................................................. 14

*CFPB v. Law Offices of Crystal Moroney, P.C.*,
　　63 F.4th 174, 178 (2d Cir. 2023) ........................................................................... 14

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
　　51 F.4th 616 (5th Cir. 2022) ............................................................................. 13, 14

*Collins v. Yellen*,
　　141 S. Ct. 1761 (2021) ....................................................................................... 13, 14

*Davis v. Fed. Election Comm'n*,
　　554 U.S. 724 (2008) .................................................................................................. 4

*Den ex dem. Murray v. Hoboken Land & Improvement Co.*,
　　59 U.S. 272 (1855) .................................................................................................. 18

*Free Enterprise Fund v. Public Company Accounting Oversight Board*,
　　537 F.3d 667 (D.C. Cir. 2008) ............................................................................... 15

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
　　561 U.S. 477 (2010) .......................................................................................... 12, 15

*Freytag v. Comm'r of Internal Revenue,*
  501 U.S. 868 (1991) ...................................................................................... 18

*Granfinanciera, S.A. v. Nordberg,*
  492 U.S. 33 (1989) ................................................................................. 16, 17

*Hersh v. U.S. ex rel. Mukasey,*
  553 F.3d 743 (5th Cir. 2008) ......................................................................... 5

*In re Gee,*
  941 F.3d 153 (5th Cir. 2019) ......................................................................... 5

*Jarkesy v. SEC,*
  34 F.4th 446 (5th Cir. 2022) ........................................................................ 18

*K.P. v. LeBlanc,*
  627 F.3d 115 (5th Cir. 2010) ......................................................................... 4

*L. Offs. of Crystal Moroney, P.C.,*
  63 F.4th 174 (2d Cir. 2023) ......................................................................... 14

*Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.,*
  711 F.3d 662 (6th Cir. 2013) ......................................................................... 9

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC,*
  138 S. Ct. 1365 (2018) ................................................................................ 18

*Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.,*
  620 F.3d 465 (5th Cir. 2010) ......................................................................... 3

*SEC v. Jarkesy,*
  143 S. Ct. 2688 (2023) ................................................................................ 18

*Thomas v. Union Carbide Agric. Prod. Co.,*
  473 U.S. 568 (1985) ................................................................................. 16, 17

*United States v. Arthrex, Inc.,*
  141 S. Ct. 1970 (2021) ....................................................................... 1, 6, 10

*United States v. Hansen,*
  599 U.S. 762 (2023) ...................................................................................... 7

*Valentine Properties Assocs., LP v. U.S. Dep't of Hous. & Urb. Dev.,*
  785 F. Supp. 2d 357 (S.D.N.Y. 2011),
  *aff'd,* 501 F. App'x 16 (2d Cir. 2012) ........................................................... 9

*Zadvydas v. Davis,*
  533 U.S. 678 (2001) ...................................................................................... 5

## STATUTES

5 U.S.C. § 557.................................................................................................................11

5 U.S.C. § 557(b) ...................................................................................................6, 8, 11

5 U.S.C. § 704 ...............................................................................................................6, 8

5 U.S.C. § 7521(a) ...........................................................................................................15

8 U.S.C. § 1324b ....................................................................................................1, 8, 18

8 U.S.C. § 1324b(e)(2) .....................................................................................................12

8 U.S.C. § 1324b(g)(1) ...............................................................................................6, 11

8 U.S.C. § 1324b(i)(1) .................................................................................................8, 11

8 U.S.C. § 1324b(j)(1) ......................................................................................................12

35 U.S.C. § 6(c) .................................................................................................................6

## RULES

Fed. R. Civ. P. 15(d) ..........................................................................................................3

## REGULATIONS

28 C.F.R. § 68.52(g).............................................................................................................8

28 C.F.R. § 68.55(a)............................................................................................................9

28 C.F.R. § 68.55(c)(2) .......................................................................................................7

88 Fed. Reg. 70,568 (Oct. 12, 2023).............................................................................1, 7, 9

## OTHER AUTHORITIES

https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202304&RIN=1125-AB28 .........4

Secretary of Education Review of Administrative Law Judge Decisions,
   15 Op. O.L.C. 8 (1991)...................................................................................................7

E.O. 12,866, 58 Fed. Reg. 51,735 (Sept. 30, 1993) .......................................................9

## INTRODUCTION

The Department of Justice ("DOJ") brought an administrative action against Space Exploration Technologies Corp. ("SpaceX") under 8 U.S.C. § 1324b, asserting that SpaceX has discriminated against workers granted asylum or refugee status. SpaceX disputes DOJ's allegations, but rather than litigating its defenses in the forum designated by statute—before an administrative law judge in DOJ's Office of the Chief Administrative Hearing Officer (an "OCAHO ALJ")—it collaterally attacks the administrative process here, asking this Court to preliminarily (and permanently) enjoin those proceedings altogether. But none of the three constitutional theories SpaceX relies on—which could effectively prevent the federal government from enforcing the protections against discrimination Congress set forth in § 1324b—has merit. The Court thus should deny Plaintiff's preliminary injunction motion.

