## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

**Space Exploration Technologies Corp.,**

      *SpaceX*,

          v.

**Carol Bell, in her official capacity as an Administrative Law Judge of the Office of the Chief Administrative Hearing Officer,** *et. al.*,

      *Defendants*.

Civil Action No. 1:23-cv-00137

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 4

I.      Statutory and regulatory framework ................................................................... 4

II.     Facts .................................................................................................................... 6

LEGAL STANDARD ......................................................................................................... 8

ARGUMENT ..................................................................................................................... 8

I.      Defendants are entitled to judgment on SpaceX's *Arthrex* and IFR claims (Counts I, V). ............. 8

        A.      8 U.S.C. § 1324b permits Attorney General review of ALJ decisions. ............................. 9

        B.      Even if § 1324b is unconstitutional, the only remedy would be severance, not an injunction against administrative proceedings. ................................................. 12

        C.      The IFR is substantively and procedurally valid. ............................................ 17

        D.      SpaceX lacks standing to bring its IFR and Arthrex claims. ............................................ 19

II.     SpaceX's ALJ removal claim (Count II) should be dismissed. ....................................... 21

        A.      SpaceX cannot secure any relief for this claim. ................................................ 21

        B.      OCAHO ALJs' removal protections are constitutional. ..................................... 22

        C.      At a minimum, SpaceX is not entitled to injunctive relief. ................................ 26

III.    SpaceX's Article III and Seventh Amendment claims (Counts III, IV) fail. ............................. 28

CONCLUSION ................................................................................................................. 29

**TABLE OF AUTHORITIES**

<u>**CASES**</u>

*Atlas Roofing Co., Inc. v. Occupational Safety & Health Rev. Comm'n,*
  430 U.S. 442 (1977) ................................................................................................ 28

*Austin v. Shalala,*
  994 F.2d 1170 (5th Cir. 1993) ......................................................................... 28, 29

*Barr v. Am. Ass'n of Pol. Consultants, Inc.,*
  140 S. Ct. 2335 (2020) ......................................................................... 13, 14, 15

*Bond v. United States,*
  572 U.S. 844 (2014) ........................................................................................... 21

*Brown v. City of Houston, Texas,*
  65 F.4th 774 (5th Cir. 2023) ................................................................................ 8

*Burgess v. FDIC,*
  639 F. Supp. 3d 732 (N.D. Tex. 2022) ............................................................... 22

*Calcutt v. FDIC,*
  37 F.4th 293 (6th Cir. 2022) *rev'd on other grounds*, 143 S. Ct. 1317 (2023).................. 22, 25

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ........................................................................................... 19

*CFPB v. Law Offices of Crystal Moroney, P.C.,*
  63 F.4th 174 (2d Cir. 2023) ............................................................................... 22

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB,*
  51 F.4th 616 (5th Cir. 2022) ......................................................................... 21, 22

*Collins v. Dep't of the Treasury,*
  83 F.4th 970 (5th Cir. 2023) ............................................................................. 22

*Collins v. Yellen,*
  141 S. Ct. 1761 (2021) ................................................................................. 21, 27

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332 (2006) ........................................................................................... 20

*Darby v. Cisneros,*
  509 U.S. 137 (1993) ........................................................................................... 10

*Decker Coal Co. v. Pehringer,*
  8 F.4th 1123 (9th Cir. 2021) ......................................................................... 24, 25

ii

*DSE, Inc. v. United States,*
　169 F.3d 21 (D.C. Cir. 1999) ............................................................................... 11

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council,*
　485 U.S. 568 (1988) .............................................................................................. 8

*Epic Sys. Corp. v. Lewis,*
　584 U.S. 497 (2018) ............................................................................................ 12

*Frank's Nursery, LLC v. Walsh,*
　No. CV H-21-3485, 2022 WL 2757373 (S.D. Tex. July 14, 2022) ...................... 29

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.,*
　561 U.S. 477 (2010) ......................................................................... 13, 24, 25, 26

*FTC v. Kochava Inc.,*
　671 F. Supp. 3d 1161 (D. Idaho 2023) ............................................................... 27

*FTC v. Walmart Inc.,*
　664 F. Supp. 3d 808 (N.D. Ill. 2023) .................................................................. 27

*Gen. Dynamics Corp. v. United States,*
　49 F.3d 1384 (9th Cir. 1995) ................................................................................ 1

*Hooper v. California,*
　155 U.S. 648 (1895) .............................................................................................. 8

*Humphrey's Executor v. United States,*
　295 U.S. 602 (1935) ............................................................................................ 24

*I.C.C. v. Bhd. of Locomotive Eng'rs,*
　482 U.S. 270 (1987) ............................................................................................ 11

*In re Gee,*
　941 F.3d 153 (5th Cir. 2019) .............................................................................. 20

*Jarksey v. SEC,*
　34 F.4th 446 (5th Cir. 2022) .............................................................................. 22

*Jarkesy v. SEC,*
　51 F.4th 644 (5th Cir. 2022) .............................................................................. 22

*K & R Contractors, LLC v. Keene,*
　86 F.4th 135 (4th Cir. 2023) .............................................................................. 21

*Lewis v. Casey,*
　518 U.S. 343 (1996) ............................................................................................ 27

iii

*Lloyd Sabaudo Societa Anonima Per Azioni v. Elting*,
    287 U.S. 329 (1932) ............................................................................................... 29

*Mink v. Suthers*,
    482 F.3d 1244 (10th Cir. 2007) ............................................................................ 21

*Morrison v. Olson*,
    487 U.S. 654 (1988) ....................................................................................... 23, 25

*Murphy v. National Collegiate Athletic Association*,
    584 U.S. 453 (2018) ....................................................................................... 16, 17

*Myers v. United States*,
    272 U.S. 52 (1926) ............................................................................................... 23

*Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*,
    711 F.3d 662 (6th Cir. 2013) ................................................................................ 19

*Noriega-Perez v. United States*,
    179 F.3d 1166 (9th Cir. 1999) .............................................................................. 29

*Oceanic Steam Navigation Co. v. Stranahan*,
    214 U.S. 320 (1909) ............................................................................................. 29

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
    138 S. Ct. 1365 (2018) ......................................................................................... 28

*Petrella v. Brownback*,
    787 F.3d 1242 (10th Cir. 2015) .............................................................................. 8

*Pool v. City of Houston*,
    978 F.3d 307 (5th Cir. 2020) ................................................................................ 20

*R.R. Ret. Bd. v. Alton R. Co.*,
    295 U.S. 330 (1935) ............................................................................................. 16

*Schlesinger v. Reservists Comm. to Stop the War*,
    418 U.S. 208 (1974) ............................................................................................. 27

*SEC v. Jarkesy*,
    143 S. Ct. 2688 (2023) ......................................................................................... 22

*Seila L. LLC v. Consumer Fin. Prot. Bureau*,
    140 S. Ct. 2183 (2020) ................................................................................ *passim*

*Sun Valley Orchards, LLC v. U.S. Dep't of Lab.*,
    2023 WL 4784204 (D.N.J. July 27, 2023) *appeal filed*, No. 23-2608 (3d Cir. Sep. 5, 2023).. 29

*United States v. Arthrex, Inc.*,
   594 U.S. 1 (2021)............................................................................................ *passim*

*United States v. Hansen*,
   599 U.S. 762 (2023).................................................................................... 8, 10

*United States v. Perkins*,
   116 U.S. 483 (1886)........................................................................................ 23

*Wiener v. United States*,
   357 U.S. 349 (1958)........................................................................................ 23

**STATUTES**

5 U.S.C. § 557(b) ............................................................................................ *passim*

5 U.S.C. § 559 ....................................................................................................... 11

5 U.S.C. § 704 ................................................................................. 10, 11, 12, 18

5 U.S.C. § 1202(d) ................................................................................................. 5

5 U.S.C. § 3105 .................................................................................................... 25

5 U.S.C. § 7521 .............................................................................................. *passim*

8 U.S.C. § 1103(g) ......................................................................................... 10, 15

8 U.S.C. § 1324a ............................................................................................ *passim*

8 U.S.C. § 1324b ............................................................................................ *passim*

8 U.S.C. § 1324c ...................................................................................... 4, 12, 29

28 U.S.C. § 503 .................................................................................................... 10

28 U.S.C. § 509 ............................................................................................. 10, 15

28 U.S.C. § 3702(1) .............................................................................................. 16

35 U.S.C. § 6(c) ............................................................................................... 9, 13

42 U.S.C. § 2000e(b) .............................................................................................. 5

42 U.S.C. § 2000e-2(a)(1) ...................................................................................... 5

Civil Service Reform Act of 1978, Pub. L. No. 95-454 § 202, § 204(a), 92 Stat. 1111, 1121, 1134
   (1978).............................................................................................................. 24

