**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., | |
| *Plaintiff,* | |
| v. | Civ. Action No. 1:23-cv-00137 |
| CAROL BELL, in her official capacity as Administrative Law Judge of the Office of the Chief Administrative Hearing Officer; JAMES MCHENRY, in his official capacity as Chief Administrative Hearing Officer; and MERRICK B. GARLAND, in his official capacity as U.S. Attorney General, | |
| *Defendants.* | |

**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

    A.    SpaceX Strives To Hire The World's Most Talented People To Build The World's Most Advanced Rockets, Satellites, And Other Technology ...........................................................................................2

    B.    OCAHO Proceedings Under Section 1324b ................................4

    C.    The Government's Section 1324b Action Against SpaceX ........5

    D.    This Lawsuit ................................................................................6

LEGAL STANDARD ..........................................................................................7

ARGUMENT .......................................................................................................7

I.      OCAHO ALJS ARE NOT CONSTITUTIONALLY APPOINTED ......................7

    A.    Administrative Review Of Section 1324b Orders Is Necessary To Avoid An Appointments Clause Violation ...................................7

    B.    Section 1324b Precludes Further Administrative Review .........8

    C.    Severability Cannot Fix The Appointments Clause Defect .....12

    D.    The IFR Cannot Fix The Appointments Clause Defect ...........13

II.    OCAHO ALJS ARE UNCONSTITUTIONALLY INSULATED FROM PRESIDENTIAL REMOVAL ..............................................................16

    A.    Under *Jarkesy*, OCAHO ALJs Do Not Fit Either Narrow Exception To The President's Unrestricted Removal Power .....................16

    B.    Spacex Is Suffering Redressable Harm Due To The Removal Violation ...................................................................................18

    C.    Severability Is Relevant Only To The Proper Remedy—And Cannot Cure The Removal Violation ....................................................21

III.   THE PROCEEDINGS AGAINST SPACEX VIOLATE ARTICLE III AND THE SEVENTH AMENDMENT ...............................................................25

CONCLUSION ..................................................................................................30

# TABLE OF AUTHORITIES

**CASES:**

*A.S. v. Amazon Web Servs. Inc.*,
 14 OCAHO 1381H, 2021 WL 3465663 (July 29, 2021) .....................................................5, 9

*Alaska Airlines, Inc. v. Brock*,
 480 U.S. 678 (1987)................................................................................................................21

*Allison v. Citgo Petroleum Corp.*,
 151 F.3d 402 (5th Cir. 1998) .................................................................................................27

*Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*,
 430 U.S. 442 (1977)..........................................................................................................26, 30

*Austin v. Shalala*,
 994 F.2d 1170 (5th Cir. 1993) ..........................................................................................29, 30

*Axon Enter., Inc. v. FTC*,
 598 U.S. 175 (2023)........................................................................................................ *passim*

*Barr v. American Ass'n of Pol. Consultants, Inc.*,
 140 S. Ct. 2335 (2020)...........................................................................................................21

*Burgess v. FDIC*,
 639 F. Supp. 3d 732 (N.D. Tex. 2022) ..................................................................................20

*Butz v. Economou*,
 438 U.S. 478 (1978).................................................................................................................22

*Calcutt v. FDIC*,
 37 F.4th 293 (6th Cir. 2022) ..................................................................................................20
 598 U.S. 623 (2023)................................................................................................................20

*Center for Biological Diversity v. EPA*,
 937 F.3d 533 (5th Cir. 2019) .................................................................................................15

*CFPB v. Law Offices of Crystal Moroney, P.C.*,
 63 F.4th 174 (2d Cir. 2023) ...................................................................................................20

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*,
 494 U.S. 558 (1990)................................................................................................................25

*Clark v. Martinez*,
 543 U.S. 371 (2005)................................................................................................................12

*Cochran v. SEC*,
    20 F.4th 194 (5th Cir. 2021) ................................................................................................19

*Collins v. Department of the Treasury*,
    83 F.4th 970 (5th Cir. 2023) ................................................................................................20

*Collins v. Yellen*,
    141 S. Ct. 1761 (2021)..................................................................................14, 15, 19, 30

*Commonwealth of Mass. v. Mellon*,
    262 U.S. 447 (1923)................................................................................................................15

*Community Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
    51 F.4th 616 (5th Cir. 2022) ....................................................................................19, 20

*Curtis v. Loether*,
    415 U.S. 189 (1974)..................................................................................................26, 27, 28

*Decker Coal Co v. Pehringer*,
    8 F.4th 1123 (9th Cir. 2021) ..................................................................................18, 20

*Edmond v. United States*,
    520 U.S. 651 (1997)..................................................................................................................7

*EEOC v. Bass Pro Outdoor World, L.L.C.*,
    826 F.3d 791 (5th Cir. 2016) ................................................................................................27

*FEC v. Cruz*,
    596 U.S. 289 (2022)......................................................................................................14, 15

*Franciscan All., Inc. v. Becerra*,
    47 F.4th 368 (5th Cir. 2022) ................................................................................................14

*Frank's Nursery, LLC v. Walsh*,
    No. CV H-21-3485, 2022 WL 2757373 (S.D. Tex. July 14, 2022) ..................................28, 29

*Free Enter. Fund v. Public Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010)............................................................................................16, 18, 21, 24

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989)......................................................................................................26, 28

*Hepner v. United States*,
    213 U.S. 103 (1909)..................................................................................................2, 27, 28

*Hernandez v. Texas Health & Hum. Servs. Comm'n*,
    No. 1:22-cv-157, 2023 WL 5020838 (July 13, 2023)............................................................30
    2023 WL 5018429 (S.D. Tex. Aug. 7, 2023) ........................................................................30

*Jarkesy v. SEC,*
    34 F.4th 446 (5th Cir. 2022) ................................................................. *passim*

*Jennings v. Rodriguez,*
    138 S. Ct. 830 (2018) ................................................................................12

*Johnson v. Arteaga-Martinez,*
    142 S. Ct. 1827 (2022) ..............................................................................12

*Lloyd Sabaudo Soc'y Anonima Per Azioni v. Elting,*
    287 U.S. 329 (1932) ..................................................................................29

*Louisiana Pub. Serv. Comm'n v. FCC,*
    476 U.S. 355 (1986) ..................................................................................14

*Lucia v. SEC,*
    585 U.S. 237 (2018) ..............................................................................17, 22

*Murphy v. Nat'l Collegiate Athletic Ass'n,*
    138 S. Ct. 1461 (2018) ..............................................................................13

*Nitn Degaonkar v. Infosys Ltd.,*
    15 OCAHO 1393A, 2022 WL 17623217 (Nov. 30, 2022) ........................9

*Noriega-Perez v. United States,*
    179 F.3d 1166 (9th Cir. 1999) ..................................................................29

*Oceanic Steam Navigation Co. v. Stranahan,*
    214 U.S. 320 (1909) ..................................................................................29

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
    566 U.S. 639 (2012) ..................................................................................10

*Ramspeck v. Federal Trial Exam'rs Conf.,*
    345 U.S. 128 (1953) ..................................................................................22

*Ravines de Schur v. Easter Seals-Goodwill N. Rocky Mountain, Inc.,*
    15 OCAHO 1388G, 2022 WL 2466910 (June 23, 2022) ........................10

*Rodriguez Garcia v. Farm Stores,*
    17 OCAHO 1449, 2022 WL 4075712 (Aug. 11, 2022) ..............................9

*Seila Law LLC v. CFPB,*
    591 U.S. 197 (2020) ................................................................. *passim*

*Sidak v. ITC,*
    No. 1:23-cv-00325 (TNM), 2023 WL 3275635 (D.D.C. May 5, 2023) ................20

*Sun Valley Orchards, LLC v. U.S. Dep't of Labor*,
No. 1:21-cv-16625, 2023 WL 4784204 (D.N.J. July 27, 2023) .............................................29

*Tull v. United States*,
481 U.S. 412 (1987).......................................................................................................25

*United States v. Arthrex, Inc.*,
594 U.S. 1 (2021)................................................................................................ *passim*

*United States v. Hansen*,
599 U.S. 762 (2023).......................................................................................................11

*United States v. Lott*,
750 F.3d 214 (2d Cir. 2014)..........................................................................................15

*United States v. National Treasury Emps. Union*,
513 U.S. 454 (1995).......................................................................................................23

*United States v. Palomar-Santiago*,
593 U.S. 321 (2021).......................................................................................................12

*United States v. Texas*,
599 U.S. 670 (2023).......................................................................................................15

*Walmart Inc. v. King*,
No. CV 623-040, 2024 WL 1258223 (S.D. Ga. Mar. 25, 2024) .................................... *passim*

*Whitman v. American Trucking Ass'ns*,
531 U.S. 457 (2001).................................................................................................12, 13

*Wije v. Barton Springs*,
81 F.3d 155 (5th Cir. 1996) .............................................................................................5

*Wong Wing v. United States*,
163 U.S. 228 (1896).......................................................................................................28

*Ysleta Del Sur Pueblo v. Texas*,
142 S. Ct. 1929 (2022)......................................................................................................9

