**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| META PLATFORMS, INC., | |
| Plaintiff, | Case No. 1:23-cv-03562-RDM |
| v. | Judge Randolph D. Moss |
| FEDERAL TRADE COMMISSION, *et al.*, | |
| Defendants. | |

## DEFENDANTS' RENEWED MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................1

BACKGROUND ......................................................................................................2

I.      Statutory and regulatory background ............................................................2

II.     Factual background and procedural history...................................................5

LEGAL STANDARD..............................................................................................7

ARGUMENT............................................................................................................8

I.      Meta's due process, Article II, and nondelegation claims should be dismissed. ................8

II.     The Seventh Amendment does not apply where, as here, only injunctive relief is sought....................................................................................................8

III.    The Commission's adjudication of public rights is consistent with Article III. ...............13

IV.    Meta has waived and is judicially estopped from raising challenges to the Federal Trade Commission's structure and modification authority. ............................................18

CONCLUSION......................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*A.L.A. Schechter Poultry Co. v. United States*,
   295 U.S. 495 (1935) ........................................................................................ 17

*Abhe & Svoboda, Inc. v. Chao*,
   508 F.3d 1052 (D.C. Cir. 2007) ......................................................................... 8

*Adams v. Johns-Manville Corp.*,
   876 F.2d 702 (9th Cir. 1989) ........................................................................... 10

*Am. Fin. Servs. Ass'n v. FTC*,
   767 F.2d 957 (D.C. Cir. 1985) ......................................................................... 11

*Am. Airlines v. N. Am. Airlines*,
   351 U.S. 79 (1956) ........................................................................................... 16

*Am. Washboard Co. v. Saginaw Mfg. Co.*,
   103 F. 281 (6th Cir. 1900) ............................................................................... 15

*AMG Cap. Mgmt., LLC v. FTC*,
   593 U.S. 67 (2021) ........................................................................... 3, 5, 15, 16

*\*Atlas Roofing v. Occupational Safety and Health Review Comm'n*,
   430 U.S. 442 (1977) ............................................................................. 16, 17, 18

*Berman v. Woods & Co.*,
   38 Ark. 351 (1881) .......................................................................................... 12

*Bosse v. Oklahoma*,
   580 U.S. 1 (2016) (per curiam) ....................................................................... 18

*Browning v. Clinton*,
   292 F.3d 235 (D.C. Cir. 2002) ........................................................................... 7

*Burlington N. R.R. Co. v. Neb. Pub. Power Dist.*,
   931 F. Supp. 1470 (D. Neb. 1996) .................................................................. 11

*Citigroup Inc. v. VDN Sys., Inc.*,
   No. 08-Civ-7527 (SHS), 2008 WL 5274091 (S.D.N.Y. Dec. 16, 2008) ............ 10

*City of Arlington, Tex. v. FCC*,
   569 U.S. 290 (2013) ......................................................................................... 17

*\*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
   526 U.S. 687 (1999) ........................................................................................... 9

*Commodity Futures Trading Comm'n v. Schor*,
   478 U.S. 833 (1986) ................................................................................... 17, 18

*Crowell v. Benson*,
    285 U.S. 22 (1932) .................................................................................. 14, 15, 18

*Elmo Co. v. FTC*,
    389 F.2d 550 (D.C. Cir. 1967) .................................................................. 4, 10, 11

*FTC v. Algoma Lumber Co.*,
    291 U.S. 67 (1934) ................................................................................................ 3

*FTC v. Cantkier*,
    767 F. Supp. 2d 147 (D.D.C. 2011) .................................................................. 11

*FTC v. Colgate-Palmolive Co.*,
    380 U.S. 374 (1965) ...................................................................................... 3, 15, 16

*FTC v. Credit Bur. Ctr., LLC*,
    937 F.3d 764 (7th Cir. 2019) ............................................................................ 16

*FTC v. Freecom Commc'ns, Inc.*,
    401 F.3d 1192 (10th Cir. 2005) ........................................................................ 12

*FTC v. Lanier L., LLC*,
    No. 3:14-CV-786-J-34PDB, 2015 WL 9598794 (M.D. Fla. Dec. 8, 2015) ........................... 9

*FTC v. Quincy Bioscience Holding Co.*,
    No. 17 Civ. 124 (LLS), 2021 WL 1608953 (S.D.N.Y. Apr. 26, 2021) .................................. 9

*FTC v. R.F. Keppel & Bro.*,
    291 U.S. 304 (1934) .................................................................................... 2, 16

*FTC v. Sperry & Hutchinson Co.*,
    405 U.S. 233 (1972) ................................................................................ 2, 3, 15, 16

*FTC v. Standard Educ. Soc.*,
    302 U.S. 112 (1937) ...................................................................................... 3, 12

*FTC v. Sterling Drug, Inc.*,
    317 F.2d 669 (2d Cir. 1963) .............................................................................. 12

*FTC v. Winsted Hosiery Co.*,
    258 U.S. 483 (1922) .............................................................................................. 3

*FTC v. Wyndham Worldwide Corp.*,
    799 F.3d 236 (3d Cir. 2015) .............................................................................. 11

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989) ................................................................................................ 9

*Hohn v. United States*,
    524 U.S. 236 (1998) ............................................................................................ 18

*Holloway v. Bristol-Myers Corp.*,
    485 F.2d 986 (D.C. Cir. 1973) ........................................................... 16

