# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

Space Exploration Technologies Corp.,

    *Plaintiff*,

      v.

Carol Bell, in her official capacity as an Administrative Law Judge of the Office of the Chief Administrative Hearing Officer, *et. al.*,

    *Defendants*.

Civil Action No. 1:23-cv-00137

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT / OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT.........................................................................................................................2

I.      There is no *Arthrex* problem with § 1324b, and any *Arthrex* problem is solved by
        the *Arthrex* remedy—severance. ..................................................................................2

II.     SpaceX's APA challenge to the IFR fails...................................................................6

III.    SpaceX is not entitled to relief on its ALJ removal claim. .........................................6

        A.      SpaceX fails to establish harm, as required under *Collins*....................................7

        B.      SpaceX is not entitled to injunctive relief because the removal protections
                are severable. ...............................................................................................10

IV.     SpaceX's Article III and Seventh Amendment claims fail............................................12

        A.      The § 1324b citizenship status claim against SpaceX falls within the
                immigration category of the public rights exception. ...........................................14

        B.      The § 1324b claim against SpaceX is unknown to the common law. ..................19

CONCLUSION....................................................................................................................20

T<small>ABLE OF</small> A<small>UTHORITIES</small>

<u>**Cases**</u>

*Arizona v. United States,*
   567 U.S. 387 (2012) .......................................................................................... 15, 16, 18

*Atlas Roofing Co., Inc. v. Occupational Safety & Health Rev. Comm'n,*
   430 U.S. 442 (1977) .......................................................................................... 14, 18, 19

*Axon Enterprise, Inc. v. FTC,*
   598 U.S. 175 (2023) ..................................................................................................... 8

*Barr v. Am. Ass'n of Pol. Consultants, Inc.,*
   591 U.S. 610 (2020) ........................................................................................... 3, 5, 11

*Bhatti v. Fed. Hous. Fin. Agency,*
   97 F.4th 556 (8th Cir. 2024) ........................................................................................ 8

*Bosse v. Oklahoma,*
   580 U.S. 1 (2016) ....................................................................................................... 19

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB,*
   51 F.4th 616 (5th Cir. 2022); *rev'd on other grounds,* 601 U.S. 416 (2024) ................... 7, 8, 10

*Cochran v. SEC,*
   20 F.4th 194 (5th Cir. 2021); *aff'd and remanded sub nom.*
   *Axon Enter., Inc. v. FTC,* 598 U.S. 175 (2023) ....................................................... 9

*Collins v. Dep't of the Treasury,*
   83 F.4th 970 (5th Cir. 2023) ................................................................................. 7, 8

*Collins v. Yellen,*
   594 U.S. 220 (2021) ............................................................................................ 7, 8, 9

*Consumers' Rsch. v. Consumer Prod. Safety Comm'n,*
   91 F.4th 342 (5th Cir. 2024) ..................................................................................... 9

*Crowell v. Benson,*
   285 U.S. 22 (1932) .................................................................................................... 20

*Curtis v. Loether,*
   415 U.S. 189 (1974) ............................................................................................ 18, 20

*Dep't of State v. Munoz,*
   144 S. Ct. 1812 (2024) ............................................................................................. 14

*Elgebaly v. Garland*,
  109 F.4th 426 (6th Cir. 2024) ...................................................................................13

*Energy Transfer, LP v. NLRB*,
  No. 3:24-CV-198, 2024 WL 3571494 (S.D. Tex. July 29, 2024) .............................9

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*,
  561 U.S. 477 (2010) ............................................................... 5, 6, 10, 11, 12

*Hampton v. Mow Sun Wong*,
  426 U.S. 88 (1976) ...................................................................................16

*Hepner v. United States*,
  213 U.S. 103 (1909) ..................................................................................18

*Hoffman Plastic Compounds, Inc. v. NLRB*,
  535 U.S. 137 (2002) .............................................................................14, 17

*Hohn v. United States*,
  524 U.S. 236 (1998) ..................................................................................19

*INS v. Nat'l Ctr. for Immigrants Rts., Inc.*,
  502 U.S. 183 (1991) .............................................................................15, 17

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022) .....................................................................10

*Kansas v. Garcia*,
  589 U.S. 191 (2020) ..................................................................................18

*Leachco, Inc. v. Consumer Product Safety Comm'n*,
  103 F.4th 748 (10th Cir. 2024) .............................................................7, 8, 9

*Meta Platforms, Inc. v. FTC*,
  --- F. Supp. 3d ---, No. CV 23-3562 (RDM),
  2024 WL 1121424 (D.D.C. Mar. 15, 2024) .................................................9

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
  584 U.S. 433 (2018) ....................................................................................5

*NLRB v. Jones & Laughlin Steel Corp.*,
  301 U.S. 1 (1937)......................................................................................20

*Oceanic Steam Navigation Co. v. Stranahan*,
  214 U.S. 320 (1909) .........................................................................13, 18, 19

iii

*SEC v. Jarkesy,*
    144 S. Ct. 2117 (2024) ............................................................. 7, 13, 18, 19

*Seila Law LLC v. CFPB,*
    591 U.S. 197 (2020) ................................................................. 6, 8, 10, 12

*Space Exploration Techs. Corp. v. NLRB,*
    No. W-24-CV-00203-ADA, 2024 WL 3512082 (W.D. Tex. July 23, 2024)........................11

*Sure–Tan, Inc. v. NLRB,*
    467 U.S. 883 (1984) ...........................................................................15

*Thomas v. Union Carbide Agric. Prod. Co.,*
    473 U.S. 568 (1985) ...........................................................................20

*Tull v. United States,*
    481 U.S. 412 (1987) ...........................................................................18

*United States v. Arthrex,*
    594 U.S. 1 (2021) ........................................................................*passim*

*United States v. Burke,*
    504 U.S. 229 (1992) ...........................................................................20

*Univ. of Texas v. Camenisch,*
    451 U.S. 390 (1981) .............................................................................5

*Walmart Inc. v. King,*
    No. CV 623-040, 2024 WL 1258223 (S.D. Ga. Mar. 25, 2024);
    *appeal filed*, No. 24-11733 (11th Cir. May 22, 2024) ...........................................10

