**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., | |
| *Plaintiff,* | |
| v. | Civ. Action No. 1:23-cv-00137 |
| CAROL BELL, in her official capacity as Administrative Law Judge of the Office of the Chief Administrative Hearing Officer; JAMES MCHENRY, in his official capacity as Chief Administrative Hearing Officer; and MERRICK B. GARLAND, in his official capacity as U.S. Attorney General, | |
| *Defendants.* | |

**PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR
<u>SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................2

I.      OCAHO ALJS ARE NOT CONSTITUTIONALLY APPOINTED .....................2

      A.      Section 1324b Forecloses Further Agency Review ....................................2

      B.      Section 1324b Cannot Be Severed ................................................................3

      C.      The IFR Is Invalid .......................................................................................5

II.     SPACEX IS ENTITLED TO SUMMARY JUDGMENT, A DECLARATORY JUDGMENT, AND A PERMANENT INJUNCTION ON ITS REMOVAL CLAIM ..........................................................................................................6

      A.      The Removal Protections Are Unconstitutional .........................................6

      B.      SpaceX Has Easily Demonstrated Constitutional Harm .............................7

      C.      SpaceX Is Entitled To A Permanent Injunction Because Severability Cannot Cure The Removal Violation ..........................................................8

      D.      At A Minimum, SpaceX Is Entitled To A Declaratory Judgment .............10

III.    THE PROCEEDINGS AGAINST SPACEX VIOLATE ARTICLE III AND THE SEVENTH AMENDMENT ...............................................................10

      A.      The OCAHO Proceedings Implicate The Seventh Amendment ...............11

      B.      No "Public Rights" Exception Applies ......................................................12

              1.      *No Categorical "Immigration" Exception Applies* ......................12

              2.      *The Action Against SpaceX Is Not Unknown To The Common Law* ..............................................................................................17

      C.      Due Process Considerations Confirm That This Action Belongs In Court ..........................................................................................................19

CONCLUSION ...................................................................................................20

## TABLE OF AUTHORITIES

C*ASES*:

*Aunt Bertha v. NLRB*,
No. 4:24-cv-798-P, 2024 WL 4202383 (N.D. Tex. Sept. 16, 2024)........................................7

*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023) ........................................................................................ *passim*

*Boutilier v. INS*,
387 U.S. 118 (1967)........................................................................................13

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*,
494 U.S. 558 (1990)........................................................................................11

*Christanya Symplice v. New York City Health & Hosps. Corp.*,
18 OCAHO 1493, 2023 WL 5732474 (Aug. 23, 2023)............................................5

*Collins v. Dep't of the Treasury*,
83 F.4th 970 (5th Cir. 2023) ........................................................................................8

*Collins v. Yellen*,
594 U.S. 220 (2021)........................................................................................6, 8

*Community Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
51 F.4th 616 (5th Cir. 2022) ........................................................................................8

*Curtis v. Loether*,
415 U.S. 189 (1974)........................................................................................12, 15, 18

*Department of State v. Munoz*,
144 S. Ct. 1812 (2024)........................................................................................14

*Energy Transfer, LP v. NLRB*,
--- F. Supp. 3d ---, 2024 WL 3571494 (S.D. Tex. July 29, 2024) ...........................................7

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000)........................................................................................2

*FEC v. Cruz*,
596 U.S. 289 (2022)........................................................................................6

*Fiallo v. Bell*,
430 U.S. 787 (1977)........................................................................................13

*Galvan v. Press*,
347 U.S. 522 (1954)........................................................................................13, 16

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989) ..................................................................................15, 17

*Hepner v. United States*,
    213 U.S. 103 (1909) ...................................................................14, 15, 16, 18

*INS v. Chadha*,
    462 U.S. 919 (1983) ...........................................................................................13

*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022) ...................................................................6, 17, 19

*Kleindienst v. Mandel*,
    408 U.S. 753 (1972) ...........................................................................................13

*Leachco, Inc. v. Consumer Prod. Safety Comm'n*,
    103 F.4th 748 (10th Cir. 2024) ...........................................................................7

*Lucia v. SEC*,
    585 U.S. 237 (2018) .............................................................................................9

*Murphy v. National Collegiate Athletic Ass'n*,
    138 S. Ct. 1461 (2018) ........................................................................................5

*Murray's Lessee v. Hoboken Land & Improvement Co.*,
    59 U.S. (18 How.) 272 (1855) ...........................................................................12

*Murthy v. Abbot Labs.*,
    847 F. Supp. 2d 958 (S.D. Tex. 2012) ..............................................................18

*Oceanic Steam Navigation Co. v. Stranahan*,
    214 U.S. 320 (1909) ....................................................................................13, 16

*SEC v. Jarkesy*,
    144 S. Ct. 2117 (2024) ............................................................................ *passim*

*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020) .............................................................................................7

*SpaceX v. NLRB*,
    --- F. Supp. 3d. ---, 2024 WL 3512082 (W.D. Tex. July 23, 2024) .............7, 9, 10

*Tull v. United States*,
    481 U.S. 412 (1987) ................................................................................15, 18, 19

*United States v. Arthrex*,
    594 U.S. 1 (2021) ..................................................................................... *passim*

*United States v. Burke*,
   504 U.S. 229 (1992) ...........................................................................................19

*United States v. Mississippi Dep't of Pub. Safety*,
   321 F.3d 495 (5th Cir. 2003) ...........................................................................15

*United States v. National Treasury Emps. Union*,
   513 U.S. 454 (1995) ...........................................................................................10

*United States v. Oakland Cannabis Buyers' Coop.*,
   532 U.S. 483 (2001) .............................................................................................3

*United States v. Texas*,
   599 U.S. 670 (2023) .............................................................................................6

*Walmart Inc. v. King*,
   No. CV 623-040, 2024 WL 1258223 (S.D. Ga. Mar. 25, 2024) ....................8, 9

*Wong Wing v. United States*,
   163 U.S. 228 (1896) ...........................................................................................17