First, SpaceX cannot succeed on its Appointments Clause claim—that OCAHO ALJs are improperly appointed principal officers under *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021), because their § 1324b decisions are not reviewable by a higher executive officer. A DOJ Interim Final Rule ("IFR") initially announced in the Unified Regulatory Agenda in Spring 2023, and then issued on October 12, clarifies that, under § 1324b, the Attorney General *can* review those decisions, resolving any potential *Arthrex* problem. *See* Office of the Chief Administrative Hearing Officer, Review Procedures, 8 U.S.C. § 1324b, 88 Fed. Reg. 70,586 (Oct. 12, 2023). Importantly, SpaceX does not dispute that the IFR resolves its *Arthrex* claim. Instead, it shifts gears, seeking to add a new claim challenging the IFR—all to manufacture an alleged *Arthrex* violation that it can then try to parlay into broader injunctive relief. The Court should reject this tactic for at least two reasons: first, SpaceX lacks standing to challenge the IFR, and second, the IFR is lawful in any event. The Court thus should deny SpaceX's motion to amend as futile. And

1

because the IFR makes clear that the *Arthrex* claim lacks merit, that claim cannot support preliminary relief.

Second, even if SpaceX could show that its ALJ removal claim has merit, it would not be entitled to any relief on that claim. Under Supreme Court and Fifth Circuit precedent, a party can secure relief on a removal restriction challenge only if it shows that, but for the removal restriction, (i) the relevant superior—here, the Attorney General—would have sought removal of the officer at issue, and (ii) a removal would have altered the challenged action to the plaintiff's benefit. SpaceX makes no real attempt to satisfy this standard: it offers no evidence that the Attorney General wishes to remove the OCAHO ALJ at issue, or that the Attorney General would have leveraged statutorily unconstrained removal authority over that ALJ to benefit SpaceX. SpaceX is thus entitled to no relief on its Article II removal claim.

Third, under the public rights doctrine, SpaceX cannot prevail on its Article III and Seventh Amendment claims. Under that doctrine, a claim need not be resolved in an Article III court with a jury trial if the claim is brought by the government as part of a public regulatory scheme. Relevant here, the Supreme Court and the Fifth Circuit have stated that claims involving immigration laws necessarily concern "public rights." Under this standard, the § 1324b claim at issue concerns public rights: it is brought by the government as part of a public regulatory scheme for the employment of immigrants. In response, SpaceX rehashes several arguments from its opening brief, effectively asking this Court to disregard clear Supreme Court precedent and find that OCAHO ALJs can never resolve § 1324b claims—which, as SpaceX does not dispute, would effectively preclude enforcement of § 1324b claims altogether. The Court should reject SpaceX's extraordinary and unsupported legal theory.

At bottom, SpaceX is unlikely to show that any of its legal theories justifies the relief it seeks, and the Court should therefore deny its preliminary injunction motion. Furthermore, the Court should also deny SpaceX's motion to amend its complaint.

<u>**LEGAL STANDARD**</u>

Although SpaceX seeks to file an "Amended" Complaint, the proposed amended complaint brings a new claim based on facts that occurred after the date of the original Complaint. ECF No. 23-2 ¶¶ 37-42, 80-89. Accordingly, it is not an amended complaint allowed as a matter of course under Rule 15(a)(1) of the Federal Rules of Civil Procedure. Rather, it is a "supplemental" complaint under Rule 15(d). The court may allow supplementation only on "just terms." Fed. R. Civ. P. 15(d). Like a motion to amend, a motion to supplement may be denied if supplementation "would be futile because it could not survive a motion to dismiss," *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010), such as, for example, if the supplemental complaint fails to state a claim or fails to allege standing, *Bormuth v. Whitmer*, 548 F. Supp. 3d 640, 659 (E.D. Mich. 2021); *Beltran v. United States*, No. EP-18-CV-305-KC-MAT, 2019 WL 9094565, at *2 (W.D. Tex. Aug. 7, 2019).

The legal standard for preliminary injunctions was stated in Defendants' opposition brief. ECF No. 20, at 7.

<u>**ARGUMENT**</u>

**I.      SpaceX lacks standing to challenge the IFR and, in any event, the IFR is lawful. In light of the IFR, SpaceX is unlikely to prevail on the merits of its *Arthrex* claim.**

SpaceX originally claimed that the OCAHO ALJs were not properly appointed because their decisions on § 1324b claims are not subject to further agency review—rendering them principal officers under *Arthrex*—and thus they must be, but are not, nominated by the President and confirmed by the Senate. *See* Pl.'s Mem. in Supp. of its Mot. for Prelim. Inj. 8-12, ECF No.