## ADMINISTRATIVE & EXECUTIVE MATERIALS

8 C.F.R. § 68.55 ................................................................................................ 25

28 C.F.R. § 0.53 ................................................................................................. 5

28 C.F.R. § 68.52(g) ..................................................................................... 6, 18

28 C.F.R. § 68.55 ..................................................................................... 6, 17,18

28 C.F.R. § 68.57 ............................................................................................... 6

58 Fed. Reg. 51,735 (Sept. 30, 1993) .............................................................. 19

88 Fed. Reg. 70,586 (Oct. 12, 2023)........................................................ *passim*

Secretary of Education Review of Administrative Law Judge Decisions, 15 Op. O.L.C. 8, 10
    (1991) ..................................................................................................... 10, 11

## LEGISLATIVE MATERIALS

131 Cong. Rec. S11414, 1985 WL 724430 (Sept. 13, 1985) ....................... 4-5

1986 U.S.C.C.A.N. 5856-1 (1986) ................................................................... 4

Executive Order No. § 6 ................................................................................... 19

Executive Order No. § 12,866 .................................................................... 18, 19

H.R. Rep. No. 99-682 (II) (1986) .................................................................... 12

## OTHER AUTHORITIES

Black's Law Dictionary 822 (4th ed. 1951)...................................................... 25

OMB, Regulatory Agenda (Spring 2023), RIN 1125-AB28,
    https://perma.cc/W753-5ZVN ................................................................... 6, 19

## INTRODUCTION

The legal theories advanced by Plaintiff Space Exploration Technologies Corp. ("SpaceX") could, if accepted, eliminate all enforcement of an important civil rights statute that "prohibits employer discrimination based on citizenship status." Order at 8, ECF No. 28 ("PI Order") (quoting *Gen. Dynamics Corp. v. United States*, 49 F.3d 1384, 1385 (9th Cir. 1995)). Although the Court tentatively accepted one of those theories at the preliminary injunction stage, the Court should reject it now. SpaceX's claims lack merit, and they certainly do not justify the extraordinary relief SpaceX seeks: a permanent injunction against enforcement proceedings by a coequal branch of government.

The Immigration and Nationality Act ("INA") contains a regulatory framework for the employment of noncitizens. One provision, 8 U.S.C. § 1324a, generally prohibits employers from hiring noncitizens who are not authorized to work in the United States. But Congress was concerned that, to avoid potential liability under that provision, companies would avoid hiring anyone perceived to be unauthorized to work, including U.S. citizens and noncitizens who *are* authorized to work. Thus, as a counterweight to § 1324a, Congress enacted § 1324b, which prohibits certain forms of employment discrimination based on citizenship status. Both the federal government and private parties can enforce § 1324b, but only through administrative proceedings before an administrative law judge ("ALJ") of the Office of the Chief Administrative Hearing Officer ("OCAHO") in the Department of Justice ("DOJ").

Accordingly, that was the means invoked by DOJ in August 2023 when it initiated a § 1324b action against SpaceX for alleged employment discrimination against individuals granted refugee or asylum status. SpaceX denies these allegations, but rather than addressing the merits in the exclusive forum designated by Congress—proceedings before an OCAHO ALJ—SpaceX sued

1

here to halt those proceedings altogether. SpaceX asserts five claims, none of which has merit.

*First*, SpaceX claims that, under *United States v. Arthrex, Inc.*, 594 U.S. 1 (2021), the OCAHO ALJ lacks the constitutional authority to oversee the proceedings because her decisions under § 1324b are not subject to further agency review, meaning that she is allegedly exercising principal officer powers without being Presidentially appointed and Senate-confirmed, as principal officers must be under the Appointments Clause. But *Arthrex* does not support SpaceX's claim: unlike the statute in *Arthrex*, § 1324b does not expressly prohibit further agency review of ALJ decisions. Further, the Administrative Procedure Act ("APA") authorizes such review. Therefore, § 1324b can reasonably be construed—and should be construed—to allow the Attorney General to exercise that review. That it is possible for the Attorney General to review their decisions renders OCAHO ALJs inferior officers for whom Presidential appointment and Senate confirmation are unnecessary. In fact, the Attorney General has adopted that reading of § 1324b in a recent Interim Final Rule ("IFR"), which disposes of this claim. In any event, if the Court finds that, like the statute in *Arthrex*, § 1324b clearly prohibits further agency review of ALJ determinations, then it necessarily follows that the *Arthrex* remedy should apply. The Court must sever the portion of the statute that it believes prohibits that additional review.

Separately, the Court need not even resolve whether Defendants' interpretation of § 1324b is plausible. SpaceX lacks standing to challenge the IFR, and so long as it is in effect, procedures will be in place for the Attorney General to review the ALJ's decision in SpaceX's proceedings, if he chooses to, and so that ALJ will function as an inferior officer. Indeed, SpaceX never disputes that, so long as the IFR is in effect, it has no viable *Arthrex* claim. SpaceX appears to argue only that because it is allegedly harmed by the OCAHO proceedings, it has standing to challenge anything related to those proceedings, including the IFR. The Supreme Court, however, has

expressly held that there is no such thing as "ancillary standing." SpaceX must show that the *IFR itself* is causing SpaceX some harm, and it cannot make that showing.

*Second*, SpaceX alleges that the OCAHO ALJ's statutory removal protection violates the separation of powers. But again, even if SpaceX is correct on the merits, it is not entitled to an injunction against its OCAHO proceedings. The Supreme Court and Fifth Circuit have made clear that a plaintiff cannot secure relief based on a challenge to removal protections unless it can show that, but for those protections, the agency action at issue would have unfolded in a manner more beneficial to the plaintiff. Here, SpaceX has not submitted any evidence showing that its OCAHO proceedings would unfold differently in any way if the ALJ at issue had no removal protections. Regardless, even if SpaceX were entitled to some kind of relief based on this claim, it would not be entitled to an injunction against SpaceX's OCAHO proceedings. The Court would simply sever the offending removal protection while allowing the proceedings to continue—the same approach the Supreme Court has taken in its recent cases concerning removal protections. For this reason, the Court appropriately concluded that this claim did not justify a preliminary injunction, and it should likewise conclude that it does not justify a permanent injunction either.

*Third*, SpaceX claims that § 1324b claims may not be brought in an administrative tribunal, but only in an Article III court where SpaceX could have a jury trial. Under the public rights doctrine, however, a claim may be resolved in an administrative tribunal if it is brought by the government as part of a public regulatory scheme. Both the Supreme Court and the Fifth Circuit have stated that claims involving immigration laws necessarily concern "public rights." And as this Court concluded once already, the § 1324b claim clearly involves public rights, and so SpaceX's Article III and Seventh Amendment claims necessarily fail.

Accordingly, the Court should grant Defendants' Motion for Summary Judgment. To the

extent the Court believes SpaceX is entitled to judgment on either its *Arthrex* or removal claims, it should not enjoin SpaceX's OCAHO proceedings, but instead should issue narrower relief that declares the allegedly problematic portion of the relevant statute invalid.

## BACKGROUND

### I.     Statutory and regulatory framework

Congress has enacted a framework regulating the employment of noncitizens, one that seeks to deter the employment of those who are not authorized to work in the United States while protecting the rights of U.S. citizens and noncitizens who are. This framework consists of three principal provisions. First, § 1324a makes it "unlawful for a person or other entity . . . to hire . . . for employment in the United States [a noncitizen] knowing the [noncitizen] is" not authorized to work in the United States. 8 U.S.C. § 1324a(a)(1). To enforce this prohibition, § 1324a requires employers to verify that their employees are authorized to work. *Id.* § 1324a(b)(1). Those who violate § 1324a may be subject to civil penalties. *See id.* § 1324a(e)(4)-(5). Second, § 1324c complements § 1324a and makes it "unlawful for any person" to "use . . . any forged" document, use a "document lawfully issued to" another person, or engage in certain other forms of fraudulent activity when complying with § 1324a(b). *Id.* § 1324c(a). Those who violate § 1324c may also be subject to civil penalties. *See id.* § 1324c(d)(3).