*Zajradhara v. HBH Co.*,
16 OCAHO 1417C, 2022 WL 14803036 (Oct. 14, 2022).....................................................9

<u>**Constitution and Statutes**</u>:

U.S. Const.
    amend. VII ...............................................................................................25
    art. II, § 1, cl. 1 .....................................................................................16
    art. II, § 2, cl. 2 .......................................................................................7
    art. II, § 3 ..............................................................................................16
    art. III, § 1 ............................................................................................25

5 U.S.C.
    § 557(b) ................................................................................................10
    § 704 .....................................................................................................10
    § 706(2) .......................................................................................5, 15, 16
    § 1202(d) ..........................................................................................*passim*
    § 3105 .....................................................................................................4
    § 7521(a) ..................................................................................4, 16, 17, 22

8 U.S.C.
    § 1324a ...............................................................................................8, 9
    § 1324a(e)(7) ..........................................................................................8
    § 1324b .............................................................................................*passim*
    § 1324b(a)(1)(A) ..................................................................................27
    § 1324b(a)(1)(B) .............................................................................1, 4, 5
    § 1324b(a)(2)(A) ..................................................................................27
    § 1324b(a)(2)(B) ..................................................................................27
    § 1324b(a)(3) .........................................................................................4
    § 1324b(d)(2) .......................................................................................28
    § 1324b(e)(2) .......................................................................................30
    § 1324b(f)(2) ..........................................................................................4
    § 1324b(g)(1) ....................................................................................*passim*
    § 1324b(g)(2)(B)(iii) .............................................................................5
    § 1324b(g)(2)(B)(iv)(I) ..........................................................................5
    § 1324b(i) ...............................................................................................8
    § 1324b(i)(1) ....................................................................................*passim*
    § 1324b(j)(1) .............................................................................8, 9, 11, 12
    § 1324b(j)(2) .................................................................................5, 8, 12
    § 1324c ...................................................................................................8
    § 1324c(d)(4) ..........................................................................................8

42 U.S.C.
    § 2000e(b) ............................................................................................27
    § 2000e-2(a)(1) ....................................................................................27
    § 2000e-5(f)(1) .....................................................................................27

Administrative Procedure Act, Pub. L. No. 79-404, § 11, 60 Stat. 237, 244 (1946)....................22

Civil Service Reform Act of 1978, Pub. L. No. 95-454, § 1202(d), 92 Stat. 1111 ......................23

<u>REGULATIONS</u>:

5 C.F.R.
§ 1200.1...........................................................................................................23
§ 1201.1...........................................................................................................23
§ 1201.2...........................................................................................................23
§ 1201.3...........................................................................................................23

28 C.F.R.
§ 68.2.................................................................................................................14
§ 68.26................................................................................................................4
§ 68.28(a)...........................................................................................................4
§ 68.51(c) (1989)................................................................................................9
§ 68.52(g) (2022).........................................................................................9, 14
§ 68.57 (Oct. 12, 2023)....................................................................................14
§ 85.5.................................................................................................................5

54 Fed. Reg. 48,593-02 (Nov. 24, 1989) ...............................................................9

88 Fed. Reg. 70,586-01, 70,589 (Oct. 12, 2023) (to be codified at 28 C.F.R. pt.
68) ...........................................................................................................6, 9, 13, 14

<u>OTHER AUTHORITIES</u>:

1 ANNALS OF CONG. 499 (J. Madison) (1789) ......................................................8

30 WRITINGS OF GEORGE WASHINGTON 334 (J. Fitzpatrick ed. 1939)...................16

Baude, William, *Severability First Principles*, 109 VA. L. REV. 1 (2023) ................22

*Civil Service Reform: Hearings on H.R. 11280 Before the H. Comm. on Post Off.
& Civ. Serv.*, 95th Cong. 824 (1978) .............................................................23

DOJ, *IER's Frequently Asked Questions (FAQs)* ("National Origin
Discrimination") (Mar. 27, 2024) ..............................................................27

Exec. Order No. 12,866, 58 Fed. Reg. 51,735 (Sept. 30, 1993) ...........................14

Editorial Board, *The Harassment of Elon Musk*, THE WALL ST. J., Sept. 22, 2023 ......21

FED. R. CIV. P. 56(a) ...............................................................................................7

H.R. Rep. No. 99-682(II) (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5757, 1986
WL 31951 ......................................................................................................9

Office of the Chief Administrative Hearing Officer Review Procedures, Posted
Comments (last visited May 21, 2024)........................................................15

S. Rep. No. 79-752 (1945) .....................................................................................22

Secretary of Educ. Rev. of Admin. L. Judge Decisions, 15 Op. O.L.C. 8 (1991)........................11

THE FEDERALIST NO. 47 (James Madison) (C. Rossiter ed. 1961) ................................................30

U.S. Dep't of Justice, Notice, *Executive Office for Immigration Review*
   *Announces New Administrative Law Judge* (June 18, 2019).....................................................4

# INTRODUCTION

The Immigrant and Employee Rights Section of the Department of Justice (IER) filed an administrative complaint against Space Exploration Technologies Corporation (SpaceX) in proceedings before Carol Bell, an administrative law judge (ALJ) within the Executive Office for Immigration Review (EOIR)'s Office of the Chief Administrative Hearing Officer (OCAHO).  The government alleges that SpaceX discriminated against refugees and asylees in its hiring processes in violation of 8 U.S.C. § 1324b(a)(1)(B).  SpaceX denies those allegations.  SpaceX has hired hundreds of noncitizens while following strict policies and procedures both to ensure compliance with its national security obligations and to prevent any unlawful discrimination.  But SpaceX should not have to participate in the proceedings at all, because they are "illegitimate" and "led by an illegitimate decisionmaker."  *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023).

In November 2023, this Court agreed and preliminarily enjoined the OCAHO proceedings.  The Court held that (i) OCAHO ALJs' authority to enter Section 1324b orders without administrative review violates the Appointments Clause; (ii) the unconstitutional provisions were not severable; and (iii) an interim final rule (IFR) purporting to provide constitutional review is invalid.  ECF 28 (PI Order) 3-5.  The government now asks the Court to change its mind—but offers nothing new in support.  It simply rehashes the same arguments the Court previously and correctly rejected.  The Court should grant SpaceX summary judgment on its Appointments Clause claim (Count I), and its accompanying APA claim challenging the IFR (Count V).

With respect to SpaceX's remaining claims, the new procedural posture (and new authorities) compel granting SpaceX summary judgment.  On the Article II removal claim (Count II), the President must have "unrestricted removal power" over OCAHO ALJs.  *Seila Law LLC v. CFPB*, 591 U.S. 197, 215 (2020).  Yet OCAHO ALJs enjoy two levels of protection from removal.  The Court's prior conclusion that SpaceX was not entitled to a preliminary injunction because the

removal restrictions are severable does not impact SpaceX's entitlement to summary judgment (and at least a declaratory judgment), as the government concedes.  And, as an intervening decision that directly addresses the removal protection of OCAHO ALJs explains, the removal restrictions are *not* severable.  *Walmart Inc. v. King*, No. CV 623-040, 2024 WL 1258223 (S.D. Ga. Mar. 25, 2024).

The OCAHO proceedings also violate Article III (Count III) and the Seventh Amendment (Count IV), because they purport to adjudicate private rights within an Executive Branch agency, rather than in an Article III court with a right to a jury.  The Court previously held that SpaceX was unlikely to succeed on these claims because the proceedings concern "both immigration and employment law."  PI Order 8.  But the Supreme Court has held that the "right of trial by jury" applied in an action for monetary penalties against an employer who induced an alien to travel to the United States for work.  *Hepner v. United States*, 213 U.S. 103, 104-105, 115 (1909).  Although the admission or exclusion of aliens from the United States (and other core government functions) may involve public rights susceptible to agency adjudication, employment-discrimination claims seeking civil penalties do not.

The Court should grant SpaceX summary judgment on all five claims.

## BACKGROUND

### A.     SpaceX Strives To Hire The World's Most Talented People To Build The World's Most Advanced Rockets, Satellites, And Other Technology

SpaceX was founded in 2002 in a warehouse in El Segundo, California, with the audacious goal of making life multiplanetary.  ECF 31 (FAC) ¶ 11; *see also* ECF 11-1 ¶ 1.  SpaceX operates two primary businesses in pursuit of its lofty objectives: a space launch business and a global satellite-based internet service known as Starlink.  FAC ¶ 12.

SpaceX is the world's leading space launch provider. FAC ¶ 13. It designs, manufactures, and launches advanced rockets and spacecraft to take customer payloads to space, including satellites, cargo for the International Space Station, NASA and international astronauts, and other human spaceflight participants. *Id.* As part of its launch business, SpaceX is developing Starship—the most powerful rocket ever built. *Id.* ¶ 14.