*Humphrey's Ex'r v. United States*,
    295 U.S. 602 (1935) ...................................................................... 14

*Int'l Shoe Co. v. FTC*,
    280 U.S. 291 (1930) ...................................................................... 14

*Jacob Siegel Co. v. FTC*,
    327 U.S. 608 (1946) ...................................................................... 15

*\*Meta Platforms, Inc. v. FTC*,
    No. CV 23-3562 (RDM), 2024 WL 1121424 (D.D.C. Mar. 15, 2024) ...................... *passim*

*\*Meta Platforms, Inc. v. FTC*,
    No. 24-5054, 2024 WL 1549732 (D.C. Cir. Mar. 29, 2024) (per curiam) ................... *passim*

*Mirv Holdings, LLC v. GSA*,
    454 F. Supp. 3d 33 (D.D.C. 2020) ....................................................... 8

*Mistretta v. United States*,
    488 U.S. 361 (1989) ...................................................................... 17

*Mohr v. FTC*,
    272 F.2d 401 (9th Cir. 1959) ........................................................... 11

*Murray v. Hoboken Land & Imp. Co.*,
    59 U.S. 272 (1855) ....................................................................... 14

*NLRB v. Jones & Laughlin Steel Corp.*,
    301 U.S. 1 (1937) ........................................................................ 14

*Nunes v. WP Co.*,
    513 F. Supp. 3d 1 (D.D.C. 2020) ...................................................... 7, 8

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
    138 S. Ct. 1365 (2018) ................................................................... 13

*Parsons v. Bedford, Breedlove & Robeson*,
    28 U.S. (3 Pet.) 433 (1830) ............................................................... 9

*SEC v. Commonwealth Chem. Sec., Inc.*,
    574 F.2d 90 (2d Cir. 1978) ............................................................... 9

*\*SEC v. Jarkesy*,
    144 S. Ct. 2117 (2024) ............................................................. *passim*

*Stern v. Marshall*,
    564 U.S. 462 (2011) ...................................................................... 13

iv

*Stewart v. Nat'l Educ. Ass'n*,
   471 F.3d 169 (D.C. Cir. 2006) ........................................................... 8

*Thomas v. Union Carbide Agricultural Products Co.*,
   473 U. S. 568 (1985) ................................................................ 14, 17

*United States v. Philip Morris, Inc.*,
   273 F. Supp. 2d 3 (D.D.C. 2002) ..................................................... 10

**U.S. Constitution**

U.S. Const. amend. VII ...................................................................... 8

U.S. Const. art. III, § 1 ...................................................................... 13

**United States Code**

15 U.S.C. § 45 .......................................................................... *passim*

15 U.S.C. § 56 .................................................................................. 5

15 U.S.C. § 57b ................................................................................ 5

15 U.S.C. §§ 45, 53, and 57b ........................................................... 16

**Regulations**

16 C.F.R. § 2.32 ............................................................................. 18

16 C.F.R. § 2.51 .............................................................................. 4

16 C.F.R. § 3.72 .............................................................................. 4

16 C.F.R. § 4.7 ................................................................................ 3

16 C.F.R. §§ 3.42, 3.51-.54 ............................................................. 4

**Other Authorities**

*Consumer and Federal Regulation of Advertising*,
   53 Harv. L. Rev. 828 (1940) ........................................................... 12

https://www.ftc.gov/legal-library/browse/cases-proceedings/092-3184-182-3109-c-4365-
facebook-inc-matter ........................................................................ 7

## INTRODUCTION

Seeking to prevent the Federal Trade Commission from examining Meta's privacy practices, including those regarding child users, Meta raises five constitutional claims against the FTC. Earlier this year, the Court denied Meta's motion for preliminary injunction, finding that it was unlikely to succeed on the merits of any of its claims. The Court noted that the FTC's counterarguments "carr[ied] considerable—and, indeed, overwhelming—force," but denied its cross-motion to dismiss without prejudice at that time, anticipating that the Supreme Court's forthcoming decision in *SEC v. Jarkesy* might have some bearing on the case. *Meta Platforms, Inc. v. FTC*, No. CV 23-3562 (RDM), 2024 WL 1121424, at *22 (D.D.C. Mar. 15, 2024).

Now that the Supreme Court has decided *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024), Defendants renew their motion to dismiss. *Jarkesy* has no bearing on Meta's due process, Article II, and nondelegation claims (Counts I-III), and thus Defendants renew their previous arguments on these claims. For those reasons, the Court should dismiss Counts I-III.

*Jarkesy* also does not affect the outcome of Meta's Article III and Seventh Amendment claims (Counts IV and V). The only remedy the FTC seeks here—prospective changes in conduct—is injunctive in nature and it is well-established law that the Seventh Amendment does not apply when only injunctive relief is sought. Meta's attempts to analogize the modification proceeding to a common law breach of contract or fraud action continue to be flawed, and, regardless, the nature of the action factor is less important than the remedy. Similarly, the FTC's

ability to issue and modify cease-and-desist orders based on statutory violations unknown to the common law does not violate Article III.  Thus, the Court should also dismiss Counts IV-V.