**Statutes**

5 U.S.C. § 557.....................................................................................2

5 U.S.C. § 559.....................................................................................2

5 U.S.C. § 7521(a) ...............................................................................11

8 U.S.C. § 1324a .............................................................................14, 15

8 U.S.C. § 1324b........................................................................*passim*

8 U.S.C. § 1153...................................................................................16

8 U.S.C. § 1157...................................................................................16

iv

8 U.S.C. § 1158 ................................................................................................16

28 U.S.C. § 509 ..................................................................................................3

35 U.S.C. § 6(c) .................................................................................................4

35 U.S.C. § 319 ..................................................................................................4

**<u>Regulations</u>**

28 C.F.R. § 68.55 ...............................................................................................6

**<u>Other Authorities</u>**

H.R. Rep. No. 682, 99th Cong., 2d Sess. Pt. 1 (1986) ...................................14, 15, 18

H.R. Rep. No. 682, 99th Cong., 2d Sess. Pt. 2 (1986) ...........................................2, 15

H.R. Rep. No. 95-1403 (1978) .........................................................................11

Pub. L. No. 79-404, 60 Stat. 237 (1946) .........................................................11

S. Rep. No. 132, 99th Cong., 1st Sess. Pt. 2 (1985) ........................................15

U.S. Gen. Accounting Office, GAO/GGD-90-62,
   *Immigration Reform: Employer Sanctions
   and the Question of Discrimination* 2 (1990) ...........................................14, 15

## INTRODUCTION

Rather than litigate the merits of whether it unlawfully engaged in unfair immigration-related employment practices, SpaceX collaterally attacks the administrative adjudication framework in 8 U.S.C. § 1324b and seeks to enjoin the administrative proceeding against it based on alleged constitutional flaws in that framework. But SpaceX is not entitled to an injunction, or any other relief. Section 1324b allows the Attorney General to review ALJ decisions, and the Department of Justice's regulations properly provide for such review. And even if SpaceX is correct that the statute does *not* allow for such review and therefore violates the Appointments Clause under *United States v. Arthrex*, 594 U.S. 1 (2021), the Court should simply provide the *Arthrex* remedy: sever the unconstitutional part of the statute so that a principal officer can review the ALJ's decision. Either way, the appropriate outcome is for the administrative case to proceed, with the ALJ's decision subject to discretionary review by the Attorney General.

SpaceX's ALJ removal claim is also meritless. And SpaceX is not entitled to relief in any event because it fails to show harm from the ALJ's removal protections. Moreover, injunctive relief is inappropriate under Supreme Court precedents that refused to stop agencies' operations and instead severed unconstitutional removal protections.

Finally, SpaceX's Seventh Amendment and Article III claims fail because § 1324b claims fall within the public rights doctrine. Section 1324b, entitled "Unfair Immigration-Related Employment Practices," was enacted by Congress as part of the Immigration Reform and Control Act, which imposed new requirements on employers to prevent the employment of noncitizens unauthorized to work, while also protecting individuals with certain immigration statuses who are authorized to work from employers overzealously complying with the new requirements. Thus, they represent an exercise of Congress's immigration power and are unknown to the common law.

1

Administrative adjudication of such claims does not offend the Seventh Amendment or Article III.

Because SpaceX's claims are not viable and SpaceX has shown no entitlement to relief, the Court should grant judgment in favor of Defendants and dismiss SpaceX's complaint.

ARGUMENT

**I.   There is no *Arthrex* problem with § 1324b, and any *Arthrex* problem is solved by the *Arthrex* remedy—severance.**

SpaceX claims that, under *Arthrex*, the Attorney General cannot review ALJ orders under § 1324b, and therefore the statute violates the Appointments Clause. *See* Pl.'s Mot. for Summ. J. at 8-9 (ECF No. 36) ("Pl.'s MSJ"). The premise behind the argument is faulty. SpaceX does not dispute that the canon of constitutional avoidance requires this Court to construe § 1324b to allow the Attorney General to review ALJ decisions so long as that interpretation is "fairly possible." *Compare id. with* Defs.' Mot. for Summ. J. at 8 (ECF No. 35) ("Defs.' MSJ"). SpaceX likewise does not contest that under the Administrative Procedure Act (APA), agency heads may review inferior officers' adjudicatory decisions, 5 U.S.C. § 557, and § 1324b "may not be held to supersede or modify" that default rule "except to the extent" it "does so expressly," *id.* § 559. That is the end of the matter. As explained in our initial motion, unlike the *Arthrex* statute, § 1324b can fairly be construed to permit review by a principal officer and does not expressly supersede the APA's default rule. The statute is therefore constitutional. *See* Defs.' MSJ at 12.

Even if § 1324b were unconstitutional, the proper remedy under *Arthrex* and other Supreme Court precedent would be to sever any portions of § 1324b preventing the Attorney General from reviewing ALJ orders, not to halt ALJ proceedings altogether and bar the enforcement of an immigration-related law Congress deemed essential. *See* H.R. Rep. No. 682, 99th Cong., 2d Sess. Pt. 2, 12 (1986) (stating that "sanctions enforcement and liability" for employers "must be" balanced by "an equally strong and readily available remedy if resulting

2

employment discrimination occurs."). As the Supreme Court has explained, "[f]rom *Marbury v. Madison* to the present, . . . the Court's remedial preference after finding a provision of a federal law unconstitutional has been to salvage rather than destroy the rest of the law passed by Congress and signed by the President." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 626 (2020). The "strong presumption of severability," *id.* at 625, "manifests the Judiciary's respect for Congress's legislative role by keeping courts from unnecessarily disturbing a law apart from invalidating the provision that is unconstitutional," *id.* at 627.