## STATUTES:

5 U.S.C.
   § 1202(d) ..............................................................................................................6
   § 7521(a) ..............................................................................................................6

8 U.S.C.
   § 1324a ..................................................................................................... *passim*
   § 1324b ..................................................................................................... *passim*
   § 1324b(e)(2) ......................................................................................................16
   § 1324b(g)(1) ........................................................................................................5
   § 1324b(*i*)(1) ........................................................................................................5
   § 1324b(j)(1) .........................................................................................................5
   § 1324b(j)(2) .........................................................................................................5
   § 1324c ..........................................................................................................2, 3, 5

28 U.S.C.
   § 509 .....................................................................................................................4
   § 509(1) .................................................................................................................5

iv

35 U.S.C.
§ 3(a)(1) ..................................................................................................4
§ 3(a)(2)(a) ..............................................................................................4
§ 6(a) ......................................................................................................4
§ 6(c) ......................................................................................................3
§ 141(c) ...................................................................................................4
§ 316(a)(4) ...............................................................................................4
§ 319 ....................................................................................................3, 4

**REGULATIONS:**

28 C.F.R.
§ 68.2 ......................................................................................................6
§ 68.57 ....................................................................................................6

37 C.F.R.
§ 90.3(b) ..................................................................................................4

88 Fed. Reg. 70,586 (Oct. 12, 2023) ...........................................................2, 3

**OTHER AUTHORITIES:**

1 Annals of Cong. 518 (1789) (James Madison) (Joseph Gales ed. 1834) ....................................7

2 RECORDS OF THE FEDERAL CONVENTION OF 1787 (M. Farrand ed. 1911) ..................................14

3 Joseph Story, *Commentaries on the Constitution of the United States* (1833) ............................19

H.R. Rep. No. 95-644 (1977) ..........................................................................17

J. MADISON, REPORT OF 1800 (Jan. 7, 1800), in 17 PAPERS OF JAMES MADISON
319 (D. Mattern, J. Stagg, J. Cross, & S. Perdue eds. 1991) ....................................14

US PTO, *Revised Interim Director Review Process* 3.B (last updated April 16,
2024) ..................................................................................................4

## INTRODUCTION

The government continues grasping at straws to defend its action against SpaceX, which is unconstitutional three times over.  But after multiple briefs and a too-little, too-late attempt at a regulatory fix, it remains emptyhanded.

First, as this Court has already held, 8 U.S.C. § 1324b cannot be read, severed, or contradicted via DOJ's Interim Final Rule (IFR) to comport with the Appointments Clause.  The government's last-ditch argument that Section 1324b can be severed like the America Invents Act in *United States v. Arthrex*, 594 U.S. 1 (2021), overlooks key differences between the statutes.

Second, SpaceX is entitled to summary judgment on its removal claim.  The government brushes off the recent federal decision enjoining Office of the Chief Administrative Hearing Officer (OCAHO) proceedings—and another recent federal decision declining to sever the same removal protections.  In doing so, it fails to explain why the Court should sever the protections for administrative law judges (ALJs) and Merit System Protection Board (MSPB) members—a move that would affect thousands of federal employees—as opposed to merely restraining Judge Bell from conducting the Section 1324b proceedings against SpaceX.

Third, the OCAHO proceedings violate Article III and the Seventh Amendment under *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024).  The government latches on to *Jarkesy*'s passing mention of immigration law to argue that all "adjudications concerning immigration" are within the "public rights" exception.  That is precisely the blunderbuss approach that *Jarkesy* rejects.  *Jarkesy* imposes a strong presumption *against* applying the exception to the jury requirement "even with respect to matters that arguably fall within the scope of the 'public rights' doctrine."  *Id.* at 2134 (alteration omitted).[1]  Any claimed exception must be "evaluated . . . with care," paying "close

---

[1] Internal citations and quotation marks are omitted throughout this brief unless otherwise stated.

attention to the basis for each asserted application of the doctrine." *Id.* at 2133-2134.  Here, that analysis makes clear that run-of-the-mill employment-discrimination claims—unlike immigration proceedings concerning the admission or exclusion of noncitizens—do not involve public rights.

The Court should grant SpaceX summary judgment on all of its claims.

## ARGUMENT

## I.   OCAHO ALJS ARE NOT CONSTITUTIONALLY APPOINTED

### A.   Section 1324b Forecloses Further Agency Review

"[I]t is clear" that Section 1324b precludes the agency review needed to avoid an Appointments Clause violation.  ECF 28 (PI Order) at 4; *see Arthrex*, 594 U.S. at 13-17.  Until this case, the government had agreed.  Its latest attempts to justify its change of heart are unpersuasive.

This case is the first time the government has argued that "the APA's default rule" of agency-head review overrides Section 1324b.  ECF 45 at 2.  The APA, however, was enacted long before Section 1324b, and that "subsequent statute[] more specifically address[es] the topic at hand."  *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000).  In fact, the government issued the IFR (after SpaceX filed suit) expressly *because* "OCAHO ha[d] previously concluded" that Section 1324b orders, unlike Sections 1324a and 1324c orders, "are not subject to further administrative review, *including by the Attorney General*."  88 Fed. Reg. 70,586, 70,587 (Oct. 12, 2023) (emphasis added); *see id.* (noting that "OCAHO's current regulations provide that the ALJ's final [Section 1324b] order . . . is not subject to further review within the Department").

In developing its new position, the government argues that Section 1324b is different from the America Invents Act (AIA) in *Arthrex*, which "expressly precluded" the Director of the Patent and Trade Office (PTO) from reviewing Administrative Patent Judges' (APJs') decisions.  ECF 35 at 9.  They are not meaningfully different, because Section 1324b "expressly precludes" further review to the same extent.  The AIA states that "each . . . inter partes review shall be heard by at

least 3 members of the [Patent Trial and Appeal Board] [PTAB]," "only the [PTAB] may grant rehearings," and review is conducted by the Federal Circuit.  594 U.S. at 25 (second and third alterations in original) (quoting 35 U.S.C. § 6(c)); *see also id.* at 9 (citing 35 U.S.C. § 319).  It does not mention the APA or state that the Director is barred from conducting review.  But the "upshot" (and resulting Appointments Clause violation) is clear—the Director "cannot rehear and reverse a final decision issued by APJs."  *Id.* at 25.