11 ("PI Mot."); Compl. ¶¶ 44-51, ECF No. 1. DOJ has since issued an IFR, which had been planned several months before this suit was filed, clarifying that OCAHO ALJ decisions on § 1324b claims can be reviewed by the Attorney General.[1] Thus, if there was any doubt whether OCAHO ALJs are inferior officers that require neither Presidential nomination nor Senate confirmation, it is now clear that they are. Critically, SpaceX does not dispute that the rule, if operative, resolves its *Arthrex* claim. SpaceX instead relies on a puzzling maneuver: it argues that the rule is unlawful and asks the Court to set it aside, all to *create* a constitutional violation that SpaceX can use to stop the administrative proceedings. The Court should reject that tactic because SpaceX lacks standing to challenge a rule that resolves an alleged constitutional violation, and because, in any event, the rule is lawful. Further, even if SpaceX is correct that § 1324b does not allow further agency review, the only remedy it could get under *Arthrex* is severance of the unconstitutional provisions and an additional layer of review.

A.   SpaceX lacks standing to challenge the IFR.

"Article III standing requires an injury-in-fact caused by a defendant's challenged conduct that is redressable by a court." *K.P. v. LeBlanc*, 627 F.3d 115, 122 (5th Cir. 2010). A "plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).

---

[1] At multiple points, SpaceX characterizes the IFR as a nefarious attempt to address SpaceX's *Arthrex* claim. *See, e.g.*, PI Reply at 7 n.3 (calling the IFR "self-serving"). The IFR was included in Office of Management and Budget's Spring 2023 Unified Agenda of Regulatory and Deregulatory Actions. *See* https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202304&RIN=1125-AB28. Moreover, the IFR, however, is the government's attempt to address a potential constitutional problem with its prior regulations interpreting § 1324b while minimizing regulatory disruption— generally, that is considered a good thing.

4

Here, SpaceX has not alleged any cognizable injury caused by the IFR.[2] Based on the logic of SpaceX's Appointments Clause claim, the IFR *spares* SpaceX from an alleged injury. SpaceX argued that it was being injured by having to proceed before an ALJ whose decisions were not reviewable by a higher official. *See* Pl.'s Reply in Support of its Mot. for Prelim. Inj. at 18, ECF No. 24 ("PI Reply"). The IFR explicitly provides review by a higher official (the same remedy the Supreme Court provided in *Arthrex*), thus resolving any potential injury that SpaceX faced. SpaceX, of course, lacks standing to challenge a regulation that can only help it. *See In re Gee*, 941 F.3d 153, 165 (5th Cir. 2019) (plaintiffs cannot "challenge . . . legal provisions that benefit rather than harm" them). SpaceX appears to be challenging the IFR because it wants to keep its otherwise dead *Arthrex* alive. But SpaceX cites no case indicating that a party has standing to challenge a rule for that purpose. Accordingly, SpaceX lacks standing to challenge and seek a vacatur of the IFR.[3]

B.  <u>In any event, the IFR is lawful.</u>

The IFR is based on a reading of § 1324b that is consistent with general administrative law principles and the Appointments Clause. "[I]t is a cardinal principle of statutory interpretation . . . that when an Act of Congress raises a serious doubt as to its constitutionality," courts must "ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) (internal quotation marks omitted); *Hersh*

---

[2] For example, SpaceX has not alleged that it has a favorable ALJ decision in hand that will be overturned by the Attorney General, since, of course, it challenged the ALJ proceedings before the ALJ got anywhere close to a decision.

[3] SpaceX suggests that, even if the Court does not set aside the IFR, it can still reach a general legal conclusion over the rule's lawfulness. But SpaceX fails to explain how an abstract legal conclusion about the IFR (with no remedy attached) would salvage its *Arthrex* claim. The IFR would remain operative, and would thus still confirm that the Attorney General can review OCAHO ALJ decisions on § 1324b claims.

*v. U.S. ex rel. Mukasey*, 553 F.3d 743, 754, 757 (5th Cir. 2008). The statutory construction reflected in the IFR meets that standard.

Unlike the statute at issue in *Arthrex*,[4] § 1324b contains no express language preventing further agency review of ALJ decisions. SpaceX argues that § 1324b precludes such review because it refers to ALJ decisions as "final."[5] But "final" is a term of art in administrative law. It identifies administrative decisions from which applicants may seek *judicial* review, based on the APA's limitation of judicial review to "final" agency decisions. 5 U.S.C. § 704. Identifying a decision as "final" for this purpose, however, does not foreclose further administrative review, as the APA itself makes clear. The general rule under the APA is that "agency action . . . is final for the purposes of [the judicial review] section [of the APA] whether or not there has been presented or determined an application . . . an appeal to superior agency authority." *Id.* The default rule can be overridden by a statute that "expressly" forbids further agency review, *id.*, but § 1324b does not.[6] Given that Congress enacted § 1324b in 1986 against the backdrop of the APA, the "final[ity]" language in § 1324b does not preclude Attorney General review of ALJ decisions.

This reading is also consistent with general administrative practice. Another default APA rule is that ALJs issue initial decisions reviewable by the agency. 5 U.S.C. § 557(b). As explained in the rule's preamble, it is a common practice "throughout the Executive Branch, including in

---

[4] *See Arthrex*, 141 S. Ct. at 1986-87 ("The America Invents Act insulates APJs from supervision through two mechanisms. The statute provides that 'each . . . inter partes review shall be heard by at least 3 members of the [PTAB]' and that 'only the [PTAB] may grant rehearings.' The upshot is that the Director cannot rehear and reverse a final decision issued by APJs.") (quoting 35 U.S.C. § 6(c)).