Third, Congress was concerned that, to avoid the risk of penalties under § 1324a, employers might refuse to hire individuals perceived to be unauthorized to work—including U.S. citizens and noncitizens who are authorized to work in the United States. To prevent that unfair treatment of auhorized workers, Congress enacted the provision at issue here: § 1324b. *See* 1986 U.S.C.C.A.N. 5856-1, 5856–1-2 (1986) ("The major purpose of section [1324b] is to reduce the possibility that employer sanctions will result in increased national origin and alienage discrimination and to provide a remedy if employer sanctions enforcement does have this result."); 131 Cong. Rec.

S11414-03, 1985 WL 724430, at *56-57 (Sept. 13, 1985) (statement by Sen. Hart) ("[A] side-effect of the [employer] sanctions may well be discrimination against individuals qualified by law to work" because "[e]mployers fearful of sanctions" may "[r]efus[e] to hire resident aliens" or "[p]refer[] citizens in the hiring process.").[1] Section 1324b prohibits discrimination in hiring and other similar employment-related decisions against an individual who is authorized to work in the United States based on that individual's "national origin, or in the case of a protected individual"—such as a U.S. citizen, certain lawful permanent residents, or a person granted refugee or asylee status—"because of such individual's citizenship status." 8 U.S.C. § 1324b(a)(1), (3).[2]

Congress established procedures for the enforcement of § 1324b. In particular, DOJ's Immigrant and Employee Rights Section ("IER")—whose primary function is to enforce § 1324b—may bring § 1324b claims before OCAHO. *See id.* § 1324b(c)-(d); 28 C.F.R. § 0.53. Once a § 1324b case is filed, it is assigned to an OCAHO ALJ who is "specially designated by the Attorney General as having special training respecting employment discrimination and, to the extent practicable . . . only consider[s] [§ 1324b] cases." 8 U.S.C. § 1324b(e)(2). OCAHO ALJs may be removed from their positions "by the agency," that is, the Attorney General, "only for good cause established and determined by the Merit Systems Protection Board [(MSPB)] on the record after opportunity for hearing before the Board." 5 U.S.C. § 7521(a). The Attorney General is removable at will by the President. The MSPB's members "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." *Id.* § 1202(d).

---

[1] Internal citations and quotations marks are omitted throughout this brief unless otherwise stated.
[2] Title VII of the Civil Rights Act also prohibits national origin discrimination in hiring, but it covers only employers with 15 or more employees. 42 U.S.C. §§ 2000e(b), 2000e-2(a)(1). Section 1324b covers employers with 4 to 14 employees. 8 U.S.C. § 1324b(a)(2)(A). This case does not involve a claim of discrimination based on national origin.

Once a § 1324b proceeding concludes, an OCAHO ALJ issues an order which may award relief, including civil penalties, against employers who are found to have unlawfully discriminated under § 1324b. *See* 8 U.S.C. § 1324b(g). Additionally, under the IFR recently issued by the Attorney General, the Attorney General may then elect to review (and modify) that order. Once a § 1324b order is subject to no further agency review—*i.e.*, because the Attorney General declined to review it or chose to review it and issued his decision—it may be appealed to an appropriate federal circuit court. *See* 28 C.F.R. §§ 68.52(g)(2), 68.55(d), 68.57; 8 U.S.C. § 1324b(i).

## II.   Facts

In Spring 2023, DOJ stated in the Unified Agenda of Regulatory and Deregulatory Actions ("Regulatory Agenda")—a compilation of actions administrative agencies plan to take, published by the White House's Office of Management and Budget ("OMB") twice a year in the spring and fall—that it was "planning to amend" OCAHO regulations "to provide for administrative review of decisions and orders issued by OCAHO Administrative Law Judges (ALJs) in cases arising under . . . 8 U.S.C. 1324b, including the possibility for review by the Attorney General." *See* OMB, Regulatory Agenda (Spring 2023), RIN 1125-AB28, https://perma.cc/W753-5ZVN. Then, on October 12, 2023, the Attorney General issued the IFR, which stated that the "Attorney General may" now, "in his discretion, review decisions and orders of [OCAHO ALJs]" in cases arising under [§ 1324b]." 88 Fed. Reg. 70,586 (Oct. 12, 2023). The IFR noted that § 1324b "does not expressly" forbid "a principal officer" from "review[ing] an OCAHO ALJ's decision in [§1324b] cases," and that reading the statute to permit Attorney General review of ALJ decisions in those cases would be "more consistent with the Administrative Procedure Act's (APA) general framework" and "general administrative law principles." *Id.* at 70,588.

On August 24, 2023, while that rulemaking process was underway, IER filed a § 1324b administrative complaint against SpaceX before an OCAHO ALJ. IER's complaint alleges that

SpaceX's hiring decisions routinely discriminated against individuals with asylum and refugee status. The complaint seeks an order requiring SpaceX to cease and desist its discriminatory practices, reconsider applications submitted by affected workers with asylum or refugee status and hire those who were qualified, and provide back pay to qualified affected individuals. It also seeks civil penalties. *See* FAC ¶ 32; Ex. B. (OCAHO Compl.) at 12, ECF No. 11-2.

On September 15, 2023, SpaceX brought this suit seeking to enjoin the IER action against it, alleging that: (1) under *Arthrex*, OCAHO ALJs are improperly appointed principal officers under the Appointments Clause because their § 1324b decisions are not reviewable by anyone else within the Executive Branch (Count I); (2) the ALJs' statutory removal protections overly insulate them from the President's control, in violation of Article II (Count II); and that (3) agency adjudication of § 1324b claims violates Article III (Count III) and (4) the Seventh Amendment (Count IV). Compl., ECF No. 1. On these claims, SpaceX moved for a preliminary injunction on September 26, 2023. ECF No. 11.

On November 8, 2023, this Court granted SpaceX's motion for preliminary injunction based on its *Arthrex* claim. The Court held, however, that SpaceX was not entitled to an injunction based on its ALJ removal claim because, even if OCAHO ALJs' removal protections were unconstitutional, "[s]evering both removal restrictions would make OCAHO ALJs accountable to the President, so there is no need to stay proceedings an OCAHO ALJ may conduct." PI Order at 7. The Court also held that SpaceX was unlikely to succeed on its Article III and Seventh Amendment claims because, in § 1324b, "Congress created a new statutory duty that protects public rights" and, thus, § 1324b claims can be adjudicated by an agency. *Id.* at 8. The Court subsequently granted leave for SpaceX to file its First Amended Complaint ("FAC"), which adds a claim that the IFR violates the Administrative Procedure Act ("APA") (Count V). Order at 2,

ECF No. 30; FAC ¶¶ 80-89, ECF No. 31.

## LEGAL STANDARD

"Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Brown v. City of Houston, Texas*, 65 F.4th 774, 777 n.2 (5th Cir. 2023). Additionally, "a decision as to the likelihood of success is tentative in nature," and so a court's "disposition of" a "preliminary injunction" motion "does not necessarily resolve" a "summary judgment motion." *Petrella v. Brownback*, 787 F.3d 1242, 1255 (10th Cir. 2015).

## ARGUMENT

## I.   Defendants are entitled to judgment on SpaceX's *Arthrex* and IFR claims (Counts I, V).

When an act of Congress is challenged as unconstitutional, "the elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988) (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)). "It bears emphasis that even if the Government's reading were not the best one," so long as "the interpretation is at least 'fairly possible'" then "the canon of constitutional avoidance would still counsel [the Court] to adopt it." *United States v. Hansen*, 599 U.S. 762, 781 (2023).

SpaceX's *Arthrex* claim should be dismissed because it is fairly possible and reasonable to read 8 U.S.C. § 1324b to allow Attorney General review of ALJ decisions. Thus, OCAHO ALJs are properly appointed inferior officers, not principal officers. SpaceX's Appointments Clause claim is based on the Supreme Court's recent decision in *Arthrex*, but 8 U.S.C. § 1324b differs in critical respects from the statute at issue in *Arthrex*. Specifically, unlike the *Arthrex* statute, § 1324b contains no express language precluding or constraining further administrative review of ALJ decisions. Thus, it can and should be read to permit such review, consistent with standard

8

administrative law principles and the Constitution. If the Court disagrees and finds that, like the statute in *Arthrex*, § 1324b precludes further administrative review, then it must provide the *Arthrex* remedy and sever the portion of the statute that prohibits such review.