SpaceX also designs, manufactures, launches, and operates communications satellites. FAC ¶ 15. SpaceX's Starlink is the world's most advanced satellite-based internet service. *Id.* It uses the world's largest constellation of low Earth orbit satellites and ground infrastructure around the world to deliver high-speed, low-latency internet to nearly anywhere on Earth, including to the vast areas and large portion of the world's population lacking broadband connectivity. *Id.*

SpaceX's customers include the U.S. defense and intelligence community, NASA (which has hired SpaceX to return astronauts to the lunar surface), geopolitical allies, humanitarian aid agencies, and more. FAC ¶ 13.

SpaceX's accomplishments have enabled the company to grow rapidly. FAC ¶ 16. SpaceX has always sought to hire the most talented people possible. *Id.* ¶ 17. Likely because SpaceX offers a unique opportunity to work on technology that is revolutionizing the space industry, SpaceX is consistently ranked as one of the most attractive employers in the United States for engineering students. *Id.* ¶ 18. SpaceX often receives hundreds of applications for a single position. *Id.* In an ideal world, SpaceX would hire the most talented people without regard to their citizenship. *Id.* ¶ 19. But because SpaceX designs, manufactures, and operates extremely sensitive technologies with advanced military applications, SpaceX faces legal mandates under export control statutes and regulations, as well as under some of its government contracts. *Id.* ¶ 20. Nonetheless, SpaceX follows strict policies and procedures both to ensure compliance with export

control laws and to prevent unlawful discrimination, including discrimination against refugees and asylees.  *Id.* ¶ 23.

### B.     OCAHO Proceedings Under Section 1324b

Under 8 U.S.C. § 1324b(a)(1)(B), "[i]t is an unfair immigration-related employment practice" to discriminate against a "protected individual" "with respect to the hiring, or recruitment or referral for a fee, of the individual . . . because of such individual's citizenship status."  A "protected individual" includes "an alien who is lawfully admitted for permanent residence, is granted the status of an alien lawfully admitted for temporary residence . . . , is admitted as a refugee . . . , or is granted asylum," subject to certain exceptions.  *Id.* § 1324b(a)(3).

The OCAHO ALJs who adjudicate Section 1324b proceedings are appointed by the Attorney General.  *See* 28 C.F.R. § 68.26 (citing 5 U.S.C. § 3105); *see also, e.g.*, U.S. Dep't of Justice, Notice, *Executive Office for Immigration Review Announces New Administrative Law Judge* (June 18, 2019), https://www.justice.gov/eoir/page/file/1175096/download.  But they are insulated from removal in two ways:  They are removable by the Attorney General "only for good cause established and determined by the Merit Systems Protection Board [MSPB] on the record after opportunity for hearing before the Board."  5 U.S.C. § 7521(a).  And MSPB members, in turn, "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office."  5 U.S.C. § 1202(d).

During Section 1324b proceedings, OCAHO ALJs wield broad powers.  Among other things, they have "access to examine evidence of any person or entity being investigated," "by subpoena may compel the attendance of witnesses and the production of evidence," and may seek a court order requiring compliance with a subpoena.  8 U.S.C. § 1324b(f)(2); *see also* 28 C.F.R. § 68.28(a) (ALJ "shall have all the appropriate powers necessary to conduct fair and impartial

hearings," including the power to "[c]onduct formal hearings," "examine witnesses" under oath, and "[c]ompel the production of documents and appearance of witnesses in control of the parties"). If the ALJ finds a violation, the ALJ may require the respondent to "hire individuals directly and adversely affected, with or without back pay," and to "pay a civil penalty" up to $4,465 "for each individual discriminated against." 8 U.S.C. § 1324b(g)(2)(B)(iii), (iv)(I); *see* 28 C.F.R. § 85.5.

ALJs are also empowered to "issue . . . an order, which shall be final unless appealed" to a "United States court of appeals." 8 U.S.C. § 1324b(g)(1), (i)(1). Such Section 1324b final orders are not reviewable within the Executive Branch. *See, e.g.*, *A.S. v. Amazon Web Servs. Inc.,* 14 OCAHO 1381H, 2021 WL 3465663, at *1 n.4 (July 29, 2021). A respondent may seek review only in a federal court of appeals, 8 U.S.C. § 1324b(i)(1), which will deferentially uphold the ALJ's findings so long as "they are supported by substantial evidence," *Wije v. Barton Springs*, 81 F.3d 155 (5th Cir. 1996) (per curiam); *see* 5 U.S.C. § 706(2). If a party fails to seek judicial review, the ALJ's order is final and enforceable in federal court. *See* 8 U.S.C. § 1324b(j)(2).

## C. The Government's Section 1324b Action Against SpaceX

On August 23, 2023, IER filed a complaint with OCAHO alleging that "[f]rom at least September 2018 to at least May 2022, SpaceX discriminated against asylees and refugees throughout its hiring process" in purported violation of Section 1324b(a)(1)(B). ECF 11-2 (OCAHO Compl.) ¶¶ 1, 13. The case was assigned to Judge Bell. ECF 11-1 ¶ 18.

As relevant here, the government requested that Judge Bell order SpaceX to "pay an appropriate civil penalty . . . for each individual discriminated against"; "provide fair consideration to each applicant who identified as an asylee or refugee but was improperly screened out or rejected, or who was . . . deterred from applying, based on citizenship status"; "hire applicants who were victims of the discriminatory practices alleged . . . and were qualified for employment"; and

"pay back pay, including interest, . . . to each individual discriminated against who was qualified and who is found to have suffered uncompensated lost wages due to denied or delayed employment," along with "such additional relief as justice may require."  OCAHO Compl. 12.

### D.    This Lawsuit

On September 15, 2023, SpaceX filed this lawsuit alleging that the OCAHO proceedings violate the Appointments Clause, the President's removal power, Article III, and the Seventh Amendment.  ECF 1 (Compl.).  On September 26, 2023, SpaceX moved for a preliminary injunction.  ECF 11.  Sixteen days later—and nearly four decades since the inception of its Section 1324b enforcement authority—DOJ published the IFR, which for the first time purported to give the Attorney General authority to review ALJs' Section 1324b final orders.  *See* OCAHO, Review Procedures, 88 Fed. Reg. 70,586-01, 70,589 (Oct. 12, 2023) (to be codified at 28 C.F.R. pt. 68).  Nearly eight months later, DOJ has not published a final rule.

On November 8, 2023, the Court preliminarily enjoined the OCAHO proceedings.  Under the Appointments Clause, "the Attorney General must be able to review the decisions of OCAHO ALJs," but under Section 1324b, he cannot do so.  PI Order 3-4.  The IFR could not "save[]" the statute because it "conflicts with the plain language of § 1324b."  *Id.*  Severability could not save the statute, either; only Congress could "rewrite" it.  *Id.* at 5 (quotation omitted).

The Court ruled that SpaceX would not be entitled to a preliminary injunction based on its removal, Article III, or Seventh Amendment claims.  PI Order 7-8.  Although SpaceX had standing to bring its removal claim and OCAHO ALJs' dual-layer removal protections were assumed unconstitutional, the Court denied injunctive relief on severability grounds.  *Id.* at 7.  The Court held that Section 1324b proceedings do not implicate Article III or the Seventh Amendment because the proceedings "concern both immigration and employment law."  *Id.* at 8.

The Court preliminarily enjoined the proceedings against SpaceX based on the Appointments Clause violation. PI Order 9. The government did not appeal; instead, it moved for summary judgment. ECF 35.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## ARGUMENT

## I.   OCAHO ALJS ARE NOT CONSTITUTIONALLY APPOINTED

The Court should reaffirm its holding in its prior preliminary injunction order and grant SpaceX summary judgment on its Appointments Clause (Count I) and APA (Count V) claims.

### A.   Administrative Review Of Section 1324b Orders Is Necessary To Avoid An Appointments Clause Violation

The Appointments Clause gives the President authority to, "by and with the Advice and Consent of the Senate, . . . appoint . . . Officers of the United States." U.S. CONST. art. II, § 2, cl. 2. Congress may vest the appointment of only "inferior Officers . . . in the President alone, in the Courts of Law, or in the Heads of Departments." *Id.* "Whether one is an 'inferior' officer depends on whether he has a superior" other than the President. *Edmond v. United States*, 520 U.S. 651, 662 (1997). The "officer must be 'directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate.'" *United States v. Arthrex, Inc.*, 594 U.S. 1, 13 (2021) (quoting *Edmond*, 520 U.S. at 663).

In *Arthrex*, the Supreme Court held that the Patent Trial and Appeal Board's administrative patent judges (APJs) were functioning as principal officers, and were not properly appointed by the Secretary of Commerce alone. The APJs issued decisions without review "within the Executive Branch." 594 U.S. at 14. And review "outside Article II," in a federal court of appeals,

"cannot provide the necessary supervision." *Id.* at 17.  Despite performing adjudicative functions, the APJs were "exercising executive power" and "must remain 'dependent upon the President.'" *Id.* (emphasis added) (quoting 1 ANNALS OF CONG. 499, 611-612 (J. Madison) (1789)).

The government does not dispute that, under *Arthrex*, it would violate the Appointments Clause if OCAHO ALJs oversee Section 1324b proceedings without further agency review.

### B.   Section 1324b Precludes Further Administrative Review

"Based on § 1324b's plain language, broader context, and legislative history, it is clear the decisions of OCAHO ALJs are not subject to the Attorney General's review."  PI Order 4.