## BACKGROUND

### I.      Statutory and regulatory background

When enacted in 1914, the FTC Act prohibited "unfair methods of competition." As observed by the Supreme Court, "[i]t would not have been a difficult feat of draftsmanship to have restricted the operation of the Trade Commission Act to those methods of competition in interstate commerce which are forbidden at common law . . . , if that had been the purpose of the legislation." *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 243 (1972) (quoting *FTC v. R.F. Keppel & Bro.*, 291 U.S. 304, 310 (1934)). But it was not. Congress "explicitly considered, and rejected" the idea of "tying the concept of unfairness to a common-law or statutory standard" because

> [i]t is impossible to frame definitions which embrace all unfair practices. There is no limit to human inventiveness in this field. Even if all known unfair practices were specifically defined and prohibited, it would be at once necessary to begin over again.

*Id.* at 240 (quoting H.R. Conf. Rep. No. 1142, 63d Cong., 2d Sess. 19 (1914)); *see also Keppel*, 291 U.S. at 310-12 (Congress declined to use the term "unfair competition" because "the meaning which the common law had given to those words was deemed too narrow," and so "the broader and more flexible phrase 'unfair methods of competition' was substituted"). Instead, Congress chose to, "by a general declaration condemning unfair practices, leave it to the commission to determine what practices were unfair." *Id.* (quoting S. Rep. No. 597, 63d Cong., 2d Sess., 13 (1914)).

Soon after the FTC Act's passage, the Supreme Court upheld the Commission's application of the Act's new unfairness standard to business practices that deceived the public, describing the Commission as the "champion at hand to put an end" to abuses "not actionable" at common law,

*FTC v. Algoma Lumber Co.*, 291 U.S. 67, 78-81 (1934); *see also FTC v. Standard Educ. Soc.*, 302 U.S. 112, 114, 116 (1937); *FTC v. Winsted Hosiery Co.*, 258 U.S. 483, 490-94 (1922). In a couple of early cases, the Court attempted to restrict the FTC's authority to cases where a company's conduct harmed its competitors. But later the Court held that the FTC's authority extended beyond such cases, a "perspective" that "was legislatively confirmed when" Congress amended the Act in 1938 to prohibit expressly "unfair or deceptive acts or practices," to make clear that the Act was concerned not just with anticompetitive practices but also those that harm consumers. *Sperry*, 405 U.S. at 243-44 (describing history); 52 Stat. 111 (1938) (codified at 15 U.S.C. § 45(a)); *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 384 (1965).

"Ever since the Commission's creation in 1914," a key way that the FTC defines what practices are unfair or deceptive has been through case-by-case adjudications. *AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67, 72 (2021). As relevant here, when the Commission believes a corporation has been using an unfair or deceptive act or practice and that a proceeding by the Commission would be "to the interest of the public," it may serve on the corporation an administrative complaint stating the Commission's allegations. 15 U.S.C. § 45(b).[1] The corporation has the right to appear at a hearing and to "show cause" why the Commission should not order the corporation to cease and desist from its unfair or deceptive conduct. *Id.* Hearings may be held before Administrative Law Judges (ALJs), who issue recommended decisions reviewable by the Commission, or before the Commission itself (or one or more Commissioners). 16 C.F.R.

---

[1] Once the Commission votes to issue a complaint, the Commissioners and employees "expected to be involved in the decisional process in the proceeding" are walled-off from FTC staff "who perform[] investigative or prosecuting functions in adjudicative proceedings." 16 C.F.R. § 4.7(b)(1). "From that point forward, until the Commission reaches a final decision on the complaint, the prosecution of the complaint is handled by complaint counsel alone." PI Denial Order, 2024 WL 1121424, at *3.

§§ 3.42, 3.51-.54. The Commission's administrative cease-and-desist orders are then reviewable by the courts of appeals. 15 U.S.C. § 45(c).

Congress understood that changes to a final Commission cease-and-desist order might become necessary—for example, because the order might turn out to be insufficient to protect the public from a company's unfair or deceptive practices or it may no longer be needed. Accordingly, Congress provided that the Commission may "reopen and alter, modify, or set aside, in whole or in part, any" administrative order whenever it is of the opinion that "conditions of fact or of law have so changed as to require such action or if the public interest shall so require." *Id.* § 45(b); *see Elmo Co. v. FTC*, 389 F.2d 550, 552 (D.C. Cir. 1967) (affirming Commission order modified pursuant to this provision). The Commission can also reopen an order at the company's request. *See* 15 U.S.C. § 45(b); 16 C.F.R. § 2.51(b).

Before modifying a cease-and-desist order, the Commission must provide "notice and opportunity for hearing," 15 U.S.C. § 45(b), via "an order to show cause, stating the changes it proposes to make in the decision and the reasons they are deemed necessary," 16 C.F.R. § 3.72(b)(1). The defendant may file an answer. *Id.* "When the pleadings raise substantial factual issues, the Commission will direct such hearings as it deems appropriate, including hearings for the receipt of evidence by it or by an Administrative Law Judge." *Id.* § 3.72(b)(2). If a show cause order is unopposed, or if the pleadings "do not raise issues of fact to be resolved, the Commission, in its discretion, may decide the matter on the order to show cause and answer." *Id.* As with the original cease-and-desist order, judicial review of the Commission's modified order is vested in the federal courts of appeals. *See* 15 U.S.C. § 45(b), (c).