Here, severing any unconstitutional provisions of § 1324b is far more consistent with those principles than enjoining the statute's enforcement altogether. "In every respect save the insulation of their decisions from review within the Executive Branch," the ALJs "appear to be inferior officers," just like the Administrative Patent Judges (APJs) in *Arthrex* who sit on the Patent Trial and Appeal Board (PTAB) of the Patent and Trademark Office (PTO). 594 U.S. at 24-26. By virtue of their appointment by the Attorney General, ALJs therefore may "lawfully adjudicate [a case] in the first instance," just like the APJs. *Id.* at 26. SpaceX's *Arthrex* claim alleges only a narrow flaw in the statute—that § 1324b purportedly does not permit a principal officer to review ALJ decisions, just as the statute in *Arthrex* did not permit a principal officer to review PTAB decisions. That discrete issue can be resolved using the same "tailored approach" as in *Arthrex*, *id.* at 25, without letting SpaceX "ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute," *Barr*, 591 U.S. at 627. As in *Arthrex*, this Court should declare unenforceable any provisions that prevent the Attorney General from reviewing ALJ decisions. *See Arthrex*, 594 U.S. at 25-26 (declaring unenforceable provision preventing the Director of the PTO from reviewing PTAB decisions). The Attorney General could then review ALJ decisions. *See id.* at 20 (APA authorizes review by agency heads); 28 U.S.C. § 509 (vesting Attorney General

3

with "all functions of agencies and employees of the Department of Justice"); *cf. Arthrex*, 594 U.S. at 25 ("Because Congress has vested the [PTO] Director with the 'power and duties' of the PTO, § 3(a)(1), the Director has the authority to provide for a means of reviewing PTAB decisions.").

Defendants' motion offered an example of language in § 1324b(g)(1) and (i)(1) that could be declared unenforceable to address any concern that § 1324b's language making ALJ orders "final" precludes further administrative review. Defs.'s MSJ at 14-15. SpaceX's only response appears to be that, even if ALJ orders were no longer "final" under the statute, only ALJ orders (as opposed to a principal officer's order) could be appealed to the court of appeals or enforced by a district court under § 1324b(i)(1) and (j)(2). Pl.'s MSJ at 12. That is incorrect.

Like the Supreme Court did in *Arthrex*, this Court could and should hold that decisions by the Attorney General under the severed statute will be issued "on behalf of the [ALJ]," *Arthrex*, 594 U.S. at 25, and therefore would be appealable and enforceable in federal court even on SpaceX's reading of the statute. In crafting its severance remedy, *Arthrex* declared a statutory provision allowing only PTAB to rehear its own cases "unenforceable insofar as it prevents the [PTO] Director from reviewing [such] decisions on his own." *Id.* at 26 (not identifying specific text that should be excised from the provision, 35 U.S.C. § 6(c)). Significantly, the Court was untroubled by a nearby provision providing for judicial review of "final written decision[s] of the [*PTAB*]." 35 U.S.C. § 319 (emphasis added). That provision posed no obstacle because the Court held that, under the severed statute, the Director "may review final PTAB decisions and, upon review, may issue decisions himself *on behalf of the Board*." *Arthrex*, 594 U.S. at 25-26 (emphasis added). Applying *Arthrex*, this Court should therefore hold that (1) § 1324b is "unenforceable . . . insofar as it prevents the [Attorney General] from reviewing [ALJ decisions] on his own"; and (2) the Attorney General "accordingly may review [ALJ] decisions and, upon

review, may issue decisions himself on behalf of the [ALJ]." 594 U.S. at 25-26. Similar to *Arthrex*, the Attorney General's decision would then be the ALJ's for purposes of judicial review and enforcement under § 1324b(i) and (j).

SpaceX also points to the existence of administrative appellate review provisions in §§ 1324a and 1324c but not in § 1324b, Pl.'s MSJ at 13. But again, at the remedy stage, the question is not whether Congress intended to prohibit administrative appellate review in § 1324b cases in the first instance, but whether Congress, "faced with the limitations imposed by the Constitution," would prefer to keep the rest of § 1324b even if it could not prohibit administrative appellate review. *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 509 (2010). Here, the answer is yes: Congress would prefer to enforce § 1324b, even if the Attorney General may, in his discretion, review ALJ decisions, rather than have no enforcement at all. Defs.' MSJ at 15-16.

The only authority SpaceX offers against severability is the PI Order's quotation of *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 433 (2018). Pl.'s MSJ at 13 (quoting PI Order at 5 (ECF No. 28)). However, "given the haste that is often necessary" in a preliminary injunction proceeding, "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding" at the merits stage. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). With the benefit of more time to consider the issue, the Court should find *Murphy* distinguishable for the reasons discussed in Defendants' motion. *See* Defs.'s MSJ at 16. Further, since *Murphy* was decided, the Supreme Court has emphasized its longstanding, strong preference for severance, including in cases closely analogous to this one. *See, e.g.*, *Barr*, 591 U.S. at 626. In *Arthrex* and *Seila Law*, the Supreme Court specifically chose to remedy Appointments Clause-related issues similar to the one here by severing unconstitutional statutory provisions instead of

enjoining entire agency programs or vacating agency actions, following its precedent in *Free Enterprise Fund*. *Arthrex*, 594 U.S. at 23-27; *Seila Law LLC v. CFPB*, 591 U.S. 197, 233-38 (2020); *Free Enter. Fund*, 561 U.S. at 508-10, 513. Given SpaceX's Appointments Clause claim is based entirely on *Arthrex*, it makes sense to adopt *Arthrex*'s tailored remedy, instead of looking to a case like *Murphy* involving a much different statute and claim.

## II.     SpaceX's APA challenge to the IFR fails.

SpaceX offers no new arguments as to why the IFR is substantively or procedurally invalid beyond those already addressed in Defendants' motion. *Compare* Defs.'s MSJ at 17-19 *with* Pl.'s MSJ at 13-14 & n.1.[1] Thus, for the reasons explained in that motion, SpaceX's arguments regarding the IFR's procedural and substantive validity should be rejected. Nor does SpaceX address the core problem with its IFR claim: Before the IFR, there was no regulatory provision for Attorney General review of ALJ decisions in § 1324b cases. The IFR has now put provisions in place. *See* 28 C.F.R. § 68.55. SpaceX benefits from the IFR because the review that it complained was missing is now available. *See* FAC ¶¶ 44, 53; Pl.'s MSJ at 7-8.