Here, it is likewise "clear" that "the decisions of OCAHO ALJs are not subject to the Attorney General's review."  PI Order 4.  Because an ALJ's decision is "final unless appealed," it is the agency's last word.  ECF 36 at 10 (explaining why government's definition of "final" is nonsensical).  Section 1324b also contains interlocking provisions that key judicial review and enforcement to the order "issue[d]" and "ent[ered]" by the ALJ—in contrast with Sections 1324a and 1324c.  *See id.* at 8-9 (first alteration in original); PI Order 4; *see also* 88 Fed. Reg. at 70,587 (contrasting Section 1324b with Sections 1324a and 1324c).[2]  As in *Arthrex*, the "plain text" upshot (which accords with the legislative history, *see* ECF 36 at 9) is that Section 1324b *does* expressly preclude further administrative review.  PI Order 4.  Given this "absence of statutory ambiguity," the government's fallback—the canon of constitutional avoidance—"has no application."  *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 494 (2001); *contra* ECF 45 at 2.

## B.   Section 1324b Cannot Be Severed

Although Section 1324b and the pertinent provisions of the America Invents Act both bar further review, there is one important statutory difference:  Only the latter were severable.  *See* PI Order 5.  The government emphasizes that courts should sever unconstitutional provisions when possible, but it fails to show that severance works here.  *See* ECF 45 at 2-6.  It maintains that

---

[2] The government no longer relies on an Office of Legal Counsel memo addressing a "vastly different" statute.  *See* ECF 36 at 11.

plucking out the word "final" would be enough.  *Id.* at 4 (citing ECF 35 at 14-15); *see* ECF 26 at 10-11.  In the government's view, the other provisions keying judicial review and enforcement to the ALJ's order are no problem, because an order issued by the Attorney General would be "on behalf of the [ALJ]."  ECF 45 at 4 (alteration in original) (quoting *Arthrex*, 594 U.S. at 25).

But as this Court already held, Section 1324b "cannot be severed . . . to provide for further administrative review."  PI Order 5.  The government's contrary argument misreads *Arthrex*. There, severing the phrase "only the [PTAB] may grant rehearings" solved the constitutional problem.  594 U.S. at 25 (alteration in original).  The Director could otherwise issue decisions "on behalf of" the PTAB because the AIA "vest[s] the Director with the 'powers and duties' of the PTO" and "place[s] the PTAB 'in' the PTO."  *Id.* at 24-25 (quoting 35 U.S.C. §§ 3(a)(1), 6(a)). The Director also has statutory authority to "provide for a means of reviewing PTAB decisions." *Id.* at 25 (citing 35 U.S.C. §§ 3(a)(2)(a), 316(a)(4)).  And unlike in Section 1324b, there is no statutory judicial appeal deadline that runs from the entry of an APJ's order.  *See* 35 U.S.C. §§ 141(c), 319.  So, the Director can promulgate deadlines for agency review that impact (regulatory) deadlines for judicial review—as the Director did after *Arthrex*.  *See* US PTO, *Revised Interim Director Review Process* 3.B (last updated April 16, 2024) (requesting Director review "resets the time for appeal" under 37 C.F.R. § 90.3(b)).[3]

Section 1324b is nothing like that.  As this Court has explained, "[t]here is no provision that affirmatively authorizes the Attorney General to review OCAHO ALJ decisions," let alone one authorizing the Attorney General to review such decisions *and* issue new decisions on behalf of those ALJs.  PI Order 5.  The government includes a truncated quotation of 28 U.S.C. § 509, which vests the Attorney General with the "functions of agencies and employees of the Department

---

[3] https://www.uspto.gov/patents/ptab/decisions/revised-interim-director-review-process.

of Justice." But tellingly, the government omits the rest of the sentence in the statute: "except the functions . . . vested by [the APA] *in administrative law judges employed by the Department of Justice*," such as Judge Bell. 28 U.S.C. § 509(1) (emphasis added).

Beyond that, Section 1324b repeatedly refers to the order issued by "[t]he administrative law judge" in a way that makes clear the relevant appealable order is the one issued by the ALJ, not someone else. 8 U.S.C. § 1324b(g)(1), (*i*)(1), (j)(1). Section 1324b(*i*)(1) sets a 60-day appeal deadline from the "entry" of "such order," *i.e.*, of the ALJ—a statutory deadline that (unlike in *Arthrex*) the Attorney General cannot modify. *See also id.* § 1324b(j)(2) (district court can enforce "the order of the administrative law judge," and "the order of the administrative law judge shall not be subject to review"). Given such statutory constraints, the pertinent "order" cannot refer to *both* the ALJ's order and a potential order of the Attorney General that may never issue.

Eliminating all the provisions providing for direct judicial review and foreclosing further agency review would not only defeat the will of Congress, but also turn the statute into gibberish. That is why the Supreme Court's instruction that courts "cannot rewrite [the] statute"—*e.g.*, by replacing Section 1324b's provisions with agency review provisions like those in Sections 1324a and 1324c—fully applies to Section 1324b. PI Order 5 (quoting *Murphy v. National Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1482 (2018)); *contra* ECF 45 at 5-6. And it is presumably why OCAHO ALJs have stayed Section 1324b proceedings, not invoked severability. *See, e.g.*, *Christanya Symplice v. New York City Health & Hosps. Corp.*, 18 OCAHO 1493, 2023 WL 5732474, at *2 (Aug. 23, 2023); ECF 36 at 9-10 (collecting cases).