[5] *See, e.g.*, 8 U.S.C. § 1324b(g)(1) ("The administrative law judge shall issue . . . an order, which shall be final unless appealed as provided under subsection (i)."); *id.* § 1324b(i)(1) (providing for review of "such final order").

[6] The default rule can also be overridden if an agency requires otherwise by rule and provides that the action meanwhile is inoperative. 5 U.S.C. § 704.

other [DOJ] components that utilize ALJs," for "ALJs [to] render 'initial decisions,' sometimes called 'recommended decisions,'" that the agency reviews further or, "if there is no appeal or referral, [that] become final agency decisions." 88 Fed. Reg. at 70,588 (listing examples); *see also* Secretary of Education Review of Administrative Law Judge Decisions, 15 Op. O.L.C. 8, 10 (1991) ("There is an extensive body of precedent on the question whether an agency action is final" and "[u]nder these authorities, an agency's decision need not be its last word on a subject to be considered 'final agency action.'").[7] To read the statute as prohibiting further review of the ALJ's decision would make it an anomaly. 88 Fed. Reg. at 70,588. Thus, in the absence of any statutory provision expressly prohibiting further review of the ALJ's decision, the Court should read the statute as allowing it.

SpaceX makes several arguments to support its reading of § 1324b. But each argument is unpersuasive on its own terms. And certainly none shows that Defendants' reading is not "fairly possible"—which is all that matters. *United States v. Hansen*, 599 U.S. 762, 781 (2023) (emphasis added). None of SpaceX's arguments categorically forecloses Defendants' reading of § 1324b. For example, SpaceX notes that, as to § 1324b claims, § 1324b(j)(2) allows a district court to "enforc[e] the order of the administrative law judge," but not an order from the Attorney General. *See* PI Reply at 3. But the IFR makes clear that if the Attorney General reviews ALJ orders, he may either "adopt[], modif[y], vacate[], or remand the final order under review." 28 C.F.R. § 68.55(c)(2). In light of the general principles of administrative law under which "initial decision[s]" are "the

---

[7] SpaceX asserts that, according to this OLC memo, the "shall be final" language in section 1324b precludes further agency review. *See* PI Reply at 6. But the memo itself states that, with respect to "[u]nequivocal language that the ALJ's decision 'shall be the final agency action,'" it "is unlikely that [OLC] would construe even this language to express an intent to foreclose [further agency] review." 15 Op. O.L.C. at 10 n.3.

decision of the agency without further proceedings *unless there is an appeal to . . . the agency within the time provided by rule*," 5 U.S.C. § 557(b) (emphasis added), § 1324b(j)(2)'s reference to "the order of the administrative law judge" is best understood to include orders of ALJs that have been either "adopted" or "modified" by the Attorney General.

SpaceX also asserts that the IFR impermissibly extends the 60-day statutory deadline for appealing an ALJ decision on a § 1324b claim. See Reply at 3, 6. That is incorrect. Under 8 U.S.C. § 1324b(i)(1), a party may seek judicial review of an adverse ALJ order "60 days after the entry of [a] final [ALJ] order." The IFR simply defines *when* the ALJ order becomes "final," thus starting the 60-day appeal clock. Under the rule, the ALJ's decision becomes a "final agency order" 60 days after it is entered by the ALJ, unless the Attorney General decides to review it, in which case the order becomes the final agency order for judicial review purposes on the date the Attorney General's decision is issued. 28 C.F.R. §§ 68.52(g), 68.55(d). Once the order becomes final, an aggrieved party then has 60 days, and *only* 60 days, to appeal it. This procedure comports with § 1324b when read in light of 5 U.S.C. § 704, which contemplates that agencies may by regulation render ALJ decisions not "final" for judicial review purposes until after administrative appeal processes are completed, so long as the ALJ decision would not be operative in the meantime.

SpaceX then argues that §§ 1324a and 1324c include provisions for further agency review of ALJ decisions, and that the absence of a similar provision in § 1324b is telling. *See* PI Reply at 3-4. But §§ 1324a and 1324c both require DOJ to maintain specific processes for further agency review, including set procedures and deadlines. Nothing about Congress's decision to mandate those procedures as to certain administrative appeals forecloses further agency review in other cases, particularly given the APA's strong presumption that agencies may review the decisions of lower administrative officials. *See* 5 U.S.C. §§ 557(b), 704. SpaceX's next argument—that the

legislative history shows that Congress wanted "a faster and more certain determination of rights" for § 1324b claims—fares no better. PI Reply at 4. The rule provides that the Attorney General review may review an order within no more than 60 days of the ALJ's decision, 28 C.F.R. § 68.55(a), which would not make the determination of rights slow or uncertain.