### A.   8 U.S.C. § 1324b permits Attorney General review of ALJ decisions.

In *Arthrex*, the America Invents Act created a Patent Trial and Appeal Board (PTAB), an "executive adjudicatory body" within the Patent and Trademark Office (PTO). *Arthrex*, 594 U.S. at 8. Pursuant to 35 U.S.C. § 6(c), the PTAB sits in panels of three members, typically consisting of three administrative patent judges (APJs), to conduct inter partes review proceedings. In the statute, "Congress unambiguously specified that," once the PTAB issued a decision, "*only* the Patent and Trial Appeal Board may grant rehearings.'" *Arthrex*, 594 U.S. at 15 (quoting 35 U.S.C. § 6(c) (emphasis added)). That is, the "statute expressly precluded" the Director of the PTO from reviewing the APJs' inter partes review decisions unilaterally. 88 Fed. Reg. at 70,587. The Court held that "the unreviewable authority wielded by APJs during inter partes review is incompatible with their appointment by the Secretary to an inferior office," and remedied this problem by declaring that 35 U.S.C. § 6(c) is "unenforceable as applied to the Director insofar as it prevents the Director from reviewing the decisions of the PTAB on his own" and that "[t]he Director may engage in such review and reach his own decision." *Arthrex*, 594 U.S. at 23, 26.

In contrast, § 1324b does not expressly prohibit further administrative review of ALJ decisions. That distinction makes all the difference. The constitutional problem in *Arthrex* was the express prohibition on further review by the PTO Director. *See id.* at 15. Once the Court severed that prohibition, Congress's decision to "vest[] the Director with the 'power and duties' of the PTO" gave the Director "the authority to provide for a means of reviewing PTAB decisions." *Id.* at 25. Here, § 1324b resembles the statute in *Arthrex* after it was severed and made constitutional— there is no express prohibition on Attorney General review of ALJ decisions and, much like the

PTO Director, the Attorney General supervises and is vested with the authorities of the entire Department. *See* 8 U.S.C. § 1103(g); 28 U.S.C. § 503, 509. Further, as *Arthrex* recognized, "[t]he Administrative Procedure Act, from its inception, authorized agency heads to review . . . decisions [made by inferior adjudicative officers]." 594 U.S. at 20 (citing 5 U.S.C. § 557(b)). Thus, it is not only "fairly possible" to read the statute as permitting Attorney General review of ALJ decisions, *Hansen*, 599 U.S. at 781; that reading is exactly what *Arthrex* requires.

To be sure, the statute refers to ALJ decisions as "final unless appealed" to a court of appeals,[3] but "final" is a term of art in administrative law of which Congress would have been aware when it enacted § 1324b. In particular, in administrative law, a "final" administrative decision may still be subject to revision by superior executive officials. The APA itself makes this clear. Under 5 U.S.C. § 704, which generally limits judicial review to "final" agency actions, "agency action . . . is final for the purposes of this section whether or not there has been presented or determined an application . . . an appeal to superior agency authority." *Id.* That is, an agency action can be "final" while still being subject to further administrative appeals. *See* Secretary of Education Review of Administrative Law Judge Decisions, 15 Op. O.L.C. 8, 10 (1991) ("There is an extensive body of precedent on the question whether an agency action is final" and "[u]nder these authorities, an agency's decision need not be its last word on a subject to be considered 'final agency action.'");[4] *see also Darby v. Cisneros*, 509 U.S. 137, 152 (1993) ("initial decisions" which

---

[3] *See, e.g.*, 8 U.S.C. § 1324b(g)(1) ("The administrative law judge shall issue . . . an order, which shall be final unless appealed as provided under subsection (i)."); *id.* § 1324b(i)(1) (providing for review of "such final order").

[4] Relying on the OLC memo, SpaceX has previously argued that the "shall be final" language in § 1324b precludes further agency review. *See* Pl.'s Reply in Support of Mot. for Prelim. Inj. at 6, ECF No. 24. But the memo itself states that, even if a statute contained "[u]nequivocal language that the ALJ's decision 'shall be the final agency action,'" it "is unlikely that [OLC] would

are potentially subject to review by "superior agency authority" could constitute "final agency decisions"); *I.C.C. v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 284 (1987) (the potential for agency "reconsideration" of administrative orders "does not render [those] orders nonfinal"); *DSE, Inc. v. United States*, 169 F.3d 21, 26 (D.C. Cir. 1999) (an administrative decision may be "final" even if there is a possibility of "an intra-agency appeal"). The APA's definition of "final" applies "[e]xcept as otherwise expressly required by statute," 5 U.S.C. § 704, but § 1324b does not expressly require otherwise.[5] Given that Congress enacted § 1324b in 1986 against the backdrop of the APA, the word "final" in § 1324b should not be read to preclude further administrative review of ALJ decisions.

Section 1324b must also be read together with 5 U.S.C. § 557(b) of the APA, under which ALJs issue initial decisions, which can then be reviewed by the agency. Not only does § 557(b) reflect the "norm" that "principal officers [] have the capacity to review decisions made by inferior adjudicative officers," it affirmatively "authorize[s] agency heads to review such decisions." 594 U.S. at 20; *see also* 88 Fed. Reg. at 70,588 ("Indeed, throughout the Executive Branch, including in other [DOJ] components that utilize ALJs, ALJs render 'initial decisions,' sometimes called 'recommended decisions,' in certain cases that the agency can review further or, if there is no appeal or referral, become final agency decisions."); *id.* (listing examples). Section 557(b) cannot be superseded or modified by a subsequent statute "except to the extent [the subsequent statute] does so expressly," which § 1324b does not, since it does not expressly prohibit further administrative review. 5 U.S.C. § 559. Thus, the Court should read §§ 1324b and 557(b) together

---

construe even this language to express an intent to foreclose [further agency] review." 15 Op. O.L.C. at 10 n.3.

[5] The default rule can also be overridden if an agency requires otherwise by rule and provides that the action meanwhile is inoperative. 5 U.S.C. § 704.

as allowing administrative review of ALJs' § 1324b decisions.

While legislative history suggests that one committee believed the ALJ's order would be the "final agency order," H.R. Rep. No. 99-682, pt. 2 at 14 (1986) (cited at PI Order at 4), the text of the enacted statute did not use the term "final agency order." As the Supreme Court has held, "legislative history is not the law." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018). Once Congress enacts a statute, courts do not "inquire what the legislature meant," but instead must ask simply "what the statute means." *Id.* As explained above, under administrative law principles, a final ALJ decision is not necessarily a final agency order.

Additionally, while neighboring provisions in §§ 1324a and 1324c include provisions for further agency review of ALJ decisions, *see* PI Order at 4, those provisions merely require DOJ to maintain specific processes for further agency review, including set procedures and deadlines. 8 U.S.C. §§ 1324a(e)(7), 1324c(d)(4). Nothing about Congress's decision to mandate specific administrative appeal procedures for those provisions forecloses further agency review in § 1324b cases on terms established by regulation, particularly given that, under the APA, agency heads may review the decisions of lower administrative officials. *See* 5 U.S.C. §§ 557(b), 704.

SpaceX's *Arthrex* claim would have this Court read into the statute a constitutional problem that it need not contain, rather than read the statute to comport with administrative law principles and the Constitution. The Court should instead construe § 1324b to permit administrative review of ALJ decisions and enter judgment against SpaceX on Count I.

B. *Even if § 1324b is unconstitutional, the only remedy would be severance, not an injunction against administrative proceedings.*

Even if the Court disagrees with Defendants' reading of § 1324b, the only relief SpaceX could secure is a declaratory order stating that § 1324b is invalid to the extent it precludes further agency review of those ALJ decisions (the same remedy issued in *Arthrex*). The ALJ proceedings

could then take place without the alleged legal defect. "Generally speaking, when confronting a constitutional flaw in a statute, [courts] try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact." *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010). There is a "strong presumption" that "an unconstitutional provision in a law is severable from the remainder of the law or statute." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2350 (2020). "Before severing a provision and leaving the remainder of a law intact, the Court must determine that the remainder of the statute is capable of functioning independently and thus would be fully operative as a law. But it is fairly unusual for the remainder of a law not to be operative." *Id.* at 2352.