The text unambiguously precludes administrative review.  Section 1324b(g)(1) requires an "administrative law judge" to issue "an order, which shall be final unless appealed as provided under subsection (i)."  Subsection (i), in turn, provides for appeal in an appropriate "United States court of appeals," not within DOJ.  8 U.S.C. § 1324b(i)(1).  When the government petitions to enforce "an order of the agency," the court has power to "enforc[e] the order *of the administrative law judge*."  *Id.* § 1324b(j)(1)-(2) (emphasis added).  And an aggrieved person has 60 days "after the entry of such final order" of the "administrative law judge" to appeal.  *Id.* § 1324b(g)(1), (i).

"[T]he broader context of the statute [as a whole] reinforces the plain text interpretation."  PI Order 4.  Congress sandwiched Section 1324b between Sections 1324a (unlawful employment of aliens) and 1324c (document fraud).  Although the government tries to downplay those sections as "merely requir[ing] DOJ to maintain specific processes for further agency review," ECF 35 at 12, their contrast with Section 1324b is stark:  In Sections 1324a and 1324c, Congress provided for "Administrative appellate review" by the Attorney General—and set forth a process under which either the ALJ's order or the "order of the Attorney General" "shall become the final agency decision."  8 U.S.C. §§ 1324a(e)(7), 1324c(d)(4).  In Section 1324b, by contrast, Congress did not

provide for administrative appellate review—and deemed the order "issue[d]" by the "administrative law judge" the "order of the agency."  *See id.* § 1324b(g)(1), (i)(1), (j)(1). Congress's decision not to provide for Attorney General review in Section 1324b "must therefore be viewed as intentional."  PI Order 4 (citing *Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1939 (2022)).

Section 1324b's legislative history confirms "that Congress did not intend for the Attorney General to have the authority to review OCAHO ALJ decisions."  PI Order 4.  According to that legislative history, the statute "makes clear that an [ALJ]'s order . . . is a final agency order and is enforceable immediately unless appealed in accordance with provisions specified."  H.R. Rep. No. 99-682(II) (1986), *as reprinted in* 1986 U.S.C.C.A.N.  5757, 5763, 1986 WL 31951, at *14.  After citing legislative history eight times in its preliminary-injunction response, ECF 20 at 4-5, 22, the government now contends that "legislative history is not the law," ECF 35 at 12.  But the point is that Section 1324b's text, context, and legislative history all point in the same direction: no additional administrative review.

Equally telling is the government's unbroken (until now) history of interpreting Section 1324b that way.  *E.g.*, 28 C.F.R. § 68.51(c) (1989) (providing for administrative review in Section 1324a cases but not Section 1324b cases); *see also* 54 Fed. Reg. 48,593-02 (Nov. 24, 1989).  DOJ regulations long "provide[d] that the ALJ's final order in a case under section [1324b] . . . is not subject to further review within the Department."  88 Fed. Reg. at 70,587 (citing 28 C.F.R. § 68.52(g) (2022)).  OCAHO ALJs have stayed Section 1324b proceedings based on the same view.  *Amazon Web Servs.*, 14 OCAHO 1381H, 2021 WL 3465663, at *1 n.4; *Nitn Degaonkar v. Infosys Ltd.*, 15 OCAHO 1393A, 2022 WL 17623217, at *2 (Nov. 30, 2022); *Zajradhara v. HBH Co.*, 16 OCAHO 1417C, 2022 WL 14803036, at *6 (Oct. 14, 2022); *Rodriguez Garcia v. Farm

*Stores*, 17 OCAHO 1449, 2022 WL 4075712, at *2 (Aug. 11, 2022); *Ravines de Schur v. Easter Seals-Goodwill N. Rocky Mountain, Inc.*, 15 OCAHO 1388G, 2022 WL 2466910, at *3 (June 23, 2022).  This litigation appears to mark the government's first deviation from its long-standing previous interpretation.

The government now argues that Section 1324b has permitted administrative review since it was enacted 37 years ago.  ECF 35 at 8.  The government does not point to a single example of such review.  And its interpretation makes no sense.  According to the government, when Section 1324b describes an ALJ's order as "final," it means the order is subject to "judicial review," not necessarily the agency's "last word."  *Id.* at 10.  Yet the government acknowledges that Section 1324b "refers to ALJ decisions as 'final unless appealed' to a court of appeals."  *Id.* (quoting 8 U.S.C. § 1324b(g)(1) & citing *id.* § 1324b(i)(1)).  Applying the government's definition of "final," the statute would provide that an ALJ's order is subject to judicial review "unless" appealed to a court of appeals—*i.e.*, that the ALJ's order is judicially reviewable "unless" a party seeks judicial review.  That can't be right.

The government argues that its implausible reading is compelled by the APA's definition of "final," which applies "[e]xcept as otherwise expressly required by statute."  ECF 35 at 11 (citing 5 U.S.C. § 704).  Along the same lines, the government argues that the APA authorizes agency heads to review ALJ decisions as a general matter.  *Id.* (citing 5 U.S.C. § 557(b)).  The government ignores that the specific language in Section 1324b overrides any general language in the APA.  *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("[I]t is a commonplace [rule] of statutory construction that the specific governs the general.") (first alteration in original); 5 U.S.C. § 704.  And, for the reasons discussed above, Section 1324b *does* expressly preclude further administrative review—not only in how it uses the word "final,"

but also through interlocking provisions keying judicial review and enforcement to the order "issue[d]" and "ent[ered]" by the administrative law judge.  8 U.S.C. § 1324b(g)(1), (i)(1), (j)(1); *contra* ECF 35 at 8.  That the *Arthrex* statute foreclosed review in one provision, but Section 1324b does so across multiple provisions, *see id.* at 9, makes no difference (except by rendering the unconstitutional provisions of Section 1324b inseverable).

The government's reliance on an Office of Legal Counsel memo is likewise misguided.  ECF 35 at 10-11 & n.4; Secretary of Educ. Rev. of Admin. L. Judge Decisions, 15 Op. O.L.C. 8 (1991).  For starters, OLC memoranda are internal legal advice for Executive Branch agencies that do not bind courts or create law.  In any event, OLC itself expressly distinguished the "shall be final"-type language that Congress chose for Section 1324b from the "shall be considered to be a final agency action" language in the statute it was addressing.  And although OLC interpreted the latter to mean only that "judicial review would thereafter be available," "affirmative evidence" that Congress precluded administrative review would have led to a different conclusion.  *Id.* at 8, 10 & n.3.  Unlike here, in addition to the different finality language, (1) the statute OLC addressed lacked "elaborate . . . review procedures" (and lacked neighboring provisions providing for administrative review), *id.* at 12 n.9; (2) "[n]othing in the legislative history" of the OLC statute foreclosed administrative review, *id.* at 11; and (3) precluding such review would have led to the absurd result that "a decision by the head of a department could be reversed by his subordinate," *id.* at 12.  Only in that "vastly different context" did OLC conclude that the statute implicitly permitted further administrative review.  *Id.* at 12 n.9.

The government finally resorts to the canon of constitutional avoidance to argue that, even if not correct, its reading of Section 1324b is "fairly possible."  ECF 35 at 8, 10 (quoting *United States v. Hansen*, 599 U.S. 762, 781 (2023)).  But it would be "contradictory" to apply the canon

to give the executive branch power "that Congress had omitted," which "would *itself*" violate the separation of powers.  *Cf. Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 473 (2001).  The government points to no example of such self-defeating avoidance.  Regardless, the canon "comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction."  *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018) (quoting *Clark v. Martinez*, 543 U.S. 371, 385 (2005)).  Because SpaceX's reading is "clear," PI Order 4, "the canon simply has no application," *Johnson v. Arteaga-Martinez*, 142 S. Ct. 1827, 1833 (2022); *see also United States v. Palomar-Santiago*, 593 U.S. 321, 329 (2021) (canon "has no application in the absence of statutory ambiguity").

## C.    Severability Cannot Fix The Appointments Clause Defect

The government recycles its argument that, even if unconstitutional, the court can sever language to fix the statute by erasing the word "final."  ECF 35 at 14-15; *see* ECF 26 at 10-11.  This Court rightly rejected that argument last time.  *See* PI Order 5.  The "order of the agency" is still the "order" that may be appealed under subsection (i)(1), and "such order" is the order "issue[d]" by "[t]he administrative law judge."  8 U.S.C. § 1324b(g)(1), (i)(1), (j)(1).  The government weakly argues that such orders are "fairly reasonably understood[] to include orders of ALJs that have been either adopted or modified by the Attorney General."  ECF 35 at 18 (internal quotation marks omitted).  But Section 1324b(g)(1) refers to the order "issue[d]" by the ALJ, the time to appeal still runs from the "entry" of "such" order, and a district court has authority to enforce only that order.  *Id.* § 1324b(i)(1), (j)(2).