The Commission cannot impose civil penalties or other monetary remedies through administrative proceedings under Section 5 of the FTC Act. If the Commission has reason to

believe a corporation has violated a cease-and-desist order, it may seek civil penalties by referring a complaint to the Department of Justice to file in federal district court. *Id.* § 45(*l*).[2] Likewise, monetary redress for consumers can be obtained only through a court proceeding. *See AMG*, 593 U.S. at 72; 15 U.S.C. § 57b.

## II.    Factual background and procedural history

The Court is familiar with the long history of this matter, which dates back to 2011, PI Denial Order, 2024 WL 1121424, at *4-7, so Defendants will repeat only the portions most relevant to this motion and provide an update. In 2012 and 2020—facing allegations that it had engaged in unfair and deceptive acts and practices—Meta (then known as Facebook) consented to the Commission entering, respectively, a cease-and-desist order and then a modification of that order. These orders required Meta, among other things, to make various changes to its privacy practices and to maintain an effective privacy program. *Id.* at *5; Dkt. 18-4 (Ex. C, 2012 Administrative Order); Dkt. 18-7 (Ex. F, 2020 Administrative Order). On May 3, 2023, based largely on gaps and weaknesses in Meta's privacy program identified by an independent assessor, the Commission issued an order to show cause ("OTSC") why it should not modify the 2020 Administrative Order to include additional safeguards. Dkts. 18-9, -10, -11 (Exs. H-J, 2023 OTSC and attachments). The Commission explained it had good cause to believe that Meta: (1) failed to implement an effective privacy program; (2) misrepresented third-party information sharing; and (3) misrepresented privacy protections in a messaging and video calling app for children. Dkt. 18-9 at 12-13. The Commission proposed that the Order be modified to limit Meta's ability to use information collected from children under 18, to require a written assessment from an independent

---

[2] The Commission may represent itself in the matter if the Attorney General does not take action on the referral within 45 days. 15 U.S.C. § 56(a).

assessor showing no material deficiencies in Meta's privacy program in order to release new products, and to make other prospective changes to Meta's conduct. *Id.* at 13-14.

Rather than respond on the merits, Meta repeatedly applied to this District Court and to the D.C. Circuit for an injunction against the modification proceedings, so far to no avail. *See* PI Denial Order, 2024 WL 1121424, at *1, 6-7 & n.3 (discussing Meta's earlier unsuccessful attempts and denying motion for preliminary injunction); Status Conf. Tr. 6:19-7:3 (Mar. 15, 2024) (denying stay pending appeal). After this Court denied Meta's motion for preliminary injunction on March 15, 2024, Meta filed an interlocutory appeal and moved for an injunction pending appeal.

The D.C. Circuit denied Meta's motion. *Meta Platforms, Inc. v. FTC*, No. 24-5054, 2024 WL 1549732 (D.C. Cir. Mar. 29, 2024) (per curiam). "For many of the reasons well explained in the district court's thorough opinion below," the court of appeals found Meta was unlikely to succeed on any of its claims. *Id.* at *1-4. With respect to the Seventh Amendment claim, the court held that "the Seventh Amendment's guarantee of a jury trial for 'Suits at common law' has no application here," where "[t]he Commission is not seeking penalties or any form of relief arguably analogous to damages or other relief available at law," but "only Meta's response" to the Commission's "order to show cause regarding the proposed equitable modification of its consented-to administrative order." *Id.* at *3. With regard to the Article III claim, the court held that "Meta has provided no persuasive reason to believe that [] a show-cause proceeding" that would "decide whether the Commission should amend, for the second time, its own administrative order to obtain equitable relief for possible statutory violations pertaining to prophylactic consumer-protecting limitations on the company's commercial marketing of user's personal data . . . would adjudicate anything other than public rights." *Id.* For each of the claims, the court emphasized that Meta had consented to entry of the 2012 and 2020 Administrative Orders and

failed to explain "how its prior endorsement of the Commission's authority . . . leaves it free to disavow the Commission's authority now." *Id.* at *3. The court also held that Meta failed to establish the irreparable harm, balance of the equities, and public interest factors. *Id.* at *3-4.

Afterward, proceedings before both this Court and the D.C. Circuit were stayed pending the Supreme Court's decision in *Jarkesy*. Minute Order (Apr. 16, 2024); *Meta*, No. 24-5054, Order (D.C. Cir. Apr. 30, 2024). After *Jarkesy* was decided, this Court set a briefing schedule for Defendants' "renewed motion to dismiss," including an instruction that "[t]he parties' submissions shall be limited to Plaintiff's claims under Article III . . . and the Seventh Amendment." Minute Order (July 12, 2024). The interlocutory appeal is now stayed pending this Court's consideration of the motion. *Meta*, No. 24-5054, Order (D.C. Cir. July 24, 2024).

Meta's appeal of Judge Kelly's order, a challenge to the same underlying modification proceeding on different grounds, is fully briefed and pending before the D.C. Circuit. *United States v. Facebook*, No. 23-5280 (D.C. Cir. filed Nov. 29, 2023).