## III.    SpaceX is not entitled to relief on its ALJ removal claim.

SpaceX's ALJ removal claim should also be rejected. As discussed, Defendants recognize that the Fifth Circuit has held SEC ALJs' removal protections unconstitutional, but the Fifth Circuit's decision in *Jarkesy* is distinguishable because OCAHO ALJs are supervised by the Attorney General, who is removable at will by the President. But if this Court disagrees, Defendants preserve their merits arguments regarding OCAHO ALJs for appeal. *See* Defs.'s MSJ

---

[1] SpaceX continues to argue that the review process under the IFR is inconsistent with the judicial review time window in the statute, Pl.'s MSJ at 14, but again the statute specifies that the 60-day appeal period is triggered by the entry of a "final" order and the IFR defines an order as "final" when the Attorney General's review period has expired or when the Attorney General has issued a decision. 8 U.S.C. § 1324b(i)(1); 28 C.F.R. § 68.55(d).

at 22-23.[2] The Court need not reach the merits, however, because under Supreme Court and Fifth Circuit precedent, SpaceX is entitled to no relief, and in particular no injunctive relief.

A. *SpaceX fails to establish harm, as required under* Collins*.*

Under *Collins v. Yellen*, 594 U.S. 220 (2021), and Fifth Circuit cases following *Collins*, to obtain relief, a party challenging a federal officer's removal protections must show that it has been harmed by them. Specifically, the challenger must show "(1) a substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor." *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022), *rev'd on other grounds*, 601 U.S. 416 (2024); *see also Collins*, 594 U.S. at 259-60. The last prong is satisfied by a showing that, "but for the removal restriction," the President would have removed the insulated actor and the agency "would have acted differently as to the challenged actions." *Collins v. Dep't of the Treasury*, 83 F.4th 970, 982 (5th Cir. 2023) (citations omitted)). SpaceX has not done so and therefore is not entitled to any relief.

SpaceX contends that it can show harm because its CEO is an "influential public figure" with numerous followers on X and because the *Wall Street Journal* editorial board wrote about various government proceedings against him. From this, SpaceX concludes that the President has a "strong incentive to hold the ALJ accountable." Pl.'s MSJ at 20-21. But speculation about Presidential "incentives" does not equal "a substantiated desire by the President to remove [ALJ Bell]." *Cmty. Fin. Servs. Ass'n*, 51 F.4th at 632-33 (finding "secondhand accounts" of the

[2] Since the parties' motions, the Tenth Circuit has held that Consumer Product Safety Commission (CPSC) ALJs' removal protections are constitutional. *Leachco, Inc. v. Consumer Product Safety Comm'n*, 103 F.4th 748, 763-64 (10th Cir. 2024). Also, although the Supreme Court had granted certiorari on the question of whether SEC ALJs' removal protections violated Article II in *Jarkesy*, it ultimately did not address the question. *See SEC v. Jarkesy*, 144 S. Ct. 2117, 2127-28 (2024).

President's "supposed intentions . . . insufficient to establish harm"); *see also Bhatti v. Fed. Hous. Fin. Agency,* 97 F.4th 556, 559 (8th Cir. 2024) (finding *Collins* inquiry not satisfied by a post hoc letter signed by former President Trump). Nor has SpaceX shown that the President believes himself unable to remove ALJ Bell or that, but for the removal restriction, the President would remove ALJ Bell and the agency would act differently. *See Collins*, 83 F.4th at 982-84 (finding challenger failed to adequately allege but-for causation where the hypothetical chain of events alleged was too uncertain and speculative).

SpaceX also appears to believe either that it satisfies *Collins* or that it does not need to because ongoing ALJ proceedings constitute a "here and now" injury, citing *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023). *See* Pl.'s MSJ at 19. This Court should follow the Tenth Circuit's recent, persuasive decision in *Leachco*, and reject this overly expansive reading of *Axon*. *Leachco*, like this case, involved a company trying to enjoin ongoing ALJ proceedings based on the ALJ's removal protections. *Leachco* held that "Supreme Court precedent supports a narrow application of *Axon*'s 'here-and-now injury' language." 103 F.4th at 759. *Axon* concerned whether the district court had federal question jurisdiction; it was not about what a plaintiff must show to obtain relief. *Id.* Furthermore, *Axon*'s "here and now injury" language came from *Seila Law*'s discussion of standing, which similarly did not address entitlement to relief. *Id.* (citing *Seila Law*, 591 U.S. at 212). That key distinction was noted in *Collins* itself:

> What we said about standing in *Seila Law* should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction. We held that a plaintiff that challenges a statutory restriction on the President's power to remove an executive officer can establish standing by showing that it was harmed by an [allegedly void] action that was taken by such an officer. . . . But that holding on standing does not mean that actions taken by such an officer are void *ab initio* and must be undone.

*Collins*, 594 U.S. at 258 n.24. The Tenth Circuit in *Leachco* decided to "follow the Supreme

Court's words of caution when interpreting the same 'here-and-now injury' language from *Axon*"
and to "not misunderstand what was said about jurisdiction in *Axon* 'as a holding on a party's
entitlement to relief based on an unconstitutional removal provision.'" 103 F.4th at 759 (quoting
*Collins*, 594 U.S. at 258 n.24).[3] Thus, under *Collins*, Leachco was required to show "that the
challenged removal provisions actually impacted, or will impact, the actions taken by the CPSC
against it," even though it was seeking prospective relief. *Id.* at 757. The court determined that
Leachco was not entitled to relief because it "failed to make any showing that, but for the allegedly
unconstitutional removal provisions, . . . ALJ Young would have been removed, the CPSC
proceedings against it would not be occurring, or the proceedings would be different in any way."
*Id.* This Court should do the same. Doing so would not "render *Axon* a dead letter," as SpaceX
claims, Pl.'s MSJ at 20, but would faithfully apply Supreme Court precedent, as *Leachco* did.[4]

      Unable to satisfy the *Collins* test, SpaceX complains the test is too hard because a
challenger "could never satisfy the [] requirement to show that an ALJ has taken unfavorable

---

[3] *Cf. Meta Platforms,* 2024 WL 1121424, at *9 (D.D.C. Mar. 15, 2024) (differentiating between
harm for jurisdictional purposes versus irreparable harm for injunctive relief purposes).