## C.     The IFR Is Invalid

For all the reasons discussed above, "the new IFR conflicts with the plain language of § 1324b"—and thus cannot provide the necessary review. PI Order 4. On this point, the

government offers nothing new.[4]   It insists that SpaceX cannot assert—and the Court must ignore—the IFR's invalidity.   ECF 45 at 6.   But the government does not address the Court's "negative power to disregard" unlawful regulations.   ECF 36 at 15 (quoting, *e.g.*, *United States v. Texas*, 599 U.S. 670, 696 (2023) (Gorsuch, J., concurring)).   As the Court explained, SpaceX's "'concrete injury flows directly from' the allegedly unlawful administrative proceedings, and the IFR does not 'operate independently' from those proceedings."   PI Order 3 (quoting *Collins v. Yellen*, 594 U.S. 220, 244 (2021); *FEC v. Cruz*, 596 U.S. 289, 301 (2022)).   SpaceX thus has standing to challenge both the unconstitutional statute and the invalid IFR, and it is entitled to summary judgment on its Appointments Clause and APA claims.

## II.   SPACEX IS ENTITLED TO SUMMARY JUDGMENT, A DECLARATORY JUDGMENT, AND A PERMANENT INJUNCTION ON ITS REMOVAL CLAIM

### A.   The Removal Protections Are Unconstitutional

The Supreme Court's decision in *Jarkesy* did not alter the *en banc* Fifth Circuit's binding removal holding in the same case.   That holding, which held unconstitutional the removal protections for SEC ALJs, confirms that the same removal protections for OCAHO ALJs are unconstitutional.   *See Jarkesy v. SEC*, 34 F.4th 446, 464-465 (5th Cir. 2022) (addressing 5 U.S.C. § 7521(a) (for-cause removal of ALJs *by* MSPB members) and 5 U.S.C. § 1202(d) (for cause removal *of* MSPB members by the President)).

The government tries to distinguish *Jarkesy* on the ground that "OCAHO ALJs are supervised by the Attorney General, who is removable at will by the President."   ECF 45 at 6.

---

[4] The government again argues that the review process under the IFR is consistent with the 60-day statutory appeal deadline because "the IFR defines an order as 'final' when the Attorney General's review period has expired or when the Attorney General has issued a decision."   ECF 45 at 6 n.1.   As noted, this definition of "final" conflicts with the statute in multiple respects.   *See* ECF 36 at 10.   It also conflicts with the regulations themselves, which (i) require a party to seek review within 60 days of "entry of the order" and (ii) define "entry" as "the date the Administrative Law Judge . . . signs the order."   28 C.F.R. §§ 68.57, 68.2; *see* ECF 36 at 13-14 & n.1.

"Supervision" and power to remove are not the same thing. "It is only the authority that can remove such officials that they must fear and, in the performance of their functions, obey." *Seila Law LLC v. CFPB*, 591 U.S. 197, 213 (2020) (alteration omitted). Regardless, the Attorney General lacks the power to supervise Section 1324b decisions *and* the power to remove OCAHO ALJs. The President's ability to remove the Attorney General thus cannot create the necessary "chain of dependence . . . on the President," "on whom all the people vote." *Arthrex*, 594 U.S. at 11 (quoting 1 Annals of Cong. 518 (1789) (James Madison) (Joseph Gales ed. 1834)).

### B.    SpaceX Has Easily Demonstrated Constitutional Harm

The government separately argues (at 7) that SpaceX must "show harm" beyond Judge Bell's unconstitutional removal protections. This Court has rightly rejected that position because the relevant harm is being subject "to an illegitimate proceeding, led by an illegitimate decisionmaker." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023); *see* PI Order 6.

The government's contrary arguments are unavailing. It relies on the Tenth Circuit's non-binding decision in *Leachco, Inc. v. Consumer Product Safety Comm'n*, 103 F.4th 748 (10th Cir. 2024). But as Judge Brown of this Court explained, *Leachco* did not "analyze[] or even acknowledge[] the harm alleged here—of simply being made to participate in an unconstitutional proceeding." *Energy Transfer, LP v. NLRB*, --- F. Supp. 3d ---, 2024 WL 3571494, at *3 n.4 (S.D. Tex. July 29, 2024).[5] Although *Axon* blessed collateral removal challenges at the outset of agency proceedings (as the facts of *Axon* itself show), the government's position would deprive such challengers of relief. *See* ECF 45 at 8-9. The government claims it "does not mean that no one could ever make a showing" that "the President disagrees with the ALJ proceedings" at their

---

[5] Other courts in this circuit agree. *See Aunt Bertha v. NLRB*, No. 4:24-cv-798-P, 2024 WL 4202383, at *3 (N.D. Tex. Sept. 16, 2024) ("The Court . . . adopts *Energy Transfer's* reasoning."); *SpaceX v. NLRB*, --- F. Supp. 3d ---, 2024 WL 3512082, at *6 (W.D. Tex. July 23, 2024) (adopting this Court's application of *Axon* in this Court's PI Order).

inception "in a different case." ECF 45 at 10. But the government cannot explain what ALJ action a President could disagree with *before* a proceeding begins. And once it begins, the target is already subject to *Axon*'s "here-and-now injury" that "cannot be undone." 598 U.S. at 191.

That ineffectual approach is irreconcilable with the Supreme Court's concern about an injury that "is impossible to remedy once the proceeding is over." *Axon*, 598 U.S. at 191; *see* PI Order 6. Just as challengers "will lose their rights *not to undergo* the complained-of agency proceedings if they cannot assert those rights until the proceedings are over," challengers will lose their rights without a "remedy" that halts the proceedings. *Axon*, 598 U.S. at 192 (emphasis added). That is why the Supreme Court analogized collateral removal challenges to "established immunity doctrines" that enable litigants to avoid proceedings entirely. *Id.* The government's many arguments about cases addressing proceedings that already concluded are therefore inapt. *See Collins*, 594 U.S. 220; *Collins v. Dep't of the Treasury*, 83 F.4th 970 (5th Cir. 2023); *Community Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022).

In any event, the government's application of this non-existent requirement significantly downplays the President's interest in influencing the OCAHO proceedings. As SpaceX has explained (and as the government's own allegations underscore), SpaceX's CEO Elon Musk is an influential public figure subject to a remarkable level of government scrutiny. *See* ECF 36 at 20-21. If these facts do not implicate the sorts of concerns raised in *Collins*, it is unclear what facts would.