SpaceX also argues that the IFR is procedurally defective because it allegedly had to be, but was not, submitted to "DOJ's Office of Management and Budget (OMB) for review" under Executive Order No. 12,866. PI Reply at 7 n.3. As an initial matter, OMB is a component of the White House, not DOJ. Further, E.O. 12,866 describes procedures the White House uses to, among other things, make sure that OMB can centrally review agencies' "significant regulatory actions." E.O. 12,866, § 6(a)(3), (b)(1), 58 Fed. Reg. 51,735 (Sept. 30, 1993). The E.O. is not enforceable by private parties; it "does not create any right or benefit, substantive or procedural, enforceable at law or equity . . . against the United States, its agencies," or "its officers or employees." *Id.* § 10; *see also Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*, 711 F.3d 662, 670 (6th Cir. 2013) ("Executive Order 12,866 does not create judicially enforceable rights, nor does it provide a basis for rejecting final agency action."); *Valentine Properties Assocs., LP v. U.S. Dep't of Hous. & Urb. Dev.*, 785 F. Supp. 2d 357, 368 (S.D.N.Y. 2011), *aff'd*, 501 F. App'x 16 (2d Cir. 2012) ("Executive Order 12,866, by its plain terms, precludes judicial review of an agency's compliance with its directive."). Even if the E.O. were enforceable, the OMB review provisions apply only to "regulations," E.O. 12,866, § 6, which is defined in the E.O. to exclude rules "that are limited to agency organization, management, or personnel matters," *id.* § 3(d)(3). The IFR impacts the "management" of ALJ operations, and thus falls outside the scope of the E.O.[8]

---

[8] In addition, the rule has not been designated "significant" by the agency or OMB and therefore is not subject to review by OMB. E.O. § 12,866, § 6(b)(1).

SpaceX also asserts, in passing, that the Attorney General's review is "illusory" because the IFR says that "no party will have the right to seek or request such review." PI Reply at 5. But that language simply conveys that "[t]he decision whether to review an OCAHO ALJ decision would be within the sole discretion of the Attorney General." 88 Fed. Reg. at 70,589. The Attorney General's power to review an OCAHO ALJ decision is not "illusory" just because a party may not insist on it. And, ensuring that a "politically accountable officer" has an "adequate *opportunity* [to] review" an inferior officer's decision is all that the Appointments Clause requires. *Arthrex*, 141 S. Ct. at 1982, 1987-88 (emphasis added).

Accordingly, the IFR is lawful. It is based on a "fairly possible" reading of the statute and SpaceX has identified no procedural problems with its promulgation. Thus, Plaintiff's motion to amend should be denied and its motion for preliminary injunction should be denied as to the proposed IFR claim. Also, since the IFR resolves SpaceX's *Arthrex* claim, SpaceX cannot succeed on the merits of that claim and the motion for preliminary injunction should be denied as to the *Arthrex* claim as well.

C. In the alternative, SpaceX is not entitled to injunctive relief because § 1324b is severable.

Even if SpaceX were correct that § 1324b cannot be interpreted to permit a superior officer to review ALJ decisions, the only relief SpaceX could secure is an order severing the relevant portion of § 1324b to the extent it precludes further agency review of ALJ decisions. Indeed, that was precisely what the Supreme Court did in *Arthrex*. Given that the Court may issue that relief here (should it find it warranted) there is no basis for enjoining the ALJ proceedings now because, under *Arthrex*, the ALJ's appointment by the Attorney General allows her to still "lawfully adjudicate the [§ 1324b case] in the first instance." 141 S. Ct. at 1988.

SpaceX's contention that the agency proceeding must be enjoined because the allegedly unconstitutional part of the statute cannot be severed, *see* PI Mot. at 11-12; PI Reply at 2, is mistaken.[9] "Constitutional litigation is not a game of gotcha against Congress, where litigants can ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2351 (2020). The Supreme Court's cases have developed "a strong presumption of severability," *id.* at 2350, which SpaceX cannot overcome.  The alleged problem stems primarily from the references to the finality of the ALJ's order. 8 U.S.C. § 1324b(g)(1) ("The administrative law judge shall issue . . . an order, which shall be final unless appealed as provided under subsection (i)."); *id.* § 1324b(i)(1) (providing for review of "such final order"). If those references were invalidated, the rest of the adjudicatory framework could still operate independently. Absent the language in § 1324b that allegedly makes the ALJ's order non-reviewable, the APA's default rule—that ALJs make initial decisions appealable to the agency, 5 U.S.C. § 557(b)—would apply.[10] Thus, if § 1324b's references to the finality of the ALJ's order were excised, there would be no question that the ALJs could still adjudicate § 1324b cases as Congress intended. The severance of the allegedly offending provisions would simply ensure an additional layer of review at the end of the administrative process, consistent with the APA and with the Appointments Clause.