Here, to cure the alleged Appointments Clause violation, the Court should sever the part of § 1324b that allegedly forecloses further agency review of ALJ § 1324b decisions. That remedy would closely resemble the remedy adopted in *Arthrex* itself.[6] There, the plaintiff was involved in proceedings before APJs serving on the PTAB, whose final decision would be subject to no further agency review because the America Invents Act, 35 U.S.C. § 6(c), provided that "only the [PTAB] may grant rehearings." *Arthrex*, 594 U.S. at 25. Though the Supreme Court concluded that "the unreviewable authority wielded by APJs during inter partes review is incompatible with their appointment by the Secretary to an inferior office," the Court rejected the plaintiff's request that the Court "hold the entire regime of inter partes review unconstitutional." *Id.* at 23-24. It also declined to "to order outright dismissal of the proceeding" at issue. *Id.* at 24. Instead, under a "tailored approach," the Court held that 35 U.S.C. § 6(c) "cannot constitutionally be enforced to the extent that its requirements prevent the Director [of the PTO] from reviewing final decisions

---

[6] A plurality of the Court joined in Part III, the remedy discussion in the lead opinion. Three other justices concurred in the remedy. *Arthrex*, 594 U.S. at 4, 44.

rendered by APJs." *Id.* at 25. The Court noted that, once that language was rendered partially inoperative, the Director could then rely on his general statutory "power[s] and duties" to "review final [APJ] decisions and, upon review, may issue decisions himself on behalf of the [PTAB]." *Id.* The Court found this remedy especially appealing because it "follow[s] the almost-universal model of adjudication in the Executive Branch." *Id.* The same reasoning applies here: the Court should reject SpaceX's requests to enjoin the OCAHO proceedings, *see* FAC Prayer for Relief, and instead hold that 8 U.S.C. § 1324b(g) and (i) "cannot constitutionally be enforced to the extent that [their] requirements prevent" Attorney General review of § 1324b ALJ decisions. *Id.* Review of § 1324b ALJ decisions would then "follow the almost-universal model of" how ALJ decisions are reviewed throughout "the Executive Branch." *Id.*

The PI Order noted that § 1324b "contains no express severability clause." PI Order at 5. True, but the "[Supreme] Court's precedents reflect a decisive preference for surgical severance rather than wholesale destruction, *even in the absence of a severability clause.*" *Barr*, 140 S. Ct. at 2350–51 (emphasis added). The PI Order also stated that "[t]here is no provision that affirmatively authorizes the Attorney General to review OCAHO ALJ decisions under Section 1324b" and that "no provision exists" in § 1324b "that could be severed to enable administrative review." PI Order at 5. Respectfully, that is incorrect. As the Supreme Court observed in *Arthrex*, "[t]he Administrative Procedure Act, from its inception, authorized agency heads to review . . . decisions [made by inferior adjudicative officers]." 594 U.S. at 20 (citing 5 U.S.C. § 557(b)). As for what provision to sever, the PI Order read § 1324b's "final" language as precluding further agency review of ALJ orders in § 1324b cases. PI Order at 4-5. The Court could, for example, sever the following:

(g) Determinations
    (1) Order

> The administrative law judge shall issue and cause to be served on the parties to the proceeding an order~~, which shall be final unless appealed as provided under subsection (i)~~.

. . . .

> (i) Review of final orders
> (1) In general
> Not later than 60 days after entry of such ~~final~~ order, any person aggrieved by such ~~final~~ order may seek a review of such order in the United States court of appeals for the circuit in which the violation is alleged to have occurred or in which the employer resides or transacts business.

8 U.S.C. § 1324b(g), (i). If that "final" language was severed, the APA would supply the statutory authority for the Attorney General to review ALJ decisions on § 1324b claims, as would the Attorney General's general directive and supervisory authorities over the Department. *See* 8 U.S.C. § 1103(g); 28 U.S.C. § 509; *Arthrex*, 594 U.S. at 25. Further, the "remainder of [§ 1324b]" could "function[] independently" of the offending text. *Barr*, 140 S. Ct. at 2350-52.

The PI Order also stated that "[i]nterpreting § 1324b to not provide for further administrative review also reflects Congress' intent." PI Order at 5. But for a severability inquiry, the question is not what Congress's first preference is. Presumably, Congress would prefer for courts not to invalidate any part of the statute. The question is what Congress would want the Court to do if a challenged provision were found unconstitutional. *See Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2210 (2020) (although statutory removal protections for CFPB Director "certainly confirm that Congress preferred an independent CFPB to a dependent one," they "shed little light on the critical question whether," if removal provision were unlawful, "Congress would have preferred a dependent CFPB to no [CFPB] at all").[7] Thus, even if § 1324b can only be read to preclude further agency review of ALJ decisions, that does not mean that, if

---

[7] A plurality of the Court joined in Part IV of the lead opinion, discussing the remedy. Three other justices concurred in the judgment with respect to severability. *Seila Law*, 140 S. Ct. at 2187, 2224.

that preclusion were to create a constitutional defect, Congress would want the Court to retain it at the cost of eliminating § 1324b ALJ proceedings altogether. To the contrary, it is "clear that Congress" generally "prefer[s] that [courts] use a scalpel rather than a bulldozer in curing [a] constitutional defect." *Id.* at 2210-11.

*Murphy v. National Collegiate Athletic Association* does not suggest otherwise here. 584 U.S. 453, 461-62 (2018) (cited at PI Order at 5). The federal statute in *Murphy* made it unlawful for a state "to sponsor, . . . promote, license, or authorize" sports gambling schemes. *Id.* at 461 (quoting 28 U.S.C. § 3702(1)). The Court found the prohibition on a state's ability to "authorize" and "license" sports gambling schemes unconstitutional, *id.* at 474-75, 480-81, and concluded that the other prohibitions must fall as well because "[t]he line between authorization [and] licensing . . . , on the one hand, and sponsorship or promotion, on the other, is too uncertain" and it was "unlikely that Congress would have wanted to prohibit such an ill-defined category of state conduct." *Id.* at 483. The statute's core purpose was to broadly prevent states from allowing sports gambling, and to achieve that purpose, the statute used multiple broad terms covering overlapping conduct (authorizing, licensing, sponsoring, promoting). The nature of the issue and the statutory text made it unlikely that Congress would have wanted to keep the prohibition against sponsoring or promoting if the prohibition against authorizing and licensing was unconstitutional.

Here, on the other hand, § 1324b created new statutory protections for authorized noncitizens (and U.S. citizens and nationals) at risk of being affected by § 1324a's prohibition against hiring unauthorized noncitizens, and to provide a way for those rights to be enforced. The process for reviewing § 1324b decisions is a small part of the statute's larger whole. The subsections at issue, § 1324b(g) and (i), do not "affect the dominant aim of the whole statute as to carry it down with them." *R.R. Ret. Bd. v. Alton R. Co.*, 295 U.S. 330, 362 (1935). Severing their

16

offending parts would neither "rewrite [the] statute" nor "give it an effect altogether different from that sought by the measure viewed as a whole." *Murphy*, 584 U.S. at 481-82. It is SpaceX's preferred remedy—stopping § 1324b ALJ proceedings altogether—that would do so.

It is difficult to imagine that Congress, if faced with a choice between having administrative review for § 1324b ALJ decisions or having no mechanism for adjudicating § 1324b claims at all, would prefer the latter. Thus, even if the Court decides that § 1324b is unconstitutional, the "clear course" here is to take the "tailored approach" in *Arthrex* (the very case on which SpaceX's claim is based): sever the portions of § 1324b that purportedly prohibit further agency review of ALJ decisions and otherwise allow ALJ proceedings to go forward, with ALJ decisions subject to review by a principal officer. 594 U.S. at 24-25.

### C.   *The IFR is substantively and procedurally valid.*

SpaceX's recently added challenge to the IFR, which implements the Attorney General's constitutional reading of § 1324b, should be dismissed because the IFR is substantively and procedurally valid. If the Court agrees with Defendants that § 1324b permits administrative review, it follows that the IFR, which establishes administrative review procedures based on this reading of the statute, falls within the Attorney General's statutory authority, *see* 88 Fed. Reg. at 70,588-89; FAC ¶ 83.a, and should be upheld.