The government faults the Court for noting that no provision "affirmatively authorizes the Attorney General to review OCAHO ALJs decisions under Section 1324b."  ECF 35 at 14 (quoting PI Order 5).  But the government ignores that the Court was simply contrasting Section 1324b's

specific language with the statute at issue in *Arthrex*, where an express limitation on agency review could be severed.  PI Order 5.  Here, by contrast, "no provision" or group of provisions "could be severed to enable administrative review."  *Id.*  Particularly in light of Section 1324b's neighboring provisions (as reinforced by its legislative history), such a court-made modification would also clearly undo congressional intent in drafting Section 1324b.  Although DOJ has no special insight into the legislature's preferences, even if DOJ were correct that Congress "would prefer" a new statute fixing these flaws, ECF 35 at 15, 17, only Congress can "rewrite [the] statute," PI Order 5 (quoting *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1482 (2018)).

### D.  The IFR Cannot Fix The Appointments Clause Defect

Instead of looking to Congress, the government ineffectively tried to patch the Appointments Clause problem with a regulatory band-aid.  On October 12, 2023—sixteen days after SpaceX moved for a preliminary injunction—EOIR published the IFR.  The IFR purports to give the Attorney General authority to review OCAHO ALJs' Section 1324b final orders (even though "no party will have the right to seek or request such review").  88 Fed. Reg. at 70,589.  For the reasons already discussed, "the new IFR conflicts with the plain language of § 1324b."  PI Order 4.  Congress could fix the statute.  But DOJ cannot save the statute by adopting an IFR that contradicts statutory text.  *Id.* at 4-5 (agency could not "cure" statutory defect "by adopting in its discretion a limiting construction of the statute" (quoting *Whitman,* 531 U.S. at 472)).

In fact, the IFR exacerbates the problems with the government's interpretation.  For example, Congress provided that parties may seek judicial review "[n]ot later than 60 days after the entry" of the order "issue[d]" by the ALJ.  8 U.S.C. § 1324b(g)(1), (i)(1).  But under the IFR, if the Attorney General does not exercise the purported review authority, the ALJ's order does not become an appealable "final agency order" until 60 days have elapsed, after which a party has

another 60 days to appeal.  28 C.F.R. §§ 68.52(g), 68.57 (Oct. 12, 2023).  The government argues

that "[t]he IFR simply defines *when* the ALJ order becomes 'final,' thus starting the 60-day appeal

clock."  ECF 35 at 18.  But the statute links the deadline to the "entry" of the order described in

subsection (g)(1).  DOJ has thus explicitly disagreed with the statutorily required 60-day judicial-

review deadline—and instead conjured a *120-day* deadline out of thin air.[1]

The government pivots to arguing that this Court must give effect to the IFR *even if it is

invalid*, because SpaceX purportedly lacks standing to challenge the IFR.  As the Court recognized,

that is not the law.  PI Order 3.  To have standing, a "[p]laintiff's injury must be traceable 'to

allegedly unlawful conduct of the defendant, not to the provision of law that is challenged.'"  *Id.*

(quoting *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021)).  SpaceX is challenging the "one

Government action that causes [its] harm"—the OCAHO enforcement proceedings.  *Franciscan*

*All., Inc. v. Becerra*, 47 F.4th 368, 378 (5th Cir. 2022) (emphasis omitted) (quoting *FEC v. Cruz*,

596 U.S. 289, 302 (2022)).  The IFR does not "operate independently" of those proceedings.  PI

Order 3 (quoting *Cruz*, 596 U.S. at 301).  If it "is invalid and unenforceable," the enforcement

action against SpaceX "is as well."  *Cruz*, 596 U.S. at 301.

SpaceX's standing to argue the IFR is invalid in support of its Appointments Clause claim

is beyond question.  DOJ "'literally has no power to act'—including under its regulations—unless

and until Congress authorizes it to do so by statute."  *Cruz*, 596 U.S. at 301 (quoting *Louisiana*

---

[1] Literally read, the IFR is nonsensical:  An order does not become a "final agency order" until 60 days after "entry of the Administrative Law Judge's order," 28 C.F.R. § 68.52(g), but a party must seek review "within sixty (60) days after entry of the order," *id.* § 68.57, *i.e.*, within 60 days from "the date the Administrative Law Judge . . . signs the order," *id.* § 68.2 (defining "Entry"); *see* 88 Fed. Reg. at 70,590-70,591.  The upshot:  By the time an order becomes an appealable "final agency order," it is too late for a party to seek judicial review.

The IFR was obviously hurried—as demonstrated by DOJ's bypass of mandatory Office of Management and Budget review.  *See* Amend. Compl. ¶ 88; Exec. Order No. 12,866, 58 Fed. Reg. 51,735 (Sept. 30, 1993).  The government states that the IFR is "limited to agency organization, management, or personnel matters."  ECF 35 at 19.  But the IFR is clearly not so limited:  It purports to reshape the procedural path for Section 1324b *defendants*—*i.e.*, regulated parties outside the purview of the agency "organization, management, or personnel."  These irregularities reinforce (and help explain) the IFR's defects.

*Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986)).  So the IFR's defective review mechanism is void *ab initio*.  As part of their "decisional process," courts exercise the "negative power to disregard" such unlawful enactments.  *United States v. Texas*, 599 U.S. 670, 696 (2023) (Gorsuch, J., concurring) (quoting *Commonwealth of Mass. v. Mellon*, 262 U.S. 447, 488 (1923)); *cf. Collins*, 141 S. Ct. at 1788-1789 ("[A]n unconstitutional provision is never really part of the body of governing law (because the Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment)[.]").  Thus, "[w]hen resolution of a case or controversy requires assessing the lawfulness of an executive regulation, courts do so."  *Center for Biological Diversity v. EPA*, 937 F.3d 533, 545-546 (5th Cir. 2019); *see, e.g.*, *United States v. Lott*, 750 F.3d 214, 219 (2d Cir. 2014) (deciding whether administrative regulations "failed to satisfy the notice-and-comment requirements of the APA" in criminal appeal).  The APA reflects this bedrock principle by commanding courts generally to "set aside" unlawful agency actions "[t]o the extent necessary to [a] decision and when presented."  5 U.S.C. § 706(2).  The power to disregard an unlawful regulation does not go away merely because the parties' "arguments have an Alice in Wonderland air about them," after a "case has unfolded in an unusual way."  *Cruz*, 596 U.S. at 299-300 (under challenger's argument, challenger "would" violate the statute at issue; under government's contrary argument, challenger "would *not* violate the statute").

If SpaceX lacks standing to challenge the IFR, SpaceX would have to endure the unconstitutional proceedings until the unlawful IFR is recognized as such by another court (or the agency itself, given that eight of the nine comments submitted in response to the IFR flagged its conflict with the statute).[2]  But the executive branch cannot indefinitely delay—or entirely short-circuit—constitutional litigation by promulgating blatantly unlawful remedial regulations that

---

[2] *See* Office of the Chief Administrative Hearing Officer Review Procedures, Posted Comments, *available at* https://www.regulations.gov/document/EOIR-2023-0002-0001/comment (last visited May 21, 2024).

patch over constitutional flaws.  SpaceX thus has standing to challenge both the unconstitutional statute and the invalid IFR promulgated thereunder—and is entitled to summary judgment on its Appointments Clause claim and accompanying APA claim.[3]

## II.   OCAHO ALJS ARE UNCONSTITUTIONALLY INSULATED FROM PRESIDENTIAL REMOVAL

In addition to adjudicating Section 1324b cases in violation of the Appointments Clause, OCAHO ALJs are unconstitutionally insulated by two levels of for-cause removal protections.  5 U.S.C. § 7521(a) (for-cause removal adjudicated *by* MSPB members); 5 U.S.C. § 1202(d) (for cause removal *of* MSPB members).  The Fifth Circuit's *Jarkesy v. SEC* decision confirms that this scheme is unconstitutional, and the Supreme Court's *Axon* decision confirms that the scheme harms SpaceX—thus entitling SpaceX to summary judgment on this claim.  Although this Court previously held that no injunction should issue because the removal restrictions are severable, the Court should reconsider that conclusion based on an intervening federal decision reaching the opposite conclusion.

### A.    Under *Jarkesy*, OCAHO ALJs Do Not Fit Either Narrow Exception To The President's Unrestricted Removal Power

Like the Appointments Clause, the President's removal power promotes accountability by ensuring that "[t]he buck stops with the President."  *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 493 (2010).  Article II "vest[s]" all of "[t]he executive Power . . . in a President" who has a duty to "take Care that the Laws be faithfully executed."  U.S. CONST. art. II, §§ 1, cl. 1, 3.  Of course, "it would be 'impossible' for 'one man' to 'perform all the great business of the State.'"  *Seila Law*, 591 U.S. at 213 (quoting 30 WRITINGS OF GEORGE WASHINGTON 334 (J.

---

[3] To be clear, the Court need not grant SpaceX summary judgment on the APA claim to rule in SpaceX's favor on Count I and permanently enjoin the proceedings.  The Court alternatively may simply "set aside" the IFR as unlawful "to the extent necessary to decision" on SpaceX's Appointments Clause claim.  5 U.S.C. § 706(2).