Meanwhile, the modification proceeding before the Commission is now under way. Having failed to obtain an injunction of the modification proceeding, Meta finally answered the OTSC. FTC complaint counsel and Meta are currently litigating several threshold legal arguments.[3]

## LEGAL STANDARD

"A Rule 12(b)(6) motion tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The court must construe the complaint in the plaintiff's favor and treat well-pleaded factual allegations as true, but need not credit conclusory statements or legal

---

[3] A case timeline of the proceeding is available in the Legal Library on the FTC's website, https://www.ftc.gov/legal-library/browse/cases-proceedings/092-3184-182-3109-c-4365-facebook-inc-matter.

conclusions cast as factual allegations. *Nunes v. WP Co.*, 513 F. Supp. 3d 1, 5 (D.D.C. 2020); *Mirv Holdings, LLC v. GSA*, 454 F. Supp. 3d 33, 41 (D.D.C. 2020). "In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (quoting *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006)).

## ARGUMENT

### I.    Meta's due process, Article II, and nondelegation claims should be dismissed.

For the reasons stated in Defendants' previous arguments, the Court should dismiss Counts I-III.  *See* Dkts. 18, 22, 25, 26, 27, 29; Hr'g Tr. 27:2-35:19 (Mar. 1, 2024); *see also* Minute Order (July 12, 2024) (limiting the parties' submissions regarding Defendants' "renewed motion to dismiss" "to Plaintiff's claims under Article III . . . and the Seventh Amendment").

### II.   The Seventh Amendment does not apply where, as here, only injunctive relief is sought.

Meta's Seventh Amendment claim (Count V) should also be dismissed. The Seventh Amendment provides that, "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. *Jarkesy* held that defendants in an administrative securities fraud enforcement action for civil penalties brought by the SEC were entitled to a jury trial under the Seventh Amendment. *Jarkesy* examined two factors—the nature of the action and the remedy sought—and determined that the federal securities fraud action was analogous to common law fraud actions historically brought in the courts of law, such that the Seventh Amendment applied. 144 S. Ct. at 2128-31.

Application of that two-factor test here makes clear that, unlike *Jarkesy*, the Seventh Amendment is *not* implicated in this case. The remedy sought is the more important factor. *Id.* at

2129; *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989). And the remedy is dispositive here. "It is settled law that the Seventh Amendment does not apply" to "suits seeking only injunctive relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999) (citing *Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. (3 Pet.) 433 (1830)); *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 95 (2d Cir. 1978) ("In 1791, when the Seventh Amendment became effective, injunctions, both in England and in this country, were the business of courts of equity, not of courts of common law."). The only remedy sought in the modification proceeding is prospective changes to Meta's conduct: a remedy that is injunctive in nature. Thus, the Seventh Amendment does not apply. *See Meta*, 2024 WL 1549732, at *3 (finding Meta unlikely to succeed on Seventh Amendment claim because the OTSC proposes "equitable modification" of the 2020 Administrative Order); *see also FTC v. Quincy Bioscience Holding Co.*, No. 17 Civ. 124 (LLS), 2021 WL 1608953, at *1 (S.D.N.Y. Apr. 26, 2021) (holding, where FTC could "only seek injunctive relief," that "[t]hat relief is purely equitable and does not confer a Seventh Amendment right to a jury"); *FTC v. Lanier L., LLC*, No. 3:14-CV-786-J-34PDB, 2015 WL 9598794, at *4 (M.D. Fla. Dec. 8, 2015) (listing numerous examples of cases holding the same).

In past filings, Meta has focused primarily on the less important nature-of-the-action factor. However, even if the nature of the action is "arguably legal" (which the modification proceeding is not), if a party "seeks only non-compensatory, equitable remedies, the right to a jury does not inhere." *Citigroup Inc. v. VDN Sys., Inc.*, No. 08-Civ-7527 (SHS), 2008 WL 5274091, at *2 (S.D.N.Y. Dec. 16, 2008). This is true even when the nature of the action involves a breach of contract or fraud, although the modification proceeding here does not involve either of those. *See Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989) ("An action for specific

performance without a claim for damages is purely equitable and historically has always been tried

to the court.") (citation omitted); *United States v. Philip Morris, Inc.*, 273 F. Supp. 2d 3, 11 (D.D.C.

2002) (holding Seventh Amendment did not apply in a civil RICO action based on wire and mail

fraud where the government sought only injunctive relief).

      Further, Meta's common law analogies are flawed. "Meta's attempt to repackage the matter

as involving contract law fails for a simple reason: there is no contract." *Meta*, 2024 WL 1549732,

at *4. Although the 2020 Administrative Order that the Commission is considering modifying was

entered with Meta's consent as the result of a settlement agreement, at the end of the day, it "is, in

fact, an administrative order," not a contract. PI Denial Order, 2024 WL 1121424, at *19 n.8. Also,

modification under the FTC Act does not require a "breach" of contract. The key issue in a

modification proceeding is whether a prior Commission order (consent order or not) needs to be

changed to protect consumers. *See* 15 U.S.C. § 45(b) (the Commission may modify or set aside

"any" administrative order when "conditions of fact or of law have so changed as to require such

action or if the public interest shall so require"). Non-compliance with a Commission order can

constitute changed conditions warranting modification to protect consumers, but it is not a

necessary element. The Commission can modify an order even if a company did not actually

violate the terms of the order. *See Elmo*, 389 F.2d at 552 (upholding modification order setting

aside part of a prior consent order that allowed a company to claim that its products had beneficial

health effects because serious questions had arisen about whether the products had any beneficial

effects); *Mohr v. FTC*, 272 F.2d 401, 404-05 (9th Cir. 1959) (upholding modification in part

because there was confusion about whether the company violated the terms of the original order).