[4] Another judge in this district recently held that *Collins* was satisfied by the mere allegation that
a company was "simply being made to participate in an unconstitutional proceeding." *Energy
Transfer, LP v. NLRB*, No. 3:24-CV-198, 2024 WL 3571494, at *3-4 & n.4 (S.D. Tex. July 29,
2024) (Brown, J.) (citing *Cochran v. SEC*, 20 F.4th 194, 210 n.16 (5th Cir. 2021), *aff'd and
remanded sub nom. Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023), and *Consumers' Rsch. v.
Consumer Prod. Safety Comm'n*, 91 F.4th 342, 349 (5th Cir. 2024)). *Energy Transfer*, however,
confused the issue of what a challenger must show to obtain relief with issues of federal question
jurisdiction and Article III standing. *Cochran*, like *Axon*, addressed only federal question
jurisdiction. *Consumers' Research* addressed standing. Defendants here do not contest federal
question jurisdiction or standing as to the ALJ removal issue. But having an injury sufficient for
standing or federal question jurisdiction purposes does not mean a party is entitled to relief at the
end of a case. In *Collins* itself, for example, having standing to challenge the Federal Housing
Finance Agency Director's removal protections did not mean the challengers were automatically
entitled to relief. The Supreme Court still required a further showing of harm resulting from the
removal protections. *Collins*, 594 U.S. at 243, 258 n.24.

'actions'" when the ALJ proceeding is in its early stages. Pl.'s MSJ at 20. But just because SpaceX cannot show that the President disagrees with the ALJ proceedings here does not mean that no one could ever make a showing in a different case. Further, SpaceX does not explain why it should be easy for parties who are not suffering any harm from federal officers' removal protections to obtain relief based on them. Without a showing of harm, the Fifth Circuit has observed, "the Plaintiffs could put themselves in a better place than otherwise warranted, by challenging decisions either with which the President agreed, or of which he had no awareness at all." *Cmty. Fin. Servs. Ass'n*, 51 F.4th at 632. Because SpaceX has not demonstrated harm connected to the ALJ removal provisions, it is not entitled to any relief.

### B. SpaceX is not entitled to injunctive relief because the removal protections are severable.

SpaceX is also not entitled to injunctive relief for the separate reason that, under Supreme Court precedent, declaratory relief (severing the offending removal provisions) is the more appropriate remedy. The Supreme Court has repeatedly rejected requests to stop agencies from exercising their powers as a remedy for unconstitutional removal provisions, including in *Free Enterprise Fund* and *Seila Law*, the main cases on which SpaceX's ALJ removal claim is based. FAC ¶¶ 60-61; *Seila Law*, 591 U.S. at 233-38; *Free Enter. Fund*, 561 U.S. at 508-10, 513.[5]

SpaceX's arguments against severance are unavailing. SpaceX urges this Court to follow an out-of-circuit district court decision, *Walmart Inc. v. King*, No. CV 623-040, 2024 WL 1258223 (S.D. Ga. Mar. 25, 2024), *appeal filed*, No. 24-11733 (11th Cir. May 22, 2024), Pl.'s MSJ at 21. But *Walmart* is not persuasive. It did not give enough consideration to *Barr*'s "strong presumption

---

[5] SpaceX also relies on the Fifth Circuit's decision in *Jarkesy*, which in turn relied heavily on *Free Enterprise Fund*. *Jarkesy v. SEC*, 34 F.4th 446, 463-65 (5th Cir. 2022). Because the Fifth Circuit vacated the SEC's decision on other grounds, the Fifth Circuit did not address what relief would be appropriate based on the ALJ removal issue alone. *Id.* at 463 n.17.

of severability" and did not engage at all with the most analogous Supreme Court precedent, *Seila Law* and *Free Enterprise Fund*. *Id.* at *4.[6]

SpaceX argues that Congress considered both the ALJs' and the MSPB's removal protections essential. Pl.'s MSJ at 23. But SpaceX has not demonstrated that Congress thought it particularly important that ALJs have additional protections when it overhauled the civil service system and transferred some of the Civil Service Commission's functions to the newly created MSPB in 1978. It seems more likely that Congress simply moved ALJs along with millions of other civil servants to the new system. *See* H.R. Rep. No. 95-1403, at 22 (1978) ("The new section 7521 continues the present system of providing protection for administrative law judges."). *Compare* APA, Pub. L. No. 79-404 § 11, 60 Stat. 237, 244 (1946) (making ALJs "removable by the agency in which they are employed only for good cause established and determined by the Civil Service Commission"), *with* 5 U.S.C. § 7521(a) (substituting "Civil Service Commission" with "Merit Systems Protection Board": "[a]n action may be taken against an [ALJ] by the agency . . . only for good cause established and determined by the Merit Systems Protection Board").

SpaceX also argues that the removal protection statutes have no severability clause, Pl.'s MSJ at 23, but "Congress often does not include either a severability or a nonseverability clause." *Barr*, 591 U.S. at 625. Regardless, the Supreme Court's "precedents reflect a decisive preference for surgical severance . . . even in the absence of a severability clause." *Id.* at 626. A statute is severable if "the remainder of the statute is capable of functioning independently and thus would be fully operative as a law." *Id.* at 628 (quotation marks omitted). "[I]t is fairly unusual for the

---

[6] Neither did *Space Exploration Techs. Corp. v. NLRB*, No. W-24-CV-00203-ADA, 2024 WL 3512082, at *6 (W.D. Tex. July 23, 2024), to the extent SpaceX relies on that case. Further, the *NLRB* court believed it was premature to consider severance at the preliminary injunction stage, but this case is no longer at the preliminary injunction stage.

remainder of a law not to be operative." *Id.* Section 1324b is not one of those unusual cases: it can function even if ALJs are no longer subject to for-cause removal. The Supreme Court has repeatedly remedied unconstitutional removal provisions by severing them rather than halting agencies' operations, even when Congress intended for the agency to be independent. *See Seila Law*, 591 U.S. at 233-38; *Free Enter. Fund*, 561 U.S. at 508-10, 513; *cf. Collins*, 594 U.S. at 258-59 (severing removal protections rather than void agency's past action). And those agencies—the Consumer Financial Protection Bureau, the Public Company Accounting Oversight Board, and the Federal Housing Finance Agency—still function today without the severed removal protections. There is no reason to believe that OCAHO's § 1324b operations would be any different.