### C.    SpaceX Is Entitled To A Permanent Injunction Because Severability Cannot Cure The Removal Violation

SpaceX is entitled to an injunction because, as the Southern District of Georgia held, "severability is not the proper solution." *Walmart Inc. v. King*, No. CV 623-040, 2024 WL 1258223, at *4 (S.D. Ga. Mar. 25, 2024). Given the combination of "statutes in place"—the

provisions of Section 1324b giving Judge Bell executive powers, the provision protecting ALJs from removal, and the provision protecting MSPB members from removal—Congress would have preferred restraining Judge Bell from exercising her executive powers in the SpaceX action to severing the removal protections for ALJs and MSPB members.  *Id.*; *see* ECF 36 at 21-24.

This approach tracks the Western District of Texas's analysis of the same protections for NLRB ALJs.  *See SpaceX*, 2024 WL 3512082, at *1, *5.  Three statutory provisions contributed to the removal violation—it was "not clear which, if any, Congress would be willing to give up."  *Id.*  Given the history of Congress seeking to "insulate[]" ALJs and MSPB members "from presidential control," there was "no appropriate way to sever any of the removal protections to remedy the constitutional problems."  *Id.*[6]

The Southern District of Georgia and Western District of Texas got it right.  Congress expressly created an administrative structure and career civil servant system based on independent ALJs and MSPB members (and rejected alternatives).  *See* ECF 36 at 22-24.  The government makes the extraordinary argument that Congress may not have "thought it particularly important that ALJs have additional protections when it overhauled the civil service system and . . . created [the] MSPB."  ECF 45 at 11.  It is universally understood (except by the government, apparently), that the protections are "a central part" of the APA.  *Lucia v. SEC*, 585 U.S. 237, 260 (2018) (Breyer, J., concurring in the judgment in part).  The government also fails to explain why it matters whether the *latter* Congress that created the MSPB had the same view as the *former* Congress that enacted the APA.  But there is no reason to think otherwise, and the enacting Congresses plainly thought each set of protections was critical.  Rather than thwarting Congressional intent and eliminating the protections for non-party ALJs *and* MSPB members, the Court can "avoid judicial

---

[6] The court "respectfully decline[d] to follow" this Court's severability analysis from the preliminary-injunction stage.  2024 WL 3512082, at *6.

legislation" by simply restraining Judge Bell from unconstitutionally exercising executive power as to SpaceX.  *See United States v. National Treasury Emps. Union*, 513 U.S. 454, 479 (1995).

The government's severability arguments are fatally incomplete.  It emphasizes the "strong presumption of severability" and argues that Section 1324b "can function" without the removal protections.  ECF 45 at 10-11.  But that does not answer why the court should sever the removal protections *instead of* restraining Judge Bell from adjudicating the government's claims against SpaceX.  The government does not weigh those options.  It seeks to minimize the impact of severing the removal protections by suggesting the Court could tailor severance to Judge Bell or OCAHO ALJs.  *Id.* at 12.  But even if that were true, what about the MSPB protections?  *See* ECF 36 at 18 (no exception to the "general rule" that the President's removal power is "unrestricted" applies here).  Any severance of removal protections would sweep in at least some OCAHO ALJs and *all* MSPB members.  Rather than take that drastic step, this Court should follow the lead of the other federal courts that have enjoined proceedings operating under these removal protections.

### D.    At A Minimum, SpaceX Is Entitled To A Declaratory Judgment

Because the removal protections are unconstitutional and the proceedings harm SpaceX, SpaceX is entitled to *at least* a declaratory judgment.  The government recognizes that severability is relevant only to whether SpaceX is *also* entitled to a permanent injunction.  *See* ECF 45 at 10; *SpaceX*, 2024 WL 3512082, at *5 (SpaceX entitled to "at least . . . a declaratory judgment").  Accordingly, the Court should also declare the removal protections unconstitutional per the Fifth Circuit's binding *Jarkesy* decision.

### III.   THE PROCEEDINGS AGAINST SPACEX VIOLATE ARTICLE III AND THE SEVENTH AMENDMENT

When this Court denied SpaceX a preliminary injunction on its Article III and Seventh Amendment claims, it lacked the benefit of the Supreme Court's decision in *Jarkesy*.  Now, the

Supreme Court has emphasized that "[t]he right to trial by jury is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right has always been and should be scrutinized with the utmost care." *Jarkesy*, 144 S. Ct. at 2128. To determine whether the OCAHO proceedings violate Article III and the Seventh Amendment, the Court must determine (i) "whether this action implicates the Seventh Amendment," then (ii) "whether the 'public rights' exception to Article III jurisdiction applies." *Id.* at 2127. There is no doubt that the OCAHO proceedings violate both constitutional provisions.

### A. The OCAHO Proceedings Implicate The Seventh Amendment

The Seventh Amendment applies in all "[s]uits at common law," but "is not limited to the common-law forms of action recognized when the Seventh Amendment was ratified." *Jarkesy*, 144 S. Ct. at 2128 (alteration in original). It "embrace[s] all suits which are not of equity or admiralty jurisdiction," meaning any claim "legal in nature." *Id.* at 2128-2129. "[W]hether that claim is statutory is immaterial." *Id.* What matters is "the cause of action and the remedy it provides"—and "remedy [is] the more important consideration." *Id.* at 2129. "Civil penalties are a type of remedy at common law that could only be enforced in courts of law." *Id.* (alteration omitted). Although a request for such remedies is "all but dispositive," a "close relationship" between the "cause[] of action . . . and [the] common law" can "confirm[] that th[e] action is legal in nature." *Id.* at 2129, 2130-2131.

The government does not dispute that the OCAHO proceedings implicate the Seventh Amendment, likely because the government requests civil penalties *and* back-pay damages. *See Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570-571, 573 (1990) (request for the "wages and benefits" persons "would have received" if the employer complied with the law triggers the Seventh Amendment). There is also a close relationship between the

government's cause of action and the common law. *See Curtis v. Loether*, 415 U.S. 189, 195 & n.10 (1974) (employment discrimination claims are "analogous to a number of tort actions recognized at common law"). The Seventh Amendment is thus implicated at least three times over.