---

[9] Defendants' opposition brief argued that the Court did not need to consider SpaceX's severability arguments because the IFR makes clear that SpaceX was not entitled to any relief at all. Defs.' Resp. to Pl.'s Mot. for Prelim. Inj. at 10 n.5, ECF No. 20 ("PI Opp'n"). However, SpaceX is continuing to press its Appointments Clause claim, and now seeks to add a challenge to the new rule. Defendants may thus argue severability here.

[10] SpaceX contends that, unlike in *Arthrex*, there is no affirmative authority for an executive official to review ALJ decisions under § 1324b. PI Mot. at 11. But 5 U.S.C. § 557 supplies that authority.

If deemed to violate the Appointments Clause, § 1324b(j)'s offending parts are similarly severable. Under subsection (j), if an "order of the agency" is not appealed to the court of appeals, the Department of Justice or the private party filing the charge may petition a district court for enforcement of the "order of the administrative law judge." 8 U.S.C. § 1324b(j)(1). "In such a proceeding, the order of the administrative law judge shall not be subject to review." *Id.* § 1324b(j)(2). If the phrase "of the administrative law judge" was struck, the rest of the provision, allowing enforcement of the "order of the agency," would still function on its own.

As for whether Congress, "faced with the limitations imposed by the Constitution," would have preferred no ALJ adjudication of § 1324b claims at all rather than making ALJ decisions reviewable within the Executive Branch, *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477, 509 (2010), there is ample evidence to suggest that the answer is no. The same indicators supporting severability of the ALJ removal provisions also support severability of the provisions regarding the finality of ALJ orders in § 1324b. *See* PI Opp'n at 13-14. Congress wanted ALJs with expertise working only on § 1324b cases. 8 U.S.C. § 1324b(e)(2). Congress also made the ALJs the only tribunal that could decide claims of employment discrimination based on citizenship, immigration status and certain national origin claims. Eliminating this forum because of a comparatively minor defect in the review process would be letting "the tail (one unconstitutional provision) . . . wag the dog (the rest of the codified statute or the Act as passed by Congress)." *Barr*, 140 S. Ct. at 2351.

SpaceX has cited no case in which a court has stopped an ongoing agency proceeding based on an *Arthrex* claim. The only relief SpaceX could obtain based on Count I is severance of the statutory provisions that allegedly prevent review of the ALJ's decision by a higher-level

Executive Branch officer. Thus, the Court should deny SpaceX's request for a preliminary injunction based on this claim.

## II.     SpaceX is not entitled to an injunction based on its Article II removal claim.

SpaceX's removal claim fails because it has not adequately shown that it was harmed by the ALJs' removal protections. Under Supreme Court and Fifth Circuit precedent, "a party challenging agency action must show not only that the removal restriction transgresses the Constitution's separation of powers but also that the unconstitutional provision caused (or would cause) them harm." *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022); *see also Collins v. Yellen*, 141 S. Ct. 1761, 1789 (2021). To demonstrate harm under *Collins*, it is not enough to show merely that the removal provision prevented the Attorney General from removing an officer he wished to replace. The plaintiff "must show *a connection* between the [Attorney General's] frustrated desire to remove the actor and the agency action complained of." *Cmty. Fin. Servs. Ass'n*, 51 F.4th at 632.

Here, SpaceX has not established the requisite harm necessary for relief based on its removal claim. In *Community Financial Services Association*, the plaintiffs attempted to show harm by pointing to CFPB Director Cordray's statements that he believed President Trump would fire him and an online article suggesting that the President was advised to hold off on doing so until the Supreme Court had weighed in on the "for cause" removal protection. The Fifth Circuit held that insufficient to establish harm under *Collins* because, Cordray's subjective belief aside, "nothing the Plaintiffs proffer indicates that, but for the removal restriction, President Trump would have removed Cordray *and* that the [CFPB] would have acted differently" as to the rule being challenged. *Id.* at 633. Accordingly, the Fifth Circuit affirmed summary judgment for the CFPB on the plaintiffs' removal claim. SpaceX's evidence here is even weaker. The Complaint contains a conclusory statement that "[t]he President's inability to freely remove Judge Bell . . . is

likely to affect her conduct of the proceedings." Compl. ¶ 60. In its reply brief, SpaceX also asserts that it has a famous CEO who is subject to multiple government investigations. PI Reply at 11. But there is no indication that the President "would have removed [ALJ Bell] *and* that the [the ALJ] would have acted differently" against SpaceX here. *Cmty. Fin. Servs. Ass'n*, 51 F.4th at 633.