SpaceX's other arguments against the IFR are unpersuasive. First, SpaceX posits that the IFR allows the Attorney General to issue § 1324b decisions, and argues that this conflicts with § 1324b(j)(2), which allows a district court to "enforc[e] the order of the administrative law judge," but not an order from the Attorney General. *See* FAC ¶ 83.c. But the IFR makes clear that if the Attorney General reviews ALJ orders, he may either "adopt[], modif[y], vacate[], or remand the final order under review." 28 C.F.R. § 68.55(c)(2). Under the APA, "initial decision[s]" are "the decision of the agency without further proceedings *unless there is an appeal to . . . the agency*

17

*within time provided by rule*." 5 U.S.C. § 557(b) (emphasis added). Thus, § 1324b(j)(2)'s reference to "the order of the administrative law judge" is best understood (or at least "fairly reasonably" understood) to include orders of ALJs that have been either "adopted" or "modified" by the Attorney General.

Second, SpaceX asserts that the IFR impermissibly extends the 60-day statutory deadline for appealing an ALJ decision on a § 1324b claim. FAC ¶ 83.b. That is incorrect. Under 8 U.S.C. § 1324b(i)(1), a party may seek judicial review of an adverse ALJ order "60 days after the entry of [a] final [ALJ] order." The IFR simply defines *when* the ALJ order becomes "final," thus starting the 60-day appeal clock. Under the rule, the ALJ's decision becomes a "final agency order"—and starts the appeal clock—60 days after it is entered by the ALJ, unless the Attorney General decides to review it. If that review occurs, the order becomes the final agency order for judicial review purposes on the date the Attorney General's decision is issued. 28 C.F.R. §§ 68.52(g), 68.55(d). Once the order becomes final, an aggrieved party then has 60 days, and *only* 60 days, to appeal it. This procedure comports with § 1324b when read in light of 5 U.S.C. § 704, which contemplates that agencies may by regulation render ALJ decisions not "final" for judicial review purposes until after administrative appeal processes are completed, so long as the ALJ decision would not be operative in the meantime.

SpaceX's argument that § 1324b's legislative history shows that Congress wanted "a faster and more certain determination of rights," FAC ¶ 86, fares no better. The rule provides that the Attorney General may review an order within no more than 60 days of the ALJ's decision, 28 C.F.R. § 68.55(a), which would not make the determination of rights slow or uncertain.

Finally, SpaceX argues that the IFR is procedurally invalid because it allegedly had to be, but was not, submitted to OMB for review under Executive Order No. 12,866. FAC ¶ 88. The E.O.

describes procedures the White House uses to manage and coordinate rulemaking across agencies. Among other things, it calls for agencies to submit to OMB a list of its planned regulatory actions and for OMB to review only agencies' "significant" regulatory actions. E.O. 12,866, § 6(a)(3)(A), (b)(1), 58 Fed. Reg. 51,735 (Sept. 30, 1993). But the E.O. is not enforceable by private parties. It "does not create any right or benefit, substantive or procedural, enforceable at law or equity . . . against the United States, its agencies," or "its officers or employees." *Id.* § 10; *see also Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*, 711 F.3d 662, 670 (6th Cir. 2013) ("Executive Order 12,866 does not . . . provide a basis for rejecting final agency action."). Even if the E.O. were enforceable, the IFR complied with its procedures. DOJ submitted the rule as a planned regulatory action for inclusion in OMB's Spring 2023 Regulatory Agenda. The rule was "Nonsignificant" and therefore not subject to review by OMB. OMB, Regulatory Agenda (Spring 2023), RIN 1125-AB28, https://perma.cc/W753-5ZVN; E.O. § 12,866, § 6(b)(1). In addition, the OMB review provisions apply only to "regulations," *id.* § 6, which is defined in the E.O. to exclude rules "that are limited to agency organization, management, or personnel matters," *id.* § 3(d)(3). The IFR impacts the "management" of ALJ operations, and thus falls outside the scope of the E.O. The IFR is thus lawful.

### D. SpaceX lacks standing to bring its IFR and Arthrex claims.

Even if SpaceX were correct about any of the arguments above, it would not matter because SpaceX lacks standing to have the IFR set aside. SpaceX also never disputes that, so long as the IFR is in place, it has no viable *Arthrex* claim. To establish standing, a party must establish an "injury [that] is certainly impending" and "fairly traceable to" the challenged legal provision. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401–02 (2013). But SpaceX can show no injury traceable to the IFR. Based on the logic of its Appointments Clause claim, the IFR *spares* SpaceX from injury. SpaceX alleges that it would be injured by having to proceed before an ALJ whose

decisions were not reviewable by a higher official. *See* FAC ¶¶ 53, 54, 57; Pl.'s Reply in Supp. of Mot. for Leave to File First Amend. Compl. at 1, ECF No. 27 ("Pls.' Reply"). The IFR explicitly provides review by a higher official, thus resolving the alleged injury with the the precise remedy SpaceX would receive if it prevailed on its *Arthrex* claim. SpaceX thus cannot establish standing to challenge the IFR. *See In re Gee*, 941 F.3d 153, 165 (5th Cir. 2019) (plaintiffs cannot "challenge . . . legal provisions that benefit rather than harm" them).

In response, SpaceX has argued that the relevant injury would be the OCAHO proceedings. *See* Pls.' Reply at 1. That alleged injury, however, is not traceable to the IFR, nor would it be redressed by "[h]old[ing] unlawful and set[ting] aside" the IFR. FAC Prayer for Relief ¶ (4). It is the statute, not the IFR, that gives rise to the ALJ proceedings. Indeed, the proceedings began before the IFR was issued. Holding the IFR unlawful and setting it aside—that is, preventing the Attorney General from reviewing the ALJ's decision—would not redress the alleged harm; if anything, it would just re-create it. SpaceX appears to argue that it can challenge the IFR simply because the proceedings are generally related to the IFR, but the Supreme Court has stated that there is no such thing as "ancillary standing." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006). SpaceX must establish an injury stemming from the IFR itself. *See id.*

Furthermore, so long as the IFR is in effect, SpaceX's *Arthrex* claim must fail. Regardless of how § 1324b is construed, the IFR provides a process through which the Attorney General can review OCAHO ALJ § 1324b decisions, and so the OCAHO ALJs will function as inferior officers. The IFR thus ensures that, even if § 1324b were fairly read to preclude further agency review of § 1324b ALJ decisions, that portion of § 1324b will not be enforced and thus will not harm SpaceX. *See Pool v. City of Houston*, 978 F.3d 307, 312 (5th Cir. 2020) ("Without any indication that the government is planning to enforce a law after a similar one has been held

unconstitutional in a binding decision, there would be no objective fear" that plaintiff would be affected by the challenged law); *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007) (the "mere presence on the statute books of an unconstitutional statute, in the absence of enforcement . . . does not entitle anyone to sue"). Accordingly, the Court should grant judgment for Defendants on SpaceX's IFR and *Arthrex* claims.

## II.    SpaceX's ALJ removal claim (Count II) should be dismissed.

### A.    *SpaceX cannot secure any relief for this claim.*

The Court should dismiss SpaceX's removal claim without reaching the merits because, even if OCAHO ALJs' removal protections are unconstitutional, SpaceX has not demonstrated entitlement to any relief. "It is a well-established principle . . . that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case." *Bond v. United States*, 572 U.S. 844, 855 (2014) (cleaned up). Here, "regardless of how [the Court] answer[s] the constitutional question presented by the removal provisions," the Court cannot award relief because SpaceX "has not asserted any harm resulting from the allegedly unconstitutional statutes." *K & R Contractors, LLC v. Keene*, 86 F.4th 135, 148 (4th Cir. 2023). Consequently, the Court should "avoid resolving that constitutional question in this case." *Id.* at 149.