Fitzpatrick ed. 1939)) (alteration omitted).  But it would also be "impossible" for the President "to take care that the laws must be faithfully executed" unless "lesser officers . . . remain accountable to the President, whose authority they wield." *Id.* at 213-214.  The President's supervisory "power, in turn, generally includes the ability to remove executive officials, for it is 'only the authority that can remove' such officials that they 'must fear and, in the performance of their functions, obey.'" *Id.* (alteration omitted).

In *Jarkesy v. SEC*, the Fifth Circuit held that SEC ALJs with the same removal protections as OCAHO ALJs are "sufficiently insulated from removal that the President cannot take care that the laws are faithfully executed."  34 F.4th 446, 464-465 (5th Cir. 2022) (citing 5 U.S.C. §§ 1202(d), 7521(a)).  "[E]ven if ALJs' functions are more adjudicative . . . , two layers of insulation impedes the President's power to remove ALJs based on their exercise of the discretion granted to them."  *Id.* at 465.  That was so even though SEC ALJs are "inferior officers," *id.* at 464, whose decisions are subject to review by the SEC without deference, *see Lucia v. SEC*, 585 U.S. 237, 249-250 (2018).

*Jarkesy* compels the same conclusion here.  OCAHO ALJs are subject to the same two-layer removal restrictions—and are even less accountable.  As noted, OCAHO ALJs' Section 1324b proceedings are not subject to administrative review at all.  The government acknowledges that *Jarkesy* held these removal restrictions unconstitutional with respect to SEC ALJs, and that this Court must reach the same result "[t]o the extent *Jarkesy* is thought to be controlling."  ECF 35 at 22.  Of course, *Jarkesy is* controlling, so it does not matter that the government "disagree[s]" with that decision.  *Id.*  The government tries to distinguish *Jarkesy* on the ground that "OCAHO ALJs are supervised by the Attorney General, who is removable at will by the president."  *Id.*  But that just means OCAHO ALJs are not subject to *three* layers of removal protections.  Because the

power to supervise turns on the "ability to remove," *Seila Law*, 591 U.S. at 213, the dual-layer protections withdraw OCAHO ALJs "from the Executive's control, and thus from that of the people." *Free Enter. Fund*, 561 U.S. at 499-500.[4]

Even putting aside *Jarkesy*, the result would be the same. The "general rule" is that the President's removal power over executive officers is "unrestricted." *Seila Law*, 591 U.S. at 215. There are at most "two exceptions" for (1) "multimember expert agencies that do not wield substantial executive power" or (2) "inferior officers with limited duties and no policymaking or administrative authority." *Id.* at 218. OCAHO ALJs do not fit either and DOJ does not contend otherwise. DOJ merely emphasizes "[t]he adjudicative nature of the ALJs' role." ECF 35 at 26. But the idea that executive officers can escape accountability by recharacterizing their functions as non-executive "has not withstood the test of time." *Seila Law*, 591 U.S. 216 n.2.

As another federal district court recently recognized, "the multilevel protection from removal present for the OCAHO ALJs is contrary to Article II, and contrary to the executive power of the President." *Walmart*, 2024 WL 1258223, at *4. This scheme goes far beyond "the outermost constitutional limits of permissible congressional restrictions on the President's removal power." *Seila Law*, 591 U.S. at 218.

**B.      Spacex Is Suffering Redressable Harm Due To The Removal Violation**

The government argues that the proceedings, although illegitimate, must continue "because SpaceX has not asserted any harm resulting from the allegedly unconstitutional statutes." ECF 35 at 21 (internal quotation marks omitted). In DOJ's view, SpaceX must show the President wants

---

[4] The Ninth Circuit's decision in *Decker Coal Co v. Pehringer*, 8 F.4th 1123 (9th Cir. 2021), does not support the government because it conflicts with the Fifth Circuit's binding reasoning in *Jarkesy*, *see* 34 F.4th at 478 (Davis, J., dissenting) (explaining that the *Jarkesy* majority opinion "is in tension, if not direct conflict, with *Decker Coal*").

to remove Judge Bell and that, but for the removal restrictions, "challenged actions" that Judge Bell has *already* taken against SpaceX would not have occurred. *Id.*

The government overlooks that when an unlawfully insulated official *also* "lack[s] the authority to carry out the functions of the office," including when the official is acting "in violation of [the] Appointments Clause," there is no need to show independent harm from a removal restriction. *Collins*, 141 S. Ct. at 1788; *accord Community Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 631 (5th Cir. 2022).

In any event, SpaceX *is* harmed by the removal restrictions. PI Order 2-3; *Walmart*, 2024 WL 1258223, at *4 (reaching same conclusion as to OCAHO ALJs). "Proceeding before an unaccountable ALJ is a here and now injury that is impossible to remedy once the proceeding is over." PI Order 2 (quoting *Axon*, 598 U.S. at 191). A challenge to an agency's "power to proceed at all" is different from a challenge to "actions [already] taken in the agency proceedings." *Axon*, 598 U.S. at 192. In the former, the relevant harm is being subjected "to an illegitimate proceeding, led by an illegitimate decisionmaker." *Id.* at 191. "A proceeding that has already happened cannot be undone," but "[w]hat makes the difference here is the nature of the claims and the accompanying harms that [SpaceX is] asserting." *Id.* at 191-192. Continued "subjection to an unconstitutionally structured decisionmaking process" causes a "here-and-now injury" akin to the harms addressed by "established immunity doctrines," *e.g.*, when a party is denied its right "not to stand trial." *Id.* at 192. That is the harm SpaceX is suffering. *See, e.g.*, *Cochran v. SEC*, 20 F.4th 194, 212-213 (5th Cir. 2021), *aff'd and remanded sub nom.*, *Axon*, 598 U.S. 175 (if removal claim is "meritorious," plaintiff should not be "forc[ed] . . . to litigate before [the] ALJ"); Order, *Alpine Sec. Corp. v. FINRA*, No. 23-5129, 2023 WL 4703307, at *3 (D.C. Cir. July 5, 2023) (Walker, J.,

concurring) (enjoining ongoing proceeding on this basis).  The government's authorities do not address ongoing illegitimate proceedings.[5]

If adopted, the government's position would render *Axon* a dead letter in collateral removal challenges.  Yet *Axon itself* was a collateral removal challenge.  *See* 598 U.S. at 180.  Targets of such proceedings cannot get "meaningful judicial review"—win or lose—after the fact.  *Id.* at 195; *see also Walmart*, 2024 WL 1258223, at \*4 (injury could not be remedied once OCAHO proceeding is over); *Sidak v. ITC*, No. 1:23-cv-00325 (TNM), 2023 WL 3275635, at \*6 (D.D.C. May 5, 2023) (challenger need not wait until the "proceeding ha[s] run its course").  A challenger could never satisfy the government's requirement to show that an ALJ has taken unfavorable "actions," as the government argues, ECF 35 at 21, when "the ALJ proceedings have barely begun," ECF 20 at 10-11.  Challengers like SpaceX will "lose their rights" if faced with such obstacles.  598 U.S. at 192.

Beyond that, SpaceX is the rare litigant that *could* show that the unlawful removal restrictions will impact an ALJ's behavior.  *See* FAC ¶ 67; *see also* Compl. ¶ 60.  The government's administrative complaint features statements by SpaceX's CEO Elon Musk and a reference to his "36 million followers [as of June 16, 2020] on X, a social media platform formerly known as Twitter" (which Musk now owns).  OCAHO Compl. ¶ 30.  As those allegations underscore, Musk is an influential public figure.  That makes the OCAHO proceedings especially politically salient.  Indeed, the Wall Street Journal has described the "remarkable number of government probes" that Musk faces—including the OCAHO proceedings—as "The Harassment of Elon Musk."  Editorial

---

[5] *See Community Fin. Servs. Ass'n of Am.*, 51 F.4th at 625 (already-promulgated regulation); *Collins v. Department of the Treasury*, 83 F.4th 970, 982 (5th Cir. 2023) (already-promulgated "liquidation preferences"); *CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023) (defense to petition to enforce a civil investigative demand); *Calcutt v. FDIC*, 37 F.4th 293, 309 (6th Cir. 2022), *rev'd on other grounds*, 598 U.S. 623 (2023) (proceedings concluded); *Decker Coal*, 8 F.4th at 1126 (proceedings concluded); *Burgess v. FDIC*, 639 F. Supp. 3d 732, 739 (N.D. Tex. 2022) (proceedings concluded pending FDIC Board's final decision).

Board, *The Harassment of Elon Musk*, THE WALL ST. J., Sept. 22, 2023, https://www.wsj.com/articles/elon-musk-biden-administration-justice-department-investigations-accdd84a.  Given that context, it is all but certain that an attentive public would hold the President accountable for the conduct and outcome of the OCAHO proceedings—such that the President would, in turn, have a strong incentive to hold the ALJ accountable—if "[t]he buck stop[ped] with the President." *Free Enter. Fund*, 561 U.S. at 493.  Instead, it stops with Judge Bell.