Modification amends a prior order, and "since historically neither courts of law or equity

recognized suits to amend contracts, there is no specific historical precedent upon which [Meta]

can predicate its jury trial claim." *Burlington N. R.R. Co. v. Neb. Pub. Power Dist.*, 931 F. Supp. 1470, 1482 (D. Neb. 1996).

Meta's common law fraud analogy also fails because the FTC Act created new duties and remedies that did not exist at common law. 15 U.S.C. § 45(a)(2). For example, acts or practices are considered "unfair" under the FTC Act if: (1) the acts at issue cause or are likely to cause substantial injury to consumers; (2) the injury is not reasonably avoidable by consumers; and (3) the injury is not outweighed by any countervailing benefits to consumers or competition. *See* 15 U.S.C. § 45(n). This consumer unfairness standard is "not moored in the traditional rationales of anticompetitiveness or deception," but rather was developed over time based on the Commission's decades of public policy experience determining what types of business practices are harmful to consumers, before being codified by Congress. *Am. Fin. Servs. Ass'n v. FTC*, 767 F.2d 957, 971 (D.C. Cir. 1985) (describing history); *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 244 (3d Cir. 2015) (same); *see also* FTC Act Amendments of 1994, Pub. L. No. 103-312, § 9, 108 Stat. 1691, 1695.

Also, "[t]o prove a deceptive act or practice in violation of Section 5(a) of the FTC Act, [15 U.S.C. § 45(a)], the FTC must show: (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances, and that (3), the representation, omission, or practice is material." *FTC v. Cantkier*, 767 F. Supp. 2d 147, 151 (D.D.C. 2011). "Unlike the elements of common law fraud, the FTC need not prove scienter, reliance, or injury to establish a § 5 violation." *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1203 n.7 (10th Cir. 2005). "Otherwise, the law would preclude the FTC from taking preemptive action against those

11

responsible for deceptive acts or practices, contrary to § 5's prophylactic purpose." *Id.* at 1203 (citation omitted).

Further, as described above, *supra* at 2-3, 11, both the "unfair" and "deceptive" standards grew out of Congress's intent that the FTC Act depart from the common law. Although a statutory claim need not be identical to a common law claim for the Seventh Amendment to apply, *Jarkesy*, 144 S. Ct. at 2131, the nature and the history of FTC Act claims make them sufficiently distinct that they are not in the nature of a suit at common law. Indeed, the FTC Act's "central purpose" was "to abolish the rule of caveat emptor which traditionally defined rights and responsibilities in the world of commerce." *FTC v. Sterling Drug, Inc.*, 317 F.2d 669, 674 (2d Cir. 1963) (discussing *Standard Educ.*, 302 U.S. at 116). At common law, courts faulted consumers for relying on a company's deceptive representations rather than "examin[ing the product] for themselves or seek[ing] the advice of competent and reliable persons who may be indifferent." *E.g.*, *Berman v. Woods & Co.*, 38 Ark. 351, 354 (1881); *see also Consumer and Federal Regulation of Advertising*, 53 Harv. L. Rev. 828, 828 (1940) ("The charlatanry of the deceiver, secure in the Latinity of caveat emptor, was virtually impregnable at common law. Remedial actions for deceit, breach of warranty and rescission, grounded on misleading representations, presented almost insuperable obstacles of proof."). The FTC Act departs from the common law by imposing a requirement of "honesty" in order to "protect the trusting as well as the suspicious." *Standard Educ.*, 302 U.S. at 116. The FTC

Act thus expunges the common law's "old soil," *Jarkesy*, 144 S. Ct. at 2130 (citation and quotation marks omitted), and creates new statutory rights to protect the public.

In any event, the remedy factor is more important than the nature of the action factor, and the injunctive nature of the relief sought is dispositive here: the Seventh Amendment does not apply and Meta's Seventh Amendment claim should be dismissed.

### III.     The Commission's adjudication of public rights is consistent with Article III.

Meta's Article III claim should also be dismissed because its assertion that the claims raised in the Commission's OTSC can only be litigated in an Article III court remains incorrect. Dkt. 1 at 16-17, 19-20 (Compl. ¶¶ 54-59, 80-84); Dkt. 4-1 at 26-28. As a preliminary matter, *Jarkesy* was a Seventh Amendment case; the Court did not consider how Article III applies to administrative adjudication where, as here, the claims do not implicate the right to a jury trial. 144 S. Ct. at 2139-40 (Gorsuch, J., concurring) ("The Court decides a single issue: Whether the Securities and Exchange Commission's use of in-house hearings to seek civil penalties violates the Seventh Amendment right to a jury trial."). Thus, *Jarkesy* does not lend new support to Meta's Article III claim.