SpaceX expresses concern that severing removal protections could affect ALJs beyond OCAHO's, Pl.'s MSJ at 23, but that could be addressed by narrowly tailoring the remedy to the ALJ presiding over SpaceX's case, as Defendants have proposed, *see* Defs.' MSJ at 27, or to the OCAHO ALJs. Either of these narrow remedies would redress SpaceX's alleged constitutional harm by making the ALJ sufficiently accountable to the Attorney General, without giving SpaceX the unnecessary windfall of altogether avoiding scrutiny into its allegedly unfair immigration-related employment practices. Injunctive relief is equitable in nature, and here, it is more equitable (and more consistent with Supreme Court precedent) to deny injunctive relief that would unduly favor SpaceX and leave workers without remedies, when tailored declaratory relief would just as effectively address the alleged harm.

## IV.    SpaceX's Article III and Seventh Amendment claims fail.

The Supreme Court's decision in *Jarkesy*—issued after the parties filed their motions—reinforces the correctness of this Court's decision at the preliminary injunction stage that § 1324b comports with Article III and the Seventh Amendment. *Jarkesy* held that a defendant in a securities fraud enforcement action for civil penalties brought by the SEC was entitled to a jury trial under

the Seventh Amendment because the nature of the action and the remedy sought made the action analogous to common law fraud actions historically brought in the courts of law. 144 S. Ct. at 2128-31. In doing so, the Supreme Court reaffirmed that, under the "public rights" doctrine, "Congress may assign [a] matter for [an initial] decision to an agency without a jury," consistent with the Seventh Amendment and Article III, even when "the judicial power" is "capable of acting on [it]." 144 S. Ct. at 2131-32 (citation omitted).

*Jarkesy*'s synthesis of the public rights exception makes clear that it applies with full force here. *Jarkesy* reaffirmed that adjudications concerning immigration, foreign commerce, relations with Indian tribes, and other matters that "historically could have been determined exclusively by [the executive and legislative] branches" fall within the public rights exception. *Id.* at 2132-33 (citation omitted; alteration in original). The Court cited *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320 (1909), which upheld the administrative imposition of monetary "penalties" on a steamship company to enforce the "prohibition [on] immigration by certain classes of persons," emphasizing that the governing statute was an exercise of Congress's "plenary power over immigration." *Jarkesy*, 144 S. Ct. at 2132-33 & n.1 (citing *Oceanic Steam*, 214 U.S. at 339-40). Thus, as the Sixth Circuit has already recognized in a post-*Jarkesy* opinion, courts can "easily dispose of" *Jarkesy*-based challenges related to immigration enforcement proceedings, which fall within the core of the public rights doctrine. *Elgebaly v. Garland*, 109 F.4th 426, 437 (6th Cir. 2024). *Jarkesy* also explained that, under *Atlas Roofing Co., Inc. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 461 (1977)—which it declined to overrule—Congress can assign to agencies adjudications of claims "unknown to the common law." *Jarkesy*, 144 S. Ct. at 2137-38 (quoting *Atlas Roofing*, 430 U.S. at 461).

Section 1324b claims (in particular, the citizenship status discrimination claims at issue

13

here) involve public rights on either or both of these rationales. *See* PI Order at 8. Significantly, Congress passed § 1324b as part of the Immigration Reform and Control Act (IRCA) as an exercise of Congress's plenary immigration and foreign affairs powers. In addition, § 1324b claims have no meaningful connection to common law actions.

A.   *The § 1324b citizenship status claim against SpaceX falls within the immigration category of the public rights exception.*

*Jarkesy*'s reaffirmation that the public rights doctrine applies when Congress legislates pursuant to its plenary power over immigration reflects the "longstanding principle that the United States can, as a matter of public policy forbid aliens or classes of aliens from coming within their borders and no limits can be put by the courts upon that power." *Dep't of State v. Munoz*, 144 S. Ct. 1812, 1824 (2024) (cleaned up). Together with 8 U.S.C. § 1324a, § 1324b is integral to the immigration system Congress created and directed the Executive to administer: Congress has authorized certain noncitizens, and not others, to enter and work in the United States. To enforce that policy, Congress has required employers to verify employees' work authorization status and has protected the ability of U.S. citizens and certain authorized noncitizens to work.

Both §§ 1324a and 1324b are in the Immigration and Nationality Act and were enacted as part of IRCA. In passing IRCA, Congress recognized that "[e]mployment is the magnet that attracts aliens here illegally." H.R. Rep. No. 682, 99th Cong., 2d Sess. Pt. 1, 46 (1986). Thus, Congress "forcefully made combating the employment of illegal aliens central to the policy of immigration law." *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 147-48 (2002) (cleaned up); U.S. Gen. Accounting Office, GAO/GGD-90-62, *Immigration Reform: Employer Sanctions and the Question of Discrimination* 2 (1990) (IRCA "enlists the Nation's employers in the battle to regain control of our borders"). Before IRCA, there was "no comprehensive federal program regulating the employment of unauthorized aliens." *Arizona v. United States*, 567 U.S.

387, 404 (2012). IRCA created a new framework that prohibits employers from knowingly hiring, recruiting, referring, or continuing to employ unauthorized workers; and requires employers to verify employees' work authorization status by examining their government-issued documentation (known as the "I-9" process). *See* 8 U.S.C. § 1324a; *see also Arizona*, 567 U.S. at 404; S. Rep. No. 132, 99th Cong., 1st Sess. Pt. 2, 9, 103-104 (1985); H.R. Rep. No. 682, 99th Cong., 2d Sess. Pt. 1, 68-71 (1986) (asserting that the bill was "the most humane, credible and effective way to respond to the large-scale influx of undocumented aliens").