## B.     No "Public Rights" Exception Applies

The government must thus fall back on the public rights doctrine—"an *exception*" with "no textual basis in the Constitution." *Jarkesy*, 144 S. Ct. at 2134. "Even with respect to matters that arguably fall within the scope of the 'public rights' doctrine, the presumption is in favor of Article III courts." *Id.* (alteration omitted). Determining whether the government has rebutted that presumption requires "close attention to the basis for each asserted application of the doctrine," including a "careful, category-by-category analysis of the underlying legal principles." *Id.* at 2134 & n.2. For example, in *Murray's Lessee v. Hoboken Land & Improvement Co.*, the Supreme Court "took pains to justify the application of the exception" by examining "centuries-old rules concerning revenue collection by a sovereign." *Id.* at 2134 (citing 59 U.S. (18 How.) 272, 281-285 (1855)). Without such a rigorous showing, "the exception would swallow the rule." *Id.*

### 1.     No Categorical "Immigration" Exception Applies

The government casts aside the Supreme Court's cautionary words and proposes an exception for an incredibly broad category: all "adjudications concerning immigration." ECF 45 at 13. *Jarkesy* noted one category of cases involving public rights as linked to Congress's "plenary power over immigration." 144 S. Ct. at 2132. But the careful analysis that *Jarkesy* mandates makes clear that exception does not encompass Section 1324b *employment-discrimination* claims, which plainly do not concern the *admission or exclusion* of immigrants.

Properly construed, the "legal basis" for the immigration exception does not extend beyond the admission and exclusion of immigrants. *See Jarkesy*, 144 S. Ct. at 2133-2134. Public rights refer to matters "unknown to the common law" that—as opposed to "traditional legal claims"—

"historically could have been determined exclusively by the executive and legislative branches." *Id.* at 2132, 2137 (alteration omitted).  When courts discuss Congress's broad authority to determine immigration matters, they are referring to Article I, section 8 of the Constitution, under which Congress has the power "To establish a uniform Rule of Naturalization."  This naturalization power, when "combined with the Necessary and Proper Clause," establishes "[t]he plenary authority of Congress over alien[s]."  *INS v. Chadha*, 462 U.S. 919, 940-941 (1983).

A long line of cases makes clear that this "plenary power" is shorthand for the "power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden."  *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972) (quoting *Boutilier v. INS*, 387 U.S. 118, 123 (1967)); *see also, e.g.*, *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) ("[O]ver no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens[.]"); *Galvan v. Press*, 347 U.S. 522, 531-532 (1954) ("Policies pertaining to the entry of aliens and their right to remain here are peculiarly concerned with the political conduct of government [and] . . . the formulation of these policies is entrusted exclusively to Congress[.]"); *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 343 (1909) (Congress has "plenary power" over "the admission of aliens").  Application of the immigration exception, like the public rights exception generally, thus requires "careful distinctions."  *Jarkesy*, 144 S. Ct. at 2134 n.2.  The immigration exception covers claims relating to the admission or exclusion of aliens, not all claims "concerning immigration," however broadly defined.  *Contra* ECF 45 at 13.

Background public-rights principles support the same distinction.  Public rights are "dependent upon the will of the government" and thus "belon[g] to the people at large," not "individuals."  *Axon*, 598 U.S. at 198-199 (Thomas, J., concurring).  Such rights concern matters like "the granting of public benefits," *Jarkesy*, 144 S. Ct. at 2133, not "deprivations or transfers of

life, liberty, or property," *Axon*, 598 U.S. at 198 (Thomas, J., concurring); *see id.* at 199 (Thomas, J., concurring) ("[A]t the founding . . . governmental privileges (some of which we today call Government benefits and entitlements) could be taken away without judicial process.").

A noncitizen's ability to enter or remain in the country is a privilege with a "serious and unbroken historical pedigree." *Jarkesy*, 144 S. Ct. at 2147 (Gorsuch, J., concurring). "[T]he through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Department of State v. Munoz*, 144 S. Ct. 1812, 1823 (2024). "From the beginning, the admission of noncitizens into the country was characterized as 'of favor and *not of right*.'" *Id.* (quoting J. MADISON, REPORT OF 1800 (Jan. 7, 1800), in 17 PAPERS OF JAMES MADISON 319 (D. Mattern, J. Stagg, J. Cross, & S. Perdue eds. 1991) (alteration omitted); *see also id.* ("[E]very Society from a great nation down to a club ha[s] the right of declaring the conditions on which new members should be admitted" (alteration in original) (quoting 2 RECORDS OF THE FEDERAL CONVENTION OF 1787, p. 238 (M. Farrand ed. 1911) (Gouverneur Morris)). Adjudications that merely "concern[] immigration" in the government's loose sense have no such pedigree. ECF 45 at 19.

Limiting the immigration exception to the admission or exclusion of noncitizens is also consistent with Supreme Court precedent. *Jarkesy*'s references to "immigration" expressly concern Congress's power to "control the coming of aliens into the United States," *i.e.*, to "bring aliens into the United States" or "exclude[]" them and "enforce those prohibitions." 144 S. Ct. at 2132-2133 & n.1. The decision does not mention a broader exception. And in *Hepner v. United States,* an enforcement action seeking a financial penalty from a defendant accused of employing a noncitizen triggered the right to a jury trial. *See* 213 U.S. 103, 104-105, 115 (1909).