Alternatively, SpaceX argues that *Collins* does not apply when litigants seek relief from "ongoing" proceedings. PI Reply at 8. SpaceX is not the first litigant to try to evade *Collins* by characterizing the temporal nature of the relief it seeks as ongoing or prospective (anything but retrospective).[11] But each of the courts of appeals to have considered such arguments has held that *Collins* applies whether the challenger seeks forward- or backward-looking relief, and this Court should do the same. For example, in *CFPB v. Law Offices of Crystal Moroney, P.C.*, the CFPB sought to enforce a civil investigative demand (CID) for production of documents against a law office as part of an ongoing investigation into whether the law office was violating debt collection laws. 63 F.4th 174, 178, 185 (2d Cir. 2023). Moroney tried to distinguish *Collins* on the ground that the relief she sought was prospective (protection from having to produce documents) and not retrospective (voiding an already-issued CID). The Second Circuit rejected this argument. *Id.* at 180-81. Similarly, the plaintiffs in *Community Financial Services* tried to characterize the relief they sought as prospective (enjoining enforcement of a rule) rather than retrospective (voiding the rule's promulgation). But the Fifth Circuit held that "*Collins* did not rest on a distinction between prospective and retrospective relief." *Cmty. Fin. Servs. Ass'n*, 51 F.4th at 631; *see also Calcutt v. FDIC*, 37 F.4th 293, 316 (6th Cir. 2022), *rev'd on other grounds*, 143 S. Ct. 1317 (2023). Thus,

---

[11] The *Collins* petitioners' only "'live claim' was for retrospective relief, and so that is all the Supreme Court addressed." *CFPB v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023) (quoting *Collins*, 141 S. Ct. at 1787).

whether the relief SpaceX wants is characterized as ongoing (enjoining proceedings) or retrospective (voiding case assignment to ALJ Bell, for example) is irrelevant.

Finally, SpaceX contends that requiring a showing of harm "would render *Axon* a dead letter." PI Reply at 10. *Axon* is not a dead letter. It held that federal district courts have subject matter jurisdiction over the plaintiffs' structural claims that SEC and FTC ALJs' removal protections were unconstitutional. And here, Defendants do not contest that the Court has jurisdiction over SpaceX's similar removal claim. However, *Axon* did not address the merits of the structural removal protection claims at issue there; nor did it address what remedies are available and in what circumstances. Instead, those questions are governed by *Collins*, *Free Enterprise Fund*, and other cases.[12]

Indeed, even in a world without *Collins*, SpaceX would not be entitled to the injunction it seeks. *Free Enterprise Fund*, a pre-*Collins* case, involved an "ongoing" investigation by the Public Company Accounting Oversight Board ("PCAOB"). 537 F.3d 667, 670 (D.C. Cir. 2008). The plaintiffs sought broad injunctive relief to stop the PCAOB from operating because its removal protections were unconstitutional, but the Supreme Court squarely denied such relief, instead granting only declaratory relief and severing the unconstitutional part of the statute. 561 U.S. 477, 513 (2010). Were this Court to find SpaceX entitled to relief on its Article II removal claim, it should simply sever the relevant portion of 5 U.S.C. § 7521(a). *See* PI Resp. at 11-14. In response, SpaceX protests that Congress would not have preferred severance of the offending provision here. But it strains credulity to believe that Congress would prefer that § 1324b adjudications—not to

---

[12] For similar reasons, mere incantation of "here-and-now injury" under *Axon* is insufficient to establish irreparable harm. *See* PI Reply at 18. *Axon* was not a preliminary injunction case. Moreover, since SpaceX would not be entitled to injunctive relief even at the end of this litigation, due to its failure to establish harm under *Collins*, there is no reason for preliminary relief.

mention other ALJ adjudications, including hundreds of thousands of Social Security and other benefits cases—come to a halt rather than have courts sever one layer of the ALJs' statutory removal protections. *See* PI Reply at 13.

Because SpaceX has not shown that it has suffered any harm caused by the ALJs' removal protections, it is not entitled to any relief based on the Article II removal claim. But even if it were entitled to relief, it could not secure its requested injunction. SpaceX is therefore not entitled to preliminary injunction based on its Article II removal claim.

### III.    SpaceX's Article III and Seventh Amendment claims fail in light of the public rights doctrine.

SpaceX does not dispute that if the public rights doctrine applies to the § 1324b claim asserted against SpaceX, then the Article III and Seventh Amendment claims necessarily fail. The Supreme Court has broadly stated that cases involving public rights include those that "arise between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 51 n.8 (1989). Public rights cases may even include those involving a "seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary."[13] *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 593–94 (1985). And relevant here, the Supreme Court and Fifth Circuit have both found that the public rights doctrine applies to claims concerning immigration laws. *See*, *e.g.*, PI Opp'n at 19-20; *Atlas Roofing Co., Inc. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 452 (1977) ("Congress . . . may establish . . . special

---

[13] SpaceX asserts that, for the public rights doctrine to apply, a claim must concern "only" public rights. The Supreme Court, however, has stated the inverse, noting that, for the doctrine to apply, a claim need only "bear[] many of the characteristics of a 'public' right" and not concern "a purely 'private' right." *Union Carbide*, 473 U.S. at 589.

tribunals 'to examine and determine various matters," including those concerning "immigration."); *Austin v. Shalala*, 994 F.2d 1170, 1177 (5th Cir. 1993) ("the Court has approved the use of administrative agencies in adjudicating violations of the customs and immigration laws and assessing penalties therefor"). This is consistent with the general deference afforded to the Executive Branch on immigration matters. *See*, *e.g.*, PI Opp'n at 19-20; *Arizona v. United States*, 567 U.S. 387, 394 (2012) ("The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens.").