Under Supreme Court and Fifth Circuit precedent, "a party challenging agency action must show not only that the removal restriction transgresses the Constitution's separation of powers but also that the unconstitutional provision caused (or would cause) them harm." *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022); *see also Collins v. Yellen*, 141 S. Ct. 1761, 1789 (2021). To demonstrate harm under *Collins*, a plaintiff must establish "(1) a substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor." *Cmty. Fin. Servs. Ass'n*,

51 F.4th at 632; *see also Collins v. Dep't of the Treasury*, 83 F.4th 970, 982 (5th Cir. 2023). *Collins* applies whether the challenger seeks forward- or backward-looking relief. *Cmty. Fin. Servs. Ass'n*, 51 F.4th at 631; *see also CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 180-81 (2d Cir. 2023); *Calcutt*, 37 F.4th at 316.

Here, SpaceX has not even alleged, let alone established, that the President has any desire to remove ALJ Bell, that he believes he is unable to do so, or that any such desire is connected to SpaceX's case before OCAHO. *See* FAC ¶ 67. Where these requirements are not met, "the Court cannot afford Plaintiff any relief as to these [removal] claims." *Burgess v. FDIC*, 639 F. Supp. 3d 732, 746 (N.D. Tex. 2022) (denying prospective declaratory relief sought by plaintiff subject to ongoing adjudicatory proceedings absent showing of harm under *Collins*). Indeed, even in *Jarkesy*, the Fifth Circuit declined to provide any relief based on a removal challenge to a different agency's ALJs. 34 F.4th at 463 n.17.

### B.   *OCAHO ALJs' removal protections are constitutional.*

If the Court reaches the merits, the Court should hold that OCAHO ALJs' removal protections are constitutional. In *Jarkesy v. SEC*, a divided Fifth Circuit panel, over a forceful dissent from Judge Davis, found the removal protections for SEC ALJs unconstitutional. 34 F.4th 446, 463-65 (5th Cir. 2022).[8] But *Jarkesy* is distinguishable because OCAHO ALJs are supervised by the Attorney General, who is removable at will by the President, while the SEC ALJs are overseen by SEC Commissioners presumed to have for-cause removal protections of their own. To the extent that *Jarkesy* is thought to be controlling, Defendants respectfully disagree with the Fifth Circuit's decision, which the Supreme Court is reviewing this term, *SEC v. Jarkesy*, 143 S.

---

[8] *See also* 51 F.4th 644, 646-47 (5th Cir. 2022) (Haynes, J., dissenting from denial of petition for rehearing en banc).

Ct. 2688 (2023), and preserve their arguments below for appeal.

Article II grants the President the power to appoint "lesser officers," and "[t]hat power . . . includes the ability to remove" those officers. *Seila Law*, 140 S. Ct. at 2197. At the same time, Congress has "the power . . . to regulate removals as incidental to the exercise of its constitutional power to vest appointments of inferior officers in the heads of departments." *Myers v. United States*, 272 U.S. 52, 161 (1926); *United States v. Perkins*, 116 U.S. 483, 485 (1886). The key inquiry in removal cases is whether Congress has impermissibly "interfere[d] with the President's exercise of the 'executive power' and his constitutionally appointed duty to 'take care that the laws be faithfully executed' under Article II." *Morrison v. Olson*, 487 U.S. 654, 690 (1988).

Here, Congress has not so interfered. The Supreme Court has repeatedly recognized that Congress may regulate removals of inferior officers.[9] In *Perkins*, the Court upheld a restriction on the Secretary of the Navy's power to remove a naval officer. 116 U.S. at 484-85. In *Morrison*, the Court upheld a restriction on the Attorney General's power to remove an independent counsel. 487 U.S. at 685-96. The Court has also recognized that the scope of the President's constitutional power to remove and control adjudicators differs from the scope of his power to remove and control other executive officers. For example, in *Morrison*, the Court observed that tenure protection may be "necessary to the proper functioning" of "an official performing 'quasijudicial' functions." 487 U.S. at 691 n.30; *see also Wiener v. United States*, 357 U.S. 349, 355-56 (1958) (holding that Congress could limit the President's power to remove members of the War Claims Commission, an "adjudicatory body," because of "the intrinsic judicial character of the task with which the

---

[9] SpaceX also challenges ALJs' removal protections as inappropriate for principal officers, FAC ¶ 63, but as discussed *supra*, since OCAHO ALJs' § 1324b decisions are reviewable by the Attorney General, they are inferior officers.

Commission was charged"); *Humphrey's Executor v. United States*, 295 U.S. 602, 629 (1935) (finding it "plain under the Constitution that illimitable power of removal is not possessed by the President in respect of officers" charged with "quasi-judicial" duties).

Congress's authority to regulate removals is not limitless, of course. In *Free Enterprise Fund*, the Supreme Court held unconstitutional the "highly unusual" and "sharply circumscribed" dual-layer removal protections of a particular set of officers—members of the Public Company Accounting Oversight Board ("PCAOB"). 561 U.S. at 505. But the Supreme Court "did not broadly declare all two-level for-cause protections for inferior officers unconstitutional" in that case. *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1132 (9th Cir. 2021). Nor did it rule on the constitutionality of ALJ or other civil service protections; it expressly reserved the question. *Free Enter.*, 561 U.S. at 506-07 & n.10.

This case is distinguishable from *Free Enterprise Fund*. ALJs' current removal protections have been in place since 1978, decades before the PCAOB was created. Civil Service Reform Act of 1978, Pub. L. No. 95-454, § 202, § 204(a), 92 Stat. 1111, 1121, 1134 (1978); *Free Enter.*, 561 U.S. at 484, 507 n.10. Yet, the Court emphasized that the PCAOB had a "novel structure" with no "historical analogues," suggesting the Court viewed the ALJs' protections as substantively different from the PCAOB's. *Free Enter.*, 561 U.S. at 505. And they are. Congress made PCAOB members removable by the SEC Commissioners only for "willful violations of the [Sarbanes-Oxley] Act, Board rules, or the securities laws; willful abuse of authority; or unreasonable failure to enforce compliance," *id.* at 503, while the SEC Commissioners were presumed to be removable only for inefficiency, neglect of duty, or malfeasance in office, *id.* at 487. In contrast to the PCAOB's "novel" and "rigorous" removal limitations, *id.* at 496, 503, the "good cause" standard in 5 U.S.C. § 7521 is less strict. It allows for ALJs to be removed for misconduct, poor

performance, or insubordination. *See* Black's Law Dictionary 822 (4th ed. 1951) (defining "good cause" to include "any ground which is put forward by authorities in good faith and which is not arbitrary, irrational, unreasonable or irrelevant to the duties with which such authorities are charged"); *Morrison*, 487 U.S. at 724 n.4 (Scalia, J., dissenting) ("*for cause*, . . . would include, of course, the failure to accept supervision"). Also, while the SEC Commissioners were presumed to have for-cause removal protections, here, the Attorney General is removable at will, and therefore there is no second layer of protection for OCAHO ALJs. (This fact also distinguishes OCAHO ALJs from the SEC ALJs in *Jarkesy*.) The MSPB's role does not give ALJs a second layer of protection from removal; the MSPB merely enforces the first layer. The MSPB neither appoints nor removes ALJs. *See* 5 U.S.C. §§ 3105, 7521(a). It simply reviews an agency's removal decision to verify that good cause supports it.

Additionally, unlike the PCAOB, OCAHO ALJs "perform adjudicative rather than enforcement or policymaking functions." *Free Enter.*, 561 U.S. at 507 n.10. Moreover, the President has ample tools available to hold his subordinates accountable here. After the ALJ makes her decision, the Attorney General can review it. 88 Fed. Reg. at 70,591 (codified at 8 C.F.R. § 68.55). *See Calcutt v. FDIC*, 37 F.4th 293, 319 (6th Cir. 2022), *rev'd on other grounds*, 143 S. Ct. 1317 (2023) (rejecting ALJ removal claim based in part on FDIC's ability to review ALJs' decisions); *Decker Coal*, 8 F.4th at 1134 (rejecting ALJ removal claim based in part on Department of Labor ALJs' black lung benefits decisions' being reviewable by an administrative appellate board whose members were removable at will by the Secretary). Giving weight to this factor would be consistent with *Arthrex*, in which the Court created a procedure for the Director of the PTO to conduct discretionary review of APJs' decisions, but left their removal protections in place. *Arthrex*, 141 S. Ct. at 1987. In the Court's view, allowing Directorial review better reflected the

structure of supervision within the PTO and the nature of the APJs' duties. *See id.* Given that DOJ ALJs' core function, like the APJs', is to decide cases, the existence of the review process should be considered sufficient to hold the ALJs accountable to the Attorney General, as the Court did in *Arthrex*. The adjudicative nature of the ALJs' role and the relatively limited protection offered by the good cause standard, compared to the PCAOB members' standard in the *Free Enterprise Fund*, also warrant a finding that the ALJs' removal protections are compatible with the separation of powers. For these reasons, the Court should dismiss Count II.