### C.    Severability Is Relevant Only To The Proper Remedy—And Cannot Cure The Removal Violation

The Court previously held that SpaceX is "not entitled to an injunction on its removal claims" because the Court "can sever the unconstitutional statutory provisions."  PI Order 7.  As the government admits, that does not impact SpaceX's entitlement to summary judgment.  At most, it supports awarding a declaratory judgment (without an injunction).  ECF 35 at 26.  But an intervening decision confirms why severance is improper.  On March 25, 2024, the U.S. District Court for the Southern District of Georgia held that "severability is not the proper solution" to OCAHO ALJs' "unconstitutional" removal restrictions.  *Walmart*, 2024 WL 1258223, at *4.  This Court should follow the Southern District of Georgia's lead and hold that the removal restrictions are not severable.

Severability is a question of not only whether the "remainder" of a statute is lawful and "capable of functioning independently," PI Order 7 (quoting *Barr v. American Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2353 (2020)), but also whether "Congress would . . . have enacted" that remainder, *Seila Law*, 591 U.S. at 234 (quoting *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987)).  Sometimes, a "combination" of statutes causes a removal violation.  *Id.* at 258 (Thomas, J., concurring in part and dissenting in part).  In those instances, the court must decide whether to sever "the removal restriction[s]" as opposed to the provision that "vest[s]

21

executive power in [the] appointed official."  William Baude, *Severability First Principles*, 109 VA. L. REV. 1, 42-43 (2023).  Either approach—severing the removal restrictions *or* severing the provision that vests executive power in the official—would eliminate the constitutional defect.  *Id.*

Here, at least three statutes combine to cause the constitutional violation: (1) Section 1324b, which gives OCAHO ALJs executive powers, triggering the President's removal authority; (2) 5 U.S.C. § 7521(a), which provides for-cause removal of OCAHO ALJs by MSPB members; and (3) 5 U.S.C. § 1202(d), which provides for-cause removal of MSPB members.  "[T]he Constitution tells us what the law *isn't*" (all three statutes operating at once), but "it does not always tell us enough about what [the law] *is.*"  Baude, *supra*, at 44.  The principal solution is to "ask which . . . provision Congress would have preferred to keep."  *Id.* at 45; *see Seila Law*, 591 U.S. at 234-235.

Congress would have preferred to keep the removal protections applicable across broad categories of ALJs and MSPB members.  The "independence that the [APA's] removal protections provide to [ALJs] is a central part of the Act's overall scheme."  *Lucia*, 138 S. Ct. at 260 (Breyer, J., concurring in the judgment in part).  Before 1946, there had been "[m]any complaints" that ALJs (known as hearing examiners) "were mere tools of the agency concerned and subservient to the agency heads."  *Ramspeck v. Federal Trial Exam'rs Conf.*, 345 U.S. 128, 131 (1953).  Congress decided that ALJs should instead be "independent."  *Butz v. Economou*, 438 U.S. 478, 513-514 (1978); S. Rep. No. 79-752, at 29 (1945).  Congress considered and rejected "[s]everal proposals" to promote independence, including using a "completely separate 'examiners' pool" or subjecting agency decisions to a special court's jurisdiction.  *Ramspeck*, 345 U.S. at 131-132 & n.2.  Ultimately, Congress made ALJs "removable . . . only for good cause established and determined by the Civil Service Commission."  APA, Pub. L. No. 79-404, § 11, 60 Stat. 237, 244 (1946).

In 1978, Congress replaced the Civil Service Commission with three agencies, including the MSPB.  Civil Service Reform Act of 1978, Pub. L. No. 95-454, § 1202(d), 92 Stat. 1111.  In doing so, Congress sought to "confer upon [MSPB] members a tenure akin to that of the Federal judiciary."  *Civil Service Reform: Hearings on H.R. 11280 Before the H. Comm. on Post Off. & Civ. Serv.*, 95th Cong. 824 (1978); *see* 5 C.F.R. § 1200.1 ("The [MSPB] is an independent Government agency that operates like a court.").  The Act provided that MSPB members "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office."  5 U.S.C. § 1202(d).

As that history makes clear, Congress considered *both* good-cause removal restrictions— of ALJs and of the MSPB—essential to the overarching scheme of agency adjudication.  It is no surprise, then, that Congress declined to include severability clauses indicating that the removal protections were dispensable.  Gutting the key removal protections while preserving Section 1324b would reverse Congress's decision to transition the entire administrative structure towards political independence (and away from political accountability)—violating this Court's "obligation to avoid judicial legislation."  *United States v. National Treasury Emps. Union*, 513 U.S. 454, 479 (1995); *see also Walmart*, 2024 WL 1258223, at *4 (relying on "the Judiciary's confined role in the separation of powers").

At a minimum, Congress would have chosen to keep the removal restrictions for ALJs and MSPB members—who perform a wide range of functions beyond determining whether there is cause to remove an ALJ, *see* 5 C.F.R. §§ 1201.1-1201.3 (duties include appeals from civil-service employment disputes and trials of personnel actions brought by the Office of Special Counsel), and whose entire purpose is to maintain a professional civil service free from political interference—over the executive-officer powers granted to this small group of OCAHO ALJs, *see*

*Free Enter. Fund*, 561 U.S. at 508 (severability aims to "limit the solution to the problem").  Rather than declaring these removal restrictions invalid over Congressional intent and changing the job protections of OCAHO ALJs *and* MSPB members who are not even parties to this suit, the Court can solve the constitutional problem by simply enjoining the proceedings against SpaceX (and thereby restrain Judge Bell from unconstitutionally exercising her executive powers as to SpaceX).  In other words, the Court should apply the same restrained approach as the Southern District of Georgia—which noted the combination of "statutes in place" and held that "severability is not the proper solution" to OCAHO ALJs' "multilevel protection from removal."  *Walmart*, 2024 WL 1258223, at *4.

In arguing otherwise, the government emphasizes that the Supreme Court severed removal restrictions in *Seila Law* and *Free Enterprise Fund*.  ECF 35 at 26-27.  But in those cases, there was no evidence that Congress had considered alternative options that were consistent with its evident purposes.  *See Seila Law*, 591 U.S. at 235-237; *Free Enter. Fund*, 561 U.S. at 509.  Such options were "theor[etical]" possibilities, not real-world reasons to conclude that Congress would have opposed severance.  *Free Enter. Fund*, 561 U.S. at 509-510; *accord Seila Law*, 591 U.S. at 235-237.  By contrast, Congress's consideration of alternatives is weighty evidence that, compared with "dependent [ALJs]" across all agencies, Congress "would have preferred . . . no [OCAHO ALJs] at all" until it could enact an alternative.  *Seila Law*, 591 U.S. at 236 (emphasis omitted).  Congress will thus have "the ability to remedy the problem as it pleases."  *Walmart*, 2024 WL 1258223, at *4.

This Court should sever the removal restrictions and grant summary judgment to SpaceX rather than usurp the legislative branch's prerogatives.

### III.     THE PROCEEDINGS AGAINST SPACEX VIOLATE ARTICLE III AND THE SEVENTH AMENDMENT

The OCAHO proceedings have two remaining constitutional defects.  Under Article III, "[t]he judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."  U.S. CONST. art. III, § 1.  And, under the Seventh Amendment, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."  U.S. CONST. amend. VII.  When an action is [1] "akin to traditional actions at law to which the jury-trial right attaches," and [2] the "claims do not concern public rights alone," the Seventh Amendment applies and the claims must be heard (if anywhere) in an Article III court with a right to trial by jury.  *Jarkesy*, 34 F.4th at 451.

That is the case here.  Under the first step, "[t]he Supreme Court has interpreted 'Suits at common law' to include all actions akin to those brought at common law as those actions were understood at the time of the Seventh Amendment's adoption."  *Jarkesy*, 34 F.4th at 452 (citing *Tull v. United States*, 481 U.S. 412, 417 (1987)).  That "include[s] suits brought under a statute as long as the suit seeks common-law-like legal remedies," such as "civil penalties."  *Id.*  It does not matter whether "[o]ther elements of the action . . .  are more equitable in nature."  *Id.* at 454.

The type of civil penalties requested by the government makes the OCAHO proceedings akin to a common-law suit.  The government's additional request for back-pay damages only reinforces that conclusion.  *See Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570-571, 573 (1990) (request for back pay that constitutes the "wages and benefits" persons "would have received" if the employer complied with the law is "legal in nature" and triggers the

Seventh Amendment). The government does not dispute that the OCAHO proceedings are akin to traditional actions at law. *See* ECF 35 at 28-29.

Instead, the government invokes the public rights doctrine. ECF 35 at 28-29. This second step requires considering "(1) whether 'Congress creat[ed] a new cause of action, and remedies therefor, unknown to the common law, because traditional rights and remedies were inadequate to cope with a manifest public problem'; and (2) whether jury trials would 'go far to dismantle the statutory scheme' or 'impede swift resolution' of the claims created by statute." *Jarkesy*, 34 F.4th at 453 (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 60-63 (1989); *Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 454 n.11 (1977)).