Even if *Jarkesy*'s discussion of the public rights exception was thought to implicate Article III questions not actually before the Supreme Court, Meta's Article III claim would still fail. Article III vests the "judicial Power" in the federal courts. U.S. Const. art. III, § 1. "Congress cannot confer the Government's 'judicial Power' on entities outside Article III." *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1372-73 (2018) (quoting *Stern v. Marshall*, 564 U.S. 462, 484 (2011)). "When determining whether a proceeding involves an exercise of Article III judicial power, [the] Court's precedents have distinguished between 'public rights' and 'private rights.'" *Id.* at 1373. Although the Court "has not definitively explained the distinction between" the two, matters "concerning private rights may not be removed from Article

III courts" and a "hallmark" of a private rights matter is whether "it is made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789." *Jarkesy*, 144 S. Ct. at 2132 (cleaned up). At the same time, though, the Supreme Court has long recognized—and reiterated in *Jarkesy*—that "no involvement by an Article III court in the initial adjudication is necessary" in cases involving "public rights." *Id.* Public rights matters include those that "historically could have been determined exclusively by the executive and legislative branches, even when they were presented in such form that the judicial power was capable of acting on them." *Id.* (quoting *Den ex dem. Murray v. Hoboken Land & Imp. Co.*, 59 U.S. 272, 284 (1855)) (cleaned up). *Jarkesy* also continued to recognize that "certain historic categories of adjudications" and claims "unknown to the common law" could be assigned to agency adjudicators without offending Article III. *Id.* at 2133, 2138.

*Jarkesy* held that the public rights exception did not apply to an SEC securities fraud enforcement action to recover civil money penalties, a "punitive remedy" that could only be enforced in courts of law. *Id.* at 2136. No civil penalties are at issue in this case, however. Indeed, the Commission has no power to impose civil penalties in its § 45(b) proceedings. *See* 15 U.S.C. § 45(b), (*l*). *Jarkesy* did not purport to upend the long history of administrative adjudication outside the narrow context of civil penalties. *See, e.g.*, *Crowell v. Benson*, 285 U.S. 22, 50-51 (1932); *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937); *Thomas v. Union Carbide Agricultural Products Co.*, 473 U. S. 568, 583 (1985).

The Supreme Court has long recognized that the public rights doctrine permits FTC adjudication. In *Crowell v. Benson*, for example, the Court cited *Int'l Shoe Co. v. FTC*, 280 U.S. 291, 297 (1930), as one of the "familiar illustrations of administrative agencies created for the determination" of "matters, arising between the government and others, which from their nature

do not require judicial determination and yet are susceptible of it," which "Congress may reserve to itself the power to decide, may delegate . . . to executive officers, or may commit . . . to judicial tribunals." *Crowell*, 285 U.S. at 50-51 & n.13. While the statute in *Jarkesy* was "barely over a decade old," 144 S. Ct. at 2134 n.2, the FTC has adjudicated claims regarding unfair or deceptive business practices, whether affecting competitors or consumers, for over a century, and the Supreme Court has reaffirmed the Commission's authority to do so many times. *See, e.g.*, *AMG*, 593 U.S. at 71-72; *Colgate-Palmolive*, 380 U.S. at 384-85; *Jacob Siegel Co. v. FTC*, 327 U.S. 608, 612-14 (1946). *Jarkesy* does not purport to overturn these well-established precedents.

The FTC Act is also distinguishable from the securities fraud statutes in *Jarkesy* because the FTC Act is "self-consciously novel" in "both concept and execution." *Jarkesy*, 144 S. Ct. at 2137. Moreover, "[t]he purpose of this regime was not to enable the Federal Government to bring or adjudicate claims that traced their ancestry to the common law." *Id.* As discussed above, the common law did not recognize actions to stop unfair or deceptive practices in their incipiency. Indeed, courts at common law lacked "equitable jurisdiction" to "suppress the trade and business of all persons whose goods may deceive the public." *Am. Washboard Co. v. Saginaw Mfg. Co.*, 103 F. 281, 286 (6th Cir. 1900) ("[T]he remedy must come from the legislature, and not from the courts."). Congress recognized the insufficiency of the common law as well as the fact that "[t]here is no limit to human inventiveness" in devising unfair practices. *Sperry*, 405 U.S. at 240 (quoting H.R. Conf. Rep. No. 1142, 63d Cong., 2d Sess. 19 (1914)); *Keppel*, 291 U.S. at 311. Thus, Congress created the Commission—"a body of experts" with "proper knowledge of both the public requirements and the practical affairs of industry," *Humphrey's Ex'r v. United States*, 295 U.S. 602, 624-25 (1935)—and gave it "an influential role in interpreting § 5 and in applying it to the

facts of particular cases arising out of unprecedented situations." *Colgate-Palmolive*, 380 U.S. at 385.

"It was never the intention of Congress that the Commission should be a forum where private disputes or controversies . . . should be settled." *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 1000 n.63 (D.C. Cir. 1973) (quoting S. Rep. No. 221, 75th Cong., 1st Sess. at 2 (1937)). That intent is evident in how Congress carefully delineated the role of the Commission versus the role of the courts. The Commission's role in 15 U.S.C. § 45(b) proceedings is to act in the "interest of the public" by determining what acts and practices are unfair or deceptive and continuously developing effective ways to prevent such conduct in the future through issuance and modification of cease-and-desist orders. *See Am. Airlines v. N. Am. Airlines*, 351 U.S. 79, 83, 85-86 (1956) (explaining that the FTC Act does not "vindicate private rights," as the Act is concerned "with protection of the public interest," not "punishment of wrongdoing or protection of injured competitors").[4] Only a court can, for example, provide monetary redress to injured consumers. *See AMG*, 593 U.S. at 77-78 (discussing 15 U.S.C. §§ 45, 53, and 57b(b)). If a company violates a cease-and-desist order, only a court can impose civil penalties or a mandatory injunction to enforce the order. *See* 15 U.S.C. § 45(*l*). These features of the FTC Act, along with the statute's provision for judicial review of the Commission's cease-and-desist orders, 15 U.S.C. § 45(b), (c), show that there was no intent by Congress to aggrandize itself or the Executive Branch or to encroach on the