At the same time, however, the employer sanctions in § 1324a could lead to new harms and run counter to other aspects of Congress's immigration policy. Overly cautious employers might refuse to hire individuals who they wrongly perceived to lack work authorization, including U.S. citizens, lawful permanent residents, or those granted refugee or asylee status, who are authorized to work. *See, e.g.*, U.S. Gen. Accounting Office, GAO/GGD-90-62, *Immigration Reform: Employer Sanctions and the Question of Discrimination* 2 (1990) ("Congress was concerned that the law's system of verification and sanctions would cause employers to discriminate against 'foreign-appearing' U.S. citizens and legal aliens."); H.R. Rep. No. 682, 99th Cong., 2d Sess. Pt. 2, 12 (1986) (strongly endorsing the antidiscrimination provision due to fear that "employer sanctions will give rise to employment discrimination"). This result would undercut a "primary purpose" of restricting immigration: "to preserve jobs for American workers." *INS v. Nat'l Ctr. for Immigrants Rts., Inc.*, 502 U.S. 183, 194 (1991) (quoting *Sure–Tan, Inc. v. NLRB*, 467 U.S. 883, 893 (1984)). Employment discrimination could also deprive lawful permanent residents and those granted refugee or asylee status of their livelihoods, undermining the employment-based visa and humanitarian programs Congress established to allow individuals with needed skills and those fleeing persecution to live and work in the United States. *See* H.R. Rep.

15

No. 682, 99th Cong., 2d Sess. Part 1, 70 (1986) ("It makes no sense to admit immigrants and refugees to this country, require them to work and then allow employers to refuse to hire them . . . ."); 8 U.S.C. §§ 1153, 1157, 1158. Further, "[p]erceived mistreatment of aliens in the United States may lead to harmful reciprocal treatment of American citizens abroad." *Arizona v. United States*, 567 U.S. 387, 395 (2012). On the other hand, there may be times when foreign affairs or national security concerns justify restricting certain jobs based on citizenship status. *Cf. Hampton v. Mow Sun Wong*, 426 U.S. 88, 104 (1976) ("[T]he need for undivided loyalty in certain sensitive positions clearly justifies a citizenship requirement in at least some parts of the federal service.").

Balancing these foreign policy and immigration policy concerns, Congress in § 1324b made it an "unfair immigration-related employment practice" for employers to discriminate based on their citizenship status against U.S. citizens, U.S. nationals, lawful permanent residents, and those granted asylum or refugee status. 8 U.S.C. § 1324b(a)(1)(B), (3).[7] Illustrating the close relationship between § 1324a and § 1324b, § 1324b prohibits discriminatory hiring, recruiting, referring, and discharging, which correspond to the employment actions that employers cannot take with respect to unauthorized workers under § 1324a (hiring, recruiting, referring, continuing to employ). Section 1324b permits citizenship status discrimination, though, when it "is otherwise required in order to comply with law, regulation, or executive order, or required by Federal, State,

---

[7] The statute also prohibits discrimination based on national origin. 8 U.S.C. § 1324b(a)(1)(A). SpaceX argues that, because the Seventh Amendment applies to national origin discrimination claims when legal remedies are sought under Title VII, it therefore applies when IER seeks civil penalties under § 1324b. Pl.'s MSJ at 27. But the Court need not resolve whether a § 1324b national origin claim falls in the public rights exception, as SpaceX's case involves only citizenship status, not national origin, discrimination. *See* Admin. Compl. ¶¶ 56-59 (ECF No. 11-2, at 11)

or local government contract, or which the Attorney General determines to be essential for an employer to do business with an agency or department of the Federal, State, or local government." *Id.* § 1324b(a)(2)(C).[8]

SpaceX fails in its attempts to cast a statutory provision governing "unfair *immigration*-related employment actions" in the *Immigration* and Nationality Act, enacted as part of the *Immigration* Reform and Control Act to further *immigration* policy objectives, as not about immigration. SpaceX argues that not all laws that concern both immigration and employment fall within the public rights exception. *See* Pl.'s MSJ at 27, 29-30. But this argument is flawed for multiple reasons. First, the Court does not need to decide the outer bounds of the immigration category within the public rights exception to resolve this case. This case involves citizenship status discrimination under § 1324b, which Congress declared to be an "unfair immigration-related employment practice" because § 1324b is inextricably intertwined with Congress's immigration policy.

Second, SpaceX's attempt to distinguish cases involving admission of immigrants and those involving immigration-related employment practices is not a useful exercise, particularly in the IRCA context. As the Supreme Court has recognized, the employment authorization and verification scheme created by IRCA is "critical to federal immigration policy." *Hoffman Plastic*, 535 U.S. at 151; *Nat'l Ctr. for Immigrants' Rts.*, 502 U.S. at 187 (IRCA "cast serious doubt" on

---

[8] SpaceX alleges in this case that, "because SpaceX designs and manufactures sensitive technologies," including those with "military applications," its employees are subject to information access restrictions under various "export control laws and regulations" that are "critical to our national security," as well as under some of its government contracts, and that those restrictions justify differential treatment of job applicants who self-identify as asylees or refugees. *See* FAC ¶¶ 20-23. National security, export control, and government contracting issues like those flagged by SpaceX only further illustrate why it is more appropriate for the agency, not a court or a jury, to initially adjudicate § 1324b citizenship status claims.

17

the notion "that employment of undocumented aliens was only a peripheral concern of the immigration laws" (citation omitted)); H.R. Rep. No. 682, 99th Cong., 2d Sess. Pt. 1, 46 (1986) ("This legislation seeks to close the back door on illegal immigration so that the front door on legal immigration may remain open."). Further, Congress's regulation of immigration extends beyond admission. *See, e.g.*, *Kansas v. Garcia*, 589 U.S. 191, 195 (2020) ("The foundation of our laws on immigration and naturalization is the Immigration and Nationality Act (INA), which sets out the terms and conditions of admission to the country *and the subsequent treatment of aliens lawfully in the country*." (emphasis added)); *Arizona*, 567 U.S. at 396 (describing "sanctions on employers who hire unauthorized workers, § 1324a," and eligibility for public benefits as part of "extensive and complex" "Federal governance of immigration and alien status").