The government dismisses that part of *Hepner* as dictum—but admits the Supreme Court reaffirmed it in both *Curtis*, 415 U.S. at 193, and *Tull v. United States*, 481 U.S. 412, 416-417 (1987). *See* ECF 45 at 18 & n.9. The government pivots to arguing that those cases did not discuss public rights. *Id.* But they held that the causes of action at issue were not "unknown to the common law," as required for the public rights exception to apply. *Jarkesy*, 144 S. Ct. at 2138; *see Curtis*, 415 U.S. at 193 (addressing "legal rights . . . in contradistinction to . . . equitable rights alone"); *Tull*, 481 U.S. at 419 (approving *Hepner*'s Seventh Amendment discussion of claims that "historically have been viewed as one type of action in debt requiring trial by jury"). If anything, this case is further removed from the public rights exception than *Hepner*, which addressed an employer that induced a noncitizen to travel to the United States (and thus arguably involved an *actual* connection to the admission or exclusion of noncitizens). *See* 213 U.S. at 104-105.

The government does not counter this history and precedent with any of its own. Without citation, it claims that Congress enacted Section 1324b pursuant to its "plenary immigration and foreign affairs powers," apparently because the title of the overarching statute includes the word "immigration." ECF 45 at 14 (arguing that Section 1324b is "in the Immigration and Nationality Act"); *see also id.* at 17 (emphasizing the word "immigration").

Of course, "what matters is the substance of the suit, not . . . how it is labeled." *Jarkesy*, 144 S. Ct. at 2136; *accord Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 61 (1989). Congress has broad authority to legislate regarding employment discrimination under the Commerce Clause and, in certain instances, the Fourteenth Amendment. *See, e.g.*, *United States v. Mississippi Dep't of Pub. Safety*, 321 F.3d 495, 500 (5th Cir. 2003) (collecting cases). The title of a statute does not dictate the source of Congress's constitutional authority, let alone whether such authority implicates public rights. For the same reason, the fact that the Immigration and Nationality Act

governs both admission to the country "and the subsequent treatment of aliens lawfully in the country" is irrelevant. ECF 45 at 18 (emphasis omitted). Just because the latter category "concerns immigration" does not mean it automatically triggers the public rights doctrine. *See id.* at 19.

To be clear, SpaceX has never argued that Section 1324b is "not about immigration." *Contra* ECF 45 at 17. The point is that Section 1324b does not relate to "the entry of aliens and their right to remain here." *Galvan*, 347 U.S. at 531-532. At times, even the government describes its exception as applying to "immigration enforcement proceedings," and relies on Congress's power to "forbid aliens or classes of aliens" from entering the country. ECF 45 at 13-14 (acknowledging that *Oceanic Steam*, 214 U.S. 320, was about a "prohibition [on] immigration"). That is the correct scope of the exception, but it has nothing to do with employment discrimination.

When the government tries to frame Section 1324b as dealing with the admission or exclusion of aliens, it relies on *other* statutory provisions that arguably deal with those issues. For example, the government notes that "[e]mployment is the magnet that attracts aliens here illegally" and points to provisions aimed at "combating the employment of illegal aliens," such as Section 1324a's requirement to "verify employees' work authorization status." ECF 45 at 14-15 (alteration in original); *see also id.* at 17 (relying on this "employment authorization and verification scheme"). Even assuming those provisions trigger the public rights doctrine, *but see Hepner*, 213 U.S. at 104-105, they are fundamentally different from Section 1324b, which prohibits employers from discriminating against certain noncitizens who are *already* in the country *legally*. Indeed, Section 1324b requires ALJs with "special training respecting *employment discrimination*"—not *immigration* training. 8 U.S.C. § 1324b(e)(2) (emphasis added). In a Section 1324b case, the focus is not on whether an alleged victim is entitled to be in the country, but rather whether that person suffered employment discrimination based on their protected status.

16

The government speculates, based on legislative history, that Section 1324b is a policy counterweight to Section 1324a.  ECF 45 at 15; *but see* ECF 35 at 12 (government argument that legislative history "is not the law").  Even if true, that would not mean the policy implicates public rights.  If such a nebulous assertion were enough to overcome the presumption of Article III jurisdiction, "the exception would swallow the rule."  *Jarkesy*, 144 S. Ct. at 2134; *see id.* at 2134 n.2 (rejecting similarly vague argument because "the rights of individuals are directly at stake").  Economic and immigration policy are always interrelated.  Perhaps enforcement of a minimum wage law would trigger the government's exception, given that a snippet of legislative history links the law to immigration.  *See* H.R. Rep. No. 95-644, at 26 (1977) (Congress sought to strengthen minimum-wage protections in "industries with a high incidence of undocumented workers" to help "remove the economic incentive for employers to hire undocumented workers").  No wonder the government refuses to identify "the outer bounds" of its expansive theory.  ECF 45 at 17.

Whatever its motives, when Congress promotes immigration policy in a manner that implicates private rights, Article III and the Seventh Amendment apply.  *See Wong Wing v. United States*, 163 U.S. 228, 237 (1896).  That is the case here.  The government's exception for anything that "concerns immigration" has no "legal basis"—and certainly cannot overcome the presumption of Article III jurisdiction.  *Jarkesy*, 144 S. Ct. at 2133-2134.

### 2.  *The Action Against SpaceX Is Not Unknown To The Common Law.*

The government alternatively argues that its claims trigger the public rights doctrine "because they are unknown to the common law."  ECF 45 at 19.  That argument is forfeited.  It has always been clear that the public rights analysis depends in part on whether an action is unknown to the common law.  *See Granfinanciera*, 492 U.S. at 60; *Jarkesy*, 34 F.4th at 455.  That is why SpaceX has argued at every step that Section 1324b claims are "analogous to a number of tort actions recognized at common law."  ECF 11 at 21; *see also* ECF 36 at 26.  The government has

not disputed the point until now.  *See* ECF 24 at 15 (noting lack of dispute in preliminary-injunction briefing); ECF 35 at 28-29 (government motion for summary judgment not raising this point); ECF 36 at 26 (noting government's apparent position in motion for summary judgment that "none of this matters"); *cf. Murthy v. Abbot Labs.*, 847 F. Supp. 2d 958, 977 n.9 (S.D. Tex. 2012) (refusing to consider argument "raised for the first time in a reply brief").