Here, the § 1324b claim asserted against SpaceX involves public rights. It "arise[s] between the Government and" an entity "subject to its authority in connection with the performance" of a central "constitutional function[] of the executive," namely, the administration of immigration laws. Critically, SpaceX does not cite to a single case where a court has found that the public rights doctrine does not apply to a claim concerning immigration law. SpaceX instead rattles off a few arguments that defy clear Supreme Court precedent. None is sufficient.

SpaceX first argues that the public rights doctrine does not apply to claims that resemble common-law claims. *See* PI Reply at 15. But the Supreme Court has explicitly stated that "Congress may effectively *supplant a common-law cause of action* carrying with it a right to a jury trial with a statutory cause of action" that concerns "public rights" and "whose adjudication Congress" has "assign[ed] to [an] administrative agenc[y]." *Granfinanciera*, 492 U.S. at 53 (emphasis added); *see id.* at 52-53 ("Congress may fashion causes of action that are *closely analogous to common-law claims*" and "assign[] their resolution to a forum in which jury trials are unavailable" if those "legal cause[s] of action involve[] 'public rights.'") (emphasis added). That is why the Supreme Court previously found that Congress could "replace a . . . traditional negligence action in admiralty with a statutory scheme" where "claims for compensation would

be determined in an administrative proceeding." *Union Carbide*, 473 U.S. at 586. Thus, contrary to SpaceX's assertion, there is no "common-law exception" to the public rights doctrine. And even if there were, SpaceX cites no case indicating that exception would apply even in cases concerning immigration laws, where courts are especially deferential to the Executive. *See supra* at 17.

SpaceX also reiterates its argument that the public rights doctrine does not apply here because requiring an Article III forum for a § 1324b claim would not dismantle the statutory scheme. *See* PI Reply at 15-16. But Plaintiff hardly disputes that its argument is inconsistent with Supreme Court precedent. *See*, *e.g.*, *Den ex dem. Murray v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284 (1855) ("[T]here are matters, involving public rights, *which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination*, but which congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper.") (emphasis added); *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1378 (2018) ("matters governed by the public-rights doctrine from their nature can be resolved in multiple ways," including by "executive officers" or "judicial tribunals"). Justice Scalia also noted that "some of the matters now in Article III courts could instead be committed to executive adjudicators." *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 910 (1991) (Scalia, J., concurring in part).

SpaceX asks this Court to ignore this clear Supreme Court precedent because, in its view, *Jarkesy v. SEC* requires it. 34 F.4th 446 (5th Cir. 2022). But that case—which is before the Supreme Court this term, *see SEC v. Jarkesy*, 143 S. Ct. 2688 (2023)—should not be read to conflict with Supreme Court precedent, and in any event, is distinguishable for at least two reasons. First, it did not involve immigration law, an area in which the Executive is given unique discretion. Second, in *Jarkesy*, the Fifth Circuit found that the public rights doctrine did not apply in part

because the SEC could bring (and for decades, had been bringing) the same securities claims in federal court and the claims were not uniquely suited to agency adjudication. 34 F.4th at 456. Here, in contrast, Congress called for specialized ALJs to serve as the exclusive forum for § 1324b claims. *Jarkesy* therefore does not apply here.

Accordingly, the public rights doctrine applies to the § 1324b claim against SpaceX, and so SpaceX is unlikely to succeed on the merits of Article III and Seventh Amendment claims.

<u>**CONCLUSION**</u>

SpaceX is unlikely to show that any of its legal theories justifies the relief it seeks. Further, as explained in Defendants' response brief, SpaceX has established no concrete, irreparable harm warranting an extraordinary preliminary injunction. *See* PI Opp'n at 23-24. It relies only on an alleged abstract constitutional injury, along with the standard burdens of litigation, which the Supreme Court has already noted is insufficient for preliminary relief. *See id.* Those injuries do not warrant an injunction that would interfere with the law enforcement functions of a co-equal branch of government. For these reasons, the Court should deny SpaceX's motion for a preliminary injunction and its motion to amend its complaint.

Dated:  November 3, 2023

ALAMDAR S. HAMDANI
United States Attorney

DANIEL DAVID HU
Chief, Civil Division

*/s/ Christopher Pineda*
CHRISTOPHER PINEDA
Southern District No. 1055715
Texas Bar No. 24070420
Assistant United States Attorney
Attorney in Charge
600 E. Harrison, Suite 201
Brownsville, TX 78520
Christopher.Pineda@usdoj.gov

*Counsel for Defendants*

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CHRISTOPHER HALL
Assistant Director, Federal Programs Branch

*/s/ Cynthia Liao*
KUNTAL CHOLERA (D.C. Bar No. 1031523)
Trial Attorney, Attorney in Charge
CYNTHIA LIAO (CA Bar No. 301818)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
Kuntal.Cholera@usdoj.gov
Telephone: (202) 305-8645
Cynthia.F.Liao@usdoj.gov
Telephone: (202) 531-1325
Fax: (202) 616-8470