C. *At a minimum, SpaceX is not entitled to injunctive relief.*

Even if the Court finds the ALJ's removal protections unconstitutional, in no event is SpaceX entitled to have the ALJ proceedings enjoined. *See* FAC Prayer for Relief (requesting that the Court "enjoin Defendants from continuing the pending OCAHO proceedings against SpaceX;" "Order Judge Bell to dismiss the government's complaint;" "Declare . . . that Defendants may not continue such proceedings."). As this Court has held, "there is no need to stay proceedings an OCAHO ALJ may conduct" because severing the OCAHO ALJs' removal restrictions would make them accountable to the President. PI Order at 7. The Court should apply the same reasoning at the final judgment stage as well, consistent with how the Supreme Court has remedied unconstitutional removal restrictions. In *Free Enterprise Fund*, for example, the Court squarely denied plaintiffs' request to enjoin the PCAOB's operations and granted declaratory relief only. "[L]imit[ing] the solution to the problem," the Court invalidated one of two layers of removal protections, making PCAOB members removable at will by the SEC, while the SEC Commissioners retained their presumed protections from removal by the President. 561 U.S. at 508-09. Likewise, in *Seila Law*, the Court found the removal protections for the CFPB Director unconstitutional. 140 S. Ct. at 2207-08. But it did not enjoin any of the CFPB's operations. Instead, it severed the removal provision, noting that "[t]he provisions of the [statute] bearing on the

CFPB's structure and duties remain fully operative without the offending tenure restriction" and that "[t]hose provisions are capable of functioning independently." *Id.* at 2209; *see also Collins*, 141 S. Ct. at 1788 n.23 ("the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office"); *FTC v. Walmart Inc.*, 664 F. Supp. 3d 808, 845 (N.D. Ill. 2023) (declining to dismiss FTC's enforcement action when FTC Commissioners' removal protections could be severed instead); *FTC v. Kochava Inc.*, 671 F. Supp. 3d 1161, 1179 (D. Idaho 2023) (same).

Rather than enjoin the proceedings, the Court should simply declare the second half of the sentence in § 7521(a) after "good cause" invalid as to the ALJ presiding over SpaceX's case, thus eliminating any requirement that the MSPB assess whether "good cause" exists for that ALJ's removal. The ALJ would then be subject to good-cause removal by the Attorney General (who serves at the pleasure of the President). Alternatively, should the Court determine that the ALJs are principal officers who must be removable at will, the Court could sever the "good cause" requirement in § 7521(a) entirely. *See* PI Order at 7 ("Severing both removal restrictions would make OCAHO ALJs accountable to the President, so there is no need to stay proceedings an OCAHO ALJ may conduct."). In either case, SpaceX's administrative proceedings could proceed without the alleged constitutional defect—similar to the remedies granted in *Free Enterprise Fund* and *Seila Law*. Such a remedy would be carefully tailored to redress the harm suffered by SpaceX, while avoiding potentially "sweeping effects for the removal of ALJs across the Executive Branch," a concern that SpaceX shares with Defendants. *See* FAC ¶ 65; *see also*, *e.g.*, *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 222 (1974) (When "the relief sought produces a confrontation with

27

one of the coordinate branches of the Government," the "framing of relief" may be "no broader than required" to address any "concrete injury").[10]

## III.   SpaceX's Article III and Seventh Amendment claims (Counts III, IV) fail.

SpaceX's Article III and Seventh Amendment claims fail because, as this Court recognized, "Section 1324b . . . protects public rights." PI Order at 8. The Supreme Court has repeatedly held that matters involving "public rights" need "not be adjudicated in Article III court," *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1374 (2018), and "may be assigned to administrative agencies" in the first instance, *Atlas Roofing Co., Inc. v. Occup. Safety & Health Rev. Comm'n*, 430 U.S. 442, 456 (1977). "[S]uits involving public rights are those which arise between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments." *Austin v. Shalala*, 994 F.2d 1170, 1177 (5th Cir. 1993).

Here, the § 1324b claim at issue concerns public rights because it "arise[s] between the Government" and an entity "subject to its authority in connection with the performance" of a central "constitutional function[] of the executive," namely, the administration of immigration laws. *Id*. Further, courts have recognized that claims concerning immigration and related labor and

---

[10] Previously, SpaceX has argued that Congress intended for ALJs to operate independently. But the Supreme Court rejected a similar argument in *Seila Law*. The Court recognized "Congress preferred an independent CFPB to a dependent one," but "the critical question [was] whether Congress would have preferred a dependent CFPB to *no agency at all.*" 140 S. Ct. at 2210. And it "seem[ed] clear" to the Court that the Congress would prefer a dependent CFPB, as the elimination of the CFPB would cause "major regulatory disruption" and "leave appreciable damage to Congress's work in the consumer-finance arena." *Id.* Here, preventing ALJs from adjudicating § 1324b cases at all would also cause major regulatory disruption and undermine Congress's work in the immigration and employment discrimination area, as it would shut down the sole venue for hearing citizenship status-based claims, as well as small-employer, national origin-based claims, under § 1324b. "Given these consequences, it is far from evident that Congress would have preferred" no ALJ proceedings at all to proceedings before dependent ALJs. *Id.*

employment laws implicate public rights. *Frank's Nursery, LLC v. Walsh*, No. CV H-21-3485, 2022 WL 2757373, at *8 (S.D. Tex. July 14, 2022) (rejecting Article III challenge to agency adjudication of alleged violations of immigrants' workplace protections); *Sun Valley Orchards, LLC v. U.S. Dep't of Lab.*, 2023 WL 4784204, at *6 (D.N.J. July 27, 2023), *appeal filed*, No. 23-2608 (3d Cir. Sep. 5, 2023) (same); *Noriega-Perez v. United States*, 179 F.3d 1166, 1175 (9th Cir. 1999) (in a 8 U.S.C. § 1324c case involving employment document fraud, noting that "[a]lthough the boundaries of . . . public and private rights for Article III purposes have shifted over the years . . . the field of immigration . . . has remained solidly within 'public rights'"). These decisions are consistent with longstanding Supreme Court precedent that it is "within the competency of Congress, when legislating as to matters exclusively within its control [such as immigration], to impose appropriate obligations, and sanction their enforcement by reasonable money penalties, giving to executive officers the power to enforce such penalties without the necessity of invoking the judicial power." *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909); *see also Lloyd Sabaudo Societa Anonima Per Azioni v. Elting*, 287 U.S. 329, 334 (1932) (similar); *Austin*, 994 F.2d at 1177 ("[T]he Court has approved the use of administrative agencies in adjudicating violations of the customs and immigration laws and assessing penalties therefor.").

Because § 1324b implicates public rights, neither Article III nor the Seventh Amendment forbids OCAHO ALJs from resolving § 1324b claims without a jury trial. Defendants are entitled to judgment on SpaceX's Article III and Seventh Amendment claims.

## CONCLUSION

For these reasons, the Court should grant judgment in favor of Defendants.

Dated:  March 22, 2024                              Respectfully submitted,

29

ALAMDAR S. HAMDANI
United States Attorney

DANIEL DAVID HU
Chief, Civil Division

*/s/ Christopher Pineda*
CHRISTOPHER PINEDA
Southern District No. 1055715
Texas Bar No. 24070420
Assistant United States Attorney
Attorney in Charge
600 E. Harrison, Suite 201
Brownsville, TX 78520
Christopher.Pineda@usdoj.gov

*Counsel for Defendants*

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CHRISTOPHER HALL
Assistant Director, Federal Programs Branch

*/s/ Kuntal Cholera*
KUNTAL CHOLERA (D.C. Bar No. 1031523)
Trial Attorney, Attorney in Charge
CYNTHIA LIAO (CA Bar No. 301818)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
Kuntal.Cholera@usdoj.gov
Telephone: (202) 305-8645
Cynthia.F.Liao@usdoj.gov
Telephone: (202) 531-1325
Fax: (202) 616-8470