The public rights doctrine does not apply. The government's action is far from "unknown to the common law." Its claims are "analogous to a number of tort actions recognized at common law," *i.e.*, various "dignitary tort" claims. *Curtis v. Loether*, 415 U.S. 189, 195 & n.10 (1974). Nor would jury trials "dismantle the statutory scheme" or "impede swift resolution" of such claims. *Granfinanciera*, 492 U.S. at 60-63. To the extent expertise and efficiency are relevant, courts and juries "have dealt with" employment discrimination claims and trials "for many decades," "with or without the federal government's involvement." *Jarkesy*, 34 F.4th at 456, 459. Such claims involve "nothing new and nothing foreign to Article III tribunals and juries." *Id.* at 457.

The government argues that none of this matters because any claim "concerning immigration and related labor and employment laws" automatically "implicate[s] public rights." ECF 35 at 28-29. According to the government, that is because immigration is "a central constitutional function[] of the executive"—though oddly in the same paragraph the government argues that immigration is "exclusively within [the] control" of Congress. *Id.*

This amalgamation of everything in the "field" of immigration and employment, ECF 35 at 29, is demonstrably contrary to Supreme Court precedent.  In *Hepner v. United States*, the government sought to recover a financial "penalty" from a defendant accused of inducing an alien "to migrate to the United States for the purpose of performing labor here" in violation of the Alien Immigration Law.  213 U.S. at 104-105.  The Supreme Court explained that the defendant "was, of course, entitled to have a jury summoned in th[e] case."  *Id.* at 115.  The Supreme Court has since cited that conclusion to reaffirm that the Seventh Amendment can apply "to causes of action based on statutes," expressly including "immigration laws."  *Curtis*, 415 U.S. at 193 (citing *Hepner*, 213 U.S. at 115).  If the public rights doctrine applies, it cannot be merely because an action involves "immigration" and related "employment" laws (however broadly conceived).

Consider the laws barring discrimination based on "national origin," which are enforced either by IER (under Section 1324b) or by the Equal Employment Opportunity Commission (EEOC) (under Title VII of the Civil Rights Act), depending on the employer's size.  *See* ECF 35 at 5 n.2.  The EEOC enforces Title VII through civil actions in federal court.  42 U.S.C. § 2000e-5(f)(1); *see also EEOC v. Bass Pro Outdoor World, L.L.C.*, 826 F.3d 791, 803-804 (5th Cir. 2016).  And when the EEOC seeks legal remedies (as is undisputed here), the Seventh Amendment applies.  *Bass Pro Outdoor World*, 826 F.3d at 803; *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 423 (5th Cir. 1998).  That is no surprise, given that private plaintiffs can assert identical claims without EEOC's participation.  42 U.S.C. § 2000e-5(f)(1).  But if the government's argument were correct, the Seventh Amendment protections would vanish whenever *IER* enforces identical discrimination claims under Section 1324b—merely because Section 1324b is labeled an employment-related "immigration" law, and Congress provided for administrative enforcement.  To the contrary, *Hepner*, as reaffirmed by *Curtis,* forecloses any blanket immigration-employment

exception.   And importantly, the fact that Section 1324b (unlike Title VII) provides for administrative adjudication cannot (circularly) justify such adjudication:   "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency." *Granfinanciera*, 492 U.S. at 61.

To be sure, many immigration actions, unlike the one at issue, *do* concern public rights. Executive officials historically adjudicated matters about who to grant or deny admission to the country without a jury-trial right.  *See Wong Wing v. United States*, 163 U.S. 228, 237 (1896).  But, as *Hepner* proves, if Congress wishes to promote its immigration policy in a manner that implicates private rights, there is no sweeping "immigration and related labor and employment" exception, and the factors identified in *Jarkesy* apply.  *See id.* (if Congress "sees fit to promote [immigration] policy by subjecting the persons of such aliens to infamous punishment at hard labor, or by confiscating their property, . . . such legislation . . . must provide for a judicial trial").  Those factors make clear that the government's common-law tort claims seeking damages and civil penalties—which, unlike other immigration actions, can be brought by "[b]oth the federal government and private parties," ECF 35 at 1; *see* 8 U.S.C. § 1324b(d)(2)—implicate Article III and the Seventh Amendment.

The government supports its ahistorical exception with a handful of non-binding, inapposite cases.  *See* ECF 35 at 29.  It principally relies on *Frank's Nursery, LLC v. Walsh*, which addressed a challenger who had "consented to executive adjudication by litigating before the [agency] without objection."  No. CV H-21-3485, 2022 WL 2757373, at *8 (S.D. Tex. July 14, 2022).   *Frank's Nursery* did not involve anything like employment discrimination: The government alleged nondisclosure of a "drug testing requirement," failure to meet "sanitation

standards," "failure to include its Federal Employer Identification Number on its pay statements," and unreasonable tax deductions.  *Id.* at *4; *see also Sun Valley Orchards, LLC v. U.S. Dep't of Labor*, No. 1:21-cv-16625, 2023 WL 4784204, at *2-3 (D.N.J. July 27, 2023) (similar), *appeal filed*, No. 23-2608 (3d Cir. Sept. 5, 2023); *Noriega-Perez v. United States*, 179 F.3d 1166, 1175 (9th Cir. 1999) (employment document fraud).  If the public rights doctrine applies to such claims, it is because they are "unknown to the common law."  *See Jarkesy*, 34 F.4th at 453.

The government tries to buttress these decisions with "longstanding Supreme Court precedent" that actually refutes its proposed rule.  ECF 35 at 29 (citing, *e.g.*, *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909)).  *Oceanic Steam* upheld a law preventing port officials from granting clearance papers to maritime companies that brought aliens with contagious diseases to the United States until the companies paid the customs collector $100 per violation.  214 U.S. at 330-331.  The Court's holding rested on the premises that (i) the underlying law concerned admission to the country, and (ii) ship owners had no private right to clearance papers because authority to sail was a public privilege over which Congress had "complete administrative control."  *Id.* at 342-343.  Crucially, the Court distinguished the administrative denial of clearance papers from "methods which were not within the competency of administrative duties, because they required the exercise of judicial authority."  *Id.* at 343; *see also Lloyd Sabaudo Soc'y Anonima Per Azioni v. Elting*, 287 U.S. 329, 334-335 (1932) (applying the same "admission of aliens" rule to a statute that was "substantially the same").

The government also relies on *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993).  ECF 35 at 29.  But *Austin* does not concern civil penalties, immigration, or employment.  Its unremarkable statement that courts have allowed agencies to "adjudicat[e] violations of the customs and immigration laws" cannot support an exception for *all* laws that concern immigration, no matter

29

how remotely.  994 F.2d at 1177.  Indeed, *Austin* recognized that the public rights doctrine applies only when the executive branch has "special competence in the relevant field." *Id.* (quoting *Atlas Roofing*, 430 U.S. at 455).  That may be the case for the admission or exclusion of aliens.  But Section 1324b(e)(2) calls for ALJs with "special training respecting employment discrimination," not specialized training in immigration law.  Federal judges are more than competent to address employment discrimination claims.  *See, e.g.*, *Hernandez v. Texas Health & Hum. Servs. Comm'n*, No. 1:22-cv-157, 2023 WL 5020838, at *1 (July 13, 2023), R. & R. adopted, 2023 WL 5018429 (S.D. Tex. Aug. 7, 2023) (Olvera, J.).

***

"[T]he separation of powers is designed to preserve the liberty of all the people." *Collins*, 141 S. Ct. at 1780.  The Appointments Clause and removal violations break the "clear and effective chain of command down from the President, on whom all the people vote." *Arthrex*, 594 U.S. at 11 (internal quotation marks omitted).  And the "mixture" of executive and judicial powers in violation of Article III and the Seventh Amendment is "the very definition of tyranny." THE FEDERALIST NO. 47, at 301 (James Madison) (C. Rossiter ed. 1961).  Such tyranny is not permissible merely because a case involves immigration and employment law.  SpaceX should not have to endure such "illegitimate proceeding[s]." *Axon*, 598 U.S. at 191.

**CONCLUSION**

SpaceX respectfully urges this Court to grant SpaceX summary judgment, deny the government summary judgment, permanently enjoin the OCAHO proceedings, and set aside the IFR as unlawful.

30

Respectfully submitted,

Dated: May 21, 2024

  /s/ Laura Warrick
Laura Warrick
 Attorney-in-Charge
 Texas Bar No. 24079546
Southern District of Texas Bar No. 3437415
AKIN GUMP STRAUSS HAUER & FELD LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-4770
Facsimile: (214) 969-4343
lwarrick@akingump.com

James E. Tysse (*pro hac vice*)
 Of Counsel
 D.C. Bar No. 978722
Charles F. Connolly (*pro hac vice*)
 Of Counsel
 D.C. Bar No. 455969
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
jtysse@akingump.com

*Counsel to Plaintiff Space Exploration Technologies Corp.*

31

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2024, a copy of the foregoing document was filed electronically and served pursuant to this Court's ECF Filing System, upon counsel of record.

   /s/ Laura Warrick
Laura Warrick
 Attorney-in-Charge
 Texas Bar No. 24079546
Southern District of Texas Bar No. 3437415
AKIN GUMP STRAUSS HAUER & FELD LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-4770
Facsimile: (214) 969-4343
lwarrick@akingump.com