---

[4] Another indicator of § 45(b) proceedings' focus on the public interest in preventing future misconduct is 15 U.S.C. § 45(m)(1)(B), under which district courts may award civil penalties against *any* person, partnership, or corporation that commits an unfair or deceptive act or practice subject to a final FTC cease-and-desist order "with actual knowledge that such act or practice is unfair or deceptive and is unlawful." FTC orders thus "draw[] a line in the sand for both the respondent and anyone else who engages in the prohibited conduct." *FTC v. Credit Bur. Ctr., LLC*, 937 F.3d 764, 771 (7th Cir. 2019).

Judicial Branch. *Mistretta v. United States*, 488 U.S. 361, 382 (1989) ("It is this concern of encroachment and aggrandizement that has animated our separation-of-powers jurisprudence . . . ."); *see also City of Arlington, Tex. v. FCC*, 569 U.S. 290, 305 n.4 (2013) ("Agencies make rules . . . and conduct adjudications . . . and have done so since the beginning of the Republic. These activities take 'legislative' and 'judicial' forms, but they are exercises of— indeed, under our constitutional structure they *must be* exercises of—the 'executive Power.'"); *A.L.A. Schechter Poultry Co. v. United States*, 295 U.S. 495, 533 (1935) (FTC administrative procedure comports with separation of powers because judicial review "give[s] assurance that the action of the commission is taken within its statutory authority").

Meta's other arguments remain unpersuasive. In the past, Meta has asserted that this matter involves private rights because it implicates Meta's property rights. Dkt. 1 at 16, 20 (Compl. ¶¶ 55-59, 82-83); Dkt. 4-1 at 27-28. But it is still the case that "the dividing line between private rights and public rights is not whether an adjudication might have some impact on a person's property." PI Denial Order, 2024 WL 1121424, at *19 n.7. "Many matters that involve the application of legal standards to facts and affect private interests are routinely decided by agency action with limited or no review by Article III courts." *Thomas*, 473 U.S. at 583; *see also, e.g.*, *Atlas Roofing v. Occupational Safety and Health Review Comm'n*, 430 U.S. 442, 447-48 (1977) (upholding agency order imposing civil penalties and requiring changes to business practices to abate safety hazards);[5] *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 853 (1986) (allowing

---

[5] Although *Jarkesy* was critical of the dissent's broad reading of *Atlas Roofing*, 144 S. Ct. at 2138-39, *Atlas Roofing* "remain[s] binding precedent until [the Supreme Court] see[s] fit to reconsider [it], regardless of whether subsequent cases have raised doubts about [its] continuing vitality." *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) (per curiam) (quoting *Hohn v. United States*, 524 U.S. 236, 252-53 (1998)); *see also* PI Denial Order, 2024 WL 1121424, at *2 ("To give existing precedent anything less than its full due based on speculation about what the Supreme Court might

CFTC to adjudicate debit balance claims between commodity futures brokers and customers, which involved "private rights" "assumed to be at the 'core' of matters normally reserved to Article III courts"); *Crowell*, 285 U.S. at 51-53 (replacing injured longshore workers' traditional negligence cause of action against employers with an administrative workers' compensation system requiring employers to pay compensation to injured workers).

For these reasons, Meta cannot succeed on its Article III claim.

## IV.   Meta has waived and is judicially estopped from raising challenges to the Federal Trade Commission's structure and modification authority.

Defendants recognize that this Court disagreed with Defendants' waiver and estoppel arguments in the PI Denial Order, 2024 WL 1121424, at *12-13. However, in its March 29, 2024 order, the D.C. Circuit held that Meta was unlikely to succeed on the merits of its Seventh Amendment and Article III claims in part because, "as with the other constitutional claims, Meta has not explained how, under 16 C.F.R. § 2.32(c), it did not consent to the order's enforcement by the Commission in a show-cause proceeding as part of its consent to the order's entry." *Meta*, 2024 WL 1549732, at *4. "Meta's [Seventh Amendment and Article III] argument[s] impl[y] that the Commission lacked legal authority to enter those [earlier] consent orders in the first place. Yet Meta expressly gave up legal challenges to the 2020 order, which is what the Commission seeks to enforce here." *Id.* at *3. Defendants submit that Meta's consent to the Commission's entry of the 2012 and 2020 orders is another reason to dismiss Meta's Seventh Amendment and Article III

---

someday hold would exceed the authority of this Court, would inject grave uncertainty in the legal landscape, and would undermine the rule of law.").

claims challenging the Commission's modification of the 2020 order, and preserve this argument for appeal.

## CONCLUSION

For these reasons, the Court should grant Defendants' motion and dismiss Meta's Complaint with prejudice.

Dated: August 14, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CHRISTOPHER HALL
Assistant Branch Director

*/s/ Cynthia Liao*
CYNTHIA LIAO (CA Bar No. 301818)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. N.W.
Washington, DC 20005
Tel: (202) 531-1325
Fax: (202) 616-8470
cynthia.f.liao@usdoj.gov

*Counsel for Defendants*

19