Finally, the dictum in *Hepner v. United States*, 213 U.S. 103, 115 (1909), on which SpaceX relies—and *Hepner* as a whole—did not address the public rights doctrine. Rather, as the Supreme Court recognized in *Oceanic Steam*, decided later the same year, *Hepner* concerned whether the government could recover a penalty in a civil action in court instead of a criminal prosecution. It did not present the question of whether the government could recover the penalty through an administrative proceeding as opposed to a court proceeding. *See Oceanic Steam*, 214 U.S. at 338; *see also Atlas Roofing*, 430 U.S. at 449 & n.6 (describing *Hepner* as dictum).[9] In contrast, that question was presented in *Oceanic Steam*, which upheld the imposition of administrative monetary penalties pursuant to Congress's plenary power over immigration and foreign commerce. *See*

---

[9] *Hepner* was later cited in *Curtis v. Loether*, 415 U.S. 189, 193 (1974), and *Tull v. United States*, 481 U.S. 412, 416-17 (1987), which held that the Seventh Amendment applied in those cases brought under the Fair Housing Act and the Clean Water Act, respectively. However, neither *Curtis* nor *Tull* determined whether the action brought in *Hepner*, under a different statute, was subject to the Seventh Amendment or if it fell within the public rights exception.

*Oceanic Steam*, 214 U.S. at 338-40. *Jarkesy* reaffirmed *Oceanic Steam*. 144 S. Ct. at 2132-33.

Because § 1324b claims fall within the immigration category of the public rights doctrine, SpaceX's Article III and Seventh Amendment claims fail.

### B. The § 1324b claim against SpaceX is unknown to the common law.

That § 1324b concerns immigration is dispositive of both the Article III and Seventh Amendment claims, but the Court could also hold that § 1324b citizenship status discrimination claims fall within the public rights exception because they are unknown to the common law, even if civil penalties are sought. *Jarkesy* explained that a civil penalty action brought under the OSH Act in *Atlas Roofing* fell within the public rights exception because the Act's "purpose . . . was not to enable the Federal Government to bring or adjudicate claims that traced their ancestry to the common law." 144 S. Ct. at 2137. Rather, the Act was "self-consciously novel" in "both concept and execution." *Id*.[10]

Section 1324b shares those characteristics. As discussed above, here, Congress created a new, comprehensive statutory regime, not based in the common law, that prohibits hiring unauthorized workers and requires employers to examine government-issued documentation to verify employees' work authorization status. Congress was concerned that the new verification system could result in new harms to authorized workers perceived to be unauthorized and, more broadly, to the United States' immigration policy. Congress created the rights and remedies in §1324b to address those new harms. There were no claims like the United States' § 1324b claims against SpaceX at common law because the concepts of work authorization, employer sanctions

---

[10] Although *Jarkesy* was critical of the dissent's broad reading of *Atlas Roofing*, the Court declined to overrule *Atlas Roofing*. 144 S. Ct. at 2136-39. Accordingly, *Atlas Roofing* "remain[s] binding precedent" on lower courts "until [the Supreme Court] see[s] fit to reconsider [it], regardless of whether subsequent cases have raised doubts about [its] continuing vitality." *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) (per curiam) (quoting *Hohn v. United States*, 524 U.S. 236, 252-53 (1998)).

for unauthorized employment, and legally protected immigration statuses (like lawful permanent residence or refugee or asylee status) did not exist.

SpaceX's passing effort to analogize this case to a common law tort case also fails. Pl.'s MSJ at 26. Although *Curtis* suggested that racial housing discrimination claims for compensatory and punitive damages brought under the Fair Housing Act could be considered analogous to "dignitary torts," it also recognized that the Seventh Amendment is generally inapplicable in administrative proceedings. 415 U.S. 189, 194, 196 n.10 (1974). Moreover, the Supreme Court held more recently that pre-1991 Title VII did not redress "tort-like" injuries because it did not authorize compensatory or punitive damages. *United States v. Burke*, 504 U.S. 229, 238-41 (1992). Section 1324b similarly does not authorize such damages and is not tort-like.

Because § 1324b claims are unknown to the common law and are within the public rights exception, SpaceX's Seventh Amendment and Article III claims should be dismissed.[11]

## CONCLUSION

For these reasons, the Court should grant summary judgment in Defendants' favor.

Dated:  August 16, 2024                                  Respectfully submitted,

ALAMDAR S. HAMDANI                        BRIAN M. BOYNTON
United States Attorney                            Principal Deputy Assistant Attorney General

DANIEL DAVID HU                               CHRISTOPHER HALL
Chief, Civil Division                               Assistant Director, Federal Programs Branch

---

[11] Should the Court find merit to these claims, the Court's remedy should be limited to enjoining Defendants from imposing civil penalties administratively in the SpaceX matter, thus allowing the administrative proceeding to continue as to the other remedies. *See* Admin. Compl. at 12. *Jarkesy* did not purport to upend the long history of administrative adjudication outside the narrow context of civil money penalties. *See, e.g.*, *Crowell v. Benson*, 285 U.S. 22, 50-51 (1932); *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937); *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 583 (1985).

/s/ Benjamin S. Lyles
BENJAMIN S. LYLES
Southern District No. 3062156
Texas Bar No. 24094808
Assistant United States Attorney
Attorney in Charge
1701 W. Bus. Highway 83, Suite 600
McAllen, TX 78501
Benjamin.Lyles@usdoj.gov

Counsel for Defendants

/s/ Cynthia Liao
KUNTAL CHOLERA (D.C. Bar No. 1031523)
Trial Attorney, Attorney in Charge
CYNTHIA LIAO (CA Bar No. 301818)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
Kuntal.Cholera@usdoj.gov
Telephone: (202) 305-8645
Cynthia.F.Liao@usdoj.gov
Telephone: (202) 531-1325
Fax: (202) 616-8470

21