Regardless, claims akin to those under Section 1324b *are* known to the common law. According to the government, "at common law . . . work authorization, employer sanctions for unauthorized employment, and legally protected immigration statuses . . . did not exist."  ECF 45 at 19-20.  But what matters is whether a claim is "legal in nature" because it has a common law "ancestor," not whether it existed in the exact same form.  *Jarkesy*, 144 S. Ct. at 2130-2131; *see id.* at 2128 (right not limited by "forms of action recognized" at common law).  *Jarkesy* addressed securities fraud actions, enacted to address problems "[i]n the aftermath of the Wall Street Crash of 1929," that were "not . . . identical" to common-law fraud.  *Id.* at 2125, 2131.  The Seventh Amendment applies to many "causes of action based on statutes," including "immigration laws," that did not formally exist at common law.  *Curtis*, 415 U.S. at 193 (citing *Hepner* 213 U.S. at 115).

Under the analysis *Jarkesy* requires, Section 1324b has multiple common law ancestors. Employment discrimination claims are analogous to various "dignitary tort" claims.  *Curtis*, 415 U.S. at 195 n.10.  The government's request for civil penalties also makes the OCAHO proceedings analogous to a common law "action in debt."  *Tull*, 481 U.S. at 418-419; *see Jarkesy*, 144 S. Ct. at 2129 (where the SEC sought "civil penalties," "the remedy [wa]s all but dispositive").

Oddly, the government argues that a different statute—Title VII of the Civil Rights Act— "did not redress 'tort-like' injuries because it did not authorize compensatory or punitive damages."

18

ECF 45 at 20 (citing *United States v. Burke*, 504 U.S. 229, 238-241 (1992)).  But *Burke* held that Title VII did not redress "a tort-like 'personal injury' *for purposes of federal income tax law*."  504 U.S. at 238 (emphasis added).  As noted by SpaceX (and entirely ignored by the government), when legal remedies are at stake in Title VII actions—including certain actions identical to one available under Section 1324b—the Seventh Amendment applies.  *See* ECF 36 at 27.

The government's reliance on *Atlas Roofing*—to argue that a "comprehensive statutory regime" necessarily creates public rights—fails.  ECF 45 at 19.  *Jarkesy* criticized *Atlas Roofing* as "depart[ing] from our legal traditions."  144 S. Ct. at 2138 n.4.  As limited there, *Atlas Roofing* provides that public rights involve claims "unknown to the common law," not "any broader rule." *Id.* at 2138.  Plus, the Supreme Court "clarified in *Tull* that the Seventh Amendment does apply to novel statutory regimes, so long as the claims are akin to common law claims."  *Id.* at 2139 (citing 481 U.S. at 421-423); *see also id.* at 2128 ("immaterial" whether "claim is statutory").[7]

### C.    Due Process Considerations Confirm That This Action Belongs In Court

The Seventh Amendment and Article III operate with "the Due Process Clause of the Fifth Amendment to limit how the government may go about depriving an individual of life, liberty, or property."  *Jarkesy*, 144 S. Ct. at 2140 (Gorsuch, J., concurring).  Because the government's action would deprive SpaceX of property, "due process demands nothing less than 'the process and proceedings of the common law.'"  *Id.* at 2145 (Gorsuch, J., concurring) (quoting 3 Joseph Story, *Commentaries on the Constitution of the United States* § 1783, at 661 (1833)).  Given the claims and remedies at issue, "[t]hat means the regular course of trial proceedings with their usual

---

[7] The government argues that any "remedy should be limited to enjoining Defendants from imposing civil penalties."  ECF 45 at 20 n.11.  But "the Seventh Amendment applies to proceedings that involve a mix of legal and equitable claims."  *Jarkesy*, 34 F.4th at 454.  Additional remedies "do[] not invalidate the jury-trial right that attaches because of the civil penalties sought."  *Id.*  Notably, the government also requests (legal) damages.  *See* p. 11, *supra*.

protections," not an adjudication before DOJ—the same entity "responsible for prosecuting the law, subject only to hands-off judicial review."  *Id.* at 2145-2146.

***

Unlawfully structured proceedings allow agencies "to extract settlement terms they could not lawfully obtain any other way."  *Axon*, 598 U.S. at 216 (Gorsuch, J., concurring).  Section 1324b actions afford no executive review (with only deferential judicial review), no accountability to the President (and thus the People) via proper appointment and removal mechanisms, and no right to a jury trial or Article III protections.  Unsurprisingly, such actions always settled, *see* ECF 11 at 23 n.2, at least until SpaceX brought this case.  The government's "solutions"—which boil down to rewriting the statute and inventing an ahistorical exception to Article III and the Seventh Amendment—are not solutions at all.  The Court should grant SpaceX summary judgment on each of its claims and put a permanent stop to the "illegitimate proceeding[s]."  *Axon*, 598 U.S. at 191.

## CONCLUSION

This Court should grant SpaceX summary judgment, deny the government summary judgment, set aside the IFR as unlawful, and permanently enjoin the OCAHO proceedings.

Respectfully submitted,

Dated: October 18, 2024

   /s/ Laura Warrick
Laura Warrick
 Attorney-in-Charge
 Texas Bar No. 24079546
Southern District of Texas Bar No. 3437415
AKIN GUMP STRAUSS HAUER & FELD LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-4770
Facsimile: (214) 969-4343
lwarrick@akingump.com

20

James E.  Tysse (*pro hac vice*)
 Of Counsel
 D.C. Bar No. 978722
Charles F.  Connolly (*pro hac vice*)
 Of Counsel
 D.C. Bar No. 455969
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
jtysse@akingump.com

*Counsel to Plaintiff Space Exploration Technologies Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 18, 2024, a copy of the foregoing document was filed

electronically and served pursuant to this Court's ECF Filing System, upon counsel of record.


     /s/ Laura Warrick

Laura Warrick
Attorney-in-Charge
Texas Bar No. 24079546
Southern District of Texas Bar No. 3437415
AKIN GUMP STRAUSS HAUER & FELD LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-4770
Facsimile: (214) 969-4343
lwarrick@akingump.com